19

against, any loss, liability or expense reasonably incurred without negligence or bad faith on its part arising out of or in connection with actions taken or omitted by it in reliance on any certificate furnished pursuant to this Section 5(c).

(d) <u>Record Dates</u>. The record date for each Interest Payment Date shall be the 15th day prior to such Interest Payment Date. The Persons in whose names the Bonds of any Series are registered at the close of business on any record date with respect to any Interest Payment Date for such Series shall be entitled to receive the interest, if any, payable on such Interest Payment Date on such Bonds notwithstanding any transfer or exchange of such Bonds subsequent to such record date and prior to such Interest Payment Date, <u>except</u> if and to the extent Argentina shall be overdue in the payment of the interest due on such Interest Payment Date on such Bonds and such default shall not be cured within 30 days, in which case such overdue interest shall (unless paid together with principal of the Bonds of such Series in full other than on an Interest Payment Date for such Series) be paid to the Persons in whose names such Bonds are registered at the close of business on a subsequent record date (which shall be not less than five Business Days before the date of payment of such overdue interest) established by notice given by mail by or on behalf of Argentina to the Bondholders of such Series not less than 15 days before such subsequent record date. If interest is paid together with principal in full on a date which is not an Interest Payment Date, such interest shall be paid upon presentation and surrender of the Bond of such Series to the Fiscal Agent or to a Paying Agent.

(e) <u>Cancellation of Bonds Paid or Surrendered by Argentina</u>. Upon payment by the Fiscal Agent or the Paying Agents of the full principal amount of Bonds of any Series presented and surrendered to them for payment at maturity or on redemption or upon presentation and surrender to them of such Bonds, in each case pursuant to the provisions of such Bonds, the Fiscal Agent shall cancel, retire and destroy any such Bonds so surrendered in accordance with Section 6(e) hereof. Upon presentation and surrender to the Fiscal Agent, the Registrar or a Transfer Agent of Bonds of any Series tendered to Argentina pursuant to a redemption, purchase or other acquisition of Bonds of such Series pursuant to the provisions thereof, together with a request that such Bonds be cancelled, the Fiscal Agent, the Registrar or such Transfer Agent shall cancel, retire and destroy such Bonds in accordance with Section 6(e) hereof. All Bonds shall be destroyed in a manner consistent with the securities

20

destruction policy of the Fiscal Agent, the Registrar, or such Transfer Agent, as the case may be. The Registrar or any Transfer Agent shall notify the Fiscal Agent of any such destruction of the Bonds. The Fiscal Agent, the Registrar or any Transfer Agent shall certify to Argentina the cancellation, retirement and destruction of any Bonds. The purchase or other acquisition of any Bond by Argentina pursuant to Paragraph 4 of the Terms and Conditions of such Bond shall not be deemed to be a satisfaction of the indebtedness represented by such Bond unless and until (i) in the case of any definitive Bond, such Bond shall have been delivered by Argentina to the Fiscal Agent, the Registrar or a Transfer Agent for cancellation in accordance with this Section 5(e) and (ii) in the case of any beneficial interest in a Non-U.S. Global Bond or a U.S. Temporary Global Bond, Argentina shall have requested the Fiscal Agent to request the Registrar or the Common Depositary, as the case may be, to effect the cancellation of such beneficial interests in such Global Bond.

(f) _Notices_. The Fiscal Agent shall promptly notify Argentina (with copies of such communication or written confirmation to each of the other Agents), if the Fiscal Agent shall receive from:

(i) any Bondholder, any written notice referred to in Paragraph 10(d) of the Terms and Conditions of the Bonds or any written notice which describes an event or condition and expressly states that such event or condition is an "Event of Default" under such Bond or any written demand for payment of any principal of or interest or other amount due on any Bond on any Interest Payment Date or Bond Maturity Date or otherwise and not paid thereon in accordance with the terms of such Bond, of any acceleration of any Bond of any Series pursuant to the terms thereof and of any rescission and annulment of any such acceleration; or

(ii) any Bondholder, any written notice which states that such Bondholder is a Purchaser and that such Bondholder intends to pay any Applicable Taxes, Other Applicable Taxes or liabilities arising therefrom or with respect thereto due in respect of Bonds held by such Bondholder and claims reimbursement in respect thereof pursuant to Section 6.06(c) of the Discount and Par Bond Exchange Agreement.

Each such notice shall be given, by telex, facsimile, telegram, cable or telephone confirmed in writing, in accordance with Section 13 hereof.

21

The Fiscal Agent shall promptly, at the expense of Argentina, give notice to the Bondholders of each Series of Bonds of

(1)  any redemption of Bonds of such Series,

(2)  any change in any of the Collateral Agent, the Registrar, the Paying Agents, the Transfer Agents or the Common Depositary, if any, for such Series,

(3)  any failure by Argentina to deposit with the Fiscal Agent sufficient funds to pay the interest due on the Bonds of such Series on any Interest Payment Date for such Series (or any required additional amounts with respect thereto) or to pay the interest due on Bonds of the other Series on any interest payment date therefor (or any required additional amounts with respect thereto), in each case in accordance with Section 5(b)(i) hereof,

(4)  any written notice received by the Fiscal Agent from any Bondholder which describes an event or condition and expressly states that such event or condition is an "Event of Default" under any such Bond held by such Bondholder,

(5)  any receipt by the Fiscal Agent of a tax certificate or receipt evidencing payment by Argentina of Argentine Taxes in respect of the Bonds of such Series,

(6)  any acceleration of the Bonds of any Series, and

(7)  any rescission and annulment of any such acceleration.

(g)  Records.  The Fiscal Agent will keep records of all Bonds and will make such records available for inspection by Argentina upon the request of Argentina.  Included in such records will be notations as to (i) endorsements on the Schedules to the Global Bonds, payments, exchanges, redemptions and cancellations in respect of the Global Bonds, exchanges of beneficial interests in a U.S. Temporary Escrow Global Bond for definitive Bonds pursuant to Section 3(b)(iii)(B) hereof and other increases or decreases in the unpaid principal amount of Global Bonds contemplated hereby and (ii) whether Bonds have been paid or cancelled, and, in the case of mutilated, destroyed, stolen or lost Bonds, whether such Bonds have been replaced.  In the case of the replacement of any of the Bonds, the Fiscal Agent

will keep a record of the Bond so replaced, and the Bond issued in replacement thereof. In the case of the cancellation of any of the Bonds, the Fiscal Agent will keep a record of the Bonds so cancelled and the date on which any such Bond was cancelled.

(h) Duties Under the Collateral Pledge Agreement. The Fiscal Agent shall enter into and perform and give notices as contemplated by the Collateral Pledge Agreement.

(i) Release of Bonds from Interpleader. (1) Under Section 3.05 of the Discount Bond and Par Bond Exchange Agreement, one or more interpleaders shall be commenced with respect to Bonds remaining in an Escrow Account after the release of Bonds on the Escrow Release Date under Section 3.05(d)(i) of said agreement. Such Bonds shall be in the form of beneficial interests in a U.S. Temporary Escrow Global Bond or, to the extent permitted by Section 3(b)(iii)(B) hereof, in the form of definitive Bonds bearing the Securities Act Legend. In the event that, in connection with any such interpleader (or any settlement relating thereto) the Fiscal Agent is notified in writing by the Closing Agent or all parties to such interpleader or receives notice of a final order of a court which is no longer subject to appeal or certiorari proceeding that any Purchaser is the Recognized Holder of the Eligible Debt in respect of which Bonds subject to such interpleader were issued, then (x) Bonds of the Discount Series L and Par Series L shall be issued to such Purchaser in a principal amount for each Series as specified in Section 3.05(h)(ix) of the Discount Bond and Par Bond Exchange Agreement and (y) the Fiscal Agent shall cancel an equivalent principal amount of Bonds of each Series by either decreasing the aggregate principal amount of the U.S. Temporary Escrow Global Bond for each Series or if and to the extent that beneficial interests in the U.S. Temporary Escrow Global Bond for a Series have been exchanged for definitive Bonds, cancelling such definitive Bonds.

Bonds of any Series to be issued to any Purchaser pursuant to clause (x) of this Section 5(i)(1) shall be delivered as follows:

(i) if such Purchaser is indicated on Schedule A to the Discount Bond and Par Bond Exchange Agreement as being a Non-U.S. Person (other than one electing on such Schedule A to receive Bonds pursuant to Section 4(2) of the Securities Act), the Fiscal Agent, upon notice from such Purchaser of the appropriate account for such Purchaser at Euroclear or Cedel, shall instruct the Common Depositary to endorse the Schedule to the Non-U.S. Global Bond for such Series to reflect an increase in the

principal amount thereof by the unpaid principal amount of the Bonds of such Series to be released to such Purchaser and notify Euroclear or Cedel, as the case may be, to credit such increased principal amount to such account as such Purchaser shall direct; and

(ii)  if such Purchaser is indicated on Schedule A to the Discount Bond and Par Bond Exchange Agreement as being a U.S. Person or a Non-U.S. Person electing to receive Bonds pursuant to Section 4(2) of the Securities Act, the Fiscal Agent shall instruct the Registrar to endorse the Schedule to the U.S. Temporary Global Bond for each Series to reflect an increase in the principal amount thereof by the unpaid principal amount of the Bonds of such Series to be released to such Purchaser.

(2)  In the event that, in connection with any such interpleader (or any settlement relating thereto) the Fiscal Agent is notified in writing by the Closing Agent or all parties to such interpleader or receives notice of a final order of a court which is no longer subject to appeal or certiorari proceeding that it has been determined that no Purchaser party to such interpleader is a Recognized Holder of any Eligible Debt in respect of which Principal Bonds subject to such interpleader were issued, then the Fiscal Agent shall cancel Bonds of each such Series in the principal amounts specified by Section 3.05(h)(xi) of the Discount Bond and Par Bond Exchange Agreement.  Any such cancellation shall be effected by decreasing the principal amount of the U.S. Temporary Escrow Global Bond of each Series or, if and to the extent that, the beneficial interests in the U.S. Temporary Escrow Global Bond for a Series have been exchanged for definitive Bonds, cancelling such definitive Bonds. Notwithstanding the foregoing, Bonds shall be cancelled pursuant to this Section 5(i)(2) only if and to the extent that following such cancellation:

(A)  the sum of the outstanding principal amount of the U.S. Temporary Escrow Global Discount Bond plus the aggregate outstanding principal amount of definitive Bonds issued in exchange for such U.S. Temporary Escrow Global Discount Bond is no less than the product of .35 multiplied by 65% of the aggregate Unreconciled ED (allocated to Principal Bonds denominated in U.S. Dollars) that is claimed by all Purchasers as of the date of such cancellation, such amount to be notified by Argentina and the Closing Agent to the Fiscal Agent; and

(B) the sum of the outstanding principal amount of
the U.S. Temporary Escrow Global Par Bond plus the
aggregate outstanding principal amount of definitive
Bonds issued in exchange for such U.S. Temporary Escrow
Global Par Bond is no less than the product of .65
multiplied by the aggregate Unreconciled ED (allocated to
Principal Bonds denominated in U.S. Dollars) that is
claimed by all Purchasers as of the date of such
cancellation, such amount to be notified by the Closing
Agent and Argentina to the Fiscal Agent.

(3) Upon the release to any Purchaser of any Bond
pursuant to Section 5(i)(1) or the cancellation of any Bond
pursuant to Section 5(i)(2), any payments deposited in an
Escrow Account in respect of such Bond shall be transferred
by the Escrow Agent to the Fiscal Agent (together with notice
of the amount payable in respect of such Bond, the portion
thereof representing investment earnings, if any, and such
other information as may be reasonably required by the Fiscal
Agent to make the transfer referred to in the next sentence)
to be (x) held in trust for the benefit of such Purchaser, in
the case of a release of such Bond to such Purchaser or (y)
in the case of any Bond cancelled as aforesaid, paid to
Argentina.  Funds held in trust for any Purchaser under this
Section 5(i)(3) shall be transferred to such Purchaser within
15 days of receipt by the Fiscal Agent of payment
instructions from such Purchaser, and, in the case of any
funds in respect of a Bond received by such Purchaser
pursuant to Section 5(i)(1)(i), such funds shall be
transferred to the Euroclear Operator or Cedel, as the case
may be, for the account of such Purchaser and the Fiscal
Agent shall instruct the Common Depository to endorse the
Non-U.S. Global Bond to reflect any such payment.
Notwithstanding the foregoing, no such payment shall be
transferred by the Fiscal Agent to any Purchaser in respect
of any Bond released under clause (1)(i) above in the form of
a beneficial interest in the U.S. Temporary Global Bond for
any Series unless and until the Fiscal Agent has received
appropriate payment instructions from such Purchaser and the
Bondholder exchanges its beneficial interest in such U.S.
Temporary Global Bond for a definitive Bond of the same
Series.

(j)  Other Duties.  The Fiscal Agent and each Paying
Agent will perform their respective duties set forth in this
Agreement and such other duties as may be reasonably
requested by Argentina and agreed to by the Fiscal Agent to
give effect to this Agreement and the Terms and Conditions of
the Bonds.

25

SECTION 6.  DUTIES OF REGISTRAR AND TRANSFER AGENTS.

(a)  Maintenance of Register.  The Registrar, as agent of Argentina, shall maintain at its corporate trust office in the Borough of Manhattan, in New York City, a register for registering the Bonds of each Series and transfers thereof for the issuance of definitive Bonds in exchange for a beneficial interest in a Global Bond, all in accordance with the provisions of the Agreement.  The Registrar shall not be required to maintain a record of the holders of beneficial interests in the U.S. Temporary Escrow Global Bond.  The register maintained by the Registrar shall, absent manifest error, be conclusive in any determination of the outstanding principal amount and ownership of Bonds of each Series.

(b)  Holding of U.S. Global Bonds.  The Registrar shall hold each U.S. Temporary Global Bond in the manner and as otherwise provided in Section 3 hereof.  The Escrow Agent shall hold the U.S. Temporary Escrow Global Bonds in the manner and as otherwise provided in Section 3 hereof.

(c)  Transferability.  (i) Beneficial Interests in a U.S. Global Bonds.  Beneficial interests in a U.S. Temporary Global Bonds may not be transferred.  Beneficial interests in a U.S. Temporary Escrow Global Bond may not be transferred except to the extent that such transfer is necessary in connection with the commencement of an interpleader pursuant to Section 3.05 of the Discount Bond and Par Bond Exchange Agreement.  In addition, neither the U.S. Temporary Escrow Global Discount Bond nor the U.S. Temporary Escrow Global Par Bond may be transferred except by the Escrow Agent to a successor Escrow Agent.

(ii)  Definitive Bonds in Interpleader.  Any definitive Bonds issued in exchange for a beneficial interest in a U.S. Temporary Escrow Global Bond may not be transferred or assigned except to the extent necessary in connection with the commencement of an interpleader in respect of such Bond under Section 3.05 of the Discount Bond and Par Bond Exchange Agreement.  Upon the resolution of such interpleader, such definitive Bond shall be cancelled in accordance with the applicable provision of Section 5(i) hereof.

(d)  Transfers, Exchanges and Replacements of Definitive Bonds.  As provided in the Bonds of each Series, the Bondholders thereof shall present to the Registrar or any Transfer Agent all requests for (i) registration of transfer of Bonds; (ii) exchange of Bonds of such Series for new Bonds

of such Series in Authorized Denominations; (iii) exchange of Bonds of such Series for new Bonds of such Series in the event of partial redemption; and (iv) replacement of Bonds in the case of mutilation, destruction, loss or theft. The Registrar and the Transfer Agents shall follow the procedures set forth in paragraphs (A) through (E) below with respect to such requests:

(A)  Transfers.  Upon surrender for transfer at the office of the Registrar or any Transfer Agent of any Bond of any Series, and subject to the reasonable requirements of the Registrar, the Registrar shall register such transfer and, except as provided in Section 6(d)(G) below, the Registrar or such Transfer Agent shall deliver in the name of the transferee or transferees a new Bond or Bonds of such Series in Authorized Denominations for a like aggregate principal amount; provided that

(x)  the Registrar shall affix to the face of any Bond or Bonds an original issue discount legend as provided in Section 1(d) hereof and any new Bond or Bonds issued thereafter to any subsequent transferee shall continue to carry such legend. The Fiscal Agent shall have no duty to confirm the rate for the original issue discount legend provided by Argentina;

(y)  the Registrar shall not register the transfer of any Bond bearing the Securities Act Legend occurring prior to the first day following the second anniversary of the Exchange Date unless the Registrar receives (1) a certificate of the transferor substantially in the form of Schedule A-1 hereto and a certificate of each transferee substantially in the form of Schedule A-2 hereto, (2) a certificate of the transferor substantially in the form of Schedule B hereto or (3) a certificate of the transferor substantially in the form of Schedule C hereto; and

(z)  if any definitive Bond surrendered to the Registrar contained the Securities Act Legend, any new Bond delivered to such transferee shall contain the Securities Act Legend, unless (1) such transfer occurs on or after the first day following the second anniversary of the Exchange Date or (2) (and only to the extent) such Bond was accompanied by a certificate or certificates substantially in the form of Schedule B hereto from the transferor or transferors of such Bond certifying that a transfer

of such Bond has been effected pursuant to Rule 904 of Regulation S (in which case the Bond or Bonds issued in exchange therefor shall not, to the extent of the amount covered by such certificate or certificates, contain the Securities Act Legend).

(B)  Exchanges for New Bonds.  Upon surrender of Bonds of any Series to the Registrar or any Transfer Agent for exchange, the Registrar shall register such exchange, and the Registrar or such Transfer Agent shall, in exchange for the Bonds so surrendered, deliver a like principal amount of new Bonds of such Series in Authorized Denominations.

(C)  Partial Redemptions.  In case any Bond of any Series is to be redeemed in part only, as permitted by Paragraph 4(a) of the Terms and Conditions of the Bonds, the Registrar shall, on or after the date fixed for redemption, upon surrender of such Bond to the Registrar or a Transfer Agent, register for exchange with the holder thereof a new Bond of such Series having a principal amount equal to the unredeemed portion thereof, and the Registrar or a Transfer Agent shall deliver the new Bond to such holder.

(D)  Replacement.  In case of the mutilation, destruction, loss or theft of any Bond of any Series, upon surrender to and cancellation by the Registrar of the mutilated Bond, or upon receipt of proof satisfactory to it and Argentina of the destruction, loss or theft of such Bond, and receipt of security or indemnity satisfactory to the Authenticating Agent, the Fiscal Agent, the Registrar or a Transfer Agent and Argentina, and in the absence of notice to Argentina or any Agent that such Bond has been acquired by a Person in whose possession such Bond constitutes a valid obligation of Argentina, Argentina shall execute and upon the request of an Authorized Official of Argentina, the Authenticating Agent shall authenticate a new Bond of such Series of like terms and principal amount in replacement of such Bond for delivery to the Person requesting such replacement upon payment by such Person of all reasonable expenses related to obtaining such security or indemnity and issuing and delivering a new Bond (including, without limitation, reasonable legal fees and reasonable expenses relating to the printing, preparation, authentication and delivery of such new Bond).  Any replacement Bonds of any Series delivered pursuant to this Section 6(d)(D) shall evidence the same rights and obligations as evidenced by other Bonds of such Series issued, authenticated and delivered hereunder.

28

(E)  Delivery.  All Bonds issued pursuant to
paragraphs (A), (B), (C), and (D) above shall be
delivered to the Bondholder at the office of any of the
Fiscal Agent, the Registrar or a Transfer Agent or (at
the risk and expense of the Bondholder) sent by mail to
such address as may be specified by the Bondholder in the
request for transfer, exchange or replacement.  Argentina
may require payment of a sum sufficient to cover any
stamp tax or other governmental charge (other than a
stamp tax or governmental charge imposed by Argentina
itself) in connection with any such transfer, exchange or
replacement, but (except as provided in paragraph (D)
above) no other charge shall be made in connection with
any such transfer, exchange or replacement (except for
the expenses of delivery by mail or otherwise).

(F)  Legends.  Any Bond bearing an original issue
discount legend as provided in Section 1(d) hereof shall
only be exchanged for, or replaced with, another Bond or
Bonds bearing such legend.  Any Bond bearing the
Securities Act Legend shall only be exchanged for, or
replaced with, another Bond bearing such legend until the
earlier to occur of (1) the first day after the second
anniversary of the Exchange Date (in which case the Bond
or Bonds issued in exchange therefor or replacement
thereof shall not bear the Securities Act Legend) and (2)
the day the Registrar receives a certificate or
certificates substantially in the form of Schedule B
hereto from the transferor or transferors of such Bond
certifying that a transfer of such Bond has been effected
pursuant to Rule 904 of Regulation S (in which case the
Bond or Bonds issued in exchange therefor or replacement
thereof shall not, to the extent of the amount covered in
such certificate or certificates, bear the Securities Act
Legend).

(G)  Exchange of Definitive Bonds for Beneficial
Interests in Non-U.S. Global Bond.  If any definitive
Bond surrendered to the Registrar or a Transfer Agent for
transfer under Section 6(d)(A) is accompanied by (i) a
notice from the proposed transferee that such transferee
intends to hold such Bond through the facilities of
Euroclear Operator or Cedel identifying such transferee's
account with Euroclear Operator and Cedel, as the case
may be, and (ii) in the case of any Bond bearing the
Securities Act Legend, a certificate or certificates
substantially in the form of Schedule B hereto from the
transferor or transferors of such Bond certifying that a
transfer of such Bond has been effected pursuant to Rule
904 of Regulation S, then no new definitive Bond or Bonds

shall be issued to such transferee and, upon registering any such transfer, the Registrar shall (x) instruct the Fiscal Agent to instruct the Common Depositary to endorse the Schedule to the Non-U.S. Global Bond for the same Series as such transferred Bond to reflect an increase in the outstanding principal amount thereof equal to the principal amount of such transferred Bond and (y) instruct the Fiscal Agent to notify the Euroclear Operator or Cedel (as the case may be) of the identity of the tranferee, such transferee's account number and the principal amount of such transferred Bond.

(e)  Cancellation and Retirement; Procedures with Authenticating Agent.  All Bonds surrendered for payment, redemption, exchange, transfer or replacement shall be delivered to the Fiscal Agent, the Registrar or a Transfer Agent for cancellation.  All Bonds so canceled by the Fiscal Agent, the Registrar or a Transfer Agent shall be destroyed from time to time in a manner consistent with the securities destruction policy of the Fiscal Agent, the Registrar or such Transfer Agent, as the case may be.  In the event that the Registrar or any Transfer Agent cancels any Bonds, the Registrar or such Transfer Agent shall promptly notify the Fiscal Agent of such cancellation.  The Fiscal Agent, the Registrar and any Transfer Agent shall certify to Argentina the cancellation and destruction of any Bonds.  In the case of any Bond to be delivered pursuant to Section 6(d), Argentina shall execute and deliver such new or replacement Bond to an Authenticating Agent and shall instruct such Authenticating Agent to date and authenticate such new or replacement Bonds and upon such authentication, the Fiscal Agent shall direct such Authenticating Agent to deliver such new or replacement Bond to the Registrar or a Transfer Agent, as the case may be, for delivery to the registered holder requesting such replacement or exchange.

(f)  Retirement of Bonds Paid or Surrendered by Argentina.  Upon delivery to the Fiscal Agent, the Registrar or a Transfer Agent of any Bond cancelled pursuant to Section 5(e), the Fiscal Agent, the Registrar or such Transfer Agent shall cancel such Bond in accordance with Section 6(e), and no Bond shall be issued in replacement therefor.

(g)  Negotiation of Bonds.  Bonds presented or surrendered to the Registrar or a Transfer Agent for registration of transfer, exchange or replacement shall be duly endorsed by, or accompanied by written instruments of transfer in form satisfactory to the Registrar duly executed by the registered owners thereof or their attorneys-in-fact duly authorized in writing.

(h) <u>Registration of Transfer or Exchange Before Redemption</u>. Notwithstanding any other provision of this Agreement, the Registrar shall not be required to register the transfer of or to exchange any (i) Bond of any Series during a period beginning at the opening of business 15 days before the date of transmission of a notice of partial redemption of Bonds of such Series and ending at the close of business on the day of such transmission or (ii) Bond called for redemption; <u>provided</u> that, with respect to any Bond called for partial redemption, the Registrar shall register the transfer of or exchange the portion of the principal amount of such Bonds not subject to redemption.

(i) <u>Information to Fiscal Agent and Argentina</u>. Eight days before each Interest Payment Date specified in the Bonds of any Series and at such other times as the Fiscal Agent may reasonably request, the Registrar shall provide the Fiscal Agent with a list of the names and addresses of the Bondholders of such Series then outstanding, and the denominations thereof. In addition, at such times as the Fiscal Agent or Argentina shall reasonably request in writing, the Registrar shall provide the Fiscal Agent or Argentina, as the case may be, with a list of the names and addresses of the registered Bondholders of each Series.

(j) <u>Dating and Completion of Bonds</u>. The Authenticating Agent shall date all Bonds before delivery thereof to the Fiscal Agent, the Registrar or a Transfer Agent, whether for purposes of initial issue or of subsequent delivery of new or replacement Bonds for any of the reasons specified in Section 6(d). Each Bond of any Series shall be dated in accordance with Section 4(c) and shall bear interest from the most recent Interest Payment Date to which interest on Bonds of such Series has been paid or provided for or, if no interest has been paid or duly provided for on the Bonds of such Series, such Bond shall bear interest from the earlier of March 31, 1993 and the Exchange Date.

(k) <u>Records</u>. The Registrar will keep records of all Bonds at its corporate trust office in New York City and make such records available for inspection by Argentina upon request thereof. Included in such records will be notations as to (i) endorsements on the Schedules to the Global Bonds, payments, exchanges, redemptions and cancellations in respect of the Global Bonds, exchanges or beneficial interests in a U.S. Temporary Escrow Global Bond for definitive Bonds and other increases or decreases in the unpaid principal amount of Global Bonds contemplated hereby and (ii) whether Bonds have been paid or cancelled, and, in the case of mutilated, destroyed, stolen or lost Bonds, whether such Bonds have been

31

replaced.  In the case of the replacement of any of the
Bonds, the Registrar will keep a record of the Bond so
replaced and the Bond issued in replacement thereof.  In the
case of the cancellation of any of the Bonds, the Registrar
will keep a record of the Bond so cancelled and the date on
which such Bond was cancelled.

(1)  Other Duties.  The Registrar and each Transfer
Agent will perform their respective duties set forth in this
Agreement and such other duties as may be reasonably
requested by Argentina and agreed to by the Registrar and
Transfer Agent to give effect to this Agreement and the Terms
and Conditions of the Bonds.

SECTION 7.  DUTIES OF CALCULATION AGENT.

(a)  For Bonds of each Series of USD Discount Bonds,
on each Interest Determination Date for such Series, the
Calculation Agent shall determine the Rate of Interest for
such Series and calculate the Interest Amount for the
relevant Interest Period for such Series in the manner set
forth in the Terms and Conditions of the Bonds of such Series
and shall notify Argentina, the Fiscal Agent and each
securities exchange, if any, on which such Bonds are listed
(for as long as such Bonds are listed thereon), by telex or
facsimile transmission, of the Rate of Interest for such
Interest Period for such Series specifying to Argentina the
offered quotations for the U.S. Dollar lending rates upon
which the Rate of Interest is based and the Interest Amounts
corresponding thereto.

(b)  The Calculation Agent shall use its best
efforts to cause the Rate of Interest for each Series of the
USD Discount Bonds for each Interest Period for such Series
to be published in accordance with the notice provisions
contained in the Bonds of such Series as soon as practicable
after its determination but in no event later than the fifth
Business Day after the relevant Interest Determination Date
for such Series.  In addition, such publication shall state
each Interest Amount payable on the next Interest Payment
Date for such Series.

(c)  Argentina shall promptly notify the Calculation
Agent of any change in the identity of the Reference Banks
named in any Series of USD Discount Bonds.  Pending receipt
of any such notification, the Calculation Agent shall be
entitled to assume that the Reference Banks are those named
in each Series of USD Discount Bonds as modified by any such
change previously notified to, and received by, the
Calculation Agent or any predecessor Calculation Agent
hereunder.

32

SECTION 8.  REDEMPTION.

(a)  If Argentina shall elect to redeem the Bonds of any Series, in whole or in part, in accordance with Paragraph 4(a) of the Terms and Conditions of such Bonds, Argentina shall, at least 60 days before the date designated for such redemption, give notice to the Fiscal Agent of its election to redeem such Bonds on the redemption date specified in such notice, which must be an Interest Payment Date, if the Bonds being redeemed are Discount Bonds.  In the case of a partial redemption, such notice shall state the aggregate principal amount of Bonds of each Series to be redeemed.  Notice given hereunder shall be irrevocable.

(b)  Upon receipt of notice from Argentina of its election to redeem Bonds (or a portion thereof) of any Series, the Fiscal Agent shall cause to be given on behalf of Argentina to the Bondholders of such Series a notice of redemption of Bonds of such Series (with copies to the Collateral Agent for such Series), specifying (i) the date fixed for redemption, (ii) the redemption price (equal to the principal amount of the Bonds being redeemed, together with all accrued and unpaid interest thereon), (iii) the place or places of payment, (iv) that payment will be made upon presentation and surrender of the Bonds to be redeemed, in the case of definitive Bonds, and, in the case of any Global Bond, upon presentation for endorsement or surrender, and (v) that on and after such date interest thereon shall cease to accrue.  In the case of a partial redemption, the Fiscal Agent shall determine the principal amount of each Bond to be redeemed in accordance with the provisions contained in the Bond and shall include such information in such notice.  Such notice shall be published in accordance with the notice provisions contained in the Bonds, at least once a week for three successive weeks before the date fixed for redemption, the first such publication to be not less than 30 days nor more than 60 days before the date fixed for redemption.  In addition, notice of such redemption shall be mailed to all holders of Bonds of such Series at the last address of such holder appearing in the register of the Bonds of such Series not less than 30 days nor more than 60 days before the date fixed for redemption.

(c)  Notwithstanding the foregoing, Argentina may not redeem Bonds of any Series prior to stated maturity if a default in the payment of principal of or interest on any Series of Bonds, any other Principal Bonds or the Floating Rate Bonds has occurred and is continuing.

33

SECTION 9.   RESIGNATIONS OR REMOVALS OF AGENTS.

(a)  Any Agent may at any time resign as Agent upon 60 days' written notice to Argentina.  Any Agent may be removed by Argentina at any time upon not less than 60 days' written notice to such Agent and, unless such Agent is the Fiscal Agent, to the Fiscal Agent.  Such resignation or removal shall take effect (i) upon the appointment by Argentina, as hereinafter provided, of a successor Agent (which in each case shall be a commercial bank or trust company (other than an Argentine Bank), or any affiliate thereof) having a combined capital and surplus of at least U.S. $1,000,000,000 (or the equivalent), legally qualified to act as such successor and, except in the case of any Paying Agent outside New York City, with an established place of business in the Borough of Manhattan, City and State of New York, (ii) in the event of the removal of any Agent by Argentina, if the Fiscal Agent shall not have received notice from the Bondholders holding more than 50% of the then aggregate outstanding principal amount of all Bonds within 60 days after notice of removal from Argentina that such Bondholders object to the appointment of such successor Agent and (iii) upon the acceptance of such appointment by such successor and the agreement of such successor to undertake to perform the applicable duties specified herein; provided, however, that if the Calculation Agent fails duly to establish the Rate of Interest or the Interest Amount corresponding thereto for any Interest Period, such removal will take effect immediately upon such appointment of, and acceptance thereof by, a successor Calculation Agent, qualified as aforesaid, in which event, notice of such appointment shall be given as soon as practicable thereafter by publication in accordance with the notice provisions contained in each Series of USD Discount Bonds.  If such acceptance and agreement by a successor Agent as provided above has not been completed because the Fiscal Agent shall have received the notice described in clause (ii) above within the time period specified therein, Argentina may within 30 days after receipt by Argentina of a copy of such notice appoint a new successor Agent, which appointment shall be notified to the Bondholders and shall take effect in accordance with the terms of the previous sentence.  If such acceptance and agreement by a successor Agent as provided above has not been completed within 90 days after the delivery of a notice of resignation by an Agent in the circumstances where Argentina has not within such time period appointed a new successor Agent or if such acceptance and agreement by a new successor Agent as provided above has not been completed within 90 days after the Fiscal Agent's receipt of the notice referred to in clause (ii) above, the

34

resigning Agent may petition any court of competent jurisdiction for the appointment of a successor Agent which meets the requirements specified in clause (i) above, and upon the acceptance of such appointment by such successor Agent as provided above, such resignation shall become effective.  Notice of any such acceptance by a successor Agent or Agents shall be given to Bondholders by publication all in accordance with the notice provisions contained in the Bonds.

(b)  Upon the acceptance of any appointment as Agent hereunder by a successor Agent as provided in Section 9(a) hereof, such successor Agent shall thereupon succeed to and become vested with all the rights and duties of the retiring Agent, and the retiring Agent shall, upon transfer of any funds held hereunder with respect to the Bonds of each Series to the successor Agent, be discharged from its duties and obligations hereunder.  After any retiring Agent's resignation hereunder, the provisions of Sections 10 and 11 hereof shall continue to inure to its benefit as to any actions taken or omitted to be taken by it while it was an Agent under this Agreement.

(c)  Any bank, trust company or corporation (i) into which any Agent hereunder may be merged or converted or (ii) with which such Agent may be consolidated, or (iii) resulting from any merger, conversion or consolidation to which such Agent shall be a party, or (iv) which shall succeed (by reason of sale or otherwise) to all or substantially all of the corporate trust business of such Agent (provided that it shall be qualified as provided in Section 9(a) hereof) shall be a successor Agent under this Agreement without the execution or filing of any document or any further act on the part of any of the parties hereto. Notice of such merger, conversion or consolidation shall promptly be given to Argentina.

(d)  In case any Bonds shall have been executed by Argentina and authenticated, but not delivered, by the Authenticating Agent then in office, any successor to such Authenticating Agent (by merger, conversion, consolidation or sale or pursuant to Section 9(a)) may adopt such signature by such authenticating Agent and the successor Authenticating Agent may deliver the Bonds so authenticated with the same effect as if such successor had itself authenticated such Bonds.

SECTION 10.  FURTHER CONDITIONS TO DUTIES OF AGENTS.

Citibank hereby accepts its appointment as Authenticating Agent, Paying Agent, Fiscal Agent, Registrar, Transfer Agent and Calculation Agent, respectively, and CBL accepts its appointment as Authenticating Agent, Paying Agent and Transfer Agent, respectively, under this Agreement and each Bondholder, by its acceptance of its Bonds, and Argentina, by its execution of this Agreement, agrees to the further terms and conditions hereinafter set forth:

(a)  Argentina hereby agrees to pay each Agent such compensation for its services under this Agreement and the Collateral Pledge Agreement as may be mutually agreed upon in writing between Argentina and such Agent from time to time, plus reimbursement for such Agent's reasonable and documented out-of-pocket costs and expenses incurred in connection with the performance of its duties hereunder, including the reasonable fees and expenses of such Agent's counsel, in accordance with the terms of such writings.  In addition, Argentina agrees to reimburse each Agent for all reasonable costs and expenses incurred by it in connection with the performance of its duties in respect of Escrowed Principal Bonds.

(b)  Argentina hereby agrees to indemnify and hold harmless each Agent and any of its agents, directors, officers or employees (each such indemnified person, an "Indemnified Party") from and against any and all liabilities, obligations, losses, damages, penalties, judgments, costs, expenses or disbursements of any kind or nature whatsoever that may be imposed on or incurred by, or asserted against, such Indemnified Party in any way relating to or arising out of the performance of its duties hereunder, or any action taken or omitted to be taken by such Indemnified Party in connection with the performance of its duties under this Agreement, the Collateral Pledge Agreement or any other document or instrument delivered hereunder or thereunder (including, without limitation, any action taken or omitted to be taken before the date hereof by such Indemnified Party in preparation for acting hereunder or thereunder); provided that Argentina shall not be liable to any Indemnified Party for any portion of any such amount resulting from the gross negligence or willful misconduct of such Indemnified Party.

36

(c)  With respect to any Bonds held by it in its individual capacity, each Agent shall have the same rights as any other Bondholder and may exercise the same as though it were not an Agent hereunder, and may accept deposits from, lend money to, and generally engage in any kind of banking, trust or other business with, Argentina as if it were not an Agent.

(d)  Argentina will pay all stamp or other documentary taxes or duties, if any, to which the execution or delivery of this Agreement or the Collateral Pledge Agreement, or the original issuance of the Bonds, may be subject, including any such tax or duties which are imposed on the exchange of (i) any beneficial interest in any Non-U.S. Global Bond of any Series for definitive Bonds and (ii) any beneficial interest in the U.S. Global Bond of any Series for definitive Bonds of such Series.

SECTION 11.  DISCLAIMER OF LIABILITY.

Argentina and each Bondholder, by its acceptance of the Bonds, agrees with each Agent as follows:

(a)  The duties and obligations of each Agent shall be determined solely by the express provisions of this Agreement and the Collateral Pledge Agreement and no Agent shall be liable except for the performance of its duties and obligations specifically set forth in this Agreement and the Collateral Pledge Agreement.  No Agent assumes any obligation or shall be subject to any obligation under this Agreement or either Collateral Pledge Agreement to any Bondholder or any other person, except that each Agent agrees to perform such obligations and duties as are specifically set forth and undertaken by it herein or in the Collateral Pledge Agreement without gross negligence or willful misconduct.  No implied covenants or obligations shall be read into this Agreement or the Collateral Pledge Agreement against any Agent.  If in one or more instances any Agent takes any action or assumes any responsibility not specifically delegated to it hereunder or under the Collateral Pledge Agreement, neither the taking of such action nor the assumption of such responsibility shall be deemed to be an express or implied undertaking on the part of such Agent that it will take the same or similar action or assume the same or similar responsibility in any other instance.

(b)  In acting under this Agreement and in
connection with the Bonds, each Agent is acting solely as
an agent of Argentina and does not have any fiduciary
relationship or any obligations or relationship of agency
or trust for or with any Bondholder and shall have no
liability for the payment of principal of or interest on
other amounts on the Bonds, except that all moneys held
by the Fiscal Agent or any other Paying Agent for payment
of principal of or interest (including additional
amounts) on the Bonds, as specified therein, shall be
held in trust by the Fiscal Agent or such Paying Agent
for the benefit of the Bondholders but need not be
segregated from other funds except as required by law or
as required by the terms of this Agreement, the Bonds or
the Collateral Pledge Agreement related to such Bonds;
provided, however, that any moneys so held remaining
unclaimed at the end of two years after such principal or
interest (including additional amounts) shall have become
due and payable (whether at stated maturity or upon call
for redemption or otherwise) shall be repaid to Argentina
on its written demand, and upon such repayment, such
trust shall terminate and all liability of the Fiscal
Agent and any Paying Agent with respect to such moneys
shall cease, and a Bondholder presenting a claim therefor
shall thereafter look only to Argentina for payment
thereof.  No repayment to Argentina under this
Section 11(b) shall limit in any way any obligation which
Argentina may have to pay the principal of or interest on
the Bonds as the same shall become due.

(c)  No Agent shall be required to take any action
involving the expenditure or risk of its own funds or
otherwise incur any financial liability in the
performance of any of its duties hereunder or under the
Collateral Pledge Agreement or in the exercise of any of
its rights or powers, if it has reasonable grounds to
believe that repayment of such funds or adequate
indemnity against such risk or liability is not
reasonably assured to it; provided, however, that no
Agent may refuse or fail to perform any of its duties
hereunder or under the Collateral Pledge Agreement solely
as a result of nonpayment by Argentina of such Agent's
fees; and provided further that nothing in this
Section 11 shall be construed to limit the exercise by
any Agent of any right or remedy permitted under this
Agreement in the event of Argentina's failure to pay such
Agent's fees and expenses.  Notwithstanding the
foregoing, no Agent shall in any event be required (i) to
initiate any suit, action or proceeding (arbitral or
otherwise) arising out of or in connection with this

38

Agreement, the Collateral Pledge Agreement or the Bonds of any Series or (ii) to take any action which in the judgment of such Agent (x) is contrary to this Agreement, the Collateral Pledge Agreement or applicable law or (y) exposes it or any of its directors, officers, attorneys-in-fact, agents or employees to personal liability.

(d)  No Agent nor any of its directors, officers, attorneys-in-fact, agents or employees shall be liable to Argentina, to any Bondholder or to any other person or entity whatsoever for any action taken or omitted to be taken by it, or by them on its behalf, as an Agent under this Agreement or under the Collateral Pledge Agreement or otherwise in connection with any of the foregoing, except for its or their own gross negligence or willful misconduct.  In particular, and without limiting the generality of the foregoing, no Agent nor any of its directors, officers, attorneys, agents or employees shall be liable to Argentina, to any Bondholder or to any other person or entity whatsoever (i) for any action taken or omitted to be taken prior to the date of this Agreement or the Collateral Pledge Agreement in preparation for acting hereunder or thereunder, (ii) for any payment due on any Bond, except as specified in paragraph (b) above, (iii) for any error or alleged error of judgment made in good faith, unless it is determined by final judgment of a court of law having appropriate jurisdiction that the error of judgment was based on a grossly negligent failure to ascertain the pertinent facts, (iv) with respect to any nonperformance or delay in performance hereunder by reason of any provision of any present or future law or regulation or any action of any governmental authority, or by reason of any act of God or war or other circumstance beyond its control which prevents or forbids such Agent from, or subjects such Agent to any actual or potential civil or criminal penalty on account of, doing or performing any act which is to be performed by it hereunder or under the Collateral Pledge Agreement or (v) with respect to any failure to take any action which in the judgment of such Agent (x) is contrary to this Agreement, the Collateral Pledge Agreement, the Discount Bond and Par Bond Exchange Agreement or applicable law or (y) exposes such Agent or any of its directors, officers, attorneys-in-fact, agents or employees to personal liability.