39

(e)  No Agent shall be under any liability to any Bondholder for interest on any funds received by it pursuant to any of the provisions of this Agreement, the Collateral Pledge Agreement or the Bonds.

(f)  The statements contained herein and in the Bonds (except the certificates of authentication of the Authenticating Agents) shall be taken as statements of Argentina, and no Agent assumes any responsibility for the correctness of the same.  No Agent makes any representation as to the validity or sufficiency of this Agreement, the Collateral Pledge Agreement or the Bonds. No Agent shall be accountable for the use or application by Argentina of any of the Bonds or the Eligible Debt received in exchange therefor, or the compliance by Argentina with any of its covenants or agreements contained herein or in the Bonds or in any other document or agreement relating to the Bonds.

(g)  In executing and becoming a party to this Agreement, each Agent is entering into an agreement with Argentina only, and this Agreement shall not be construed as an agreement between or among any Agent and any other Agent or Agents.  Each Agent agrees to be bound by the provisions hereof, or in any amendment hereof, relating to the duties of such Agent, but such Agent shall not be deemed to have approved or to have accepted any responsibility for the provisions hereof, or in any amendment hereof, relating to the duties of any other Agent, and shall not be responsible or have any liability to Argentina or to the Bondholders for the proper performance by such other Agent or Agents of its or their duties pursuant to such provisions.  Each Agent shall have only such duties as are expressly provided herein and no others.  No Agent shall be accountable for the use or application of any Bonds or funds which have been delivered or disposed of by it in accordance with the applicable provisions of this Agreement and the Collateral Pledge Agreement.

(h)  In connection with its duties as an Agent under this Agreement or the Collateral Pledge Agreement, each Agent shall and shall be entitled to act in reliance upon any communication believed by it to be genuine and correct and, in respect of legal matters, upon the advice or opinion of legal counsel selected by it, and any action taken or omitted in good faith by such Agent in reliance upon such paper or document or in accordance with the advice or opinion of such counsel shall be full justification and protection to it.

40

(i)  Each Agent may employ agents and attorneys-in-fact and shall not be liable, except as provided above as to funds or securities received by it or its authorized agents, for the default or misconduct of any such agents or attorneys-in-fact selected by it in good faith.

(j)  The Fiscal Agent shall not be liable for any loss on any investment of funds made pursuant to the terms of this Agreement.

SECTION 12.   MEETINGS OF BONDHOLDERS.

(a)  Upon not less than 15 days' prior notice to the Fiscal Agent, Argentina may at any time call a meeting of the Bondholders of any Series pursuant to the notice provisions of this Section 12, such meeting to be held at such time and at such place as Argentina shall determine, for any purpose. Upon a request in writing to the Fiscal Agent made by Bondholders holding not less than 10% of the aggregate outstanding principal amount of the Bonds of any Series, the Fiscal Agent shall convene a meeting of Bondholders of such Series.  Any such meeting shall be held at such time and at such place as the Fiscal Agent shall determine.  Notice of any meeting of Bondholders of any Series, setting forth the time and place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given by the Fiscal Agent on behalf of the Bondholders of such Series, as the case may be, to the Bondholders of such Series at least once by publication in accordance with the notice provisions contained in the Bonds, such notice to be given not less than 15 nor more than 45 days before the date fixed for the meeting.  In addition, notice of such meeting shall be mailed to holders of the Bonds of such Series at the last address of such holder appearing in the register of the Bonds of such Series not less than 15 nor more than 45 days before the date fixed for such meeting.  To be entitled to vote at any meeting of Bondholders, or to take any other action as a Bondholder, a Person must be (i) a Bondholder, and, in the case of a meeting of Bondholders of a Series, a holder of one or more Bonds of such Series or (ii) a person appointed by an instrument in writing as proxy by the holder of one or more Bonds.  The only persons who shall be entitled to be present or to speak at any meeting of Bondholders shall be the persons entitled to vote at such meeting and their counsel and any representatives of the Fiscal Agent and its counsel and, in the case of any meeting called by Argentina (or to which Argentina is otherwise invited), representatives of Argentina and its counsel.

41

(b)   The quorum requirements at any meeting of
Bondholders of any Series are set forth in the Bonds of such
Series.  No business shall be transacted in the absence of a
quorum, unless a quorum is present when the meeting is called
to order.  In the absence of a quorum within 30 minutes of
the time appointed for any such meeting, the meeting shall be
adjourned for a period of not less than 10 days as determined
by the chairman of the meeting appointed pursuant to Section
12(e).  Notice of the reconvening of any meeting adjourned
for lack of a quorum shall be given as provided above except
that such notice need be given only once but must be given
not less than five days before the date on which the meeting
is scheduled to be reconvened.  Notice of the reconvening of
such an adjourned meeting shall state expressly the
percentage of the aggregate principal amount of the
outstanding Bonds of any Series which shall constitute a
quorum.

(c)   Any Bondholder who has executed an instrument
in writing appointing a person a proxy shall be deemed to be
present for the purposes of determining a quorum and be
deemed to have voted in accordance with the vote of the
person appointed as such proxy; provided that such Bondholder
shall be considered as present or voting only with respect to
that matter voted on by such person in accordance with such
instrument in writing.  Subject to the provisions contained
in the Bonds of each Series, any resolution passed or
decision taken at any meeting of Bondholders of such Series
duly held in accordance with this Section shall be binding on
all the Bondholders of such Series whether or not present or
represented at the meeting.

(d)   The holding of any Bond of any Series by any
Person shall be proved by the registry books for such Series
of Bonds maintained in accordance with Section 6(a) or, in
the case of beneficial interests in the Non-U.S. Global Bond
for such Series, by a certificate or other document issued by
the Euroclear Operator or Cedel, or, in the case of a
beneficial interest in the U.S. Temporary Global Bond, by a
certificate or certificates of the Registrar, as to the
principal amount of Bonds of such Series represented by a
Non-U.S. Global Bond or a U.S. Temporary Global Bond standing
to the account of such Person, which certificate shall be
conclusive and binding evidence of the holding of a
beneficial interest in such Non-U.S. Global Bond or U.S.
Temporary Global Bond, as the case may be, by such Person in
the absence of manifest error (provided that, if any such
certificate or other document conflicts with the registry
books of the Registrar, the registry books of the Registrar
shall be binding hereunder) or as otherwise provided on the

42

Bonds. In the case of a meeting called by Argentina, Argentina may, at its option, fix a record date (not less than 15 nor more than 45 days before the date fixed for such meeting) for the determination of Bondholders entitled to vote at any meeting, but shall have no obligation to do so.

(e) In the case of a meeting called by Argentina, Argentina shall appoint a chairman for such meeting and such chairman shall appoint a secretary for such meeting. In the case of a meeting called by the Bondholders, the Fiscal Agent shall appoint a temporary chairman for such meeting. A permanent chairman of the meeting shall be elected by vote of the Bondholders holding at least 25% of the aggregate outstanding principal amount of the Bonds of a Series represented at the meeting. Such permanent chairman shall appoint a secretary for such meeting. At any meeting of Bondholders, each Bondholder of such Series or proxy shall be entitled to one vote for each $1,000 principal amount of Bonds held or represented by it (it being understood that any Bondholder entitled to more than one vote shall not be required to cast all of such votes in the same manner); provided that no vote shall be cast or counted at any meeting in respect of any Bond challenged as not outstanding and ruled by the chairman of the meeting to be not outstanding. The chairman of the meeting shall have no right to vote except as a Bondholder or proxy. Any meeting of Bondholders duly called at which a quorum is present may be adjourned from time to time to such time and place as shall be specified, and the meeting may be held as so adjourned without further notice.

(f) The vote upon any resolution submitted to any meeting of Bondholders shall be by written ballot on which shall be subscribed the signatures of such Bondholders or proxies and on which shall be inscribed the serial number or numbers of the Bonds. The chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified written reports in duplicate of all votes cast at the meeting. Bonds which the Fiscal Agent knows to be owned by, or on behalf of, Argentina shall be disregarded and deemed not to be outstanding. A record in duplicate of the proceedings of each meeting of Bondholders shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken thereat and affidavits by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was published as provided above. The record

43

shall be signed and verified by the chairman and secretary of
the meeting and one of the duplicates shall be delivered to
Argentina and the other to the Fiscal Agent to be preserved
by the Fiscal Agent, the latter to have attached thereto the
ballots voted at the meeting.  Any record so signed and
verified shall be conclusive evidence of the matters therein
stated.

     (g)  Notwithstanding any provision of this
Section 12 to the contrary, the Fiscal Agent may make such
reasonable regulations as it may deem advisable for any
meeting of Bondholders in regard to proof of the holding of
Bonds and of the appointment of proxies and in regard to the
appointment and duties of inspectors of votes, the submission
and examination of proxies, certificates and other evidence
of the right to vote, and such other matters concerning the
conduct of the meeting as it shall deem appropriate.

     (h)  So long as Argentina has any interest in any of
the Bonds referred to in any notice delivered to the Fiscal
Agent by Argentina pursuant to the last sentence of Paragraph
4(b) of the Terms and Conditions, no vote may be exercised
with respect to such Bond at a meeting of Bondholders or in
connection with any consent to any modification, amendment or
waiver contemplated in Paragraph 12 of the Terms and
Conditions.

          SECTION 13.   NOTICES.

     All notices and other communications provided for
hereunder shall, unless otherwise stated herein, be in
writing (including telex or facsimile transmission) and
mailed or sent or delivered, if to Argentina, at its address
at Ministry of Economy and Public Works and Services,
Secretariat of Domestic and External Financing, Hipolito
Yrigoyen 250, piso 4, Oficina 410, (1310) Buenos Aires,
Argentina, Attention:  Subsecretaría de Financiamento
Externo (Facsimile No. (54-1) 331-9838, Telex No. 21952,
Answerback:  MINEC AR), with a copy to Banco Central de la
República Argentina, Reconquista 266, (1003) Buenos Aires,
Argentina, Attention:  Deuda Pública Externa (Facsimile No.
(54-1) 334-6468, Telex No. 24200, Answerback: AR CTBAN), or
at such other addresses as Argentina shall from time to time
specify by written notice to the Fiscal Agent; if to the
Agents, at their specific respective corporate trust offices
at the addresses set forth in Section 2(h), or at such other
addresses as such Agent shall from time to time specify by
written notice to the Fiscal Agent and Argentina; if to
Bondholders, in accordance with the notice provisions
contained in Paragraph 13 of the Bonds.  Unless otherwise

44

specifically provided herein, any order, notice, request or
other instrument of Argentina made or given by it under any
provision of this Agreement shall be sufficient if signed by
an Authorized Official or such Person as an Authorized
Official shall appoint in writing and notify in writing to
each Agent.  Each Agent shall be fully justified and
protected in relying and acting upon any instructions
received by it and signed in the manner provided in the
preceding sentence, or upon the advice of counsel for
Argentina.  Unless otherwise specifically provided herein,
all such notices and communications shall be given by hand,
telex or facsimile transmission; provided that, in the event
telex or facsimile transmission facilities are not
operational, such notices and communications may be given by
mail, but the sender shall use reasonable efforts to confirm
notices or communications given by mail as soon as telex or
facsimile transmission facilities shall become operational.
All such notices and communications shall be effective when
delivered by hand, or, in the case of mail, upon the earlier
of receipt and confirmation by telex or facsimile
transmission as provided below or, in the case of facsimile
transmission, when sent as addressed as set forth above, or,
in the case of telex, when the telex is sent and the
appropriate answerback is received.  All notices and
communications delivered hereunder shall, unless submitted in
the English language, be accompanied by a certified English
translation thereof.

SECTION 14.  MAINTENANCE OF AGENTS.

Argentina may vary or terminate the appointment of
any Paying Agent at any time and from time to time upon
giving not less than 60 days' notice to such Paying Agent and
the Fiscal Agent; provided that Argentina shall maintain at
all times, until two years after the aggregate principal
amount of all the Bonds shall have become due and payable
(whether at maturity or upon redemption or otherwise), at
least one Paying Agent in the City of New York and one Paying
Agent in London.  In addition, Argentina shall maintain at
all times, until two years after the aggregate principal
amount of all the Bonds shall have become due and payable
(whether at maturity or upon redemption or otherwise), a
Paying Agent in Luxembourg for each Series of Bonds as long
as Bonds of such Series are listed on the Luxembourg Stock
Exchange and it is so required for continued listing thereon.

SECTION 15.  AMENDMENTS.

(a)  This Agreement may be amended by the parties
hereto, without the consent of any Bondholder, for the

purpose of curing any ambiguity or to correct or supplement any provision contained herein which may be defective or inconsistent with any other provision contained herein or to evidence and provide for the acceptance by a successor Fiscal Agent, Authenticating Agent, Registrar, Paying Agent, Transfer Agent or Calculation Agent and to add to or change any provisions of this Agreement as shall be necessary to provide for or facilitate the administration of the agencies hereunder or in any manner which the parties may mutually deem necessary or desirable and which shall not adversely affect the interests of the Bondholders.

(b)  Upon the execution of any supplemental agreement under this Section, this Agreement shall be modified in accordance therewith, and such supplemental agreement shall form a part of this Agreement for all purposes; and every Bond theretofore or thereafter authenticated and delivered hereunder shall be bound thereby.

SECTION 16.  APPLICABLE LAW; CONSENT TO JURISDICTION; WAIVER OF IMMUNITIES.

(a)  Except with respect to its authorization and execution by Argentina, this Agreement and the Bonds shall be governed by, and construed in accordance with, the law of the State of New York, United States.

(b)  Argentina hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court sitting in New York City, the High Court of Justice in London, any federal court sitting in the City of Buenos Aires and any appellate court from any thereof, in any suit, action or proceeding arising out of or relating to this Agreement, the Bonds or the Collateral Pledge Agreement, and Argentina hereby irrevocably agrees that all claims in respect of such suit, action or proceeding may be heard and determined in such New York State or Federal court, in the High Court of Justice in London or any Federal court sitting in the City of Buenos Aires.  Argentina hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such suit, action or proceeding and any objection to such suit, action or proceeding whether on the grounds of venue, residence or domicile.  A final judgment in any such suit, action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(c)  Argentina hereby irrevocably appoints (i) the New York office of Banco de la Nación Argentina (the "New York Process Agent"), with an office on the date hereof at 299 Park Avenue, 2nd Floor, New York, New York 10171, United States and, alternatively, hereby irrevocably appoints CT Corporation System, with an office on the date hereof at 1633 Broadway, 23rd Floor, New York, New York 10019, United States (the "Alternate New York Process Agent"), in each case, as its agent to receive, on behalf of itself and its property, service of copies of the summons and complaint and any other process which may be served in any such suit, action or proceeding brought in such New York state or Federal court sitting in New York City and (ii) the London office of Banco de la Nación Argentina (the "London Process Agent" and, together with the New York Process Agent, the "Process Agents"), with an office on the date hereof at Longbow House, 14-20 Chiswell Street, London EC1Y 45D, England and, alternatively, hereby irrevocably appoints The Law Debenture Trust Corporation p.l.c., with an office on the date hereof at Prince's House, 95 Gresham St., London EC2V 7LY, England (the "Alternate London Process Agent" and, together with the Alternate New York Process Agent, the "Alternate Process Agents"), in each case, as its agent to receive on behalf of itself and its property service of copies of a writ, summons, order, judgment or other document which may be served in any such suit, action or proceeding brought in the High Court of Justice in London.  Service of any process may be made upon an Alternate Process Agent in lieu of the applicable Process Agent in any such suit, action or proceeding in any New York State or Federal court sitting in New York City and the High Court of Justice in London if (i) at any time and for any reason it appears that service of such process upon any Process Agent as provided above may be ineffective or may not be feasible and (ii) upon or before the serving of any process on any Alternate Process Agent, the Alternate Process Agent and Argentina are notified that service of such process is to be made on such Alternate Process Agent in accordance with the provisions of this sentence.  Such service may be made by mailing or delivering a copy of such process to Argentina in care of the appropriate Process Agent or Alternate Process Agent at the address specified above for such Process Agent or Alternate Process Agent, and, in the case of process served on an Alternate Process Agent, by depositing a copy of such process in the United States mails, addressed to Argentina at the address specified in Section 13 hereof (such service to be effective upon the delivery of such process to the Alternate Process Agent and the depositing of such process in the United States mails as aforesaid), and Argentina hereby irrevocably authorizes and directs such Process Agent or

Alternate Process Agent to accept such service on its
behalf. Failure of any Process Agent or Alternate Process
Agent to give notice to Argentina or failure of Argentina to
receive notice of such service of process shall not affect in
any way the validity of such service on the Process Agent,
the Alternate Process Agent or Argentina. As an alternative
method of service, Argentina also irrevocably consents to the
service of any and all process in any such suit, action or
proceeding in such New York state or federal court sitting in
New York City or the High Court of Justice in London by the
mailing of copies of such process to Argentina at its address
specified in Section 13 hereof. Argentina covenants and
agrees that it shall take any and all reasonable action,
including the execution and filing of any and all documents,
that may be necessary to continue the designations of Process
Agents and Alternate Process Agents above in full force and
effect, and to cause each Process Agent and Alternate Process
Agent to continue to act as such.

(d)  Nothing in this Section 16 shall affect the
right of any party to serve legal process in any other manner
permitted by law or affect the right of any party to bring
any action or proceeding against any other party or its
property in the courts of other jurisdictions.

(e)  To the extent that Argentina has or hereafter
may acquire any immunity (sovereign or otherwise) from
jurisdiction of any court or from any legal process (whether
through service or notice, attachment prior to judgment,
attachment in aid of execution, execution or otherwise) with
respect to itself or its property, Argentina hereby
irrevocably waives such immunity in respect of its
obligations under this Agreement, the Bonds or the Collateral
Pledge Agreement, and, without limiting the generality of the
foregoing, Argentina (A) agrees that the waivers set forth in
this Section 16(e) shall have the fullest scope permitted
under the Foreign Sovereign Immunities Act of 1976 of the
United States and are intended to be irrevocable for purposes
of such act; and (B) consents generally for the purposes of
the State Immunity Act 1978 of the United Kingdom to the
giving of any relief or the issue of any process.
Notwithstanding the foregoing, Argentina shall not waive any
such immunity (1) with respect to the assets which constitute
freely available reserves, pursuant to Article VI of the
Convertibility Law, the amount, composition and investment of
which will be reflected on the balance sheet and accounting
statement of BCRA consistently prepared pursuant to Article 5
of the Convertibility Law and (2) with respect to property of
the public domain located in the territory of Argentina, or

property owned by Argentina and located in its territory
which is dedicated to the purpose of an essential public
service.

(f)  If for the purpose of obtaining judgment in any
court it is necessary to convert a sum due hereunder to any
Bondholder or Agent or party hereunder in one currency into
another currency, the parties hereto agree, to the fullest
extent that they may effectively do so, that the rate of
exchange used shall be that at which in accordance with
normal banking procedures which such Bondholder or Agent or
party hereunder could purchase the first currency with such
other currency in the city which is the principal financial
center of the country of issue of the first currency on the
day two Business Days preceding the day on which final
judgment is given.

(g)  The obligation of any party in respect of any
sum payable by it to a Bondholder, Agent or any other party
hereunder shall, notwithstanding any judgment in a currency
(the "judgment currency") other than that in which such sum
is denominated in accordance with the applicable provisions
of this Agreement or the Bonds (in any such case, the
"Agreement Currency"), be discharged only to the extent that
on the Business Day following receipt by such Bondholder,
Agent or such other party of any sum adjudged to be so due in
the judgment currency, such Bondholder, Agent or such other
party may in accordance with normal banking procedures
purchase the Agreement Currency with the judgment currency;
if the amount of the Agreement Currency so purchased is less
than the sum originally due to such Bondholder, Agent or such
other party in the Agreement Currency, such first party
agrees, as a separate obligation and notwithstanding any such
judgment, to indemnify such Bondholder, Agent or such other
party against such loss, and if the amount of the Agreement
Currency that could have been purchased on such Business Day
exceeds that sum originally due to such Bondholder, Agent or
such other party, such Bondholder, Agent or such other party
agrees to remit to such first party such excess, provided
that such Bondholder, Agent or such other party shall have no
obligation to remit any such excess as long as such first
party shall have failed to pay such Bondholder, Agent or such
other party any obligations due and payable under the
Principal Bond Agreements, in which case such excess may be
applied to such obligations of such first party under the
applicable Principal Bond Agreements in accordance with the
terms thereof.

SECTION 17.  BINDING EFFECT; PARTIAL INVALIDITY; LANGUAGE.

This Agreement shall be binding on and inure to the benefit of each party hereto and its respective successors and assigns.  If one or more provisions of this Agreement shall be invalid, illegal or unenforceable in any respect in any jurisdiction or with respect to any party, such invalidity, illegality or unenforceability in such jurisdiction or with respect to such party shall not, to the fullest extent permitted by applicable law, invalidate or render illegal or unenforceable such provision in any other jurisdiction or with respect to any other party, or any other provisions of this Agreement.  To the fullest extent it may effectively do so under applicable law, each of the parties hereto waives any provision of law that renders any provision hereof invalid or illegal in any respect.

SECTION 18.  SECTION HEADINGS.

The section headings in this Agreement are intended for convenience only and shall be ignored in construing this Agreement.

SECTION 19.  EXECUTION IN COUNTERPARTS.

This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.  Such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, sealed and attested as of the day and year first above written.

THE REPUBLIC OF ARGENTINA

Witnessed:

By: /s/ Fatemeh Ziai

By: /s/ Erika K. Klar

By: /s/ Federico Molina
    Title:  Deputy Manager BCRA on
            assignment to the
            Undersecretariat of Finance

CITIBANK, N.A., as Fiscal Agent,
    Authenticating Agent, Paying Agent,
    Registrar, Transfer Agent and
    Calculation Agent

Witnessed:

By: /s/ V. Lopez

By: /s/ Douglas Badaszewski

By: /s/ Ronald L. Pierce
    Title:  Assistant Vice President

50

CITIBANK (LUXEMBOURG) S.A.,
  as Authenticating Agent,
  Paying Agent and Transfer Agent

By: /s/ Serge Barraco
      Title:  Vice President

Witnessed:

By: /s/ Marylene Agostini

By: /s/ Patrick Bianchini

EXHIBIT A

[FORM OF BOND]

[To be in same form as Exhibit 1 to the Discount
Bond and Par Bond Exchange Agreement]

EXHIBIT B

[FORM OF GLOBAL BOND]

[To be in same form as Exhibit 2A to the Discount
Bond and Par Bond Exchange Agreement]

EXHIBIT C

[FORM OF U.S. TEMPORARY ESCROW GLOBAL
REGISTERED BOND]

[To be in same form as Exhibit 2C to the Discount
Bond and Par Bond Exchange Agreement]

SCHEDULE A-1

Form of Transferor Certificate
for Definitive U.S. Bonds

CERTIFICATE

Republic of Argentina

[*[Discount][Par] Series *[L][U] Bonds Due 2023
(the "Bonds")]

This is to certify with respect to Bond(s) no(s).
[insert Bond numbers] representing U.S. $ [insert amount]
principal amount of *[Discount][Par] Series *[L][U] Bond(s)
Due 2023 being transferred on the date hereof by the
undersigned (the "Transferor") to [insert name of transferee]
that such transfer is a private transaction not involving any
general solicitation or advertising.

Unless otherwise defined herein, capitalized terms
are used in this certificate as defined in the USD Discount
Bond and Par Bond Fiscal Agency Agreement dated as of
April 7, 1993 among the Republic of Argentina, Citibank,
N.A., as Fiscal Agent, Authenticating Agent, Paying Agent,
Registrar, Transfer Agent and Calculation Agent and Citibank
(Luxembourg) S.A., as Authenticating Agent, Paying Agent and
Transfer Agent.

IN WITNESS WHEREOF, the undersigned has caused this
certificate to be executed as of the date set below by its
official, officer or agent thereunto duly authorized.

[Insert name of Transferor]

By:_____
        Title:

Dated:_____, _____

_____

*    Insert appropriate Series of Bonds.

SCHEDULE A-2

Form of Transferee Certificate
for Definitive U.S. Bonds

CERTIFICATE

Republic of Argentina
[*[Discount][Par] Series *[L][U]
Bonds Due 2023 (the "Bonds")]

This is to certify, with respect to Bond(s) no(s). [insert Bond numbers] representing U.S. $ [insert amount] principal amount of *[Discount][Par] Series *[L][U] Bond(s) Due 2023 being transferred on the date hereof by [insert name of transferor] to the undersigned (the "Transferee"), that:

(1)  the Transferee is an Eligible Institutional Investor;

(2)  the Transferee acknowledges that the Bond(s) (are) (is) not registered under the Securities Act and contain(s) a restrictive legend to that effect;

(3)  the Transferee is purchasing such Bond(s) for its own account and not with a view to any distribution thereof within the meaning of the Securities Act; and

(4)  the Transferee will not sell or transfer such Bond(s) except:

(i)  pursuant to an effective registration statement under the Securities Act; or

---

*    Insert appropriate Series of Bonds.

A-2-2

(ii)  in a transaction not requiring registration under the Securities Act and in which (x) the transferor and transferee shall provide to the Registrar certificates in the form of Schedules A-1 and A-2, respectively, to the USD Discount Bond and Par Bond Fiscal Agency Agreement dated as of April 7, 1993 (as amended and in effect from time to time, the "USD Fiscal Agency Agreement") among the Republic of Argentina, Citibank, N.A., as Fiscal Agent, Authenticating Agent, Paying Agent, Registrar, Transfer Agent and Calculation Agent and Citibank (Luxembourg) S.A., as Authenticating Agent, Paying Agent and Transfer Agent, or (y) the transferor shall provide to the Registrar a certificate in the form of Schedule B or in the form of Schedule C to the USD Fiscal Agency Agreement, as the case may be.

Unless otherwise defined herein, capitalized terms are used in this certificate as defined in the USD Fiscal Agency Agreement.

For purposes of this certificate, "Eligible Institutional Investor" means:

(i)  any bank as defined in Section 3(a)(2) of the Securities Act of 1933 of the United States, as amended (the "Securities Act"), whether acting in its individual or fiduciary capacity; or

(ii)  any insurance company as defined in Section 2(13) of the Securities Act; or

(iii)  any investment company registered under the Investment Company Act of 1940 of the United States, as amended; or

(iv)  any plan established and maintained by a state of the United States, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees if such plan has total assets in excess of U.S. $5,000,000; or

A-2-3

(v)  any employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974 of the United States, as amended, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, insurance company, or registered investment adviser or if the employee benefit plan has total assets in excess of U.S. $5,000,000; or

(vi)  any corporation, partnership or trust with assets of not less than U.S. $100,000,000; or

(vii)  any entity all of the equity of which is owned by one or more Eligible Institutional Investors.

IN WITNESS WHEREOF, the undersigned has caused this certificate to be executed as of the date set forth below by its official, officer or agent thereunto duly authorized.

[Insert name of Transferee]

By:_____
   Title:

Dated:_____, ____

SCHEDULE B

Form of Transferor Certificate for
Definitive U.S. Bonds – Rule 904 Transaction

CERTIFICATE

Republic of Argentina

[*[Discount][Par] Series *[L][U]
Bonds Due 2023 (the "Bonds")]

This is to certify, with respect to Bond(s) no(s).
[insert Bond number(s)] representing U.S. $_____
principal amount of *[Discount] [Par] Series *[L][U] Bonds
Due 2023 being transferred by [insert name of Transferor],
that

(1) the sale of such Bonds is being made pursuant to
a transaction that satisfies the conditions of Rule 904 of
Regulation S under the United States Securities Act of 1933,
as amended ("Regulation S");

(2) the offer of such Bonds was not made to a person
in the United States and either:

(a) at the time the buy order was originated, the
buyer was outside the United States, or the undersigned
and any person acting on its behalf reasonably believes
that the buyer was outside the United States; or

(b) the transaction was executed in, on or through
the facilities of the Luxembourg Stock Exchange (or other
exchange identified by the United States Securities and
Exchange Commission as a "designated offshore securities
market" for purposes of Rule 904 of Regulation S), and
neither the undersigned nor any person acting on its
behalf knows that such transaction has been pre-arranged
with a buyer in the United States; and

---

* Insert appropriate Series of Bonds.