# REPUBLIC OF ARGENTINA

## 1992 FINANCING PLAN

## FLOATING RATE BOND EXCHANGE AGREEMENT

### Dated as of December 6, 1992

Implementing Part I of the
Republic of Argentina 1992 Financing Plan

Citibank, N.A.,
as Closing Agent

# T A B L E   O F   C O N T E N T S

|  |  | Page |
|---|---|---|
| RECITALS. | | 1 |
| **ARTICLE I** | **DEFINITIONS** | |
| 1.01. | Certain Defined Terms. | 3 |
| 1.02. | References to Articles, Etc. | 26 |
| **ARTICLE II** | **THE CASH PAYMENT, THE INTEREST REDUCTION CASH PAYMENT AND THE EXCHANGE** | |
| 2.01. | Payment and Exchange of Eligible Interest | 27 |
| 2.02. | Payment, Exchange and Discharge; Forbearance. | 28 |
| 2.03. | Exchange Date. | 29 |
| 2.04. | Escrow Release Dates | 37 |
| 2.05. | Procedures for Payment and Exchange. | 38 |
| 2.06. | Calculation of Cash Payment Amounts, Interest Reduction Cash Payment Amounts, Bond Exchange Amounts and Escrowed Bond Amounts. | 42 |
| 2.07. | Currency Translation | 46 |
| 2.08. | Form and Denomination of Bonds | 46 |
| 2.09. | Funding Indemnity. | 46 |
| 2.10. | Reconciliation of Eligible Interest | 47 |
| **ARTICLE III** | **RESTRICTIONS ON TRANSFER; GLOBAL BONDS** | |
| 3.01. | General Restrictions on Transfer, Etc. | 49 |
| 3.02. | Issuance of Bonds on the Exchange Date (if such Date is not the Escrow Date) and Release of Bonds on an Escrow Release Date | 49 |
| 3.03. | Issuance of Bonds on the Exchange Date (if such Date is the Escrow Date) and Release of Bonds on an Escrow Release Date | 51 |
| 3.04. | Escrow Accounts. | 51 |
| **ARTICLE IV** | **REPRESENTATIONS AND WARRANTIES** | |
| 4.01. | Representations and Warranties of Argentina. | 59 |
| 4.02. | Representations, Warranties and Agreements of the Purchasers | 63 |
| 4.03. | Confirmation of Representations, Warranties and Agreements of Purchasers | 72 |

(ii)

|  |  | Page |
|---|---|---|
| ARTICLE V | DUTIES, OBLIGATIONS AND IMMUNITIES OF CERTAIN PARTIES | |
| 5.01. | Limited Appointment and Responsibilities of the Closing Agent . . . . . . . . . | 73 |
| 5.02. | Discretion and Protection of the Closing Agent . . . . . . . . . | 73 |
| 5.03. | Limited Liability of the Closing Agent, the Escrow Agent, the Debt Agreement Agents, the Promissory Note Agent and the Working Committee for Argentina . . . | 76 |
| 5.04. | Indemnification by Purchasers. . . . . . . . | 77 |
| 5.05. | Successor Closing Agent. . . . . . . . . . | 78 |
| 5.06. | Relationship Among Closing Agent, the Escrow Agent, the Promissory Note Agent and the Debt Agreement Agents. . . . . . | 79 |
| ARTICLE VI | MISCELLANEOUS | |
| 6.01. | Amendments, Etc. . . . . . . . . . . . . | 81 |
| 6.02. | Notices, Etc. . . . . . . . . . . . . . | 83 |
| 6.03. | No Waiver; Cumulative Remedies . . . . . . | 87 |
| 6.04. | Accounting Terms; Banking Terms. . . . . . | 87 |
| 6.05. | Costs, Expenses, Etc. . . . . . . . . . . | 87 |
| 6.06. | Taxes. . . . . . . . . . . . . . . . . | 90 |
| 6.07. | Consent to Jurisdiction; Waiver of Immunities. . . . . . . . . . . . . | 93 |
| 6.08. | Judgment . . . . . . . . . . . . . . . | 95 |
| 6.09. | Binding Effect; Termination; Partial Invalidity; Survival . . . . . . | 96 |
| 6.10. | Purchasing Office; Transfers of Eligible Interest. . . . . . . . . . . | 97 |
| 6.11. | Obligations of the Purchasers Several. . . . . . . . . . . . . . . | 98 |
| 6.12. | Calculation to Nearest Currency Unit . . . | 99 |
| 6.13. | Use of English Language. . . . . . . . . . | 99 |
| 6.14. | Computation of Percentages of Reconciled and Unreconciled EI and Reconciled and Unreconciled ECI. . . . | 99 |
| 6.15. | Table of Contents and Section Headings . . | 99 |
| 6.16. | Execution in Counterparts; Copies; Agreement Solely for Benefit of Parties. . | 99 |
| 6.17. | Certain Purchasers that Are Holding Through Offshore Offices or that Are Offshore Offices . . . . . . . . . | 100 |
| 6.18. | Governing Law . . . . . . . . . . . . . | 101 |

(iii)

## ANNEXES I–II

Annex I — Signature Pages for All Purchasers

Annex II — Signature Pages for Debt Agreement Agents and Promissory Note Agent

## SCHEDULES A–H

Schedule A — Reconciled ECI, Reconciled EI and Floating Rate Bond Series

Schedule B — Currency Conversion and Translation Procedures

Schedule C — Form of Certificate of Qualifying Institutional Buyer, Qualifying Non-U.S. Person or U.S. Fiduciary required under Section 4.02(k)

Schedule D — Interim Interest Rates on Eligible Debt

Schedule E — Interest Rates for Calculating Interest on Overdue Interest

Schedule F — Amendments to Debt Agreements

Schedule G — Form of Certificate of Transferee required under Section 6.10(c)

Schedule H — Purchasers Holding through Offshore Office

Schedule I — Form of Certificate of Closing Agent as to Receipt of Reconciliation Information from a Debt Agreement Agent

Schedule J — Form of Certificate of Argentina as to Objection to Reconciliation Information from a Debt Agreement Agent

(iv)

## <u>EXHIBITS 1-5</u>

| | | |
|---|---|---|
| Exhibit 1A | — | Form of Bearer Floating Rate Bond |
| Exhibit 1B | — | Form of Registered Floating Rate Bond |
| Exhibit 2A | — | Form of Temporary Global Bearer Floating Rate Bond |
| Exhibit 2B | — | Form of Permanent Global Bearer Floating Rate Bond |
| Exhibit 2C | — | Form of Non-U.S. Permanent Global Registered Floating Rate Bond and U.S. Temporary Global Registered Floating Rate Bond |
| Exhibit 2D | — | Form of U.S. Temporary Escrow Global Registered Floating Rate Bond |
| Exhibit 3 | — | Form of Floating Rate Bond Fiscal Agency Agreement |
| Exhibit 4 | — | Form of BCRA Undertaking |
| Exhibit 5 | — | Form of Obligor Consent |

THIS FLOATING RATE BOND EXCHANGE AGREEMENT (this "Agreement") dated as of December 6, 1992 among:

(i)  THE REPUBLIC OF ARGENTINA ("Argentina"), on its own behalf and on behalf of each other Argentine obligor (each an "Obligor") party to a Debt Agreement,

(ii)  the Recognized Holders of Eligible Interest executing and delivering this Agreement, as identified on Annex I (the "Purchasers"),

(iii)  the agents under the Debt Agreements executing and delivering this Agreement, as identified on Annex II (such banks in such capacity being the "Debt Agreement Agents"),

(iv)  Morgan Guaranty Trust Company of New York, as the agent for Argentina for the reconciliation of the Promissory Notes (such bank in such capacity being the "Promissory Note Agent"), and

(v)  Citibank, N.A., as closing agent hereunder (such bank in such capacity and any successor closing agent hereunder being the "Closing Agent").

## W I T N E S S E T H :

WHEREAS, the parties make the following recitals (terms being used in these recitals as such terms are defined in Article I hereof):

(A)  By a communication dated June 23, 1992 and a supplemental communication dated November 10, 1992, both from the Minister of Economy and Public Works and Services, Argentina has requested the international banking community to participate in the 1992 Financing Plan.

(B)  The 1992 Financing Plan consists of the following separate but interrelated Parts:

Part I:  Interest arrangements, which will be implemented by this Agreement;

2

Part II:    Principal options, which will be
            implemented by the Principal Bond Exchange
            Agreement;

Part III:   Waivers and amendments to the Existing
            Agreements as requested by Argentina; and

Part IV:    Interim measures to be taken prior to the
            implementation of the 1992 Financing Plan.

The 1992 Financing Plan provides for a simultaneous
closing of the transactions contemplated in the 1992
Financing Plan.

(C)   This Agreement implements Part I of the 1992
Financing Plan.

WHEREAS, the Purchasers are willing to purchase
Floating Rate Bonds on the terms and conditions set forth in
this Agreement.

WHEREAS, the Purchasers are willing to agree to debt
service reduction with respect to Eligible Debt from
January 1, 1992 to the earlier of the Exchange Date and
March 31, 1993, as indicated in Schedule 1 to the 1992
Financing Plan, and the discharge of Eligible Interest in
exchange for the Interest Reduction Cash Payment as
contemplated herein.

NOW, THEREFORE, in consideration of the premises and
the mutual covenants contained in this Agreement, the parties
hereto agree as follows:

3

# ARTICLE I

## DEFINITIONS

SECTION 1.01.  Certain Defined Terms.  As used in this Agreement (including the recitals above), except as otherwise expressly provided, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"Affiliate" of any Person means (i) any other Person controlling, controlled by, or under common control with, such Person and (ii) in the case of any Person which is in liquidation, any shareholder of such Person which is a Purchaser under this Agreement.  For the purpose of this definition only, the term "control" (including the terms "controlling", "controlled by" and "under common control with") means, with respect to any Person, the possession, direct or indirect, of the power to vote 50% or more of the securities having ordinary voting power for the election of directors of such Person or to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

"Agreement" has the meaning specified in the introductory paragraph hereof.

"Agreement Currency" has the meaning specified in Section 6.08(b) hereof.

"Alianza Naviera GRA" means the Guaranteed Refinancing Agreement dated as of November 1, 1987 among Alianza Naviera Argentina, S.A., as borrower, Argentina, BCRA, the banks parties thereto and The Bank of New York, as syndicate agent for such banks.

"Alternate London Process Agent" has the meaning specified in Section 6.07(b) hereof.

"Alternate New York Process Agent" has the meaning specified in Section 6.07(b) hereof.

"Alternate Process Agents" has the meaning specified in Section 6.07(b) hereof.

"Amendments" means the amendments to the Debt Agreements listed in Schedule F hereto.

4

"Applicable Taxes" has the meaning specified in Section 6.06(a).

"Argentina" has the meaning specified in the introductory paragraph hereof.

"Argentine Authorization" means any approval, authorization, permit, consent, exemption (including, without limitation, an exemption for stamp taxes applicable in the City of Buenos Aires in connection with the execution and delivery of this Agreement and the other Bond Agreements) or license or any other action of or by, or notice to or filing or registration with, Argentina or any Argentine Governmental Agency or any other governmental authority or agency or regulatory body of Argentina or any subdivision thereof or therein.

"Argentine Bank" means (i) any bank or financial institution owned or controlled, directly or indirectly, by Argentina, including, without limitation, Banco de la Nación Argentina, Banco Nacional de Desarrollo, Banco de Inversión y Comercio Exterior, Banco Hipotecario Nacional and Caja Nacional de Ahorro y Seguro, and any successors thereto and (ii) Banco de la Provincia de Buenos Aires and Banco de la Ciudad de Buenos Aires and any successors thereto. Notwithstanding the foregoing, a bank or financial institution shall not be deemed to be an Argentine Bank under clause (i) above by virtue of the administration of such bank or financial institution by Argentina (or any governmental body, ministry, agency, authority or self-administered entity (entidad autárquica) thereof) in connection with the receivership, insolvency, bankruptcy or liquidation of such bank or financial institution.

"Argentine Governmental Agency" means (i) any governmental body, ministry, agency, authority or self-administered entity (entidad autárquica) of Argentina, (ii) any corporation, bank, financial institution or other entity owned or controlled, directly or indirectly, by Argentina or any entity described in clause (i) above, and (iii) Banco de la Provincia de Buenos Aires and Banco de la Ciudad de Buenos Aires and any successors thereto, provided that an entity regulated by BCRA or any other Argentine Governmental Agency shall not be deemed to be an "Argentine Governmental Agency" at any time during which, by virtue of such Argentine Governmental Agency's regulatory authority, such entity is administered by such Argentine Governmental Agency in

5

connection with the receivership, insolvency, bankruptcy or liquidation of such entity.

"Argentine Governmental Entity" means (i) any Argentine Governmental Agency, (ii) any province, department or other political subdivision of Argentina, (iii) any governmental body, ministry, agency, authority, self-administered entity (entidad autárquica) or any province, department or political subdivision thereof, (iv) any corporation, bank, financial institution, or other entity owned or controlled directly or indirectly, by any entity described in clause (ii) or (iii) above, and (v) any binational entity (entidad binacional) or other corporation or other entity which under the organic law or charter of such binational entity, corporation or other entity or any existing law (including, without limitation, any treaty, rule, regulation, order, decree or judgment) is jointly sponsored and effectively controlled by Argentina (or any other entity described in clauses (i), (ii) and (iii) above) and any Other Country Sponsor (as defined in the 1987 GRA).

"Argentine Person" means any individual who is a citizen or resident of Argentina, a Person organized under the laws of Argentina or any political subdivision thereof or therein or having its principal place of business in Argentina or a Person controlled by any such Person.

"Argentine Taxes" has the meaning specified in Section 6.06(a) hereof.

"AUSA GRA" means the Guaranteed Refinancing Agreement dated as of August 1, 1987 among Autopistas Urbanas, S.A., as borrower, Argentina, BCRA, the banks parties thereto and Midland Bank, as syndicate agent for such banks.

"Authenticating Agent" has the meaning specified in the Fiscal Agency Agreement.

"BCRA" means Banco Central de la República Argentina and any successor thereto.

"BCRA Undertaking" means the BCRA Undertaking, in substantially the form of Exhibit 4 hereto, from BCRA to the Fiscal Agent and the Closing Agent.

"Bearer Floating Rate Bonds" means the Floating Rate Bonds issued by Argentina in bearer form with coupons attached, substantially in the form of Exhibit 1A hereto.

6

"**Belgian Francs**" or "**BFF**" means lawful currency of the Kingdom of Belgium of the type commonly referred to as "financial francs".

"**Bond Agreements**" means this Agreement, the Bonds, the Fiscal Agency Agreement, the Obligor Consent, the BCRA Undertaking and any other agreement or instrument or document delivered hereunder or thereunder which may be necessary for the Exchange.

"**Bond Exchange Amount**" of a Purchaser for a Series for the Exchange Date or an Escrow Release Date, as the case may be, means the aggregate principal amount of Floating Rate Bonds of such Series to be issued and delivered, or released from the appropriate Escrow Account, as the case may be, to such Purchaser on the Exchange Date or such Escrow Release Date, as the case may be, calculated as provided in Section 2.06 hereof.

"**BONEX**" means (i) Bonos Externos de la República Argentina issued under Law No. 19,686 enacted by the Argentine Congress on June 15, 1972, (ii) any instrument issued by Argentina in exchange, or as a replacement for, the instrument referred to in clause (i) above and (iii) any instrument issued after the date hereof by Argentina which is similar to the instrument referred to in clause (i) above as to purpose, nature and characteristics, including being (a) payable in U.S. Dollars, (b) payable in financial centers around the world (*i.e.*, New York, Zürich, London, etc.), (c) quoted in both Pesos and in U.S. Dollars and (d) issued in bearer form.

"**Business Day**" means a day on which (i) dealings are carried on in the London interbank market and (ii) banks are not required or authorized to close in New York City; **provided** that with respect to the Exchange Date and each Escrow Release Date, "Business Day" shall mean a day on which, in addition to (i) and (ii) above, banks are scheduled in the normal course to be open for business in Amsterdam, Brussels, Frankfurt am Main, Lisbon, London, Madrid, Milan, Paris, Tokyo, Toronto and Zürich and in the principal financial centers required to be open to permit dealings and settlements in European Currency Units in London, Paris, Brussels and Luxembourg, and the Escrow Agent is not closed.

"**Canadian Dollars**" or "**CAN**" means lawful currency of Canada.

7

"Cash Escrow Amount" for the Exchange Date means the sum of the Cash Payment and the Interest Reduction Cash Payment less the sum of the Cash Payment Amount and the Interest Reduction Cash Payment Amount of all Purchasers for such date; provided that if such date is the Escrow Date, Cash Escrow Amount shall mean the sum of the Cash Payment and the Interest Reduction Cash Payment.

"Cash Payment" means the U.S.$400,000,000 cash payment to be made by Argentina in respect of Eligible Contractual Interest, as the amount of such cash payment may be increased pursuant to Section 2.05(i) hereof.

"Cash Payment Amount" of a Purchaser for the Exchange Date or an Escrow Release Date, as the case may be, means such Purchaser's pro-rata share of the Cash Payment or the Escrowed Cash, as applicable, calculated as provided in Section 2.06 hereof.

"Cedel" means Cedel S.A. and any successor thereto.

"Closing Agent" has the meaning specified in the introductory paragraph hereof.

"Closing Book" means the Closing Documents Book, dated as of the date hereof, containing the forms of closing documentation to be delivered in connection with the implementation of the 1992 Financing Plan.

"Code" means the Internal Revenue Code of 1986, as amended.

"Co-Financing Agreement" means the 1987 Commercial Bank Parallel Co-Financing Loan Agreement dated as of August 1, 1987 among the Republic of Argentina, as borrower, BCRA, Citibank, N.A., as agent, and the banks party thereto, as amended as of March 1, 1988.

"Commitment Telex" means the telex in substantially the form of Annex B to the 1992 Financing Plan.

"Common Depositary" means Union Bank of Switzerland, as common depositary for Cedel and the Euroclear Operator, acting through an office located outside the United States to be designated by it with the consent of Argentina.

"Convertibility Law" means Law No. 23,928 enacted by the Argentine Congress on March 27, 1991.

8

"Custodian Agreement" means the Custodian Agreement among the U.S. Purchasers parties thereto and Citibank, N.A., London Branch, as Offshore Custodian, in form and substance satisfactory to Argentina and the parties thereto, as amended (any such amendment regarding the Securities Act to be approved by Argentina, which approval shall not be unreasonably withheld) and in effect from time to time.

"Debt Agreement Agents" has the meaning specified in the introductory paragraph hereof.

"Debt Agreements" means the 1987 TCA, the 1985 TCA, the 1983 TCA, the Co-Financing Agreement, the 1987 GRA, the 1987 BNA Refinancing Agreement, the 1987 Provincia Refinancing Agreement, the Alianza Naviera GRA, the AUSA GRA, the Salto Grande GRA, the Promissory Notes and the Public Sector Onlending Agreements.

"Designated Argentine Governmental Agency" means any Argentine Governmental Agency the obligations of which are entitled under Argentine law to the full faith and credit of Argentina.

"Deutsche Mark" or "DMK" means lawful money of the Federal Republic of Germany.

"Domestic Foreign Currency Indebtedness" means (a) the following Indebtedness:  (i) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (ii) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (iii) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (iv) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (v) Bonos de la Tesorería a 5 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92 and (vi) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92; and (b) any other Indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than Pesos which is (i) offered exclusively within Argentina or (ii) issued in payment, exchange, substitution, discharge or replacement of Indebtedness payable in Pesos; provided that, in no event shall BONEX be deemed to constitute "Domestic Foreign Currency Indebtedness".

"Dutch Guilders" or "DGU" means lawful currency of the Netherlands.

9

"Eligible Contractual Interest" or "ECI" means interest obligations described in clause (1) of the definition of "Eligible Interest" after giving effect to the provisos to such definition.  For purposes of the calculations to be made in Sections 2.06 and 3.04 hereof, "Eligible Contractual Interest" shall mean the USD Equivalent of Eligible Contractual Interest.

"Eligible Debt" has the meaning specified in the Principal Bond Exchange Agreement.

"Eligible Institutional Investor" means:

(i)   any bank as defined in Section 3(a)(2) of the Securities Act, whether acting in its individual or fiduciary capacity; or

(ii)   any insurance company as defined in Section 2(13) of the Securities Act; or

(iii)   any investment company registered under the Investment Company Act of 1940 of the United States, as amended; or

(iv)   any plan established and maintained by a state of the United States, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees if such plan has total assets in excess of U.S.$5 million; or

(v)   any employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974 of the United States, as amended, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, insurance company, or registered investment adviser or if the employee benefit plan has total assets in excess of U.S.$5 million; or

(vi)   any corporation, partnership or trust with assets of not less than U.S.$100 million; or

(vii)   any QIB; or

(viii)   any entity all the equity of which is owned by one or more Eligible Institutional Investors.

10

"<u>Eligible Interest</u>" or "<u>EI</u>" means the following interest obligations:

(1)  the amount of interest accrued on Eligible Debt through the earlier of the Exchange Date and March 31, 1993 and remaining unpaid on the Exchange Date (including accrued and unpaid interest on (a) overdue principal amounts, (b) deposits established with BCRA in accordance with Section 2.07(b) of the 1987 TCA, the 1985 TCA and the 1983 TCA, and (c) principal amounts which were cancelled in connection with the Argentine debt conversion program to the extent the accrued and unpaid interest corresponding to such principal amounts was not cancelled), calculated at the applicable contractual rate, without penalty, through December 31, 1991 and calculated at the per annum interest rate for Eligible Debt denominated in each of the currencies as set forth in Schedule D hereto for the period from January 1, 1992 through the earlier of the Exchange Date or March 31, 1993, <u>plus</u>

(2)  the amount of interest accrued and remaining unpaid on the Exchange Date on any interest which became overdue on or prior to December 31, 1991 in respect of Eligible Debt (including the principal amounts and deposits referred to in clauses 1(a), (b) and (c) above) through the earlier of the Exchange Date and March 31, 1993, calculated in the manner and at the rates set forth in Schedule E hereto;

<u>provided</u> that any such interest obligations owed, directly or indirectly, to any Argentine Bank (other than interest in respect of Eligible Debt held by an Argentine Bank to the extent that such interest is beneficially owned by a Person other than any Argentine Bank) shall be considered "Eligible Interest" only to the extent that (a) the sum of all interest obligations described in clauses (1) and (2) above that are owed, directly or indirectly, to such Argentine Bank <u>exceeds</u> (b) the sum of all interest obligations described in clauses (1) and (2) above that are owed by such Argentine Bank to any Person; <u>provided further</u> that the following interest obligations shall not constitute Eligible Interest:  (i) interest obligations owed, directly or indirectly, to any Argentine Governmental Agency other than an Argentine Bank or (ii) interest obligations submitted to Argentina or an Argentine Governmental Agency in connection with a

11

privatization unless (x) such interest obligations are rejected or otherwise disqualified for such privatization and (y) the Closing Agent and the relevant Debt Agreement Agent are notified thereof by BCRA, in each case, at least 45 calendar days prior to the Exchange Date. For purposes of the calculation to be made under Section 2.06 hereof, "Eligible Interest" shall mean the USD Equivalent of Eligible Interest.

"**Escrow Accounts**" has the meaning specified in Section 3.04(a) hereof.

"**Escrow Agent**" means the commercial bank or trust company or official bank or financial institution appointed by the Closing Agent to act as escrow agent pursuant to Section 3.04(a) hereof and any successor escrow agent appointed by the Closing Agent.

"**Escrow Agreement**" means the escrow agreement between the Escrow Agent and the Closing Agent (and consented to by Argentina), in form and substance satisfactory to the Closing Agent.

"**Escrow Date**" means the Exchange Date if on such date the Closing Agent has determined, based on confirmations from the Debt Agreement Agents, the Promissory Note Agent and the Purchasers concerning Reconciled EI and Reconciled ECI, that the reconciliation of the Recognized Holders of Eligible Interest shall not have been substantially completed.

"**Escrow Release Date**" means (i) a date or dates after the Exchange Date but on or before the Escrow Termination Date with respect to which (A) in the case of the initial Escrow Release Date (if the Exchange Date was the Escrow Date), based on confirmations from the Debt Agreement Agents, the Promissory Note Agent and the Purchasers concerning Reconciled EI and Reconciled ECI, the Closing Agent has determined that the reconciliation of the Recognized Holders of Eligible Interest shall have been substantially completed, and (B) in any other case, based on additional confirmations from the Debt Agreement Agents, the Promissory Note Agent and the Purchasers concerning Reconciled EI and Reconciled ECI, the Closing Agent has determined that sufficient additional Eligible Interest shall have been reconciled to enable the release of additional Escrowed Floating Rate Bonds and Escrowed Cash in respect of such Reconciled EI and Reconciled ECI and (ii) the Escrow Termination Date, _provided_ that on any such date all of the conditions to an Escrow Release

12

Date specified in Section 2.04 shall have been satisfied or waived in accordance with such Section.

"Escrow Termination Date" means September 1, 1993 (or, if such date is not a Business Day, the next succeeding Business Day).

"Escrowed Bond Amount" means an aggregate principal amount of Floating Rate Bonds to be deposited in the appropriate Escrow Account calculated pursuant to Section 2.06(a)(iv) hereof.

"Escrowed Cash" means all cash deposited in the appropriate Escrow Account pursuant to Section 2.01(a)(ii) or Section 2.01(b)(v) hereof and all interest thereon.

"Escrowed Floating Rate Bonds" means Floating Rate Bonds issued and outstanding in respect of Unreconciled EI and registered in the name of the Escrow Agent and held by the Escrow Agent as evidenced by a beneficial interest of the Escrow Agent in the U.S. Temporary Escrow Global Registered Floating Rate Bond.

"Euroclear" means Morgan Guaranty Trust Company of New York, Brussels office, as operator of the Euroclear Clearance System.

"European Currency Unit" or "ECU" means, at any time, the aggregate of the Specified Component Amounts in effect at such time of the respective Component Currencies in use at any such time. "Component Currency" in use at any time means any of the currencies which is at such time a component of the European Currency Unit, as determined by the most recent relevant published regulations of the European Economic Community. "Specified Component Amount" of a Component Currency, as in effect at any time, means the amount of such Component Currency specified by the most recent relevant published regulations of the European Economic Community for purposes of computing the value of a European Currency Unit.

"Event of Default" has the meaning specified in Section 9 of the Terms and Conditions of the Floating Rate Bonds.

"Exchange" means the simultaneous exchange of Reconciled EI of the Purchasers for Floating Rate Bonds pursuant to this Agreement.

13

"Exchange Date" means the Exchange Date under and as defined in the Principal Bond Exchange Agreement.

"Existing Agreements" means each Debt Agreement and each other existing agreement with Argentina, BCRA or any other Argentine Governmental Entity.

"Extended Fund Facility" means the Extended Fund Facility arrangement approved by the Executive Board of the IMF on March 31, 1992, as modified, amended and supplemented from time to time.

"External Indebtedness" means, for any Person, Indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than Pesos; provided that Domestic Foreign Currency Indebtedness shall not constitute External Indebtedness.

"Final Escrow Release Date" means the earlier of (i) the Escrow Release Date on which the aggregate principal amount of Escrowed Floating Rate Bonds has been reduced to zero and all of the remaining Escrowed Cash shall have been released to Purchasers entitled thereto and (ii) the Escrow Release Date occurring on the Escrow Termination Date.

"Final Trading Date" means August 7, 1992.

"Fiscal Agency Agreement" means the Floating Rate Bond Fiscal Agency Agreement between Argentina and the Fiscal Agent thereunder, substantially in the form of Exhibit 3 hereto, as amended and in effect from time to time.

"Fiscal Agent" means Citibank, N.A. (and any successor) as Fiscal Agent under the Fiscal Agency Agreement.

"Floating Rate Bond" or "Bond" means each Floating Rate Bond of each Series (including the Bearer Floating Rate Bonds, the Registered Floating Rate Bonds, the Temporary Global Bearer Floating Rate Bond, the Permanent Global Bearer Floating Rate Bond, the Non-U.S. Permanent Global Registered Floating Rate Bond, the U.S. Temporary Global Registered Floating Rate Bond and the U.S. Temporary Escrow Global Registered Floating Rate Bond), substantially in the forms of Exhibits 1A, 1B, 2A, 2B, 2C and 2D hereto.

14

"Floating Rate Bond Maturity Date" means the earlier of the 12th anniversary of the Exchange Date and March 31, 2005.

"French Francs" or "FFF" means lawful currency of the Republic of France.

"General Solicitation Methods" means any form of general solicitation or general advertising (including the entry of quotations on any screen based pricing system of general availability).

"Global Floating Rate Bonds" means, collectively, the Temporary Global Bearer Floating Rate Bonds, the Permanent Global Bearer Floating Rate Bonds, the Non-U.S. Permanent Global Registered Floating Rate Bonds, the U.S. Temporary Global Registered Floating Rate Bonds and the U.S. Temporary Escrow Global Registered Floating Rate Bond.

"IADB" means the Inter-American Development Bank and any successor.

"IBRD" means the International Bank for Reconstruction and Development and any successor.

"IMF" means the International Monetary Fund and any successor.

"Indebtedness" means, for any Person, (a) all indebtedness of such Person for or in connection with borrowed money, or the deferred purchase price of property or services (including, but not limited to, reimbursement obligations of such Person under or in respect of letters of credit or bankers' acceptances and obligations of such Person to repay deposits with or advances to such Person and a forfait indebtedness); (b) all obligations of such Person (other than those specified in clause (a) above) evidenced by bonds, debentures, notes or other similar instruments; and (c) all direct or indirect guarantees of such Person in respect of, and all obligations (contingent or otherwise) of such Person to purchase or otherwise acquire or otherwise to assure a credit against loss in respect of, indebtedness or obligations of any other Person specified in clause (a) or (b) above.

"Interest Reduction Cash Payment" means the U.S.$300,000,000 cash payment to be made by Argentina in respect of Eligible Contractual Interest.