37

has not received notices from the Majority Purchasers that, as a result of a material adverse change described in Section 2.03(d) hereof, such condition has not been satisfied. Certificates, letters and opinions of the IMF, the Registrar, the Common Depositary or the Luxembourg Stock Exchange or any official of any thereof which are required to be delivered pursuant to this Section 2.03 hereof may be accepted in a form which varies from the relevant Exhibit to the Closing Book by agreement between Argentina and the Closing Agent.

SECTION 2.04.  Escrow Release Dates.  An Escrow Release Date shall be a Business Day notified by the Closing Agent to the parties hereto in accordance with Section 2.05(a) hereof on which all of the conditions set forth below shall have been satisfied (or waived as provided herein) (and, in the case of the conditions set forth in Subsection (a)(iii) and (b) below, Argentina agrees to take all actions as are necessary to satisfy such conditions or to cause such conditions to be satisfied):

(a)  The Closing Agent shall have received ten executed originals (four of which shall be retained by the Closing Agent on behalf of the Purchasers and one of which shall be delivered to special New York counsel to the Closing Agent) of each of the documents listed below, each such document to be dated in accordance with the relevant Exhibit to the Closing Book and, in the case of the certificates delivered pursuant hereto, the statements set forth therein shall be true and correct:

(i)  a certificate of the Common Depositary, substantially in the form of Exhibit B-1 to the Closing Book, to the effect that the Schedule to the Non-U.S. Global Floating Rate Bond for each Series has been endorsed as instructed by the Closing Agent, acting on behalf of Argentina, pursuant to Section 3.04(c) hereof;

(ii)  a certificate of the Registrar, substantially in the form of Exhibit B-2 to the Closing Book, to the effect that the Schedule to the U.S. Temporary Global Registered Floating Rate Bond for each Series and the U.S. Temporary Escrow Global Registered Floating Rate Bond have been endorsed as instructed by the Closing Agent, acting on behalf of Argentina, pursuant to Section 3.04(c) hereof;

(iii)  a certificate from the Minister of Economy and Public Works and Services of Argentina, in

38

substantially the form of Exhibit B-3 to the Closing
Book, to the effect that:

> (A)  no Event of Default (as defined in
> the Terms and Conditions) or any event which
> with the passage of time or the giving of
> notice, or both, would constitute an Event of
> Default has occurred and is continuing on such
> Escrow Release Date; and

> (B)  Argentina has made each deposit, if
> any, required to be made pursuant to
> Section 2.10.

(b)  The Closing Agent shall have received evidence
satisfactory to the Closing Agent that Argentina has paid
all costs, fees, expenses and other amounts of the type
specified in Section 2.03(e) hereof which are required to
be paid, or deposited, on or prior to such Escrow Release
Date.  The payment of such fees, costs, expenses or other
amounts referred to above in this subsection (b) in
satisfaction of such condition precedent shall be without
prejudice to the right of Argentina to contest in good
faith any such payment.

Documentation that varies from the requirements of
this Section 2.04 may be accepted with the consent of
Purchasers having at least 66-2/3% of the aggregate of the
Reconciled EI and Unreconciled EI of all Purchasers for such
Escrow Release Date; provided that documentation relating
specifically to any Series of Floating Rate Bonds that varies
from the above requirements may be accepted with the consent
of Purchasers having at least 66-2/3% of the aggregate of all
Reconciled EI and Unreconciled EI for such Escrow Release
Date that is to be exchanged for such Series of Floating Rate
Bonds on such Escrow Release Date or with respect to which
Floating Rate Bonds of such Series were escrowed on the
Exchange Date but are not to be released on such Escrow
Release Date.  Certificates, letters and opinions of the
Registrar or the Common Depositary or any official of any
thereof which are required to be delivered pursuant to this
Section 2.04 may be accepted by the Closing Agent in a form
which varies from the relevant Exhibit to the Closing Book.

SECTION 2.05.  Procedures for Payment and Exchange.
(a)  Not less than 45 calendar days before the anticipated
Exchange Date and 35 calendar days before each anticipated
Escrow Release Date (as determined jointly by the Closing
Agent and Argentina, in the case of the Exchange Date, and by
the Closing Agent, in the case of an Escrow Release Date),

39

the Closing Agent shall notify the other parties hereto of such anticipated date and, in the case of an Escrow Release Date, whether such date is the Final Escrow Release Date, Argentina jointly with the Closing Agent may, at any time prior to the anticipated Exchange Date which has been notified to the other parties hereto under this Section 2.05(a), postpone the anticipated Exchange Date to a later date and the Closing Agent shall notify the other parties hereto of such postponement and of the new anticipated date. The Closing Agent may, at any time prior to an anticipated Escrow Release Date which has been notified to the other parties hereto under this Section 2.05(a), postpone an anticipated Escrow Release Date to a later date and the Closing Agent shall notify the other parties hereto of such postponement and of the new anticipated date.

(b) At least 30 calendar days prior to the Exchange Date and each Escrow Release Date, the Closing Agent shall send to each Purchaser a statement specifying (i) such Purchaser's Reconciled ECI and Reconciled EI, in each case, for such date (or, if such Reconciled ECI or Reconciled EI is subject to translation under Section 2.07(a) hereof, the Reconciled ECI and Reconciled EI of such Purchaser, in each case, for such date expressed in the Original Currency thereof rather than its USD Equivalent), such Purchaser's Purchasing Office(s) for Floating Rate Bonds and such Purchaser's status as a U.S. Person or Non-U.S. Person, and as a U.S. Purchaser or Non-U.S. Purchaser, in each case, as set forth in Schedule A hereto, (ii) in the case of the Exchange Date (if such date is not the Escrow Date) and each Escrow Release Date, the percentage of such Purchaser's Reconciled EI allocated to be exchanged for each Series of Floating Rate Bonds to be issued or released, as the case may be, to such Purchaser on such date or in the case of the Escrow Date, the percentage of such Purchaser's Reconciled EI and Unreconciled EI in respect of which each Series of Floating Rate Bonds are to be issued to the Escrow Agent on the Escrow Date, (iii) such Purchaser's Unreconciled ECI and Unreconciled EI, in each case, for such date and (iv) that such Purchaser has represented, pursuant to this Agreement, that, to the best of its knowledge, it owns all of the Unreconciled EI indicated for such Purchaser on such statement. Each Purchaser shall have ten calendar days to inform the Closing Agent of any change, correction or modification to the information presented on such statement and, if requested, confirm its status as a U.S. Person or Non-U.S. Person, and as a U.S. Purchaser or Non-U.S.

40

Purchaser, taking into account, among other things, such Purchaser's Commitment Telex, the requirements of Regulation S, the location of its Purchasing Office(s) for Floating Rate Bonds and applicable tax laws; provided, however, that if the Purchaser shall inform the Closing Agent of any change in an item of Reconciled EI or Reconciled ECI, such item shall be deemed to be Unreconciled EI or Unreconciled ECI, as the case may be, unless the Closing Agent shall have given written notice to the Purchaser not less than 10 calendar days prior to the anticipated Exchange Date or anticipated Escrow Release Date, as the case may be, that the change has been confirmed by the appropriate Debt Agreement Agent. In addition, each Purchaser that has indicated on Schedule A hereto that it is a U.S. Person (or a Non-U.S. Person electing on such Schedule A to receive Registered Floating Bonds pursuant to Section 4(2) of the Securities Act) shall upon request provide the Closing Agent with (A) the payment instructions of such Purchaser or Purchasing Office to which any payments should be sent, (B) the address of such Purchaser or Purchasing Office to which any notices should be sent and (C) a United States Internal Revenue Service Form W-9 or substitute form from such Purchaser or Purchasing Office.

(c)  Not less than 10 calendar days before the anticipated Exchange Date and each Escrow Release Date, the Closing Agent shall notify each Purchaser of such Purchaser's Cash Payment Amount and Interest Reduction Cash Payment Amount, in the case of the Exchange Date, and Cash Payment Amount, in the case of an Escrow Release Date, and Bond Exchange Amount, in each case, and shall confirm such Purchaser's Purchasing Office.

(d)  Not less than 9 calendar days before the anticipated Exchange Date and each Escrow Release Date, the Closing Agent shall deliver (i) to each Debt Agreement Agent and the Promissory Note Agent (with copies to Argentina) one or more notices identifying for each Purchaser under the Debt Agreement for which such Debt Agreement Agent or the Promissory Note Agent, as the case may be, is the agent and in the aggregate for such Debt Agreement, all Reconciled ECI and Reconciled EI (in each currency) outstanding under such Debt Agreement as of the date of the notice referred to in subsection (c) above which is to be paid in cash or exchanged for Floating Rate Bonds on such date and (ii) to Argentina, in the case of the Exchange Date, the aggregate amount of Unreconciled EI in respect of which Floating Rate Bonds are to be issued in escrow on such date. Each Debt Agreement Agent and the Promissory Note Agent shall promptly, and in any event within 3 calendar days following receipt of such notice, confirm in writing to the Closing Agent and Argentina the amounts referred to in (i) above.

41

(e)   Not less than 5 calendar days before the anticipated Exchange Date, Argentina shall confirm in writing to the Closing Agent the aggregate amounts referred to in Sections 2.05(d)(i) and (ii) above.

(f)   The Closing Agent shall have no obligation to process any communication from any Purchaser received by the Closing Agent later than the Reconciliation Cut-Off Date for the Exchange Date or any Escrow Release Date, as the case may be.

(g)   On the Exchange Date, each Escrow Release Date and each date on which Floating Rate Bonds are released or cash is paid in connection with an interpleader or otherwise, the item, or portion thereof, of Eligible Interest related to the Reconciled EI of each Purchaser for, such date which is paid in cash or exchanged for Floating Rate Bonds on such date shall be cancelled, as contemplated in Section 2.02(a) hereof, and shall no longer exist, and such Purchaser shall record on its books the cancellation of such Eligible Interest. Each Purchaser hereby authorizes and instructs the Closing Agent to notify and instruct the relevant Debt Agreement Agent to cancel such Eligible Interest of such Purchaser on such date and the Closing Agent hereby agrees to so notify and instruct each relevant Debt Agreement Agent. Upon receipt of any such notification and instruction from the Closing Agent, each Debt Agreement Agent shall on such date cancel, as of the earlier of March 31, 1993 or the Exchange Date, the Eligible Interest of a Purchaser specified in such notice and instruction; provided, however, that with respect to Eligible Interest evidenced by a Promissory Note, such Eligible Interest shall be cancelled on the records of the Promissory Note Agent only, and such cancellation shall not be evidenced on the Promissory Note, and the Promissory Note shall not be destroyed, until such time as the conditions to the destruction and cancellation of Promissory Notes specified in Section 2.05(j) hereof are satisfied.

(h)   As soon as practicable after the conditions for the Exchange Date and each Escrow Release Date have been satisfied (or waived), the Closing Agent shall notify the Purchasers, each Debt Agreement Agent and the Promissory Note Agent that such conditions have been satisfied or waived and shall specify the date on which the Exchange Date or such Escrow Release Date, as the case may be, occurred.

(i)   The U.S.$70,000,000 monthly interest payment in respect of commercial bank indebtedness for March 1993 shall be added to the Cash Payment if the Exchange Date shall have been scheduled to occur on or after March 1, 1993 and prior

42

to April 15, 1993, provided that, if the Exchange Date has
not been scheduled to occur during such period, such monthly
interest payment shall be made in the first calendar week of
March 1993.

(j)  Notwithstanding Section 2.05(i) of the
Principal Bond Exchange Agreement, a Recognized Holder's
rights under this Agreement with respect to an item or items
of Eligible Interest under a Promissory Note shall not be
affected by any failure of a Purchaser (as defined in the
Principal Bond Exchange Agreement) to deliver the Promissory
Note relating to the Eligible Interest of such Recognized
Holder.  The Promissory Note Agent shall not impose any fee
on any Purchaser in connection with the delivery of a
Promissory Note to the Promissory Note Agent, the custodial
arrangements of the Promissory Note Agent or, if applicable,
the redelivery to a Purchaser, or the delivery to a court, of
any Promissory Note.  No Promissory Note shall be destroyed
or cancelled by the Promissory Note Agent or Argentina until
all Eligible Debt and Eligible Interest represented thereby
has been reconciled and Principal Bonds or Floating Rate
Bonds, respectively, in respect thereof have been issued or
released from escrow, if applicable, in accordance with the
terms of this Agreement and the Principal Bond Exchange
Agreement.

SECTION 2.06.  Calculation of Cash Payment Amounts,
Interest Reduction Cash Payment Amounts, Bond Exchange
Amounts and Escrowed Bond Amounts.

(a)  The Exchange Date.  (i)  Cash Payment Amounts.
As soon as practicable, but in no event less than 10 calendar
days prior to the Exchange Date, the Closing Agent shall
calculate each Purchaser's Cash Payment Amount for the
Exchange Date.  In the case of the Exchange Date (if such
date is not the Escrow Date), each Purchaser's Cash Payment
Amount shall be calculated based on such Purchaser's
Reconciled ECI for the Exchange Date and shall be an amount
equal to the product of the Cash Payment times a fraction,
the numerator of which shall be equal to such Purchaser's
Reconciled ECI for the Exchange Date and the denominator of
which shall be equal to the aggregate amount of Eligible
Contractual Interest (calculated as provided in
Section 2.06(c)).  If the Exchange Date is the Escrow Date,
each Purchaser's Cash Payment Amount shall be zero.

(ii)  Interest Reduction Cash Payment Amounts.  As
soon as practicable, but in no event less than 10 calendar
days prior to the Exchange Date, the Closing Agent shall
calculate each Purchaser's Interest Reduction Cash Payment

43

Amount for the Exchange Date.  In the case of the Exchange
Date (if such date is not the Escrow Date), each Purchaser's
Interest Reduction Cash Payment Amount shall be calculated
based on such Purchaser's Reconciled ECI for the Exchange
Date and shall be an amount equal to the product of the
Interest Reduction Cash Payment times a fraction, the
numerator of which shall be equal to such Purchaser's
Reconciled ECI for the Exchange Date and the denominator of
which shall be equal to the aggregate amount of Eligible
Contractual Interest (calculated as provided in
Section 2.06(c)).  If the Exchange Date is the Escrow Date,
each Purchaser's Interest Reduction Cash Payment shall be
zero.

(iii)  Bond Exchange Amounts.  As soon as practicable,
but in no event less than 10 calendar days prior to the
Exchange Date, the Closing Agent shall calculate each
Purchaser's Bond Exchange Amount for each Series for the
Exchange Date.  In the case of the Exchange Date (if such
date is not the Escrow Date), each Purchaser's Bond Exchange
Amount for each Series shall be calculated based on such
Purchaser's Reconciled EI for the Exchange Date and shall be
equal to the product (rounded downward to the nearest Minimum
Multiple for such Series) of (x) the percentage of Reconciled
EI of such Purchaser allocable to such Series, as indicated
in the statements sent by the Closing Agent pursuant to
Section 2.05(b) for the Exchange Date (as such statements may
be modified by such Purchaser pursuant to Section 2.05(b)),
multiplied by (y) an amount equal to such Purchaser's
Reconciled EI for the Exchange Date less the sum of such
Purchaser's Cash Payment Amount and Interest Reduction Cash
Payment Amount, in each case, for the Exchange Date.  If the
Exchange Date is the Escrow Date, each Purchaser's Bond
Exchange Amount for each Series shall be zero.

(iv)  Escrowed Bond Amounts.  As soon as practicable
but in no event less than 10 calendar days prior to the
Exchange Date, the Closing Agent shall calculate the Escrowed
Bond Amount for the Exchange Date.  In the case of the
Exchange Date (if such date is not the Escrow Date), the
Escrowed Bond Amount shall be an amount (rounded downward to
the nearest Minimum Multiple for such Series) equal to (x)
the sum of the Unreconciled EI for the Exchange Date of all
Purchasers, as indicated in the statements sent by the
Closing Agent pursuant to Section 2.05(b) for the Exchange
Date (as such statements may be modified by such Purchasers
pursuant to Section 2.05(b)) less (y) the Purchasers' Cash
Escrow Amount for the Exchange Date.  If the Exchange Date is
the Escrow Date, the Escrowed Bond Amount shall be equal to
the sum (rounded downward to the nearest Minimum Multiple for

44

such Series) of the Reconciled EI and the Unreconciled EI for the Escrow Date of all Purchasers, as indicated in the statements sent by the Closing Agent pursuant to Section 2.05(b) for the Exchange Date (as such statements may be modified by such Purchaser pursuant to Section 2.05(b)) less the Purchasers' Cash Escrow Amount for the Exchange Date.

(b) Escrow Release Dates. (i) Cash Payment Amounts. As soon as practicable, but in no event less than 10 calendar days prior to each Escrow Release Date, the Closing Agent shall calculate each Purchaser's Cash Payment Amount for such Escrow Release Date. Each Purchaser's Cash Payment Amount shall be calculated based on such Purchaser's Reconciled ECI for the Escrow Release Date and shall be an amount equal to the product of the sum of the Cash Payment and the Interest Reduction Cash Payment times a fraction, the numerator of which shall be equal to (x) if the Exchange Date was not the Escrow Date, the lesser of (A) such Purchaser's Reconciled ECI for such Escrow Release Date and (B) such Purchaser's Unreconciled ECI for the Exchange Date less the aggregate amount of such Purchaser's Reconciled ECI that has been exchanged for Floating Rate Bonds or paid in cash on all prior Escrow Release Dates, if any, and (y) if the Exchange Date was the Escrow Date the lesser of (A) such Purchaser's Reconciled ECI for such Escrow Release Date and (B) the sum of such Purchaser's Reconciled ECI and Unreconciled ECI for the Escrow Date less the aggregate amount of such Purchaser's Reconciled ECI that has been exchanged for Floating Rate Bonds or paid in cash on all prior Escrow Release Dates, if any, and the denominator of which shall be equal to the aggregate amount of Eligible Contractual Interest (calculated as provided in Section 2.06(c)).

(ii) Bond Exchange Amounts. As soon as practicable, but in no event less than 10 calendar days prior to each Escrow Release Date, the Closing Agent shall calculate each Purchaser's Bond Exchange Amount for such Escrow Release Date for each Series. Each Purchaser's Bond Exchange Amount for such Series shall be equal to the product (rounded downward to the nearest Minimum Multiple for such Series) of (x) the percentage of Reconciled EI of such Purchaser allocable to such Series, as indicated in the statements sent by the Closing Agent pursuant to Section 2.05(b) for such Escrow Release Date (as such statement may be modified by such Purchaser pursuant to Section 2.05(b)) multiplied by (y) an amount equal to such Purchaser's Reconciled EI for the Escrow Release Date less such Purchaser's Cash Payment Amount for such Escrow Release Date.

45

(c)  For purposes of Sections 2.06(a)(i) and (ii), 2.06(b)(i) above and Section 3.04(e)(iii), the aggregate amount of Eligible Interest and Eligible Contractual Interest shall be calculated based on the Reconciled EI, Reconciled ECI, Unreconciled EI and Unreconciled ECI of each Purchaser for the Exchange Date and, in the case of Debt Agreements other than the Promissory Notes, information provided by the relevant Debt Agreement Agents with respect to other Eligible Interest and Eligible Contractual Interest under such Debt Agreements.  In making such calculations and for purposes of the definitions of Unreconciled EI and Unreconciled ECI, the following rules shall be applied with respect to individual items of Eligible Interest and Eligible Contractual Interest:

(i)  except as provided in clause (ii) and (iii) below, if, prior to the Exchange Date or an Escrow Release Date, as the case may be, the amount of any item, or any portion thereof, of Eligible Interest or Eligible Contractual Interest claimed by any Purchaser has not been included in the Reconciled EI or Reconciled ECI of a Purchaser, such item of Eligible Interest or Eligible Contractual Interest, or portion thereof, shall constitute Unreconciled EI or Unreconciled ECI, as the case may be, in an amount for such Purchaser equal to the amount of such item, or portion thereof, as claimed by such Purchaser;

(ii)  in the event that an item, or any portion thereof, of Eligible Interest or Eligible Contractual Interest, is claimed by more than one Purchaser, the amount of such item, or any portion thereof, of Eligible Interest or Eligible Contractual Interest, as the case may be, shall, subject to clause (iii) below, be included only in the Unreconciled EI or Unreconciled ECI, as the case may be, of the Recognized Holder thereof and shall not be included in the Unreconciled EI or Unreconciled ECI of any other Purchaser; and

(iii)  no item of Eligible Interest or Eligible Contractual Interest, or any portion thereof, that has been cancelled in connection with a privatization or other debt conversion as evidenced by a writing addressed to Argentina, any Obligor or a Debt Agreement Agent and executed by the holder of record on the date of such cancellation of the Eligible Debt to which such Eligible Interest or Eligible Contractual Interest, as the case may be, relates shall be included in the Unreconciled EI or Unreconciled ECI, as the case may be, claimed by any Purchaser.

46

SECTION 2.07.  Currency Translation.  (a)  In order
to facilitate the payment in U.S. Dollars of, and the
issuance of Floating Rate Bonds denominated in U.S. Dollars
in exchange for, any item of Eligible Interest denominated in
a currency other than U.S. Dollars, the USD Equivalent of
such Eligible Interest shall be calculated on the Translation
Rate Determination Date in accordance with Schedule B hereto.

(b)  If the Exchange Date (if such date is not the
Escrow Date) or an Escrow Release Date is delayed beyond the
date originally notified to Purchasers pursuant to
Section 2.05(a) hereof as the date scheduled for the Exchange
Date or such Escrow Release Date, as the case may be, in each
case as a result of any failure to fulfill on or prior to
such date any condition to be performed by Argentina or as a
direct or indirect result of any action or inaction by
Argentina unless by the close of business in New York City on
the fifth Business Day before such anticipated Exchange Date
or Escrow Release Date Argentina has notified the Closing
Agent that such date has been postponed to a later date in
accordance with Section 2.05(a) hereof, Argentina shall
indemnify any Purchaser which has committed to exchange its
Eligible Interest denominated in an Original Currency other
than U.S. Dollars pursuant to the currency translation
procedures specified in Part III of Schedule B hereto for
Floating Rate Bonds denominated in U.S. Dollars for any loss
reasonably incurred by such Purchaser as the result of the
failure of the Cash Payment or the Interest Reduction Cash
Payment to be made or Floating Rate Bonds to be issued in
exchange for such Eligible Interest, in each case, on such
scheduled Exchange Date or Escrow Release Date, as the case
may be, provided that such Purchaser submits appropriate
evidence of such loss.

SECTION 2.08.  Form and Denomination of Bonds.  The
Floating Rate Bonds shall be issued in the form and
denominations specified in the Fiscal Agency Agreement and
shall be transferable and exchangeable into new Floating Rate
Bonds of the same Series, subject to the restrictions set
forth in the Floating Rate Bonds and in the Fiscal Agency
Agreement.

SECTION 2.09.  Funding Indemnity.  (a)  Argentina
shall indemnify each Purchaser in the appropriate currency,
against any loss or expense reasonably incurred by such
Purchaser as a result of the postponement of the Exchange
Date (if such date is not the Escrow Date) or an Escrow
Release Date to a date following the date notified by the
Closing Agent under Section 2.05(a) hereof as a result of any
failure to fulfill on or prior to such date any condition to

47

be performed by Argentina or as a direct or indirect result
of any action or inaction by Argentina, unless by the close
of business in New York City on the fifth Business Day before
the anticipated Exchange Date or anticipated Escrow Release
Date, Argentina has notified the Closing Agent that such date
has been postponed to a later date in accordance with Section
2.05(a) hereof, including, without limitation, any loss
(excluding loss of anticipated profits) or expense incurred
by reason of the liquidation or reemployment of deposits or
other funds by any Purchaser in connection with the purchase
of a Floating Rate Bond to be purchased by such Purchaser as
part of the Exchange when such Floating Rate Bond, as a
result of such failure, is not purchased on such date.

(b)  Nothing in this Section 2.09 shall affect the
right of any Purchaser to seek indemnification pursuant to
Section 2.07 hereof.  Any demand made by a Purchaser under
Section 2.09(a) above shall be accompanied by a reasonably
detailed certificate of such Purchaser as to the amount of
such compensation and the basis on which such amount was
computed.

SECTION 2.10.  Reconciliation of Eligible Interest.
(a)  Argentina agrees (i) to use its best efforts to cause
Eligible Interest to be reconciled as promptly as possible
and (ii) to take all actions as are contemplated by this
Agreement and the other Floating Rate Bond Agreements in
connection with the Exchange of such Eligible Interest for
Floating Rate Bonds and cash as provided herein.

(b)  The Closing Agent agrees that when it shall
receive a notice from any Debt Agreement Agent stating that
an item of Eligible Interest or Eligible Contractual Interest
has been reconciled, the Closing Agent shall promptly deliver
such information to Argentina together with a certificate in
the form of Schedule I hereto (a "Reconciliation Notice").
If the Closing Agent shall not have received within seven
calendar days of delivery of such Reconciliation Notice to
Argentina at the address specified in Section 6.02 hereof a
certificate in the form of Schedule J hereto from Argentina
(an "Objection Notice") stating that Argentina objects to the
inclusion of an item or items of Eligible Interest or
Eligible Contractual Interest covered by such Reconciliation
Notice in Reconciled EI or Reconciled ECI, then all such
covered items shall be deemed to be Reconciled EI or
Reconciled ECI as the case may be.  In the event that the
Closing Agent shall receive an Objection Notice within seven
calendar days of delivery of such Reconciliation Notice to
Argentina, all items of Eligible Interest and Eligible
Contractual Interest covered by such Reconciliation Notice

48

shall be deemed to continue to be Unreconciled EI or
Unreconciled ECI, as the case may be.

(c) Notwithstanding any provision of this Agreement
to the contrary, Argentina agrees as follows:  (i) in the
event that the Closing Agent notifies Argentina that at least
60% of Eligible Interest has not been reconciled by May 31,
1993, Argentina shall deposit (within 10 calendar days)
$50,000,000 in an account to be agreed between Argentina and
the Closing Agent and (ii) in the event that the Closing
Agent notifies Argentina that at least 85% of Eligible
Interest has not been reconciled by July 30, 1993, Argentina
shall deposit (within 10 calendar days) $50,000,000 in an
account to be agreed between Argentina and the Closing
Agent.  Such deposited amounts and any income thereon shall
be pledged to secure the payment of interest on the Floating
Rate Bonds due and payable on the first interest payment date
therefor, and such deposited amounts shall be invested as
agreed by Argentina and the Closing Agent, in each case as
provided in Section 3.04.  In determining whether the
foregoing percentages of Eligible Interest have been
reconciled, the Closing Agent shall include as reconciled
only such item or items of Eligible Interest for which it
shall have sent to Argentina a Reconciliation Notice and the
seven calendar day period referred to in subsection (b) above
shall have expired with respect to such Reconciliation Notice
without receipt by the Closing Agent of an Objection Notice.

49

## ARTICLE III

## RESTRICTIONS ON TRANSFER; GLOBAL BONDS

SECTION 3.01. General Restrictions on Transfer, Etc. (a) Each Purchaser acknowledges that the Floating Rate Bonds have not been and will not be registered under the Securities Act.

(b) Each Purchaser which indicates on Schedule A hereto that it is a U.S. Person that is a U.S. Purchaser and each Purchaser that is a Non-U.S. Person electing on such Schedule A to receive Floating Rate Bonds pursuant to Section 4(2) of the Securities Act agrees that for a two-year period after the Exchange Date, it will not offer or sell such Floating Rate Bonds except as follows:

(i) pursuant to an effective registration statement under the Securities Act;

(ii) to an Eligible Institutional Investor upon delivery to the Registrar of a transferor's certificate substantially in the form of Schedule C-1 to the Fiscal Agency Agreement and a transferee's certificate substantially in the form of Schedule C-2 to the Fiscal Agency Agreement;

(iii) pursuant to Rule 904 of Regulation S upon delivery to the Registrar of a transferor's certificate substantially in the form of Schedule D to the Fiscal Agency Agreement; and

(iv) to a QIB pursuant to Rule 144A under the Securities Act upon delivery to the Registrar of a transferor's certificate substantially in the form of Schedule E to the Fiscal Agency Agreement.

SECTION 3.02. Issuance of Bonds on the Exchange Date (if such Date is not the Escrow Date) and Release of Bonds on an Escrow Release Date. (a) Global Bonds for U.S. Offering. The Floating Rate Bonds of each Series to be issued on the Exchange Date (if such date is not the Escrow Date) to Purchasers indicated on Schedule A hereto as being U.S. Persons that are U.S. Purchasers or Non-U.S. Persons electing on such Schedule A to receive Floating Rate Bonds pursuant to Section 4(2) of the Securities Act, shall be in registered form and evidenced by a U.S. Temporary Global Registered Floating Rate Bond for such Series. A holder of a beneficial interest in the U.S. Temporary Global Registered Floating Rate Bond for such Series may exchange such beneficial interest for Registered Floating Rate Bonds of

50

such Series in definitive form in accordance with the
provisions of the Fiscal Agency Agreement.

(b) __Global Bonds for Non-U.S Offering.__ (i) __Bearer
Floating Rate Bonds.__  The Floating Rate Bonds of each Series
to be issued on the Exchange Date (if such date is not the
Escrow Date) to Purchasers indicated on Schedule A hereto as
being Non-U.S. Purchasers, shall be in bearer form and
evidenced by a Temporary Global Bearer Floating Rate Bond for
such Series.  Holders of beneficial interests in the
Temporary Global Bearer Floating Rate Bond for any Series may
exchange such interests, in whole or in part, for beneficial
interests in the Permanent Global Bearer Floating Rate Bond
for such Series, and holders of beneficial interests in the
Permanent Global Bearer Floating Rate Bond for any Series may
exchange such interests, in whole or in part, for definitive
Bearer Floating Rate Bonds of such Series, in each case in
accordance with the provisions of the Fiscal Agency Agreement.

(ii) __Registered Floating Rate Bonds.__  The Floating
Rate Bonds of each Series to be issued on the Exchange Date
(if such date is not the Escrow Date) to Purchasers indicated
on Schedule A hereto as being Non-U.S. Persons that do not
qualify as Non-U.S. Purchasers (other than those electing on
Schedule A hereto to receive Bonds pursuant to Section 4(2)
of the Securities Act), shall be in registered form and
evidenced by a Non-U.S. Permanent Global Registered Floating
Rate Bond.  A holder of a beneficial interest in a Non-U.S.
Permanent Global Registered Floating Rate Bond of a Series
may exchange all or part of such beneficial interest for
definitive Registered Floating Rate Bonds of such Series in
accordance with the provisions of the Fiscal Agency Agreement.

(c) __Global Bonds in Escrow Account.__  The Floating
Rate Bonds of both Series to be issued on the Exchange Date
(if such date is not the Escrow Date) to the Escrow Agent in
accordance with Section 2.01(b)(iv), shall be in registered
form and evidenced by a single U.S. Temporary Escrow Global
Registered Floating Rate Bond and shall be issued in the name
of and delivered to the Escrow Agent.

(d) __Release of Bonds on an Escrow Release Date.__
The Bond Exchange Amount for any Series to be released on an
Escrow Release Date pursuant to Section 3.04(d)(i) hereof,
shall be evidenced as follows:

(i) Floating Rate Bonds of a Series to be
received by a Purchaser indicated on Schedule A hereto
as being a U.S. Person that is a U.S. Purchaser or a
Non-U.S. Person electing to receive Floating Rate Bonds
pursuant to Section 4(2) of the Securities Act shall be

51

in registered form and evidenced by the U.S. Temporary Global Registered Floating Rate Bond for such series;

(ii) Floating Rate Bonds of such Series to be received by a Purchaser indicated on Schedule A hereto as being a Non-U.S. Purchaser (other than Non-U.S. Purchasers that are Non-U.S. Persons electing to receive Floating Rate Bonds pursuant to Section 4(2) of the Securities Act) shall be in bearer form and evidenced by the Temporary Global Bearer Floating Rate Bond for such Series; and

(iii) Floating Rate Bonds of such Series to be received by a Purchaser indicated on Schedule A hereto as being a Non-U.S. Person that does not qualify as a Non-U.S. Purchaser (other than those electing to receive Floating Rate Bonds pursuant to Section 4(2) of the Securities Act) shall be in registered form and evidenced by the Non-U.S. Permanent Global Registered Floating Rate Bond for such Series.

SECTION 3.03.  Issuance of Bonds on the Exchange Date (if such date is the Escrow Date) and Release of Bonds on an Escrow Release Date.  (a) Global Bonds in Escrow Account.  The Floating Rate Bonds to be issued on the Exchange Date (if such date is the Escrow Date) to the Escrow Agent in accordance with Section 2.01(a)(i) shall be in registered form and evidenced by a U.S. Temporary Escrow Global Registered Floating Rate Bond and shall be issued in the name of and delivered to the Escrow Agent.

(b)  Release of Bonds on an Escrow Release Date. The Bond Exchange Amount for any Series to be released on an Escrow Release Date pursuant to Section 3.04(d)(i) hereof shall be evidenced in accordance with Section 3.02(d).

SECTION 3.04.  Escrow Accounts.  (a)  Establishment of Escrow Accounts.  Prior to the Exchange Date, the Closing Agent shall instruct the Escrow Agent to establish escrow accounts (the "Escrow Accounts") pursuant to the Escrow Agreement into which Floating Rate Bonds issued pursuant to Section 2.01(a)(i) or Section 2.01(b)(iv), interest payments, if any, relating to such Floating Rate Bonds and the Cash Escrow Amount will be deposited.  Such Escrow Accounts shall be established at such commercial bank or trust company or official bank or financial institution appointed by the Closing Agent and shall be subject to the terms and conditions of the Escrow Agreement.  The Floating Rate Bonds to be issued pursuant to Section 2.01(a)(i) or Section 2.01(b)(iv) hereof, as the case may be, on the

52

Exchange Date shall be issued in the name of the Escrow Agent
and shall be held by or for the account of the Escrow Agent
in an Escrow Account, subject to the written instructions of
the Closing Agent as provided in this Section 3.04 and in the
Escrow Agreement.  Any cash held in any of the Escrow
Accounts shall be invested as provided in the Escrow
Agreement.  The Floating Rate Bonds and cash held in the
Escrow Accounts shall be held by the Escrow Agent in escrow
and in trust for the benefit of the Purchasers.  Argentina
shall have no interest in the Floating Rate Bonds or the
Escrowed Cash held in the Escrow Accounts.

          (b)  Rejection of Offer to Exchange.  If any item of
Eligible Interest or any portion thereof has not been
reconciled hereunder because it is disputed by Argentina and
has not been agreed to by Argentina on or prior to the
Reconciliation Cut-Off Date for the Final Escrow Release
Date, the Purchaser claiming such item of Eligible Interest,
or any portion thereof, may, upon notice to the Closing Agent
given after the Reconciliation Cut-Off Date for the Final
Escrow Release Date but not less than 15 calendar days before
the Final Escrow Release Date, consider, as of the Final
Escrow Release Date, (i) its tender of such item of Eligible
Interest or portion thereof for the Exchange to be rejected
by Argentina and (ii) its agreement to exchange such item of
Eligible Interest, or portion thereof, pursuant to this
Agreement to be terminated.  In such event, as of the Final
Escrow Release Date, (x) such item of Eligible Interest or
portion thereof shall be excluded from such Purchaser's
Unreconciled EI and, if applicable, Unreconciled ECI,
(y) such Purchaser shall be deemed to have relinquished its
rights under this Agreement and with respect to any Escrowed
Floating Rate Bonds issued in respect of such item of
Unreconciled EI or portion thereof and the Closing Agent
shall instruct the Fiscal Agent to cancel such Escrowed
Floating Rate Bonds as of the Final Escrow Release Date and
(z) such Purchaser shall have all rights with respect to such
item of Unreconciled EI or portion thereof, including,
without limitation, the right to exercise or assert any right
or claim with respect to such item of Unreconciled EI or
portion thereof.  Notwithstanding the foregoing, a Purchaser
may not consider its tender to be so rejected or its
agreement to be so terminated with respect to any item of its
Unreconciled EI if all or a portion of such item is claimed
by one or more other Purchasers and such other Purchasers
have not consented in writing to the delivery of the notice
referred to above.

          (c)  Adjustments of Global Floating Rate Bonds.  On
each Escrow Release Date with respect to each Series of
Floating Rate Bonds:

53

(i)   the Closing Agent shall instruct the Fiscal Agent to instruct the Registrar or the Common Depositary, as the case may be, to endorse the schedule to each Global Floating Rate Bond for each Series to increase the principal amount of such Global Floating Rate Bond by an amount equal to the aggregate of each Purchaser's Bond Exchange Amount for such Escrow Release Date for such Series, calculated in accordance with Section 2.06(a)(iii), to be evidenced by such Global Floating Rate Bond as provided in Section 3.02(d); and

(ii)   the Closing Agent shall (x) instruct the Fiscal Agent to instruct the Registrar to endorse, and (y) instruct the Escrow Agent to make the U.S. Temporary Escrow Global Registered Floating Rate Bond available at the office of the Escrow Agent for such endorsement of, the schedule to the U.S. Temporary Escrow Global Registered Floating Rate Bond to decrease the aggregate principal amount of Escrowed Floating Rate Bonds represented thereby, (A) by an amount equal to the sum of the amounts by which each of the Global Floating Rate Bonds is to be increased pursuant to subsection (i) above and (B) in the case of the Final Escrow Release Date, by the amount, if any, necessary to cause the aggregate principal amount of Escrowed Floating Rate Bonds represented thereby not to exceed the sum of the Unreconciled EI of all Purchasers for the Final Escrow Release Date less the Purchasers' Cash Escrow Amount for the Final Escrow Release Date.

(d)   Release of Floating Rate Bonds on Escrow Release Date.   (i)   On each Escrow Release Date and following the adjustments to the Global Floating Rate Bonds pursuant to Section 3.04(c) for such Escrow Release Date, the Closing Agent shall instruct the Fiscal Agent to release, or cause to be released, to each Purchaser's Purchasing Office Floating Rate Bonds in an aggregate principal amount for each Series equal to such Purchaser's Bond Exchange Amount for such Series for such Escrow Release Date.

(ii)   On the Final Escrow Release Date following the adjustment to the Global Floating Rate Bonds pursuant to Section 3.04(c) hereof and the release of Floating Rate Bonds pursuant to subsection (d)(i) above for such Escrow Release Date, the Closing Agent shall take such actions as are necessary or appropriate in connection with the commencement of one or more interpleaders with respect to the Floating Rate Bonds remaining in the Escrow Accounts, if any, in accordance with Section 3.04(i) hereof and shall instruct the Escrow Agent to hold or to pay over cash, if any, or deliver Floating Rate Bonds to such places as may be necessary to implement such interpleader.  Each party hereto involved in any such interpleader agrees to the matters set forth in Section 3.04(i) hereof and, except as provided in

54

such Section, to reimburse the Escrow Agent and the Closing
Agent for such party's allocable share of all costs and
expenses (including reasonable fees and expenses of counsel)
incurred by the Escrow Agent and the Closing Agent in
connection with any such interpleader.

(iii)  Notwithstanding anything in this Agreement to
the contrary, Floating Rate Bonds and any cash held in an
Escrow Account shall be released to Purchasers only in
accordance with the procedures set forth in the Fiscal Agency
Agreement.

(e)  Release of Cash Escrow Amount.  (i)  On each
Escrow Release Date, the Closing Agent shall instruct the
Escrow Agent to pay to each Purchaser (or to pay to the
Closing Agent for payment to such Purchaser) from the
appropriate Escrow Accounts an aggregate amount equal to such
Purchaser's Cash Payment Amount for such Escrow Release Date.

(ii)  In the event that any Recognized Holder (other
than a Purchaser) of Eligible Contractual Interest
outstanding under the Debt Agreements other than the
Promissory Notes is identified by the relevant Debt Agreement
Agent, and such Debt Agreement Agent confirms to the Closing
Agent that the Eligible Contractual Interest claimed by such
Recognized Holder is owed to such Recognized Holder, the
Closing Agent shall instruct the Escrow Agent to make a
payment on the Final Escrow Release Date in respect of such
Eligible Contractual Interest to such Recognized Holder (or
to the Closing Agent for payment to such Recognized Holder)
from the appropriate Escrow Account in an aggregate amount
equal to the amount that such Recognized Holder would have
received as its Cash Payment Amount for such Escrow Release
Date if such Recognized Holder had been a Purchaser
hereunder.

(iii)  Subject to Section 3.04(i) below, on the Final
Escrow Release Date, the Closing Agent shall (x) take such
actions as are necessary or appropriate in connection with
the commencement (in accordance with Section 3.04(i) hereof)
of one or more interpleaders with respect to (A) cash
remaining in the Escrow Accounts in an amount equal to the
product of the sum of the Cash Payment and the Interest
Reduction Cash Payment times a fraction the numerator of
which shall be equal to the sum of the Unreconciled ECI of
each Purchaser for the Final Escrow Release Date and the
denominator of which shall be equal to the aggregate amount
of Eligible Contractual Interest (calculated as provided in
Section 2.06(c)) and (B) cash from the appropriate Escrow
Accounts which is determined by the Closing Agent to be
allocable in respect of Eligible Contractual Interest (other
than the Unreconciled ECI referred to in (A) above) and
(y) distribute the cash remaining in the Escrow Accounts,

55

which the Closing Agent has determined is not allocable to any Person, to the Purchasers in an equitable manner, as determined by the Closing Agent. In connection with each such interpleader, the Closing Agent shall instruct the Escrow Agent to hold or to pay over cash to such places as may be necessary to implement such interpleader. Each party hereto involved in any such interpleader agrees to the matters set forth in Section 3.04(i) hereof and, except as provided in such Section, to reimburse the Escrow Agent and the Closing Agent for such party's allocable share of all costs and expenses (including reasonable fees and expenses of counsel) incurred by the Escrow Agent and the Closing Agent in connection with commencing any such interpleader.

(f) <u>Duties of the Closing Agent and the Escrow Agent</u>. The duties of the Closing Agent with respect to the Floating Rate Bonds, cash or other property held hereunder or in any Escrow Account shall be limited to those set forth in this Section 3.04 and in Article V. Notwithstanding anything in this Agreement to the contrary, the duties, obligations and immunities of the Escrow Agent with respect to the Floating Rate Bonds, cash or other property held hereunder or in an Escrow Account, the Purchasers, the Closing Agent, the Debt Agreement Agents and all other Persons shall be limited to those as are set forth in the Escrow Agreement.

(g) <u>Records</u>. The Closing Agent will keep a record of all Escrowed Floating Rate Bonds and cash deposited in the Escrow Accounts which, absent manifest error, shall be controlling at all times with respect to the Purchasers and Argentina.

(h) <u>Authorizations and Payments</u>. To the extent that Sections 3.04(d) and (e) above provide that the Closing Agent shall instruct the Escrow Agent to release Escrowed Floating Rate Bonds or cash from any of the Escrow Accounts or the Fiscal Agent to release Floating Rate Bonds, Argentina hereby expressly and irrevocably authorizes the Closing Agent to give such instructions and hereby expressly and irrevocably authorizes the Escrow Agent and the Fiscal Agent to act on any such instructions; <u>provided, however</u>, that under no circumstances shall the Closing Agent be obligated to take any such action in the event that (x) any Escrowed Floating Rate Bonds, any amounts held in any of the Escrow Accounts or any Eligible Interest or Eligible Contractual Interest to which any such Escrowed Floating Rate Bonds or such cash relates is in dispute or (y) under all the relevant circumstances the Closing Agent is unable to properly identify the Recognized Holder to whom such cash should be released. Under the circumstances described in the proviso to the preceding sentence or at any other time that the Closing Agent determines in its reasonable judgment that

56

it is appropriate to do so, the Closing Agent may take such actions as are necessary or appropriate in connection with the commencement (in accordance with Section 3.04(i) hereof) of one or more interpleaders with respect to any Floating Rate Bonds or cash held in any of the Escrow Accounts. Each party hereto involved in any such interpleader agrees to the matters set forth in Section 3.04(i) hereof. Each Purchaser hereby authorizes the Closing Agent and the Escrow Agent to take any action necessary or appropriate to commence any such interpleader.

(i)  **Certain Matters Relating to Interpleader Actions.**  In the event that, in accordance with Section 3.04(d)(ii), 3.04(e)(iii) or 3.04(h) hereof, one or more interpleaders have been commenced with respect to Escrowed Floating Rate Bonds or cash, each party hereto, to the extent it becomes a party to any such interpleader, hereby:

(i)  irrevocably submits to the exclusive jurisdiction of any New York State or Federal court sitting in New York City (and any appellate court for any appeal thereof) for any suit, action or proceeding in the nature of interpleader arising out of or relating to the claim of such party to any Escrowed Floating Rate Bonds, cash or any portion thereof; provided, however, that with respect to any such suit, action or proceeding, Argentina irrevocably submits only to the exclusive jurisdiction of the United States District Court for the Southern District of New York and any appellate court therefrom, such that (a) any interpleader to which Argentina is a party upon the initiation of such interpleader shall be commenced and, for so long as Argentina is a party, shall be litigated exclusively in the United States District Court for the Southern District of New York and any appellate court therefrom and (b) any interpleader pending in a court other than the United States District Court for the Southern District of New York to which Argentina becomes a party after the commencement of such interpleader shall be transferred or refiled, and litigated exclusively in the United States District Court for the Southern District of New York and any appellate court therefrom;

(ii)  irrevocably waives any defense or objection to interpleader on the grounds of personal jurisdiction, venue, inconvenient forum, residence, domicile or sovereign (or other) immunity as to itself and any Floating Rate Bonds subject to such interpleader, any cash or any portion thereof in which such party claims an interest;