(ii) <u>The Working Committee for Argentina</u>. No member of the Working Committee for Argentina, as such, shall have any duties or obligations whatsoever with respect to this Agreement or any other document or any matter related hereto, except as expressly provided in this Agreement.

(b) <u>No Liability</u>. (i) <u>The Closing Agent, the Escrow Agent, the Debt Agreement Agents and the Promissory Note Agent</u>. None of the Closing Agent, the Escrow Agent, the Debt Agreement Agents, the Promissory Note Agent or any of their respective directors, officers, attorneys, agents or employees shall have any liability or responsibilities to Argentina or any other Person on account of the failure of any other Person to perform its obligations under this Agreement or any other document or instrument referred to herein. Each Purchaser agrees that the limitation on liability contained in this Section 5.03(b) is for the benefit and protection of the Closing Agent, the Escrow Agent, the Debt Agreement Agents, the Promissory Note Agent and their directors, officers, attorneys, agents and employees and not for the protection of the Purchasers.

(ii) <u>The Working Committee for Argentina</u>. No member of the Working Committee for Argentina, as such, shall have any liability or responsibilities to Argentina or any other Person on account of the failure of any other Person to perform its obligations under this Agreement or any other document or instrument referred to herein.

SECTION 5.04.  <u>Indemnification by Purchasers</u>.
(a) <u>Expenses</u>. The Purchasers agree to indemnify the members of the Working Committee for Argentina and the Closing Agent, the Escrow Agent and their respective directors, officers, attorneys, agents and employees (to the extent not reimbursed by Argentina) for their respective ratable shares of any and all liabilities, obligations, losses, damages, penalties, judgments, costs, expenses or disbursements of any kind or nature whatsoever (including all counsel fees and expenses), which may be imposed on or incurred by a member of the Working Committee for Argentina or the Closing Agent or the Escrow Agent for any action taken or omitted to be taken by a member of the Working Committee for Argentina or the Closing Agent under this Agreement or any other document delivered hereunder (including without limitation any action taken or omitted to be taken before the date hereof by a member of the Working Committee for Argentina or the Closing Agent or the Escrow Agent or any of their respective directors, officers, attorneys, agents or employees in connection with this Agreement); <u>provided</u> that no Purchaser shall be liable for any portion of any such amount resulting from the gross negligence or willful misconduct of a member of the Working

78

Committee for Argentina or the Closing Agent or the Escrow Agent. Without limiting the generality of the foregoing, each Purchaser agrees that it will, subject to the limitations set forth in the proviso to the preceding sentence, upon demand pay or reimburse the members of the Working Committee for Argentina and the Closing Agent and the Escrow Agent (to the extent that each such member or the Closing Agent is not reimbursed by Argentina) for any amount for which Argentina is liable under clauses (i), (ii) and (iv) of Section 6.05(a) hereof and in its ratable share of any out-of-pocket expenses (including fees of special New York, Argentine and other counsel to the Working Committee for Argentina or the Closing Agent or the Escrow Agent) incurred in connection with the negotiation, preparation, printing, signing and administration of this Agreement or any other Bond Agreement or any amendment hereof or thereof or waiver or consent hereunder or thereunder or in connection with preserving any rights of the Purchasers or of the Closing Agent or of the Escrow Agent hereunder or thereunder or obtaining legal advice in respect of the rights and responsibilities of the Purchasers or the Closing Agent or the Escrow Agent thereunder or otherwise in connection with the transactions contemplated hereby or thereby.

(b) <u>Calculation of Ratable Shares</u>. For purposes of Section 5.04(a), the ratable shares of the Purchasers shall be determined in proportion to the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof) of their respective Reconciled EI and Unreconciled EI.

SECTION 5.05. <u>Successor Closing Agent</u>. Subject to the written acceptance of a successor Closing Agent as provided below in this Section 5.05, the Closing Agent may resign at any time (effective as provided below in this Section 5.05) by giving written notice thereof to the Purchasers and Argentina and may be removed at any time with or without cause by Argentina or by the Majority Purchasers. Upon any such removal or notice of resignation, Argentina shall have the right to appoint (such appointment to become effective as provided below) a successor Closing Agent which meets the requirements set forth below in this Section 5.05, and Argentina shall use its best efforts so to appoint a successor Closing Agent as promptly as practicable, and shall give notice of any such appointment to the Purchasers. If no successor Closing Agent shall have been so appointed by Argentina and shall have accepted such appointment within 30 days after such removal or notice of resignation, then the Majority Purchasers shall have the right to appoint (such appointment to be effective as provided below) a successor Closing Agent within 30 days from such initial 30 day

period. If no successor Closing Agent shall have been so appointed by either Argentina or the Majority Purchasers and shall have accepted such appointment within 60 days after such removal or notice of resignation, then the retiring Closing Agent may appoint, on behalf of Argentina and the Purchasers, a successor Closing Agent (such appointment to be effective as provided below). Any successor Closing Agent appointed pursuant to this Section 5.05 shall have offices in London and New York and shall be a commercial bank or trust company or an Affiliate thereof, having a combined capital and surplus of at least U.S.$1,000,000,000 or its equivalent in another currency or shall be a merchant bank affiliated with such a commercial bank. No appointment of a successor Closing Agent shall be effective if Argentina receives notice from the Majority Purchasers that they object to the appointment of such successor Closing Agent within 30 days after Argentina notifies them of such appointment; *provided* that the consent of the Majority Purchasers shall not be required if such successor Closing Agent is a member of the Working Committee for Argentina. No appointment of a successor Closing Agent by the Majority Purchasers or the retiring Closing Agent shall be effective without the written consent of Argentina, which shall not be unreasonably withheld; *provided further* that the consent of Argentina shall not be required if such successor Closing Agent is a member of the Working Committee for Argentina. Upon the acceptance by a successor Closing Agent of any appointment as Closing Agent hereunder and, in the case of any appointment by Argentina, the expiration of the 30-day period for objection by the Majority Purchasers and, in the case of any appointment by the Majority Purchasers or the retiring Closing Agent, the giving of consent to such appointment as described above by Argentina, such successor Closing Agent shall (a) succeed to and become vested with all the rights, powers, privileges and duties of the retiring Closing Agent, and upon (but only upon) such acceptance, the retiring Closing Agent shall be discharged from further responsibilities under this Agreement and (b) notify Argentina and the Purchasers thereof. The provisions of this Article V shall continue to inure to the benefit of the retiring Closing Agent as to any actions taken or omitted to be taken by it while it was Closing Agent under this Agreement.

SECTION 5.06. *Relationship Among Closing Agent, the Escrow Agent, the Promissory Note Agent and the Debt Agreement Agents*. The Closing Agent, the Escrow Agent, the Promissory Note Agent and each Debt Agreement Agent have independent and separate functions and duties under this

80

Agreement and the Debt Agreements. Each such entity may rely on each other such entity to perform its functions and duties, and no such entity shall be required to perform the functions and duties of any other such entity or to be responsible for the failure of any other such entity to perform its functions and duties.

# ARTICLE VI

## MISCELLANEOUS

SECTION 6.01. *Amendments, Etc.* Except as provided below, no amendment of any provision of this Agreement shall in any event be effective unless the same shall be in writing (including telex or telecopy) and signed by the Majority Purchasers and Argentina. Except as otherwise expressly provided below and in Sections 2.03 and 2.04 hereof, no waiver of any provision of this Agreement, nor consent to any departure by any party therefrom, shall in any event be effective unless the same shall be in writing (including telex or telecopy) and signed by the Majority Purchasers (in the case of a waiver or consent by the Purchasers), or by the party or parties entitled to give such waiver or consent (in the case of a waiver or consent by a party other than the Purchasers), and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, no amendment, waiver or consent:

   (i) shall do any of the following, unless in writing and signed by Argentina and Purchasers with at least 95% of the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof) of the aggregate amount, at the time of determination, of Reconciled EI and Unreconciled EI:

      (A) change the percentage of or the aggregate amount of Reconciled EI or Unreconciled EI, or the number of Purchasers, which shall be required for the Purchasers or any of them to take any action hereunder, except clause (ii) below or Section 2.03 or 2.04 hereof,

      (B) change Schedule B hereto,

      (C) change this clause (i), or

      (D) change any definition in this Agreement in such a way as to do anything referred to in subclauses (A) through (C) above;

*provided, however,* that, in the case of any matter of the type specified in subclauses (A) through (D) above that relates specifically to a Series of Floating Rate Bonds, any such amendment, waiver or consent shall be effective if in writing and signed by Argentina and:

82

      (1) Purchasers with at least 95% of the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof), at the time of determination, of Reconciled EI and Unreconciled EI to be exchanged for such Series of Floating Rate Bonds or with respect to which Floating Rate Bonds of such Series are to be escrowed, and

      (2) Purchasers with more than 50% of the U.S. Dollar equivalent (as so determined), at the time of determination, of Reconciled EI and Unreconciled EI to be exchanged for Floating Rate Bonds other than the Floating Rate Bonds of such Series or with respect to which Floating Rate Bonds other than Floating Rate Bonds of such Series are to be escrowed; or

  (ii) shall do any of the following, unless in writing and signed by all Purchasers:

      (A) subject the Purchasers to any additional obligations, including any additional obligations under Section 5.04(a) resulting from the waiver of the conditions precedent set forth in Section 2.03(e) or 2.04(b) hereof,

      (B) change this clause (ii), or

      (C) change any definition in this Agreement in such a way as to do anything referred to in subclause (A) or (B) above;

<u>provided</u> that no amendment, waiver or consent shall, unless in writing and signed by the Closing Agent in addition to the Purchasers required hereinabove to take such action and, if required, by Argentina, affect the rights or duties of the Closing Agent under this Agreement; <u>provided further</u> that any amendment, waiver or consent in writing and signed by any Purchaser adversely affected thereby and the Closing Agent shall be effective as to such Purchaser. Nothing in this Section shall prevent any Purchaser from subjecting itself to obligations additional to those specified in this Agreement. Notwithstanding the foregoing, (a) as items of Eligible Interest are reconciled prior to the Exchange Date or an Escrow Release Date, as the case may be, Schedule A hereto may be from time to time amended or otherwise modified by the mutual agreement of the relevant Debt Agreement Agent or the Promissory Note Agent, as the case may be, a Purchaser and the Closing Agent to include an item of Eligible Interest or any portion thereof of such Purchaser or otherwise modify

83

the amounts of Reconciled EI, Reconciled ECI, Unreconciled EI or Unreconciled ECI of a Purchaser; (b) once an item of Eligible Interest or any portion thereof has been included on Schedule A hereto, any omission, inconsistency or error in Schedule A hereto or any document or information in connection therewith with respect to any such item or portion thereof may be corrected by such Purchaser by notice to the Closing Agent received not later than the Reconciliation Cut-Off Date for the Exchange Date or an Escrow Release Date, as the case may be, <u>provided</u> that any such correction may not, without the consent of Argentina, modify the Reconciled ECI, Reconciled EI, Unreconciled EI, Unreconciled ECI or Bond Exchange Amount of such Purchaser or alter the percentage of such Purchaser's Reconciled EI allocated to each Series of Floating Rate Bonds, in each case, as indicated in the statement sent by the Closing Agent pursuant to Sections 2.05(b)(ii) and (iii) (as such statement may be modified by such Purchaser pursuant to Section 2.05(b)); (c) Schedule A may be amended to reduce a Purchaser's Reconciled ECI or Reconciled EI, as appropriate, in connection with the transfer of an interest in Eligible Interest by such Purchaser to a transferee which is an investor, or is holding such an interest on behalf of an investor, in a scheduled privatization or other debt conversion program pursuant to Section 6.10(c) hereof or the delivery of a debt conversion notice which the Closing Agent has accepted; and (d) this Agreement may be amended by Argentina and the Closing Agent, without the consent of any Purchaser, Debt Agreement Agent or the Promissory Note Agent, for the purpose of curing or clarifying any ambiguity or inconsistency or any defective provision contained herein or to add to or change any provisions of this Agreement that shall be necessary to facilitate the administration hereof or in any manner which the Closing Agent and Argentina may deem necessary or advisable; <u>provided</u>, <u>however</u>, that no such amendment which adversely affects any claim of any Purchaser to moneys hereunder or under any Bond Agreement, or which affects any right or obligation of any Debt Agreement Agent in its capacity as such under the Debt Agreement as to which it serves as Debt Agreement Agent, may be made without the consent of such affected Purchaser or Debt Agreement Agent.

SECTION 6.02.  <u>Notices, Etc.</u>  All notices and other communications provided for hereunder shall, unless otherwise stated herein, be in writing (including by telex or telecopy) and mailed, sent or delivered (a) as to each of Argentina, the Debt Agreement Agents, the Promissory Note Agent and the Closing Agent, at its addresses specified below, (b) as to each Purchaser, at the address of which such Purchaser shall notify the Closing Agent (which shall notify Argentina, and

84

any Purchaser so requesting, of each such address), and (c) as to each party, at such other address as shall be designated by such party from time to time in a notice to the Closing Agent (which shall notify Argentina, the Debt Agreement Agents, the Promissory Note Agent and any Purchaser so requesting of each such other address). All such notices and communications shall be given by hand, telex or telecopy; <u>provided</u> that, in the event that telex or telecopy facilities are not operational or generally not available between the cities in which the sender and the recipient of such notice and communications are located, such notices and communications may be given by mail or courier, but the sender shall use reasonable efforts to confirm notices or communications given by mail or courier as soon as telex or telecopy facilities shall become operational. All such notices and communications shall be effective when delivered by hand or, in the case of a mailed notice, upon the earlier of receipt and confirmation by telex, or facsimile transmission as provided below, or, in the case of facsimile transmission, when sent as addressed as set forth above, or, in the case of telex, when the telex is sent and the appropriate answerback is received, except that notices and communications to the Closing Agent pursuant to Article II and Section 6.01 hereof shall not be effective until received by the Closing Agent. All notices and communications delivered hereunder shall, unless submitted in the English language, be accompanied by a certified English translation thereof, which certified English translation shall (except in the case of laws, regulations or official determinations of Argentina or any Argentine Governmental Agency) be controlling absent manifest error in the case of any doubt as to the proper interpretation or construction of the document which it purports to translate. The addresses for Argentina, the Closing Agent, the Debt Agreement Agents and the Promissory Note Agent are set forth below:

    Address of Argentina:

        Ministry of Economy and
         Public Works and Services
        Secretariat of Domestic and
         External Financing
        Hipólito Yrigoyen 250
        Piso 4, Oficina 410
        (1310) Buenos Aires
        Argentina
        Attention: Subsecretaría de Financiamento
                   Externo
        Fax: (54-1) 331-9838
        TLX: 21952, ANSWERBACK: MINEC AR

with a copy to:

    Banco Central de la Republica Argentina
    Reconquista 266
    (1003) Buenos Aires
    Argentina
    Attention: Deuda Pública Externa
    Fax: (54-1) 334-6468
    TLX: 24200, ANSWERBACK: AR CTBAN

Address of the Closing Agent:

    Citibank, N.A.
    641 Lexington Avenue
    New York, NY 10022
    United States of America
    Attention: Agency Department
    Fax: (212) 688-9844
         (212) 421-1658
    TLX:
      WU Domestic: 6801437, ANSWERBACK: CITI CIB
                 or
      RCA International: 236066, ANSWERBACK: CIG WH

Address of the Debt Agreement Agents:

    Bank of New York
    1 Wall Street, 5th Floor
    New York, NY 10286
    Attn: Eleazar Castellanos
    Tel.: (212) 635-8345
    Fax: (212) 635-8395
    Attn: Gerard McAuley
    Tel.: (212) 635-7110
    Fax: (212) 635-7111
    TLX: 420268, ANSWERBACK: IRV UI

    Banque Nationale de Paris, Buenos Aires
    25 de Mayo 471/487
    Buenos Aires, Argentina
    Attn: Eric Oliviero/Silvia Parodi
    Tel.: (54-1) 311-4668/4659
    Fax: (54-1) 311-1368
    TLX: 9225, ANSWERBACK: BNP BA AR

Chemical Bank
c/o Chemical Investment Bank
The Adelphi
1-11 John Adam Street
London WC2N 6HT
U.K.
Attn:  Steve Hurford
       Chris Callaway
Tel.:  (44-71) 932-4422/3253/4238
Fax:   (44-71) 839-8381
TLX:   884901, ANSWERBACK: MAN LTD

Citibank, N.A.
641 Lexington Avenue, 7th Floor
New York, NY  10022
Attn:  Joe Kutzler/Susan Vetrovsky
Tel.:  (212) 559-0653/0090
Fax:   (212) 421-1658/308-5164/688-9844
TLX:   669830, ANSWERBACK: CITI CIB

Crédit Lyonnais
11, Rue de Marivaux
75002 Paris, France
Attn:  Mme. Wetzel/Michel Bachere
Tel.:  (33-1) 49.26.71.05/71.32
Fax:   (33-1) 49.26.71.77
TLX:   215807, ANSWERBACK: CLRES

Midland Bank plc
P.O. Box 181
27-32 Poultry
London EC2P 2BX
U.K.
Attn:  Christine Cox
       Brian Heslop
Tel.:  (44-71) 260-5362/5169
Fax:   (44-71) 260-4303
TLX:   892572, ANSWERBACK: MIDIFTG

Morgan Guaranty Trust Company of New York
500 Stanton Christiana Rd.
Newark, DE  19713
Attn:  Kevin McCaan
Tel.:  (302) 992-1850
Fax:   (302) 992-1852/72
TLX:   177615, ANSWERBACK: MGT UT

87

>     Royal Bank of Canada Europe Ltd.
>     71 Queen Victoria Street
>     London EC4V 4DE
>     U.K.
>     Attn: Diane White/Sarah Hood/
>           David Mayger
>     Tel.: (44-71) 489-1188
>     Fax:  (44-71) 329-6144
>     TLX:  851929111, ANSWERBACK: RBCCTY G

Address of Promissory Note Agent:

>     Morgan Guaranty Trust Company of New York
>     60 Wall Street, 10th Floor
>     New York, NY  10260
>     Attn: Juana Alvarez
>     Tel.: (212) 648-7468
>     Fax:  (212) 648-5069
>     Attn: Samuel Zona
>     Tel.: (212) 648-7469
>     Fax:  (212) 648-5069
>     TLX:  177615, ANSWERBACK: MGT UT

SECTION 6.03. **No Waiver; Cumulative Remedies.** No failure on the part of Argentina, any Purchaser or the Closing Agent to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right, all subject to the conditions and limitations of this Agreement. The rights and remedies herein provided are cumulative and not exclusive of any remedies provided by law.

SECTION 6.04. **Accounting Terms; Banking Terms.** (a) **Accounting Terms.** Any accounting term not specifically defined herein shall be construed in accordance with generally accepted United States accounting principles consistently applied, except as otherwise stated herein.

(b) **Banking Terms.** All banking terms not specifically defined herein shall be construed in accordance with general practice among international commercial banks in New York City and in London.

SECTION 6.05. **Costs, Expenses, Etc.** (a) **Documentation, Reconciliation and Collection Expenses, Etc.** Argentina agrees to pay:

> (i) all reasonable and documented costs and expenses, including reasonable counsel fees and expenses, of the Working Committee for Argentina in accordance with

88

the terms of the expense reimbursement agreement dated as of January 1, 1992;

(ii) all reasonable and documented costs and expenses of (A) the members of the Working Committee for Argentina and (B) in accordance with the terms of the agreement dated as of June 2, 1992, the Closing Agent in connection with the preparation, execution and initial delivery of this Agreement and the other Bond Agreements (including, without limitation, travel costs, communications costs, printing, reproduction, listing and delivery expenses and the reasonable fees and out-of-pocket expenses of special New York, Argentine and other counsel to the Working Committee for Argentina or the Closing Agent with respect thereto);

(iii) all reasonable and documented fees and out-of-pocket expenses of (A) each Debt Agreement Agent payable in accordance with each Debt Agreement to which it is a party and (B) each of the Debt Agreement Agents and the Promissory Note Agent in connection with its services relating to the reconciliation and confirmation of Eligible Interest, payable in accordance with the relevant agreement governing the payment and reimbursement of such fees and expenses;

(iv) all reasonable and documented costs and expenses of the Closing Agent (including, without limitation, all reasonable counsel fees and out-of-pocket expenses) incurred in connection with preserving any rights of the Purchasers generally or of the Closing Agent under this Agreement or any other Bond Agreement or obtaining legal advice in respect of the rights and responsibilities of the Purchasers or the Closing Agent generally hereunder or thereunder;

(v) all reasonable and documented out-of-pocket expenses of each Purchaser (including, without limitation, all reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with enforcing this Agreement or otherwise protecting its rights in the event of any failure by Argentina to comply with the provisions hereof;

(vi) all reasonable and documented out-of-pocket expenses of each Debt Agreement Agent and the Promissory Note Agent (including, without limitation, all reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with enforcing this Agreement or otherwise protecting its rights in the event of any failure by Argentina to comply with the provisions hereof; and

(vii) any and all liabilities, obligations, losses, damages, penalties, judgments, costs, expenses or disbursements of any kind or nature whatsoever which may be imposed on or incurred by the members of the Working Committee for Argentina, the Closing Agent, any Debt Agreement Agent or the Promissory Note Agent in any way relating to or arising out of this Agreement, any other Bond Agreement or any of the transactions contemplated by the 1992 Financing Plan or any action taken or omitted by the members of the Working Committee for Argentina, the Closing Agent, any Debt Agreement Agent or the Promissory Note Agent hereunder or thereunder;

provided that Argentina shall not be (A) liable for any such amount resulting from the gross negligence or willful misconduct of the Closing Agent, any Debt Agreement Agent, the Promissory Note Agent, any Purchaser or any member of the Working Committee for Argentina or (B) obligated to pay under this Section 6.05(a) any such amount which is included in calculating the Closing Agent's fees payable pursuant to Section 5.01(b) hereof or otherwise payable to the Closing Agent thereunder.

(b) <u>Payment of Expenses in Respect of Bonds</u>. Argentina agrees to pay (i) all reasonable and documented costs and expenses in connection with the preparation, printing, issue, sale, listing, and initial delivery of the Bonds (in global or definitive form); (ii) all reasonable and documented costs and expenses in connection with the preparation and printing of all documents relating to the issuance and sale of the Bonds under this Agreement; (iii) all reasonable and documented costs and expenses of listing the Bonds; (iv) all reasonable and documented fees and expenses incurred in connection with the exchange, if applicable, of interests in the Temporary Global Bearer Floating Rate Bonds for interests in the Permanent Global Bearer Floating Rate Bonds; (v) all reasonable and documented fees and expenses incurred in connection with the transfer and release of Escrowed Floating Rate Bonds and the endorsement of the U.S. Temporary Escrow Global Floating Rate Bond in connection with such transfer and release; and (vi) all fees and expenses incurred in connection with the exchange of beneficial interests in the Global Floating Rate Bonds for Bonds in definitive form in accordance with the provisions of the Fiscal Agency Agreement.

(c) <u>Subrogation</u>. If any Purchaser pays any amount which Argentina is obligated to pay to the Closing Agent, the Promissory Note Agent, any Debt Agreement Agent or any member of the Working Committee for Argentina hereunder, such

90

Purchaser shall be subrogated to the rights of the Closing Agent, any Debt Agreement Agent, the Promissory Note Agent or such member of the Working Committee for Argentina (as the case may be) against Argentina in respect of such amount. Nothing in this Section shall relieve Argentina of any liability under this Agreement to any party hereto.

(d) <u>Fees Relating to Reconciliation</u>. Argentina, the Closing Agent, the Promissory Note Agent and the Debt Agreement Agents hereby agree that no fee shall be imposed on any Purchaser in connection with the reconciliation and cancellation of any item of Eligible Debt or Eligible Interest other than fees payable in connection with the assignment of Eligible Debt.

(e) <u>Fees, Expenses and Indemnification of Escrow Agent</u>. Argentina agrees to pay all fees of the Escrow Agent as shall be specified in the Escrow Agreement and all reasonable and documented costs and expenses of the Escrow Agent (including, without limitation, all reasonable counsel fees and out-of-pocket expenses) incurred in connection with the performance of its duties as Escrow Agent and in preserving the interests of the Purchasers in the Floating Rate Bonds and cash in the Escrow Accounts. Argentina also agrees to indemnify the Escrow Agent for any liabilities imposed on such Escrow Agent in connection with its performance hereunder or under the Escrow Agreement, except for liabilities imposed as a result of the gross negligence or wilful misconduct of the Escrow Agent.

SECTION 6.06. <u>Taxes</u>. (a) <u>Payments Free and Clear</u>. Any and all payments by Argentina under this Agreement, any other Bond Agreement or the BCRA Undertaking shall be made free and clear of and without deduction for any and all present or future taxes, levies, assessments, imposts, deductions, charges or withholdings, and all liabilities with respect thereto, (i) imposed by Argentina (or any political subdivision or taxing authority thereof or therein or any organization or federation of which Argentina is at any time a member) (all such taxes, levies, assessments, imposts, deductions, charges, withholdings and liabilities being "<u>Argentine Taxes</u>") or (ii) imposed by any other jurisdiction (or any political subdivision or taxing authority thereof or therein or any organization or federation of which such jurisdiction is at any time a member) from or through which any payment under this Agreement, the Bonds, any other Bond Agreement or the BCRA Undertaking is made (all such taxes, levies, imposts, assessments, deductions, charges, withholdings and liabilities being "<u>Paying Agency Taxes</u>" and, together with the Argentine Taxes, the "<u>Applicable Taxes</u>"); <u>provided</u>,

however, that Applicable Taxes shall not include (i) Argentine Taxes that are (x) imposed on an Argentine Person or (y) imposed on a Person who is deemed to have a permanent establishment in Argentina to which this Agreement, any other Bond Agreement or the BCRA Undertaking and the income therefrom is attributable (unless this Agreement, any other Bond Agreement and the BCRA Undertaking are being held or booked or payments hereunder or thereunder are received in Argentina solely to enforce any rights under this Agreement, any other Bond Agreement or the BCRA Undertaking or exercise any rights hereunder or thereunder that otherwise would not, in the opinion of independent counsel of recognized standing, be exercisable or (ii) Paying Agency Taxes that (A) are imposed by reason of any connection between the Purchaser and the taxing jurisdiction other than entering into this Agreement or the other Bond Agreements, holding the Floating Rate Bonds or receiving payment thereon, (B) are required to be deducted or withheld by any Paying Agent from a payment under this Agreement, the other Bond Agreements or the BCRA Undertaking if such payment can be made without such deduction or withholding by any other Paying Agent or (C) would not have been imposed but for the presentation by the holder of a claim for payment under this Agreement, the other Bond Agreements or the BCRA Undertaking more than 30 days after the date on which such payment became due and payable or on which payment thereof was duly provided for, whichever occurs later. If Argentina, the BCRA, the Paying Agent or the Closing Agent shall be required by law to deduct any Applicable Taxes, from or in respect of any sum payable by it under this Agreement, any other Bond Agreement or the BCRA Undertaking:

(x) the sum payable shall be increased as may be necessary so that, after making all required deductions of such Applicable Taxes (including deductions of such Applicable Taxes applicable to additional sums payable under this Section), the Purchaser receives an amount equal to the sum it would have received had no such deductions of such Applicable Taxes been made,

(y) Argentina, the BCRA, the Paying Agent or the Closing Agent shall make such deductions, and

(z) Argentina, the BCRA, the Paying Agent or the Closing Agent shall pay the full amount deducted to the relevant taxing authority or other authority in accordance with applicable law.

(b) <u>Payment of Stamp Taxes</u>. In addition, Argentina agrees to pay any present or future stamp, court or

92

documentary taxes or any other excise or property taxes, charges or similar levies and any related interest or penalties incidental thereto imposed by Argentina or any political subdivision or taxing authority thereof or therein which arise from any payment made by Argentina or the Paying Agent hereunder or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, this Agreement, the other Bond Agreements or the BCRA Undertaking (hereinafter referred to as "Other Applicable Taxes").

(c) Reimbursement of Taxes Paid by Purchasers. Argentina will indemnify each Purchaser for the full amount of (i) Applicable Taxes and (ii) Other Applicable Taxes (including, without limitation, any Applicable Taxes or Other Applicable Taxes imposed on amounts payable under this Section) imposed in respect of Bonds acquired by such Purchaser pursuant to this Agreement and any liability (including penalties, interest and expenses) arising from such Applicable Taxes and Other Applicable Taxes or with respect thereto. This indemnity will be paid in respect of Applicable Taxes and Other Applicable Taxes imposed by Argentina whether or not such Applicable Taxes or Other Applicable Taxes were correctly or legally asserted. Any indemnification under this subparagraph (c) shall be made within 30 days from the date such Purchaser makes written demand to Argentina therefor. Each such demand shall be accompanied by a reasonably detailed certificate setting forth the specific reasons for which such Purchaser paid any amount in respect of which it seeks indemnification and the method by which such Purchaser calculated, and the calculation of, the amount in respect of which it seeks indemnification, which certificate shall be conclusive and binding for all purposes in the absence of manifest error.

(d) Tax Certificates. Within 30 days after the date of any payment of Applicable Taxes or Other Applicable Taxes by Argentina or a Paying Agent, Argentina or such Paying Agent will furnish to the Fiscal Agent the original or a certified copy of a receipt evidencing payment thereof. The Fiscal Agent shall furnish each Purchaser to which Argentina made (or is obligated to make) a payment that resulted in Applicable Taxes or Other Applicable Taxes with, if practicable, an original of such original or certified copy or, if insufficient originals are available for distribution, shall provide each such Purchaser with access to an original.

(e) Certain Tax Matters. Argentina hereby advises each Non-U.S. Purchaser that (a) Bonds in bearer form are

being issued in compliance with United States Treasury Regulation Section 1.163-5(c) and (b) such Non-U.S. Purchaser is subject to sanctions with respect to the disallowance of losses and preferential capital gains treatment under Sections 165(j) and 1287(a) of the Code, unless such Non-U.S. Purchaser either (i) is not a United States taxpayer, or (ii) if it is a United States taxpayer, (A) it is a "financial institution" within the meaning of United States Treasury Regulation Section 1.165-12(c)(1)(v) that complies with the requirements of Section 165(j)(3)(A), (B) or (C) of the Code and the Treasury regulations thereunder or (B) it holds the Bonds through a financial institution that agrees to comply and complies with the requirements of Section 165(j)(3)(A), (B) or (C) of the Code and the Treasury regulations thereunder.

SECTION 6.07. Consent to Jurisdiction; Waiver of Immunities. (a) Argentina hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court sitting in New York City, the High Court of Justice in London, any Federal court sitting in the City of Buenos Aires and any appellate court from any thereof, in any suit, action or proceeding arising out of or relating to the Bonds, this Agreement and the other Bond Agreements, and Argentina hereby irrevocably agrees that all claims in respect of such suit, action or proceeding may be heard and determined in such New York State or Federal court, in the High Court of Justice in London or any Federal court sitting in the City of Buenos Aires; provided that, for purposes of any interpleader commenced pursuant to Section 3.04 hereof, Argentina irrevocably submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York and any appellate court from such court. Argentina hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any such suit, action or proceeding and any objection to any such suit, action or proceeding whether on the grounds of venue, residence or domicile. A final judgment in any such suit, action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or any other matter provided by law.

(b) Argentina hereby irrevocably appoints (i) the New York office of Banco de la Nación Argentina (the "New York Process Agent"), with an office on the date hereof at 299 Park Avenue, 2nd Floor, New York, New York 10171, United States and, alternatively, hereby irrevocably appoints CT Corporation System, with an office on the date hereof at 1633 Broadway, 23rd Floor, New York, New York 10019, United States (the "Alternate New York Process Agent"), in each case, as

94

its agent to receive on behalf of Argentina and its property service of copies of the summons and complaint and any other process which may be served in any such suit, action or proceeding brought in such New York State or Federal court sitting in New York City and (ii) the London office of Banco de la Nación Argentina (the "London Process Agent", and together with the New York Process Agent, the "Process Agents"), with an office on the date hereof at Longbow House, 14-20 Chiswell Street, London EC1Y 4SD, England and, alternatively, hereby irrevocably appoints The Law Debenture Trust Corporation p.l.c., with an office on the date hereof at Princes House, 95 Gresham St., London EC2V 7LY, England (the "Alternate London Process Agent", and together with the Alternate New York Process Agent, the "Alternate Process Agents"), in each case, as its agent to receive on behalf of itself and its respective property service of a writ, summons, order, judgment or other document which may be served in any such suit, action or proceeding brought in the High Court of Justice in London. Service of any process may be served upon an Alternate Process Agent in lieu of the applicable Process Agent in any suit, action or proceeding in any New York State or Federal court sitting in New York City and the High Court of Justice in London if (i) at any time and for any reason it appears to the party attempting to serve the process that service of such process upon any Process Agent as provided above may be ineffective or may not be feasible and (ii) upon or before the serving of any process on any Alternate Process Agent, the Alternate Process Agent and Argentina are notified that service of such process is to be made on such Alternate Process Agent in accordance with the provisions of this sentence. Such service may be made by mailing or delivering a copy of such process to Argentina in care of the appropriate Process Agent or Alternate Process Agent at the address specified above for such Process Agent or Alternate Process Agent and, in the case of process served on an Alternate Process Agent, by depositing a copy of such process in the United States mails, addressed to Argentina at the address specified in Section 6.02 hereof (such service to be effective upon the delivery of such process to the Alternate Process Agent and the depositing of such process in the United States mails as aforesaid), and Argentina hereby irrevocably authorizes and directs such Process Agent or Alternate Process Agent to accept such service on its behalf. Failure of any Process Agent or Alternate Process Agent to give notice to Argentina or failure of Argentina to receive notice of such service of process shall not affect in any way the validity of such service on the Process Agent, the Alternate Process Agent or Argentina. As an alternative method of service, each party also irrevocably consents to the service of any and all

process in any such suit, action or proceeding in such New York State or Federal court sitting in New York City or the High Court of Justice in London by the mailing of copies of such process to such party at its address specified in Section 6.02 hereof. Argentina covenants and agrees that it shall take any and all reasonable action, including the execution and filing of any and all documents, that may be necessary to continue the designations of Process Agents and Alternate Process Agents above in full force and effect, and to cause each Process Agent and Alternate Process Agent to act as such.

(c) Except as provided in the proviso to Section 6.07(a) hereof (and as contemplated by Section 3.04(i) hereof), nothing in this Section 6.07 shall affect the right of any party to serve legal process in any other manner permitted by law or affect the right of any party to bring any action or proceeding against any other party or its property in the courts of other jurisdictions.

(d) To the extent that Argentina has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, Argentina hereby irrevocably waives such immunity in respect of its obligations under the Bonds, this Agreement and the other Bond Agreements, and, without limiting the generality of the foregoing, Argentina (A) agrees that the waivers set forth in this Section 6.07(d) shall have the fullest scope permitted under the Foreign Sovereign Immunities Act of 1976 of the United States and are intended to be irrevocable for purposes of such act; and (B) consents generally for the purposes of the State Immunity Act 1978 of the United Kingdom to the giving of any relief or the issue of any process. Notwithstanding the foregoing, Argentina shall not waive any such immunity (1) with respect to the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of Argentina or property owned by Argentina and located in its territory which is dedicated to the purpose of an essential public service.

SECTION 6.08. Judgment. (a) If for the purpose of obtaining judgment in any court it is necessary to convert a sum due hereunder to any party hereunder in one currency into

96

another currency, the parties hereto agree, to the fullest extent permitted by law, that the rate of exchange used shall be that at which in accordance with normal banking procedures such party could purchase the first currency with such other currency in New York City on the business day in New York two days prior to the day on which final judgment is rendered.

(b) To the fullest extent permitted by law, the obligation of any party in respect of any sum payable hereunder by it to any other party hereunder shall, notwithstanding any judgment in a currency (the "Judgment Currency") other than that in which such sum is denominated in accordance with the applicable provisions of this Agreement (the "Agreement Currency"), be discharged only to the extent that on the business day following receipt by such other party of any sum adjudged to be so due in the Judgment Currency such other party may in accordance with normal banking procedures purchase the Agreement Currency with the Judgment Currency; if the amount of the Agreement Currency which could have been so purchased is less than the sum originally due to such other party in the Agreement Currency, such first party agrees, as a separate obligation and notwithstanding any such judgment, to indemnify such other party against such loss, and, if the amount of the Agreement Currency which could have been so purchased exceeds the sum originally due to such other party, such other party agrees to remit to such first party such excess; provided that such Purchaser, Debt Agreement Agent, the Promissory Note Agent or the Closing Agent shall have no obligation to remit any such excess as long as Argentina shall have failed to pay such Purchaser, Debt Agreement Agent, the Promissory Note Agent or the Closing Agent, as the case may be, any obligations due and payable under this Agreement or any other Bond Agreement, in which case such excess may be applied to such obligations of Argentina hereunder and thereunder in accordance with the terms of this Agreement.

SECTION 6.09. Binding Effect; Termination; Partial Invalidity; Survival. (a) As each party executes this Agreement, this Agreement shall be binding on and inure to the benefit of such party and its successors and permitted assigns; provided, however, that the ratification of the anticipated Exchange Date contemplated in Section 2.05(a) shall not be given by the Closing Agent prior to the date on which such notice under the Principal Bond Exchange Agreement may be given as provided in Section 6.09(a) thereof; provided further, that this Agreement shall terminate in the event that the Principal Bond Exchange Agreement terminates as provided in Section 6.09(a) thereof. Notwithstanding the foregoing, all obligations of the Purchasers to exchange