98

Purchaser. The Closing Agent shall acknowledge any such change of Purchasing Office as soon as practicable after receiving notice thereof and, at the request of any Purchaser, shall confirm the location of such Purchaser's Purchasing Office as indicated in the records of the Closing Agent.

(b) Except as set forth in subsection (c) below, no Purchaser may transfer all or any portion of its interest in its Eligible Interest or any of its rights and obligations under this Agreement in respect of such interest in its Eligible Interest to any Person. Any purported transfer of any such interest or rights or obligations under this Agreement (other than as permitted in subsection (c) below) shall be null and void.

(c) Any Purchaser may, at any time after the Final Trading Date, transfer any interest in its Eligible Interest as a whole or in part to another Purchaser or financial institution which is an investor, or is holding Eligible Interest on behalf of an investor, in a scheduled privatization or other debt conversion program (a "Transferee") if (i) such transfer is recognized by the relevant Debt Agreement Agent at least 40 calendar days before the Exchange Date and (ii) such assignment is accompanied by a certificate in the form of Schedule G hereto executed by the Transferee thereof, in each case to the effect that such interest in its Eligible Interest will be submitted by such Transferee for cancellation in connection with such privatization or other debt conversion program. Any purported transfer of an interest in Eligible Interest which fails to comply with the requirements of this Section 6.10(c) shall be null and void as regards Argentina, any Debt Agreement Agent, the Promissory Note Agent and the Closing Agent.

(d) Argentina shall not assign any of its rights or obligations under this Agreement or any other Bond Agreement.

(e) As used in this Section, "transfer" means assign or otherwise transfer; and "rights" means any rights or other benefits.

SECTION 6.11. *Obligations of the Purchasers Several*. The obligations of the Purchasers hereunder are several. The failure of any Purchaser to carry out its obligations hereunder shall not relieve any other Purchaser, any Debt Agreement Agent, the Promissory Note Agent, the Closing Agent or Argentina of any of its respective obligations hereunder, nor shall any Purchaser, Debt Agreement Agent, the Promissory Note Agent or the Closing Agent be responsible for the obligations of, or any action

taken or omitted by, any other Purchaser hereunder. Each Purchaser shall be entitled to protect and enforce its rights arising out of this Agreement, and it shall not be necessary for any other Purchaser to be joined as an additional party in any proceedings for such purpose.

SECTION 6.12. <u>Calculation to Nearest Currency Unit</u>. Whenever any payments are to be made <u>pro rata</u> or any amount is to be divided equally, such proration or division shall be calculated to the nearest one U.S. Dollar.

SECTION 6.13. <u>Use of English Language</u>. Except as otherwise expressly provided herein, all certificates, reports, notices and other documents and communications given or delivered pursuant to this Agreement shall be in the English language or accompanied by an English translation thereof.

SECTION 6.14. <u>Computation of Percentages of Reconciled and Unreconciled EI and Reconciled and Unreconciled ECI</u>. Except as otherwise provided herein, for the purpose of calculating any percentage of the aggregate amount of the Reconciled EI, Reconciled ECI, Unreconciled EI or Unreconciled ECI or any <u>pro rata</u> or ratable shares to be determined in proportion to the amounts thereof during any calendar year, Reconciled EI, Reconciled ECI, Unreconciled EI or Unreconciled ECI in an Original Currency other than U.S. Dollars shall be translated into U.S. Dollars (a) on any Business Day prior to the Translation Rate Determination Date, at the average of the buy and sell spot rates of exchange for such Original Currency and U.S. Dollars at the close of business in London on the Business Day preceding such Business Day as quoted, in the absence of manifest error, by the <u>Financial Times</u> of London (or, if such rates are not so quoted, a comparable publication or source to be selected by the Closing Agent) and (b) on the Translation Rate Determination Date or any Business Day thereafter, at the Translation Rate for such Original Currency.

SECTION 6.15. <u>Table of Contents and Section Headings</u>. The table of contents and the headings herein are intended for convenience only and shall be ignored in construing this Agreement.

SECTION 6.16. <u>Execution in Counterparts; Copies; Agreement Solely for Benefit of Parties</u>. (a) <u>Execution in Counterparts; Copies</u>. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together

100

shall constitute one and the same agreement. Five complete sets of counterparts shall be delivered to Argentina and five complete sets of counterparts shall be delivered to and lodged with the Closing Agent. A composite conformed copy of this Agreement (including the Exhibits hereto) and the Closing Book identifying the parties executing this Agreement shall be delivered to Argentina and each Purchaser, Debt Agreement Agent and the Promissory Note Agent after the final Escrow Release Date.

(b) <u>Agreement Solely for Benefit of Parties</u>. This Agreement is solely for the benefit of the parties hereto, and no other Person shall be entitled to rely on, or is intended to receive any benefit under, this Agreement and the Escrow Agreement.

(c) No Person shall be permitted to execute this Agreement, and thereby become a Purchaser hereunder, after the Reconciliation Cut-Off Date for the Exchange Date without the consent of Argentina and the Closing Agent but in no event shall any Person be permitted to execute this Agreement after the Exchange Date.

SECTION 6.17. <u>Certain Purchasers that Are Holding Through Offshore Offices or that Are Offshore Offices</u>. (a) Schedule H lists certain Non-U.S. Purchasers that are exchanging their Eligible Interest through, and are acquiring their Bonds through, agency or custodial arrangements with branches located outside the United States ("<u>Offshore Offices</u>") of United States "financial institutions" (as defined in United States Treasury Regulation Section 1.165-12(c)(1)(v)). Each Non-U.S. Purchaser is exchanging its Eligible Interest through, and is acquiring its Bonds through, the Offshore Office indicated for such Non-U.S. Purchaser in Schedule H and has irrevocably instructed such Offshore Office that such Offshore Office shall (i) exchange such Non-U.S. Purchaser's Reconciled EI for Bonds, on the Exchange Date, each Escrow Release Date and in connection with an interpleader or otherwise, pursuant to Article II of this Agreement and pursuant to Section 2.05(g) hereof, effect the cancellation of the Eligible Interest of such Purchaser by authorizing the Closing Agent to instruct each Debt Agreement Agent to cancel the Eligible Interest of such Purchaser on such dates, (ii) receive Bonds acquired by such Non-U.S. Purchaser on the Exchange Date pursuant to Article II of this Agreement and (iii) hold such Bonds for the account of such Non-U.S. Purchaser until such Bonds are paid, redeemed, transferred or otherwise disposed of in a manner permitted by the Bonds and the Fiscal Agency Agreement; and in order for each such Non-U.S. Purchaser to exchange its beneficial interests in a Temporary Global Bearer Bond for beneficial interests in the related Permanent Global Bearer

101

Bond, the Offshore Office through which such Non-U.S. Purchaser holds such beneficial interests must make the certification specified in the first paragraph of Schedule B to the Fiscal Agency Agreement. If on the Non-U.S. Global Exchange Date such Offshore Office holds no beneficial interest in Bonds for the account of such Non-U.S. Purchaser, such Offshore Office hereby agrees, by executing this Agreement, it will comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Code and the Treasury regulations thereunder.

(b) Each Non-U.S. Purchaser that is an Offshore Office (i) acknowledges that in order to exchange its beneficial interests in a Temporary Global Bearer Bond for beneficial interest in the related Permanent Global Bearer Bond, it must make the certification specified in the first paragraph of Schedule B to the Fiscal Agency Agreement and (ii) agrees, by executing this Agreement, that if on the Non-U.S. Global Exchange Date such Offshore Office holds no beneficial interest in Bonds, such Offshore Office will comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Code and the Treasury regulations thereunder.

SECTION 6.18. GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written by their respective officials, officers or agents thereunto duly authorized.

THE REPUBLIC OF ARGENTINA

By_____
    Title:

CITIBANK, N.A.,
  as Closing Agent

By_____
    Title:

ANNEX I
TO FLOATING RATE BOND
EXCHANGE AGREEMENT

SIGNATURE PAGES FOR ALL PURCHASERS


[NAME OF PURCHASER]

By_____
   Title:

[NAME OF PURCHASER]

By_____
   Title:

ANNEX II
TO FLOATING RATE BOND
EXCHANGE AGREEMENT

## SIGNATURE PAGES FOR DEBT AGREEMENT AGENTS AND PROMISSORY NOTE AGENT

<u>Debt Agreement Agents</u>

THE BANK OF NEW YORK

By_____
    Title:

BANQUE NATIONALE DE PARIS, BUENOS AIRES

By_____
    Title:

CHEMICAL BANK

By_____
    Title:

CITIBANK, N.A.

By_____
    Title:

CREDIT LYONNAIS

By_____
    Title:

2

        MIDLAND BANK plc

        By_____
           Title:

        MORGAN GUARANTY TRUST
         COMPANY OF NEW YORK

        By_____
           Title:

        ROYAL BANK OF CANADA
          EUROPE LTD.

        By_____
           Title:

**Promissory Note Agent**

MORGAN GUARANTY TRUST
  COMPANY OF NEW YORK

By_____
    Title: