B-17

"Averaging Rate Bank" means, with respect to Deutsche Mark, the principal office of Dresdner Bank AG in Frankfurt/Main.

"Averaging Reference Bank" means, with respect to each Original Currency, the Reference Bank for such Original Currency designated by the letters AVG listed in paragraph (b) of Section B(1) of Part I.

"Business Day" means, for purposes of any currency conversion, any day other than a Saturday or Sunday on which commercial banks in the City of New York and, for each Original Currency converting into U.S. Dollars or Deutsche Mark, commercial banks in each city set forth opposite the applicable Original Currency listed in Section B 1(b) of Part I of this Schedule B, are not authorized or obligated by law or executive order to close.

"Conversion Agreement" has the meaning specified in Section A(3) of Part I.

"Conversion Currency" has the meaning specified in the Introduction hereof.

"Conversion Date" means an Initial Conversion Date or a Supplementary Conversion Date.

"Deutsche Mark Reference Banks" has the meaning specified in Section B(2) of Part III.

"Home Country Currency" means, with respect to any Lender, the national currency of the country under the laws of which such Lender is organized or, if such Lender so elects, the national currency of the country under the laws of which its Parent Bank is organized; provided that if such Lender is organized under the laws of Austria and does not have such a Parent Bank or if such Parent Bank is organized under the laws of Austria, the Home Country Currency of such Lender shall be Deutsche Mark. For purposes of this definition, "branch" or "other office" or "agency" of a Lender will be deemed to be the same entity as such Lender.

"Initial Conversion Date" has the meaning specified in Section A(2) of Part I.

B-18

"Initial Conversion Rates" has the meaning specified in the Introduction hereof.

"Initial Conversion Rate Determination Date" has the meaning specified in Section B(1) of Part I.

"Forward Rate" means, for U.S. Dollars or Deutsche Mark, the forward rate at which an amount in an Original Currency equivalent to at least U.S.$1 million or DMK 1,000,000, as the case may be, is or was offered in the foreign exchange markets by a relevant Reference Bank or Deutsche Mark Rate Reference Bank, as applicable, to prime banks which are actively engaged in such market at the time customarily used for setting foreign exchange rates in the city set forth opposite to such relevant Reference Bank listed in paragraph (b) of Section B(1) of Part I on the Translation Rate Determination Date, for delivery of U.S. Dollars or Deutsche Mark, as applicable, on a Conversion Date or the Exchange Date.

"Lender" means a holder of Eligible Interest or Eligible Debt.

"Original Currency" means, with respect to Eligible Interest or Eligible Debt (or portion thereof) to be exchanged for the Cash Payment, the Interest Reduction Cash Payment, Floating Rate Bonds or Principal Bonds in a currency different from the currency in which it was originally denominated, (i) in the case of Eligible Debt, the currency in which such Eligible Debt (or portion thereof) is denominated at the time that a Commitment Telex is submitted with respect to such Eligible Debt, as identified in the Supplemental Schedules for such Eligible Debt, and (ii) in the case of Eligible Interest, the currency in which such Eligible Interest is denominated in the statement distributed by the Closing Agent to each Lender which, based on information provided to the Closing Agent by the Debt Agreement Agents, summarizes the Eligible Interest held by such Lender.

"Parent Bank" means a single bank or other financial institution which owns, directly or indirectly, more than 50% of the issued and outstanding capital stock having ordinary voting rights of the Lender and which is itself not a subsidiary of any other bank or financial institution.

due and payable or on which payment thereof was duly provided for, whichever occurs later.  If Argentina, or a Paying Agent shall be required by law to deduct any Applicable Taxes from or in respect of any sum payable by it hereunder or under any of the Coupons appurtenant hereto:

(1)  the sum payable shall be increased as may be necessary so that after making all required deductions of such Applicable Taxes (including deductions of such Applicable Taxes applicable to additional sums payable under this Section), the holder of this Bond or any of the Coupons appurtenant hereto receives an amount equal to the sum it would have received had no such deductions of such Applicable Taxes been made;

(2)  Argentina or such Paying Agent shall make such deductions; and

(3)  Argentina or such Paying Agent shall pay the full amount deducted to the relevant taxing authority or other authority in accordance with applicable law.

(b)  Payment of Stamp Taxes.  In addition, Argentina agrees to pay any present or future stamp, court or documentary taxes or any other excise or property taxes, charges or similar levies and any related interest or penalties incidental thereto imposed by Argentina or any political subdivision or taxing authority thereof or therein which arise from any payment made by Argentina or a Paying Agent hereunder or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, the Bonds and the other Bond Agreements (hereinafter referred to as "Other Applicable Taxes").

(c)  Tax Certificates.  Within 30 days after the date of any payment of Applicable Taxes or Other Applicable Taxes by Argentina or a Paying Agent, Argentina or such Paying Agent will furnish to the Fiscal Agent the original or a certified copy of a receipt evidencing payment thereof. The Fiscal Agent shall furnish each such Bondholder to which Argentina made or is obligated to make a payment that resulted in such Applicable Taxes or Other Applicable Taxes with, if practicable, an original of such receipt or certified copy or, if insufficient originals are available for distribution, shall provide each such Bondholder with access to an original.

(d)  Survival.  Without prejudice to the survival of any other agreement of Argentina hereunder, the agreements and obligations of Argentina contained in this Paragraph 5

If Argentina shall purchase or otherwise acquire any Bond, such purchase or other acquisition shall not operate as or be deemed for any purpose to be a discharge or satisfaction of the indebtedness represented by such Bond until the provisions of clause 4(d)(B) above have been met.

5.  **Taxes; Payment of Additional Amounts**.

(a)  **Payments Free and Clear**.  Any and all payments by Argentina hereunder or under any of the Coupons appurtenant hereto shall be made free and clear of and without deduction for any and all present or future taxes, levies, assessments, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (i) imposed by Argentina (or any political subdivision or taxing authority thereof or therein or any organization or federation of which Argentina is at any time a member) (all such taxes, levies, imposts, deductions, charges, withholdings and liabilities being "**Argentine Taxes**") or (ii) imposed by any other jurisdiction (or any political subdivision or taxing authority thereof or therein or any organization or federation of which such jurisdiction is at any time a member) from or through which any payment hereunder is made (all such taxes, levies, imposts, deductions, charges, withholdings and liabilities being "**Paying Agency Taxes**" and, together with the Argentine Taxes, the "**Applicable Taxes**"); provided, however, that Applicable Taxes shall not include, (x) Argentine Taxes that are (A) imposed on an Argentine Person or (B) imposed on a Person who is deemed to have a permanent establishment in Argentina to which this Bond, and the income therefrom, is attributable (unless this Bond or any such Coupon, as the case may be, is being held or booked or payments hereunder are received in Argentina solely to enforce any rights hereunder that otherwise would not, in the opinion of independent counsel of recognized standing, be exercisable or (y) Paying Agency Taxes that (A) are imposed by reason of any connection between the Purchaser and the taxing jurisdiction other than entering into the Bond Agreements, holding the Bonds or receiving payment thereon, (B) are required to be deducted or withheld by any Paying Agent from payment of this Bond if such payment can be made without such deduction or withholding by any other Paying Agent or (C) would not have been imposed but for the presentation by the holder of this Bond or any of the Coupons appurtenant hereto for payment more than 30 days after the date on which such payment became

(vi)  For purposes of this Bond, a default in the payment of principal of, or interest on, the Bonds or any Other Bonds which has occurred shall be deemed to be continuing until Argentina has deposited, or caused to be deposited in accordance with Section 6(b) of the Fiscal Agency Agreement, or Section 5(b) of the USD Fiscal Agency Agreement or Section 5(b) of the DMK Fiscal Agency Agreement, as the case may be (or, in the case of the Principal Bonds, if the Collateral Agent (as defined in the Collateral Pledge Agreement) has deposited amounts with the Fiscal Agent in accordance with Section 4.04 of the Collateral Pledge Agreement with respect to such Principal Bonds) amounts sufficient to pay the principal and/or interest due on such Bonds or Other Bonds to the date of payment of such principal and/or interest.

(d)  _Repurchase of Bonds_.  Argentina or any Argentine Governmental Agency may for any consideration (whether in the form of cash, debt securities, investments, equity in privatized companies or otherwise) at any price and time repurchase Bonds and/or Coupons, by tender (available to all holders of Bonds and Other Floating Rate Bonds alike) or in the open market or otherwise; _provided_ in each case that:

(A)  neither Argentina nor any Argentine Governmental Agency (other than an Argentine Bank (i) for its trading account in the ordinary course of business or (ii) for the account of customers that are not Argentine Governmental Agencies) may, directly or indirectly, purchase Bonds for cash or any form of Indebtedness of Argentina or any Argentine Governmental Agency so long as a default in the payment of principal of, or interest on, any of the Bonds or the Other Bonds has occurred and is continuing; and

(B)  any definitive Bond purchased or otherwise acquired by, or on behalf of, Argentina must be surrendered to a non-U.S. office of the Fiscal Agent or a Paying Agent for cancellation and, if Argentina shall purchase or otherwise acquire any beneficial interest in a Global Bearer Bond, Argentina shall request Euroclear or Cedel, as the case may be, to cancel such beneficial interest and shall request the Fiscal Agent to direct the Common Depositary to reflect such cancellation of such beneficial interest on the Schedule to such Global Bearer Bond, each such surrender, or request for cancellation, to be made by Argentina promptly after such purchase or acquisition.

deposit such Bond together with all Coupons appertaining
thereto (whether the original Coupons attached thereto or
unattached Coupons identical as to date and amount) with the
Fiscal Agent or any Paying Agent located outside the United
States or, in the case of a holder of a beneficial interest
in a Global Bond, must irrevocably instruct Euroclear or
Cedel, as the case may be, as to its election and, in each
case, deliver to the Fiscal Agent a redemption notice
substantially in the form of Exhibit 3 to the Fiscal Agency
Agreement completed by such Bondholder or, in the case of a
Global Bond, by the Common Depositary, not less than 15 days
prior to the Mandatory Redemption Date.  No such election,
and no Bond so deposited, may be withdrawn without the prior
consent of Argentina and any Bond not so deposited or
beneficial interest not so transferred shall not be redeemed
under Paragraph 4(b) above.  If the holder of this Bond is
unable to deliver any unmatured Coupon appertaining hereto
(whether the original Coupon attached hereto or an unattached
Coupon which is identical as to date and amount), then such
Bond may not be redeemed under Paragraph 4(b) above.

      (iii)  From and after the redemption date for any
Bond (or portion thereof), if moneys for the redemption of
such Bond (or portion thereof) shall have been made available
as provided herein, such Bond (or portion thereof) shall
cease to bear interest (and no payment shall be made in
respect of any Interest Coupon appertaining to such Bond,
each of which shall be void), and the only right of the
holder of such Bond and Coupons appertaining thereto shall be
to receive payment of the redemption price, and in the case
of a Bond and Coupons appertaining thereto redeemed only in
part, to receive a new Bond for the portion thereof not
redeemed.

      (iv)  If the holder of this Bond upon a call for
redemption pursuant to Paragraph 4(a) hereof is unable to
deliver any unmatured Coupon appertaining hereto (whether the
original Coupon attached hereto or an unattached Coupon which
is identical as to date and amount) then such redemption may
be effected if such holder furnishes such security or
indemnity as Argentina and the Fiscal Agent may require to
save each of them harmless.

      (v)  After the redemption of any portion of this
Bond, Argentina shall deliver a duly executed and
authenticated new Bond to each holder of any such Bond, with
Interest Coupons and Principal Coupons attached reflecting
the new amortization schedule of such Bond.

defined in the Collateral Pledge Agreement) released to
Argentina since the Exchange Date as a result of the
cancellation of Principal Bonds, an amount equal to the sum
of the following:

>   (A)   in the case of any Collateral so released
>   consisting of cash, the amount thereof; and

>   (B)   in the case of any Principal Collateral (as
>   defined in the Collateral Pledge Agreement) or
>   Interest Collateral (as defined in the Collateral
>   Pledge Agreement) so released other than cash, the
>   aggregate net cash proceeds obtained from the sale
>   thereof.

(c)   <u>Redemption Procedures</u>.

(i)   Notice of any redemption of Bonds shall be
given by publication, not less than 30 nor more than 60 days
before the date fixed for redemption. Notice having been
given, the unpaid principal amount of each Bond (or portion
thereof) called for redemption pursuant to Paragraph 4(a)
above or submitted for redemption pursuant to Paragraph
4(c)(ii) below shall become due and payable on the date fixed
for redemption as provided herein upon presentation and
surrender of such Bond (together with all unmatured Coupons
appertaining thereto, subject to Paragraph 4(c)(iv) below) on
the date of redemption in accordance with the provisions for
payment of the scheduled final installment of principal in
Paragraph 2(a) hereof. In the case of any Bond redeemed only
in part, upon presentation of such Bond and surrender for
cancellation of the unmatured Coupons appertaining thereto a
new Bond with associated Coupons for the portion thereof not
redeemed shall be delivered in exchange therefor and, if
applicable, the final maturity date of which shall be
adjusted to give effect to such redemption and the
corresponding reduction in the unpaid principal of such
Bond. Any payments for the partial redemption of Bonds shall
be applied to the principal installments of, or Principal
Coupons appertaining to, such Bonds in the inverse order of
their maturities. Any redemption of all or a portion of a
principal installment of a Bond in accordance with this
Paragraph 4 will not affect the obligation of Argentina to
pay interest accrued to (but excluding) the redemption date
on such principal installment (or portion thereof) in
accordance with the terms of this Bond.

(ii)   Any Bondholder electing to redeem a Bond
subject to redemption under Paragraph 4(b) above, must

(b)  Mandatory Redemption of Bonds.  If Argentina shall voluntarily prepay, purchase or otherwise acquire for value, in whole or in part, earlier than contemplated by the original payment schedule therefor, any obligation to any Official Source (other than obligations owed directly to another government) incurred prior to the Exchange Date or in respect of which a commitment from any such Official Source was obtained and at least one disbursement thereunder was made prior to the Exchange Date (an "Official Credit"), then Argentina shall, in accordance with the procedures set forth in clause (c) below, designate the First Interest Payment Date falling at least 60 days after the date of such prepayment as the mandatory redemption date (a "Mandatory Redemption Date") and shall redeem on such Mandatory Redemption Date the Bonds and Other Floating Rate Bonds submitted for redemption, at par, without premium or penalty, in an amount equal to the product of the U.S. Dollar equivalent of the amount of such prepayment of such Official Credits multiplied by a fraction, the numerator of which is the unpaid principal amount of such Bond or Other Floating Rate Bond submitted for redemption, and the denominator of which is the aggregate unpaid principal amount of all Bonds and Other Floating Rate Bonds to be redeemed on the Mandatory Redemption Date; provided that (i) a repurchase by Argentina of amounts of its currency in response to a notification by the IMF made in accordance with the Articles of Agreement of the IMF and policies of the Executive Board of the IMF of general applicability to all members of the IMF, as reflected, when purchases are made by Argentina under a stand-by or other arrangement, in the text of such arrangements, shall not be considered a voluntary prepayment for purposes of this provision and (ii) the foregoing mandatory redemption obligation shall not arise by virtue of any voluntary prepayment of any Official Credit to the extent that such Official Credit is refinanced by funds advanced by any Official Source on terms more favorable to Argentina than those of the refinanced Official Credit; and provided further that the foregoing mandatory redemption obligation shall not arise by virtue of a voluntary prepayment of an Official Credit if and to the extent that, at the time of such voluntary prepayment, the aggregate amount of voluntary prepayments of Official Credits made by Argentina since the Exchange Date (other than voluntary prepayments under clauses (i) and (ii) of the foregoing proviso and voluntary prepayments which require mandatory redemptions under this provision) is less than or equal to the Proceeds Amount (as defined below) of Collateral (as defined in the Collateral Pledge Agreement) released since the Exchange Date as a result of the cancellation of Principal Bonds.  As used herein, "Proceeds Amount" means, for the Collateral (as

less than the entire amount of Bonds and Other Floating Rate Bonds (as defined herein) is redeemed, Bonds and Other Floating Rate Bonds shall be redeemed on a pro rata basis based on the outstanding principal amount of Bonds and Other Floating Rate Bonds.

As used in this Bond:

"Bond Agreements" means the Floating Rate Bond Exchange Agreement, the Fiscal Agency Agreement, the Floating Rate Bonds, the Obligor Consent, the BCRA Undertaking and all other documentation necessary for the exchange of Reconciled EI for the Floating Rate Bonds.

"Floating Rate Bonds" means the Floating Rate Bonds Series L Due 200_ issued by Argentina and the Floating Rate Bonds Series U Due 200_ issued by Argentina.

"Other Bonds" means the Other Floating Rate Bonds and the Principal Bonds.

"Other Floating Rate Bonds" means Floating Rate Bonds other than the Bonds.

"Principal Bond Agreements" means the Principal Bond Exchange Agreement, the USD Fiscal Agency Agreement, the DMK Fiscal Agency Agreement, each Collateral Pledge Agreement for the Principal Bonds, the Obligor Consent, the BCRA Undertaking and any other agreement or instrument or document delivered thereunder which may be necessary for the Exchange of Reconciled ED for Principal Bonds.

"Principal Bonds" means (i) the Collateralized Discount Series Bonds Due 202_, USD Series L and USD Series U, (ii) the Collateralized Par Series Bonds Due 202_, USD Series L, USD Series U and (iii) the DMK Par Series Bonds Due 202_ and the DMK Discount Series Bonds Due 202_, in each case, issued by Argentina.

"Registered Bonds" means Floating Rate Bonds in definitive registered form, substantially in the form of Exhibit 1B to the Floating Rate Bond Fiscal Agency Agreement.

"Series" means each of Series L and Series U of the Floating Rate Bonds.

Interest Amount for each Interest Period and the relevant Interest Payment Date to be published in accordance with the notice provisions contained herein as soon as possible after each Interest Determination Date but in no event later than the fifth Business Day thereafter.

(d)  Argentina agrees that, so long as any of the Bonds remains outstanding (or, if earlier, until all of the Bonds have become due and payable (whether at stated maturity, upon call for redemption or otherwise) and moneys for the payment thereof and all other amounts payable with respect to the Bonds shall have been made available at the corporate trust office of the Fiscal Agent), there shall at all times be three Reference Banks and a Calculation Agent. In the event that (i) any such bank is unable or unwilling to continue to act as a Reference Bank or the Calculation Agent (as the case may be) or (ii) in case the Calculation Agent fails duly to establish the Rate of Interest for any Interest Period, in accordance with the Fiscal Agency Agreement Argentina shall appoint another leading bank active in the London interbank market (other than BCRA or any Argentine Bank) to act as a Reference Bank or the Calculation Agent (as the case may be) in its place.  The Calculation Agent may not resign its duties without a successor having been appointed.

(e)  In the event that any principal or interest on this Bond, or any other amount payable hereunder is not paid when due, Argentina shall pay interest (to the extent permitted by applicable law) on such unpaid principal or interest or unpaid other amount from the date such principal or interest or other amount is due until the date such principal or interest or other amount is paid in full, payable on demand, at a rate per annum equal to the sum of 1% plus the Rate of Interest as determined from time to time in accordance with Paragraph 3(a) hereof.

4.  Redemption and Repurchase.

(a)  Optional Redemption of Bonds.  The Bonds may be redeemed, without premium or penalty, on any Interest Payment Date, at the option of Argentina, in whole or in part, upon notice as described below, at a redemption price equal to the principal amount thereof, together with the amount of interest accrued and unpaid as of the date of the redemption; provided, however, that no default in the payment of principal of, or interest on, any of the Bonds and the Other Bonds (as defined herein) has occurred and is continuing; provided further that if, at the time of such redemption,

Tokyo, Ltd. and Citibank, N.A.  The term "Reuters Screen LIBO Page" means the display designated as Page "LIBO" on the Reuters Monitor Money Rate Service ("Reuters") (or such other page as may replace, for the purpose of displaying London interbank offered rates of major banks, the LIBO page on that service).

As used herein, "Interest Period" means the period beginning on (and including) [ [11] ] and ending on (but excluding) the first Interest Payment Date and each successive period beginning on (and including) an Interest Payment Date and ending on (but excluding) the next succeeding Interest Payment Date.

(b)  The Calculation Agent will, as soon as possible after 11:00 A.M. (London time) on each Interest Determination Date, determine the Rate of Interest and calculate the amount of interest payable on each U.S.$1,000 (the "Minimum Multiple") in principal amount of Bonds (the "Interest Amount") for the relevant Interest Period.  The Interest Amount shall be calculated by (i) applying the Rate of Interest to the Minimum Multiple, (ii) multiplying such amount by the actual number of days in the Interest Period and (iii) dividing by 360 and rounding to the nearest whole cent.  The interest payable on principal amounts of Bonds shall be calculated by multiplying the Interest Amount by a fraction, the numerator of which is the principal amount of such Bond and the denominator of which is the Minimum Multiple and by rounding the resulting figure to the nearest U.S. Dollar (half a U.S. Dollar being rounded upwards).  The determination of the Rate of Interest and the Interest Amount by the Calculation Agent shall, in the absence of manifest error, be final and binding upon all parties.

(c)  The Calculation Agent will cause notice of the Rate of Interest and the Interest Amount for each Interest Period and the relevant Interest Payment Date to be given to the Fiscal Agent[, to the Luxembourg Stock Exchange or any other exchange on which the Bonds are listed (for so long as the Bonds are listed thereon)]12 and to Argentina and shall use its best efforts to cause the Rate of Interest and the

---

11.  Insert the date which is the earlier of the Exchange Date and March 31, 1993.

12.  Insert for Series L Bonds only.

the rate per annum at which deposits in U.S. Dollars for an interest period of six months commencing in two London Banking Days from the Interest Determination Date are offered by each of them to leading banks in the London interbank market in an amount substantially equal to U.S. $5,000,000 at 11:00 A.M. (London time) on such Interest Determination Date.  The Rate of Interest for such Interest Period shall, except as provided below, be 13/16% per annum above the average (rounded upward, if not a whole multiple of 1/16%, to the nearest 1/16%) of such offered quotations as determined by the Calculation Agent.

(ii)  If only two of the Reference Banks provide such offered quotations, the Rate of Interest for the relevant Interest Period shall be determined as described above on the basis of the offered quotations of those Reference Banks providing such quotations.

(iii)  If none or only one of the Reference Banks provides the Calculation Agent with an offered quotation, the Rate of Interest for the relevant Interest Period shall be the rate per annum which the Calculation Agent determines to be either (A) 13/16% per annum above the arithmetic mean of the U.S. Dollar lending rates which leading New York City banks, selected by the Calculation Agent after consultation with an Authorized Official of Argentina, are quoting at 11:00 A.M. (London time) on the Interest Determination Date for the relevant Interest Period to the principal London offices of the Reference Banks or those of them (being at least two in number) to which such quotations are, in the opinion of the Calculation Agent, being so made or (B) in the event that the Calculation Agent cannot obtain two such quotations, 13/16% per annum above the lowest U.S. Dollar lending rate which leading banks in New York City, selected by the Calculation Agent after consultation with an Authorized Official of Argentina, are quoting on the Interest Determination Date to leading international banks for the relevant Interest Period; provided that if the banks selected as aforesaid by the Calculation Agent are not providing the relevant quotations, the Rate of Interest for the next Interest Period shall be the Rate of Interest in effect for the last preceding Interest Period to which the above paragraphs shall have applied.

The term "Reference Banks" means the principal office in London of each of Lloyds Bank Plc, The Bank of

which is the stated maturity date of this Bond and (iii) the date on which the principal amount of this Bond is paid in full.   If an Interest Payment Date falls on any day which is not a Business Day, such Interest Payment Date will be postponed to the next day which is a Business Day unless such next succeeding Business Day occurs in a subsequent calendar month in which case such Interest Payment Date will be the next preceding Business Day.

As used herein, "<u>Business Day</u>" means a day on which (i) dealings are carried on in the London interbank market and (ii) banks are not required or authorized to close in New York City.

3.   <u>Rate of Interest</u>.

(a)   For purposes of calculating the rate of interest payable on the Bonds, Argentina, pursuant to the Fiscal Agency Agreement, has appointed Citibank, N.A. as Calculation Agent.   The rate of interest payable from time to time in respect of the Bonds (the "<u>Rate of Interest</u>") will be determined on the basis of the following provisions:

On the second London Banking Day (as defined below) (an "<u>Interest Determination Date</u>") before the commencement of an Interest Period (as defined herein), the Calculation Agent will determine the rate per annum at which deposits in U.S. Dollars for an interest period of six months commencing in two London Banking Days from the Interest Determination Date are offered by each of the banks named on the Reuters Screen LIBO Page to leading banks in the London interbank market as quoted on the Reuters Screen LIBO Page at 11:00 A.M. (London time) on such Interest Determination Date.   The Rate of Interest for such Interest Period shall, except as provided below, be 13/16% per annum above the average (rounded upward, if not a whole multiple of 1/16%, to the nearest 1/16%) of such offered quotations (being at least two) as displayed on the Reuters Screen LIBO Page and as determined by the Calculation Agent.   As used herein, "<u>London Banking Day</u>" means a day on which banks are open for business in London and dealings are carried on in the London interbank market.

If, on any Interest Determination Date, the Reuters Screen LIBO Page is not being displayed, or only one such offered quotation appears, then the following rule shall apply:

(i)   The Calculation Agent shall request the principal London office of each of the Reference Banks (as defined herein) to provide the Calculation Agent with

Ex. 1A, p. 7

thereof, at the specified office located outside the United States of any of the Paying Agents. Such payments of principal of and interest on this Bond will be made by check drawn on, or (at the option of any holder of at least U.S.$1,000,000 in aggregate principal amount of Bonds and/or Interest Coupons appertaining to such aggregate principal amount of Bonds) by wire transfer to an account maintained by the holder hereof with a bank in New York City or London. Notwithstanding anything to the contrary herein, Argentina shall appoint Paying Agents in the United States for payments in respect of this Bond if payment in U.S. Dollars at all Paying Agents outside the United States is illegal or effectively precluded by exchange controls or other similar restrictions on the full payment or receipt of such amounts in U.S. Dollars.

(b)  All payments with respect to this Bond will be made in such coin or currency of the United States of America as at the time of payment is legal tender therein for the payment of public and private debts.

(c)  If the due date for payment of any amount of principal of, or interest on, this Bond (or any additional amount under Paragraph 5 below relating thereto) is not a Business Day (or, in the case of any such payment at the office of a Paying Agent other than in London, is a day on which banks are required or authorized to close at such location), then payment need not be made until the next day which is a Business Day (or, in the case of any such payment at the office of a Paying Agent other than in London, which is a day on which banks are not required or authorized to close at such location), and the holder of this Bond or any Coupon appertaining hereto shall not be entitled to any further interest or other payment in respect of any such delay.

As used herein, "Interest Payment Date" means (i) [____[8]____], (ii) each successive [___[9]___] and [___[9]___] of each calendar year through [___[10]___], 200_,

---

8.  Insert the date which is the six-month anniversary of the earlier of the Exchange Date and March 31, 1993.

9.  Insert the dates which are, respectively, the 12-month and 18-month anniversaries of the earlier of the Exchange Date and March 31, 1993.

10. Insert the date which is the earlier of the 12th anniversary of the Exchange Date and March 31, 2005.

Principal Coupons and the holders of the Interest Coupons relating to the Bonds, whether or not such Principal Coupons and Interest Coupons are attached to such Bonds, will be entitled to the benefits of, be bound by, and be deemed to have notice of, all of the provisions of these terms and conditions and the Fiscal Agency Agreement. The Fiscal Agent is not a trustee for the Bondholders and does not have the same responsibilities or duty to act for the Bondholders as a trustee. Capitalized terms used in this Bond have the meanings specified in the Fiscal Agency Agreement unless otherwise defined herein.

(b) The definitive Bonds are issuable in bearer form, with Coupons attached, in denominations of U.S.$250,000 or other denominations permitted by the Fiscal Agency Agreement. The Bonds may not be subdivided or combined. Title to the Bonds, the Principal Coupons and the Interest Coupons shall pass by delivery.

(c) Argentina and each of the Agents may deem and treat the bearer of this Bond, any Principal Coupon or any Interest Coupon as the absolute owner thereof (whether or not such Bond, Principal Coupon or Interest Coupon shall be overdue and notwithstanding any notice of ownership or writing thereon or notice of any previous loss or theft thereof) for the purpose of receiving payment thereof or on account thereof and for all other purposes and neither Argentina nor any Agent shall be affected by any notice to the contrary.

(d) This Bond is the direct, general and unconditional obligation of Argentina, and the full faith and credit of Argentina is pledged for the due and punctual payment of the principal of, and interest on, this Bond and for the due and punctual performance of all obligations of Argentina with respect hereto.

2. Payments and Paying Agencies.

(a) Each payment in respect of this Bond will be made (i) in the case of principal, against presentation on or after the applicable Principal Payment Date and surrender for cancellation of the relevant Principal Coupons (together with this Bond in the case of the final installment of principal) or, in the case of the Permanent Global Bearer Bond, upon endorsement thereof, at the specified office located outside the United States of any of the Paying Agents, or (ii) in the case of interest, against presentation on or after the applicable Interest Payment Date and surrender for cancellation of the relevant Interest Coupons or, in the case of the Permanent Global Bearer Bond, upon endorsement

Ex. 1A, p. 5

[Form of Reverse of Bond]

TERMS AND CONDITIONS OF BONDS

1.    General.

(a)    This Bond is one of a Series of duly authorized Floating Rate Bonds in bearer form Due 200[6] (  [7]  ) of Argentina issued in definitive form and in the form of Global Bearer Bonds for such Series (the "Bonds") pursuant to the Floating Rate Bond Fiscal Agency Agreement dated as of _____, 199_ (as amended and in effect from time to time, the "Fiscal Agency Agreement") among Argentina, Citibank, N.A., as Fiscal Agent, Authenticating Agent, Paying Agent, Transfer Agent, Registrar and Calculation Agent and Citibank (Luxembourg) S.A., as Authenticating Agent, Paying Agent and Transfer Agent (said banks and their successors as such Fiscal Agents, Authenticating Agents, Paying Agents, and Calculation Agent being hereinafter called the "Fiscal Agent", "Authenticating Agent", "Paying Agent", and "Calculation Agent", respectively), the terms of which are hereby incorporated herein by reference.  Each Authenticating Agent, any Paying Agent, the Calculation Agent and the Fiscal Agent are hereinafter sometimes collectively called the "Agents".  Copies of (i) the Fiscal Agency Agreement and (ii) the Floating Rate Bond Exchange Agreement, dated as of _____, 199_, among Argentina, the Persons named therein as Purchasers, Citibank, N.A., as Closing Agent, the financial institutions named therein as Debt Agreement Agents and the Promissory Note Agent named therein are on file and available for inspection at the corporate trust offices of the Fiscal Agent in the Borough of Manhattan, City of New York and at such other offices of the Fiscal Agent as are from time to time designated as Paying Agents for the Bonds, and reference thereto is hereby made for a description of the rights and limitations of rights thereunder of the holders of the Bonds or the Coupons and the duties and immunities of the Agents.  The holders of the Bonds, the holders of the

---

6.    Insert the date which is the earlier of the 12th anniversary of the Exchange Date and March 31, 2005.

7.    Insert, for each Series, the Series designation (i.e.: Series L and Series U).

THIS BOND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES.

IN WITNESS WHEREOF, Argentina has caused this Bond to be duly executed with the manual or facsimile signatures of an Authorized Official in _____.

Dated: _____, 199__.


THE REPUBLIC OF ARGENTINA


By _____
    Title:


Certificate of Authentication:

This is one of the Bonds referred to in the within-mentioned Fiscal Agency Agreement.

CITIBANK, N.A., as          OR      CITIBANK
Authenticating Agent                (LUXEMBOURG) S.A., as
                                    Authenticating Agent


By _____             By _____
   Authorized Signatory                 Authorized Signatory

Dated: _____               Dated: _____

As used herein, "Principal Payment Date" means each ___[4]___ and ___[4]___ of each calendar year, commencing on ___[3]___. If a Principal Payment Date falls on any day which is not a Business Day, such Principal Payment Date will be postponed to the next day which is a Business Day unless such next succeeding Business Day occurs in a subsequent calendar month in which case such Principal Payment Date will be the next preceding Business Day.

Argentina further hereby unconditionally agrees to pay, interest semi-annually in arrears on the principal sum outstanding from time to time hereunder at the applicable Rate of Interest (as defined herein) on each Interest Payment Date commencing on ___[5]___, until the principal hereof shall have been paid in full or payment thereof duly provided for and to pay interest on overdue amounts of principal and interest hereunder as provided in the Terms and Conditions (as defined herein), but only, in the case of interest due on or before maturity, upon presentation and surrender for cancellation of the applicable interest coupons attached hereto (the "Interest Coupons" and, collectively with the Principal Coupons, the "Coupons") as set forth on the reverse hereof.

Reference is made to the further provisions set forth under the Terms and Conditions of the Bonds endorsed on the reverse hereof (the "Terms and Conditions"), which shall for all purposes have the same effect as though fully set forth at this place.

This Bond shall not be valid or obligatory until the certificate of authentication hereon shall have been duly signed by the Authenticating Agent under the Fiscal Agency Agreement (as defined herein).

---

4.   Insert the dates which are respectively the 12-month and 18-month anniversaries of the earlier of the Exchange Date and March 31, 1993.

5.   Insert the date which is 6 months following the earlier of the Exchange Date and March 31, 1993.

Ex. 1A, p. 2

surrender for cancellation of the principal coupons attached hereto (the "Principal Coupons") and, in the case of the principal coupon relating to the last installment of principal, together with the presentation of this Bond, as set forth on the reverse hereof, in 19 consecutive semiannual installments as set forth below, commencing on   [3]   and on each Principal Payment Date (as defined herein) thereafter through the nineteenth Principal Payment Date; provided that the last such installment shall be in the amount necessary to repay in full the amount of the Principal Amount outstanding on the last Principal Payment Date.

Payments of the Principal Amount shall be made on each Principal Payment Date in an amount equal to the product of (x) the unpaid principal amount of this Bond outstanding on such Principal Payment Date, without taking into account any mandatory or optional redemption, multiplied by (y) the amortization factor (expressed as a fraction) set forth below for such Principal Payment Date:

| Principal Payment Falling Due in: | Amortization Factor | Principal Payment ($) Per $1,000 Face Amount | | Principal Payment | Amortization Factor | Principal Payment ($) Per $1,000 Face Amount |
|---|---|---|---|---|---|---|
| [ ]*,  1996 | 1/100 | 10 | | [ ]*,  2001 | 8/72 | 80 |
| [ ]**, 1996 | 1/99 | 10 | | [ ]**, 2001 | 8/64 | 80 |
| [ ]*,  1997 | 1/98 | 10 | | [ ]*,  2002 | 8/56 | 80 |
| [ ]**, 1997 | 1/97 | 10 | | [ ]**, 2002 | 8/48 | 80 |
| [ ]*,  1998 | 1/96 | 10 | | [ ]*,  2003 | 8/40 | 80 |
| [ ]**, 1998 | 1/95 | 10 | | [ ]**, 2003 | 8/32 | 80 |
| [ ]*,  1999 | 1/94 | 10 | | [ ]*,  2004 | 8/24 | 80 |
| [ ]**, 1999 | 5/93 | 50 | | [ ]**, 2004 | 8/16 | 80 |
| [ ]*,  2000 | 8/88 | 80 | | [ ]*,  2005 | 8/8 | 80 |
| [ ]**, 2000 | 8/80 | 80 | | | | |

---

3.   Insert the date which is the third anniversary of the earlier of the Exchange Date and March 31, 1993.

*    Insert the month in which the first Principal Payment Date occurs.

**   Insert the month in which the six-month anniversary of the first Principal Payment Date occurs.

EXHIBIT 1A
to Floating Rate Bond
Exchange Agreement

[FORM OF BEARER FLOATING RATE BOND]

[Form of Face of Bond]

[ORIGINAL ISSUE DISCOUNT LEGEND, AS REQUIRED BY THE FISCAL
AGENCY AGREEMENT.]

THIS BOND IS SUBJECT TO CERTAIN SELLING RESTRICTIONS PROVIDED
IN THE FISCAL AGENCY AGREEMENT REFERRED TO IN PARAGRAPH 1 OF
THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS BOND.

ANY UNITED STATES PERSON (AS DEFINED IN THE UNITED STATES
INTERNAL REVENUE CODE) WHO HOLDS THIS OBLIGATION WILL BE
SUBJECT TO LIMITATIONS UNDER THE UNITED STATES INCOME TAX
LAWS, INCLUDING THE LIMITATIONS PROVIDED UNDER SECTIONS
165(j) AND 1287(a) OF THE INTERNAL REVENUE CODE.

[THIS BOND MAY NOT BE LISTED ON ANY STOCK EXCHANGE.]*

THE PRINCIPAL AMOUNT OF THIS BOND OUTSTANDING AT ANY TIME MAY
BE LESS THAN THE FACE AMOUNT HEREOF.

No. __-_____                           Principal Amount
                                            U.S.$[1]_____

REPUBLIC OF ARGENTINA

Floating Rate Bond Due 200_**
(____[2]____)

          THE REPUBLIC OF ARGENTINA ("Argentina"), for value
received, hereby unconditionally promises to pay to BEARER,
the principal sum of ___[1]___ [                              ]
UNITED STATES DOLLARS (U.S.$_____[1][_____]) (the
"Principal Amount"), on presentation and

---

*      Insert for Series U Bonds only.

**     Insert the earlier of the year in which the 12th
       anniversary of the Exchange Date occurs and the year
       2005.

1.     Insert face amount for odd-lot Bonds; insert $250,000
       for other Bonds.

2.     Insert, for each Series, the Series designation (i.e.:
       Series I and Series II)