## SCHEDULE I

### FORM OF CERTIFICATE OF CLOSING AGENT AS TO RECEIPT OF RECONCILIATION INFORMATION FROM A DEBT AGREEMENT AGENT

Citibank, N.A., as Closing Agent under the Floating Rate Bond Exchange Agreement, dated as of December ___, 1992 (the "Floating Rate Bond Exchange Agreement") hereby certifies, pursuant to Section 2.10(b) of the Floating Rate Bond Exchange Agreement, that it has received the attached information from [insert Debt Agreement Agent] with respect to the reconciliation of items of Eligible Interest and/or Eligible Contractual Interest.

IN WITNESS WHEREOF, the undersigned has caused this certificate to be executed as of _____, 199_.

CITIBANK, N.A.

Citibank Certificate No. ____.

By_____

## SCHEDULE J

## FORM OF CERTIFICATE OF ARGENTINA AS TO OBJECTION TO RECONCILIATION INFORMATION FROM A DEBT AGREEMENT AGENT

Pursuant to Section 2.10(b) of the Floating Rate Bond Exchange Agreement, dated as of December __, 1992, the Republic of Argentina hereby objects to the inclusion in Reconciled EI or Reconciled ECI, as the case may be, of items of Eligible Interest and/or Eligible Contractual Interest described in the information attached to Certificate No. ____ of the Closing Agent delivered pursuant to such Section 2.10(b).

IN WITNESS WHEREOF, the undersigned has caused this certificate to be executed as of _____, 199_.

REPUBLIC OF ARGENTINA

By BANCO CENTRAL DE LA
REPUBLIC ARGENTINA

Argentina Certificate No. ____.   By _____

Director

## SCHEDULE H

### PURCHASERS HOLDING THROUGH
### AN OFFSHORE OFFICE

Purchaser Name

*

---

\* List Purchasers holding
through an Offshore Office.

G-2

RE: ASSIGNMENT OF ELIGIBLE INTEREST COMMITTED TO THE REPUBLIC
OF ARGENTINA 1992 FINANCING PLAN TO BE SUBMITTED FOR
CANCELLATION IN A PRIVATIZATION.

WE REFER TO THE FLOATING RATE BOND EXCHANGE
AGREEMENT, DATED _____, 1992 (THE "BOND EXCHANGE
AGREEMENT") AMONG THE REPUBLIC OF ARGENTINA, THE PURCHASERS
PARTY THERETO, THE DEBT AGREEMENT AGENTS PARTY THERETO, THE
PROMISSORY NOTE AGENT AND CITIBANK, N.A., AS CLOSING AGENT.
TERMS USED HEREIN SHALL HAVE THE RESPECTIVE MEANINGS ASCRIBED
TO SUCH TERMS IN THE BOND EXCHANGE AGREEMENT AND IN THE
EXHIBITS AND SCHEDULES THERETO.

_____[INSERT NAME OF TRANSFEROR]_____ (THE "TRANSFEROR")
HAS TRANSFERRED TO THE TRANSFEREE ELIGIBLE INTEREST (EACH A
"CREDIT") UNDER THE DEBT AGREEMENTS DESCRIBED IN THE ATTACHED
JOINT COMMITMENT ASSUMPTION AGREEMENT DATED _____, 1992
EXECUTED BY THE TRANSFEROR AND THE TRANSFEREE AND IN THE
OTHER RELEVANT NOTICES AND AGREEMENTS REQUIRED TO BE
DELIVERED TO THE RELEVANT AGENT BANK UNDER SUCH DEBT
AGREEMENTS IN CONNECTION WITH THE TRANSFER OF SUCH CREDITS.

IN CONNECTION WITH SUCH TRANSFER, THE TRANSFEREE
HEREBY CERTIFIES TO EACH OF YOU THAT (1) THE [TRANSFEREE]
[OUR CLIENT, _____,] IS AN INVESTOR, OR IS HOLDING
ELIGIBLE INTEREST ON BEHALF OF AN INVESTOR, IN THE SCHEDULED
PRIVATIZATION OF [DESCRIBE ENTITY TO BE PRIVATIZED] (THE
"PRIVATIZATION") AND (2) EACH CREDIT DESCRIBED ON THE
ATTACHED JOINT COMMITMENT ASSUMPTION AGREEMENT WILL BE
SUBMITTED FOR CANCELLATION BY THE TRANSFEREE [ON ITS BEHALF]
[ON BEHALF OF ITS CLIENT, _____,] IN CONNECTION WITH
THE PRIVATIZATION. IN THIS REGARD, THE TRANSFEROR AND THE
TRANSFEREE SHALL PROVIDE THE RELEVANT DEBT AGREEMENT AGENTS
AND THE CLOSING AGENT WITH THE NECESSARY INFORMATION TO
IDENTIFY EACH ITEM OF ELIGIBLE INTEREST WHICH HAS BEEN OR
WILL BE SUBMITTED FOR CANCELLATION BY THE TRANSFEREE IN
CONNECTION WITH A SCHEDULED PRIVATIZATION.

_____, AS TRANSFEREE

BY: _____
    TITLE: _____

DATE: _____, 1992

SCHEDULE G
to Floating Rate Bond
Exchange Agreement

FORM OF CERTIFICATE OF TRANSFEREE
REQUIRED UNDER SECTION 6.10(C)

TO: [NAME OF AGENT OR SYNDICATE AGENT], AS [SYNDICATE] AGENT
    ATTENTION: _____
    TELEX: _____
    TELECOPIER:

CC: CITIBANK, N.A., AS CLOSING AGENT

    ATTENTION: CHARLOTTE BENTLIF
               LINDA COPOLUS
               ELAINE ROKAW

    TELEX:     RCA INTL 236060
               WUD 6801437
               WUI 661934
               WUI 662528
               WUI 662409
               WUI 669830

    TELEFAX:   (212) 688-9844
               (212) 308-5164
               (212) 421-1658

CC: REPUBLIC OF ARGENTINA
    C/O BANCO CENTRAL DE LA REPUBLICA ARGENTINA

    ATTENTION: HUGO SECONDINI

    TELEX:     39023942
               39024200
               39024634
               39024429
               39024031
               39024035

    TELEFAX:   (54-1) 394-9030

FROM: _____ (THE "TRANSFEREE")

DATE: _____, 1992

2

8.  Amendment to Autopistas Urbanas, S.A. 1987 Guaranteed
    Refinancing Agreement dated the date hereof among
    Autopistas Urbanas, S.A., as borrower, Argentina, as
    guarantor, BCRA, the banks listed on the signature pages
    thereof and Midland Bank plc, as syndicate agent,
    amending the AUSA GRA; and

9.  Amendments to Public Sector Onlending Agreements.

SCHEDULE F
to Floating Rate Bond
Exchange Agreement

## AMENDMENTS TO DEBT AGREEMENTS

1. Amendment dated the date hereof among BCRA, as borrower, Argentina, as guarantor, the financial institutions listed on the signature pages thereof and Citibank, N.A., as agent, amending (i) the 1983 TCA, (ii) the 1985 TCA and (iii) the 1987 TCA;

2. Amendment dated the date hereof among Argentina, as borrower, BCRA, the financial institutions listed on the signature pages thereof and Citibank, N.A., as agent amending the 1987 Co-Financing Agreement;

3. Amendment to 1987 Guaranteed Refinancing Agreement dated the date hereof among Argentina, as guarantor, BCRA, the banks listed on the signature pages thereof and the syndicate agents listed on the signature pages thereof, amending the 1987 GRA;

4. Amendment to Banco de la Nación Argentina 1987 Refinancing Agreement dated the date hereof among Banco de la Nación Argentina, as borrower, BCRA, the banks listed on the signature pages thereof and Manufacturers Hanover Limited London, as syndicate agent, amending the 1987 BNA Refinancing Agreement;

5. Amendment to Banco de la Provincia de Buenos Aires 1987 Refinancing Agreement dated the date hereof among Banco de la Provincia de Buenos Aires, as borrower, the banks listed on the signature pages thereof and The Bank of New York, as agents, amending the 1987 Provincia Refinancing Agreement;

6. Amendment to Alianza Naviera Argentina, S.A. 1987 Guaranteed Refinancing Agreement dated the date hereof among Alianza Naviera Argentina, S.A., as borrower, Argentina, as guarantor, BCRA, the banks listed on the signature pages thereof and The Bank of New York, as syndicate agent, amending the Alianza Naviera GRA;

7. Amendment to Comision Tecnica Mixta de Salto Grande 1987 Guaranteed Refinancing Agreement dated the date hereof among Comision Tecnica Mixta de Salto Grande, as borrower, Argentina, BCRA, the banks listed on the signature pages thereof and The Bank of New York as syndicate agent, amending the Salto Grande GRA;

plus the Rate of Interest as determined from time to time in accordance with Paragraph 3(a) hereof.

### 4. Redemption and Repurchase.

(a) Optional Redemption of Bonds. The Bonds may be redeemed, without premium or penalty, on any Interest Payment Date, at the option of Argentina, in whole or in part, upon notice as described below, at a redemption price equal to the principal amount thereof, together with the amount of interest accrued and unpaid as of the date of the redemption; provided however that no default in the payment of principal of, or interest on, any of the Bonds and the Other Bonds (as defined herein) has occurred and is continuing; provided further that if, at the time of such redemption, less than the entire amount of Bonds and Other Floating Rate Bonds (as defined herein) is redeemed, Bonds and Other Floating Rate Bonds shall be redeemed on a pro rata basis based on the outstanding principal amount of Bonds and Other Floating Rate Bonds.

As used in this Bond:

"Bond Agreements" means the Floating Rate Bond Exchange Agreement, the Floating Rate Bonds, the Fiscal Agency Agreement, the Obligor Consent, the BCRA Undertaking and all other documentation necessary for the exchange of Reconciled EI for the Floating Rate Bonds.

"Floating Rate Bonds" means the Floating Rate Bonds Series L Due 200_ issued by Argentina and the Floating Rate Bonds Series U Due 200_ issued by Argentina.

"Other Bonds" means the Other Floating Rate Bonds and the Principal Bonds.

"Other Floating Rate Bonds" means the Floating Rate Bonds other than the Bonds.

"Principal Bond Agreements" means the Principal Bond Exchange Agreement, the USD Fiscal Agency Agreement, the DMK Fiscal Agency Agreement, each Collateral Pledge Agreement for Principal Bonds, the Obligor Consent, the BCRA Undertaking and any other agreement or instrument or document delivered thereunder which may be necessary for the exchange of Reconciled ED for the Principal Bonds.

"Principal Bonds" means (i) the Collateralized Discount Bonds Due 202_, USD Series L and USD Series U, (ii) the Collateralized Par Bonds Due 202_, USD Series L and USD Series U and (iii) DMK Discount Series Bonds Due 202_ and the DMK Par Series Bonds Due 202_, in each case, issued by Argentina.

by the Calculation Agent shall, in the absence of manifest error, be final and binding upon all parties.

(c)   The Calculation Agent will cause notice of the Rate of Interest and the Interest Amount for each Interest Period and the relevant Interest Payment Date to be given to the Fiscal Agent [, to the Luxembourg Stock Exchange or any other exchange on which the [Series L][15A] Bonds [for which this Bond is exchangeable in accordance with the terms of the Fiscal Agency Agreement][15A] are listed (for so long as the Bonds are listed thereon)][15] and to Argentina and shall use its best efforts to cause the Rate of Interest and the Interest Amount for each Interest Period and the relevant Interest Payment Date to be published in accordance with the notice provisions contained herein as soon as possible after each Interest Determination Date but in no event later than the fifth Business Day thereafter.

(d)   Argentina agrees that, so long as any of the Bonds remains outstanding (or, if earlier, until all of the Bonds have become due and payable (whether at stated maturity, upon call for redemption or otherwise) and moneys for the payment thereof and all other amounts payable with respect to the Bonds shall have been made available at the corporate trust office of the Fiscal Agent), there shall at all times be three Reference Banks and a Calculation Agent. In the event that (i) any such bank is unable or unwilling to continue to act as a Reference Bank or the Calculation Agent (as the case may be) or (ii) in case the Calculation Agent fails duly to establish the Rate of Interest for any Interest Period, in accordance with the Fiscal Agency Agreement Argentina shall appoint another leading bank active in the London interbank market (other than BCRA or any Argentine Bank) to act as a Reference Bank or Calculation Agent (as the case may be) in its place.   The Calculation Agent may not resign its duties without a successor having been appointed.

(e)   In the event that any principal or interest on this Bond, or any other amount payable hereunder, is not paid when due, Argentina shall pay interest (to the extent permitted by applicable law) on such unpaid principal or interest or unpaid other amount from the date such principal or interest or other amount is due until the date such principal or interest or other amount is paid in full, payable on demand, at a rate per annum equal to the sum of 1%

---

15.   Insert for Series L Bonds and U.S. Temporary Escrow Global Registered Bond only.

15A.  Insert for U.S. Temporary Escrow Global Registered Bond.

Ex. 1B, p. 10

the Calculation Agent cannot obtain at least two such
quotations, 13/16% per annum above the lowest U.S. Dollar
lending rate which leading banks in New York City,
selected by the Calculation Agent after consultation with
an Authorized Official of Argentina, are quoting on the
Interest Determination Date to leading international
banks for the relevant Interest Period; provided that if
the banks selected as aforesaid by the Calculation Agent
are not providing the relevant quotations, the Rate of
Interest for the next Interest Period shall be the Rate
of Interest in effect for the last preceding Interest
Period to which the above paragraphs shall have applied.

    The term "Reference Banks" means the principal
office in London of each of Lloyds Bank Plc, The Bank of
Tokyo, Ltd. and Citibank, N.A.  The term "Reuters Screen LIBO
Page" means the display designated as Page "LIBO" on the
Reuters Monitor Money Rate Service ("Reuters") (or such other
page as may replace, for the purpose of displaying London
interbank offered rates of major banks, the LIBO page on that
service).

    As used herein, "Interest Period" means the period
beginning on (and including) [  [14]  ] and ending on (but
excluding) the first Interest Payment Date and each
successive period beginning on (and including) an Interest
Payment Date and ending on (but excluding) the next
succeeding Interest Payment Date.

    (b)  The Calculation Agent will, as soon as possible
after 11:00 A.M. (London time) on each Interest Determination
Date, determine the Rate of Interest and calculate the amount
of interest payable on each U.S.$1,000 (the "Minimum
Multiple") in principal amount of Bonds (the "Interest
Amount") for the relevant Interest Period.  The Interest
Amount shall be calculated by (i) applying the Rate of
Interest to the Minimum Multiple, (ii) multiplying such
amount by the actual number of days in the Interest Period
and (iii) dividing by 360 and rounding to the nearest whole
cent.  The interest payable on principal amounts of Bonds
shall be calculated by multiplying the Interest Amount by a
fraction, the numerator of which is the principal amount of
such Bond and the denominator of which is the Minimum
Multiple, and by rounding the resulting figure to the nearest
U.S. Dollar (half a U.S. Dollar being rounded upwards).  The
determination of the Rate of Interest and the Interest Amount

14.  Insert the date which is the earlier of the Exchange
     Date and March 31, 1993.

quoted on the Reuters Screen LIBO Page at 11:00 A.M. (London time) on such Interest Determination Date. The Rate of Interest for such Interest Period shall, except as provided below, be 13/16% per annum above the average (rounded upward, if not a whole multiple of 1/16%, to the nearest 1/16%) of such offered quotations (being at least two) as displayed on the Reuter's Screen LIBO Page and as determined by the Calculation Agent. As used herein, "London Banking Day" means a day on which banks are open for business in London and dealings are carried on in the London interbank market.

If, on any Interest Determination Date, the Reuters Screen LIBO Page is not being displayed, or only one such offered quotation appears, then the following rule shall apply:

(i) The Calculation Agent shall request the principal London office of each of the Reference Banks (as defined herein) to provide the Calculation Agent with the rate per annum at which deposits in U.S. Dollars for an interest period of six months commencing in two London Banking Days from such Interest Determination Date are offered by each of them to leading banks in the London interbank market in an amount substantially equal to U.S.$5,000,000 at 11:00 a.m. (London time) on such Interest Determination Date. The Rate of Interest for such Interest Period shall, except as provided below, be 13/16% per annum above the average (rounded upward, if not a whole multiple of 1/16%, to the nearest 1/16%) of such offered quotations as determined by the Calculation Agent.

(ii) If only two of the Reference Banks provide such offered quotations, the Rate of Interest for the relevant Interest Period shall be determined as described above on the basis of the offered quotations of those Reference Banks providing such quotations.

(iii) If none or only one of the Reference Banks provides the Calculation Agent with an offered quotation, the Rate of Interest for the relevant Interest Period shall be the rate per annum which the Calculation Agent determines to be either (A) 13/16% per annum above the arithmetic mean of the U.S. Dollar lending rates which leading New York City banks, selected by the Calculation Agent after consultation with an Authorized Official of Argentina, are quoting at 11:00 a.m. (London time) on the Interest Determination Date for the relevant Interest Period to the principal London offices of the Reference Banks or those of them (being at least two in number) to which such quotations are, in the opinion of the Calculation Agent, being so made or (B) in the event that

at the office of a Paying Agent other than in London or New York City, which is a day on which banks are not required or authorized to close at such location), and the holder of this Bond shall not be entitled to any interest or other payment in respect of any such delay.

As used herein, "Interest Payment Date" means (i) [____[11]____]; (ii) each successive [___[12]___] and [____[12]____] of each calendar year through [____[13]____], 200_, which is the stated maturity of this Bond and (iii) the date on which the principal amount of this Bond is paid in full. If an Interest Payment Date falls on any day which is not a Business Day, such Interest Payment Date will be postponed to the next day which is a Business Day unless such next succeeding Business Day occurs in a subsequent calendar month in which case such Interest Payment Date will be the next preceding Business Day.

As used herein, "Business Day" means a day on which (i) dealings are carried on in the London interbank market and (ii) banks are not required or authorized to close in New York City.

3.  Rate of Interest.

(a)  For purposes of calculating the rate of interest payable on the Bonds, Argentina, pursuant to the Fiscal Agency Agreement, has appointed Citibank N.A. as Calculation Agent. The rate of interest payable from time to time in respect of the Bonds (the "Rate of Interest") will be determined on the basis of the following provisions:

On the second London Banking Day (as defined below) (an "Interest Determination Date") before the commencement of an Interest Period (as defined herein), the Calculation Agent will determine the rate per annum at which deposits in U.S. Dollars for an interest period of six months commencing in two London Banking Days from such Interest Determination Date are offered by each of the banks named on the Reuters Screen LIBO Page to leading banks in the London interbank market as

---

11.  Insert the date which is the 6-month anniversary of the earlier of the Exchange Date and March 31, 1993.

12.  Insert the dates which are respectively the 12-month and 18-month anniversaries of the earlier of the Exchange Date and March 31, 1993.

13.  Insert the date which is the 12th anniversary of the earlier of the Exchange Date and March 31, 1993.

Ex. 1B, p. 7

(b)  Interest payable on this Bond on an Interest Payment Date (as defined below) will (except as provided in subparagraph (c) below) be paid to the holder of record of this Bond at the close of business in New York City on the record date for such Interest Payment Date by check mailed by the Fiscal Agent to the last address for such holder appearing on the register of Bonds or (at the option of each holder of at least U.S.$1,000,000 principal amount of Bonds) by wire transfer to an account with a bank in New York City or London designated by such holder by the record date for such Interest Payment Date.  The record date for each Interest Payment Date will be the 15th day before such Interest Payment Date.

(c)  If and to the extent Argentina shall default in the payment of (i) the principal due on any Principal Payment Date and such default shall not be cured within 30 days or (ii) the interest due on any Interest Payment Date and such default shall not be cured within 30 days (unless such overdue principal or interest is paid together with principal of this Bond in full other than on an Interest Payment Date), such overdue principal or interest shall be paid to the person in whose name this Bond is registered at the close of business in New York City on a subsequent record date (which shall be not less than five Business Days (as defined herein) before the date of payment of such overdue principal or interest) established by notice given by mail and publication by or on behalf of Argentina to Bondholders not less than 15 days before such subsequent record date.  If overdue principal or interest is paid together with principal in full on a date which is not a Principal Payment Date or an Interest Payment Date, as the case may be, such interest shall be paid upon presentation and surrender of this Bond (or, in the case of the Non-U.S. Permanent Registered Global Bond, upon presentation for endorsement) to the Fiscal Agent in New York City as provided in subparagraph (a) above.

(d)  All payments with respect to this Bond will be made in such coin or currency of the United States of America as at the time of payment is legal tender therein for the payment of public and private debts.

(e)  If the due date for payment of any amount of principal of, or interest on, this Bond (or any additional amounts under Paragraph 5 below relating thereto) is not a Business Day (or, in the case of any such payment at the office of a Paying Agent outside New York or London, is a day on which banks are required or authorized to close at such location), then payment need not be made until the next day which is a Business Day (or, in the case of any such payment

the Bonds and the duties and immunities of the Agents.  The
Bondholders will be entitled to the benefits of, be bound by,
and be deemed to have notice of, all of the provisions of the
Terms and Conditions and the Fiscal Agency Agreement.  The
Fiscal Agent is not a trustee for the Bondholders and does
not have the same responsibilities or duty to act for the
Bondholders as a trustee.  Capitalized terms used in this
Bond have the meanings specified in the Fiscal Agency
Agreement unless otherwise defined herein.

(b)   The definitive Bonds are issuable as fully
registered Bonds, without coupons, in denominations of
U.S.$250,000 and multiples of U.S. $250,000 in excess thereof
or in other denominations as permitted by the Fiscal Agency
Agreement.  The Bonds are issued only as whole Bonds that
include all interest and principal components and may not be
separated, directly or indirectly, into component interest
and principal portions.

(c)   This Bond is the direct, general and
unconditional obligation of Argentina, and the full faith and
credit of Argentina is pledged for the due and punctual
payment of the principal of, and interest on, this Bond and
for the due and punctual performance of all obligations of
Argentina with respect hereto.

2.   Payments and Paying Agencies.

(a)   The principal of this Bond will be paid by
Argentina, when due on each of the Principal Payment Dates,
to the holder of record of this Bond at the close of business
in New York City on the record date for such Principal
Payment Date and on the last Principal Payment Date (in the
case of the last Principal Payment Date, against presentation
and surrender hereof or, in the case of the Non-U.S.
Permanent Global Registered Bond, upon presentation on or
after the applicable Principal Payment Date of the Non-U.S.
Permanent Global Registered Bond for endorsement) at the
office of the Fiscal Agent, and at the offices of such other
Paying Agents as Argentina may appoint from time to time, by
check drawn on, or (at the option of any holder of at least
U.S.$1,000,000 in aggregate principal amount of Bonds) by
wire transfer to an account maintained by the registered
holder hereof with a bank in London or New York City.  The
record date for each Principal Payment Date will be the 15th
day before such Principal Payment Date.  Argentina has
initially appointed the principal offices of Citibank, N.A.
in New York City and London, and of Citibank (Luxembourg)
S.A. in Luxembourg, as Paying Agents at which the principal
of this Bond will be payable (subject to applicable laws and
regulations).

Ex. 1B, p. 5

[Form of Reverse of Bond]

TERMS AND CONDITIONS OF BONDS

1. General.

(a) This Bond is one of a [Series of] 10A duly authorized Floating Rate Bonds in registered form Due 200[9] ( [10] ) of Argentina issued in definitive form and in the form of Global Registered Bonds for such Series (the "Bonds") pursuant to the Floating Rate Bond Fiscal Agency Agreement dated as of _____, 199_ (as amended and in effect from time to time, the "Fiscal Agency Agreement") among Argentina, Citibank, N.A., as Fiscal Agent, Authenticating Agent, Paying Agent, Registrar, Transfer Agent and Calculation Agent and Citibank (Luxembourg) S.A., as Authenticating Agent, Paying Agent and Transfer Agent (said banks and their successors as such Fiscal Agents, Authenticating Agents, Registrar, Paying Agents, Transfer Agents and Calculation Agent being hereinafter called the "Fiscal Agent", "Authenticating Agent", "Registrar", "Paying Agent", "Transfer Agent" and "Calculation Agent", respectively), the terms of which are hereby incorporated herein by reference. Each Authenticating Agent, the Registrar, any Paying Agent, any Transfer Agent, the Calculation Agent and the Fiscal Agent are hereinafter sometimes collectively called the "Agents". Copies of (i) the Fiscal Agency Agreement and (ii) the Floating Rate Bond Exchange Agreement, dated as of _____, 199_, among Argentina, the Persons named therein as Purchasers, Citibank, N.A., as Closing Agent, the financial institutions named therein as Debt Agreement Agents and the Promissory Note Agent named therein are on file and available for inspection at the corporate trust offices of the Fiscal Agent in the Borough of Manhattan, City of New York and at such other offices of the Fiscal Agent as are from time to time designated as Paying Agents or Transfer Agents for the Bonds, and reference thereto is hereby made for a description of the rights and limitations of rights thereunder of the holders of

---

9.     Insert the date which is the earlier of the 12th anniversary of the Exchange Date and March 31, 2005.

10.    Insert, for each Series, the Series designation (i.e.: Series L and Series U). Omit for U.S. Temporary Escrow Global Registered Bond.

10A    Omit for U.S. Temporary Escrow Global Registered Bond.

Ex. 1B, p. 4

whose name this Bond is registered at the close of business in New York on the 15th day next preceding such Principal Payment Date or Interest Payment Date.

Reference is made to the further provisions set forth under the Terms and Conditions of the Bonds endorsed on the reverse hereof (the "Terms and Conditions"), which shall for all purposes have the same effect as though fully set forth at this place.

This Bond shall not be valid or obligatory until the certificate of authentication hereon shall have been duly signed by the Authenticating Agent under the Fiscal Agency Agreement (as defined herein).

THIS BOND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES OF AMERICA.

IN WITNESS WHEREOF, Argentina has caused this Bond to be duly executed with the manual or facsimile signature of an Authorized Official in _____.

Dated: _____, 199_

THE REPUBLIC OF ARGENTINA

By _____
   Title:

Certificate of Authentication:

This is one of the Bonds referred to in the within-mentioned Fiscal Agency Agreement.

CITIBANK, N.A., as          OR          CITIBANK (LUXEMBOURG) S.A.,
Authenticating Agent                      as Authenticating Agent

By _____          By _____
   Authorized Signatory                   Authorized Signatory

Dated: _____          Dated: _____

Ex. 1B, p. 3

Payments of the Principal Amount shall be made on each Principal Payment Date in an amount equal to the product of (x) the unpaid principal amount of this Bond outstanding on such Principal Payment Date, without taking into account any mandatory or optional redemption, multiplied by (y) the amortization factor (expressed as a fraction) set forth below for such Principal Payment Date:

| Principal Payment Falling Due in: | Amortization Factor | Principal Payment ($) Per $1,000 Face Amount | Principal Payment | Amortization Factor | Principal Payment ($) Per $1,000 Face Amount |
|---|---|---|---|---|---|
| [ ]*, 1996 | 1/100 | 10 | [ ]*, 2001 | 8/72 | 80 |
| [ ]**, 1996 | 1/99 | 10 | [ ]**, 2001 | 8/64 | 80 |
| [ ]*, 1997 | 1/98 | 10 | [ ]*, 2002 | 8/56 | 80 |
| [ ]**, 1997 | 1/97 | 10 | [ ]**, 2002 | 8/48 | 80 |
| [ ]*, 1998 | 1/96 | 10 | [ ]*, 2003 | 8/40 | 80 |
| [ ]**, 1998 | 1/95 | 10 | [ ]**, 2003 | 8/32 | 80 |
| [ ]*, 1999 | 1/94 | 10 | [ ]*, 2004 | 8/24 | 80 |
| [ ]**, 1999 | 5/93 | 50 | [ ]**, 2004 | 8/16 | 80 |
| [ ]*, 2000 | 8/88 | 80 | [ ]*, 2005 | 8/8 | 80 |
| [ ]**, 2000 | 8/80 | 80 | | | |

As used herein, "Principal Payment Date" means each ___[7]___ and ___[7]___ of each calendar year, commencing on ___[8]___. If a Principal Payment Date falls on any day which is not a Business Day, such Principal Payment Date will be postponed to the next day which is a Business Day unless such next succeeding Business Day occurs in a subsequent calendar month in which case such Principal Payment Date will be the next preceding Business Day.

The principal and interest payable on any Principal Payment Date and Interest Payment Date, respectively, will, subject to certain conditions set forth in the Terms and Conditions hereinafter referred to, be paid to the person in

---

*   Insert the month in which the first Principal Payment Date occurs.

**  Insert the month in which the six-month anniversary of the first Principal Payment Date occurs.

7.  Insert the dates which are respectively the 12-month and 18-month anniversaries of the earlier of the Exchange Date and March 31, 1993.

Ex. 1B, p. 2

Principal Amount
U.S.$ [2]

No. __-_____

## REPUBLIC OF ARGENTINA

### Floating Rate Bond Due 200_*
( [3] )

THE REPUBLIC OF ARGENTINA ("Argentina"), for value received, hereby unconditionally promises to pay to ____[4]_____, or registered assigns, (i) the principal sum of [2] UNITED STATES DOLLARS (U.S.$ [2] ) (the "Principal Amount"), in 19 consecutive semiannual installments in the manner set forth below, commencing on __[5]__ and on each Principal Payment Date (as defined herein) thereafter through the nineteenth Principal Payment Date; provided that the last such installment shall be in the amount necessary to repay in full the amount of the Principal Amount outstanding on the last Principal Payment Date on presentation and surrender of this Bond, and to pay, (ii) interest on each Interest Payment Date (as defined herein), in arrears, on the principal sum hereof outstanding from time to time at the applicable Rate of Interest (as defined herein) from the most recent Interest Payment Date to which interest has been paid, or if no interest has been paid from __[6]__, until the principal hereof shall have been paid in full or payment thereof duly provided for and to pay interest on overdue amounts of principal and interest hereunder as provided in the Terms and Conditions (as defined herein).

---

* Insert the earlier of the year in which the 12th anniversary of the Exchange Date occurs and the year 2005.

2. Insert face amount.

3. Insert, for each Series, the Series designation (i.e.: Series L and Series U.)

4. Insert registered holder of this Bond.

5. Insert the date which is the third anniversary of the earlier of the Exchange Date and March 31, 1993.

5. Insert the date which is the earlier of the Exchange Date and March 31, 1993.