EXHIBIT 1B
to Floating Rate Bond
Exchange Agreement

[FORM OF REGISTERED FLOATING RATE BOND]

[Form of Face of Bond]

[THIS BOND HAS NOT BEEN REGISTERED UNDER THE UNITED STATES
SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE OFFERED OR
SOLD DIRECTLY OR INDIRECTLY IN THE UNITED STATES OF AMERICA,
ITS TERRITORIES OR POSSESSIONS, OR TO OR FOR THE ACCOUNT OF
ANY U.S. PERSON (AS DEFINED IN REGULATION.S OF THE UNITED
STATES SECURITIES ACT OF 1933), EXCEPT PURSUANT TO AN
EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT OR IN A
TRANSACTION NOT REQUIRING REGISTRATION UNDER SUCH ACT.   THIS
BOND IS TRANSFERABLE ONLY AS PROVIDED HEREIN AND IN THE
FISCAL AGENCY AGREEMENT REFERRED TO BELOW.][1]

[ORIGINAL ISSUE DISCOUNT LEGEND, AS REQUIRED BY THE FISCAL
AGENCY AGREEMENT.]

SALE OR TRANSFER IN BEARER FORM OF PARTICIPATIONS, OR
BENEFICIAL INTERESTS, HEREIN MAY SUBJECT THE SPONSOR THEREOF
TO SANCTIONS PURSUANT TO SECTION 4701 OF THE UNITED STATES
INTERNAL REVENUE CODE.

[THIS BOND MAY NOT BE LISTED ON ANY STOCK EXCHANGE.]*

THE PRINCIPAL AMOUNT OF THIS BOND OUTSTANDING AT ANY TIME MAY
BE LESS THAN THE FACE AMOUNT HEREOF.

[THIS BOND MAY NOT BE SOLD OR TRANSFERRED AND SHALL BE
CANCELLED IN ACCORDANCE WITH SECTION 6(k) OF THE FISCAL
AGENCY AGREEMENT.   PAYMENTS IN RESPECT HEREOF SHALL BE MADE
IN ACCORDANCE WITH SECTION 6(b)(ii) OF THE FISCAL AGENCY
AGREEMENT]**

---

1.  This legend will be included on (i) all Bonds issued in
    connection with the U.S. Offering and (ii) all Bonds
    issued on transfer or exchange of, or in substitution
    for, any such Bonds until the legend may be removed in
    accordance with Section 7 of the Fiscal Agency Agreement
    (as defined herein).

*    Insert for Series U Bonds only.

**   Insert on definitive Bonds exchanged for beneficial

Ex. 1A, p. 35

THIS INTEREST COUPON IS SUBJECT TO THE TERMS AND CONDITIONS OF THE BOND TO WHICH THIS COUPON APPERTAINS, WHICH SHALL FOR ALL PURPOSES HAVE THE SAME EFFECT AS THOUGH FULLY SET FORTH HEREON, INCLUDING ALL PROVISIONS REGARDING REDEMPTION PRIOR TO MATURITY.

REPUBLIC OF ARGENTINA

By:_____
   [Authorized Signatory]

Ex. 1A, p. 34

## [FORM OF INTEREST COUPON]

ANY UNITED STATES PERSON (AS DEFINED IN THE UNITED STATES
INTERNAL REVENUE CODE) WHO HOLDS THIS OBLIGATION WILL BE
SUBJECT TO LIMITATIONS UNDER UNITED STATES INCOME TAX
LAWS, INCLUDING THE LIMITATIONS PROVIDED UNDER SECTIONS
165(j) AND 1287(a) OF THE INTERNAL REVENUE CODE.

REPUBLIC OF ARGENTINA          FLOATING RATE BOND DUE 200_
                                   (    [1]    )

Interest               INTEREST PAYMENT DATE
Coupon No.[  ]         FALLING DUE IN [MONTH], [YEAR]
Relating to
Bond No. [  ]


        On the Interest Payment Date (as defined in the Bond
to which this Interest Coupon appertains) falling on the date
set forth hereon, subject to the Terms and Conditions of the
Bonds, THE REPUBLIC OF ARGENTINA shall pay to BEARER, upon
presentation and surrender for cancellation of this Coupon,
at the specified offices of the Fiscal Agent or any Paying
Agent set out on the reverse hereof (or any further or other
Fiscal Agent or Paying Agents or specified offices duly
appointed or nominated and notified to the holders), an
amount equal to interest (at a rate determined in accordance
with the Terms and Conditions of such Bond) on the unpaid
principal amount of such Bond (such amount being determined
in accordance with the terms and conditions of such Bond),
together with any additional amounts payable under the Terms
and Conditions of such Bond.

        Payment of this Interest Coupon will be made by
United States dollar check drawn on a bank in New York City
or, at the BEARER's option (subject to the terms and
conditions of such Bond), by wire transfer to a United States
dollar account maintained by the BEARER with a bank in the
City of New York or London.

---

1.  Insert, for each Series, the Series designation (i.e.:
    Series L and Series U).

Ex. 1A, p. 33

THIS PRINCIPAL COUPON IS SUBJECT TO THE TERMS AND CONDITIONS OF THE BOND TO WHICH THIS COUPON APPERTAINS, WHICH SHALL FOR ALL PURPOSES HAVE THE SAME EFFECT AS THOUGH FULLY SET FORTH HEREON, INCLUDING ALL PROVISIONS REGARDING REDEMPTION PRIOR TO MATURITY.

REPUBLIC OF ARGENTINA

By:_____

[Authorized Signatory]

Ex. 1A, p. 32

[FORM OF PRINCIPAL COUPON]

ANY UNITED STATES PERSON (AS DEFINED IN THE UNITED STATES INTERNAL REVENUE CODE) WHO HOLDS THIS OBLIGATION WILL BE SUBJECT TO LIMITATIONS UNDER UNITED STATES INCOME TAX LAWS, INCLUDING THE LIMITATIONS PROVIDED UNDER SECTIONS 165(j) AND 1287(a) OF THE INTERNAL REVENUE CODE.

REPUBLIC OF ARGENTINA           FLOATING RATE BOND DUE 200_
                                        ( [1] )

Principal                       PRINCIPAL PAYMENT DATE
Coupon No.[  ]                  FALLING DUE IN [MONTH], [YEAR]
Relating to
Bond No. [  ]

        On the Principal Payment Date (as defined in the Bond to which this Coupon appertains) falling in the month and year set forth hereon, subject to the Terms and Conditions of the Bonds, THE REPUBLIC OF ARGENTINA shall pay to BEARER, upon presentation and surrender for cancellation of this Coupon, at the specified offices of the Fiscal Agent or any Paying Agent set out on the reverse hereof (or any further or other Fiscal Agent or Paying Agents or specified offices duly appointed or nominated and notified to the holders), an amount equal to the product of (x) the unpaid principal amount of the Bond to which this Coupon appertains outstanding on the Principal Payment Date indicated above, without taking into account any payments made thereon in respect of any mandatory or optional redemption, multiplied by (y) the applicable amortization factor for such Principal Payment Date (as indicated on the face of the Bond to which this Coupon appertains).

        Payment of this Principal Coupon will be made by United States dollar check drawn on a bank in New York City or, at the BEARER's option (subject to the terms and conditions of such Bond), by wire transfer to a United States dollar account maintained by the BEARER with a bank in the City of New York or London.

_____

1.    Insert, for each Series, the Series designation (i.e.: Series L and Series U).

such immunity (1) with respect to the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of Argentina or property owned by Argentina and located in its territory which is dedicated to the purpose of an essential public service.

### 18.   BCRA Undertaking.

The holder of this Bond is entitled to the benefit of the BCRA Undertaking.  Such undertaking shall not constitute a guaranty of Argentina's obligations hereunder.

### 19.   Descriptive Headings.

The descriptive headings appearing in these Terms and Conditions are for convenience of reference only and shall not alter, limit or define the provisions hereof.

Alternate Process Agent, by depositing a copy of such process
in the United States mails, addressed to Argentina at the
address specified in Section 14 of the Fiscal Agency
Agreement (such service to be effective upon the delivery of
such process to the Alternate Process Agent and the
depositing of such process in the United States mails as
aforesaid), and Argentina hereby irrevocably authorizes and
directs such Process Agent or Alternate Process Agents to
accept such service on its behalf.  Failure of any Process
Agent or Alternate Process Agent to give notice to Argentina
or failure of Argentina to receive notice of such service of
process shall not affect in any way the validity of such
service on the Process Agent, the Alternate Process Agent or
Argentina.  As an alternative method of service, Argentina
also irrevocably consents to the service of any and all
process in any such suit, action or proceeding in such New
York State or Federal court sitting in New York City or the
High Court of Justice in London by the mailing of copies of
such process to Argentina at its address specified in
Section 14 of the Fiscal Agency Agreement.  Argentina
covenants and agrees that it shall take any and all
reasonable action, including the execution and filing of any
and all documents, that may be necessary to continue the
designations of Process Agents and Alternate Process Agents
above in full force and effect, and to cause each Process
Agent and Alternate Process Agent to continue to act as such.

     (c)  Nothing in this Paragraph 17 shall affect the
right of any party to serve legal process in any other manner
permitted by law or affect the right of any party to bring
any action or proceeding against any other party or its
property in the courts of other jurisdictions.

     (d)  To the extent that Argentina has or hereafter
may acquire any immunity (sovereign or otherwise) from
jurisdiction of any court or from any legal process (whether
through service or notice, attachment prior to judgment,
attachment in aid of execution, execution or otherwise) with
respect to itself or its property, Argentina hereby
irrevocably waives such immunity in respect of its
obligations under the Bonds, the Other Floating Rate Bonds
and the other Bond Agreements, and, without limiting the
generality of the foregoing, Argentina (A) agrees that the
waivers set forth in this Paragraph 17 shall have the fullest
scope permitted under the Foreign Sovereign Immunities Act of
1976 of the United States and are intended to be irrevocable
for purposes of such act; and (B) consents generally for the
purposes of the State Immunity Act 1978 of the United Kingdom
to the giving of any relief or the issue of any process.
Notwithstanding the foregoing, Argentina shall not waive any

action or proceeding and any objection to any such suit, action or proceeding whether on the grounds of venue, residence or domicile. A final judgment in any such suit, action or proceeding shall be conclusive and may be enforced in any other jurisdictions by suit on the judgment or in any other manner provided by law.

(b) Argentina hereby irrevocably appoints (i) the New York office of Banco de la Nación Argentina (the "New York Process Agent"), with an office on the date hereof at 299 Park Avenue, 2nd floor, New York, New York 10171, United States and, alternatively, hereby irrevocably appoints CT Corporation System, with an office on the date hereof at 1633 Broadway, 23rd floor, New York, New York 10019, United States (the "Alternate New York Process Agent"), in each case, as its agent to receive, on behalf of itself and its property, service of copies of the summons and complaint and any other process which may be served in any such action or proceeding brought in such New York State or Federal court sitting in New York City and (ii) the London office of Banco de la Nación Argentina (the "London Process Agent", and together with the New York Process Agent, the "Process Agents"), with an office on the date hereof at Longbow House, 14-20 Chiswell Street, London EC1Y 4SD, England and hereby alternatively irrevocably appoints The Law Debenture Trust Corporation p.l.c., with an office on the date hereof at Prince's House, 95 Gresham St., London EC2V 7LY, England (the "Alternate London Process Agent" and, together with the Alternate New York Process Agent, the "Alternate Process Agents"), in each case, as its agent to receive on behalf of itself and its property service of copies of a writ, summons, order, judgment or other document which may be served in any such action or proceeding brought in the High Court of Justice in London.  Service of any such process may be made upon an Alternate Process Agent in lieu of the applicable Process Agent in any action or proceeding in any New York State or Federal court sitting in New York City or the High Court of Justice in London if (i) at any time and for any reason it appears to the party attempting to serve the process that service of such process upon any Process Agent as provided above may be ineffective or may not be feasible and (ii) upon or before the serving of any process on any Alternate Process Agent, the Alternate Process Agent and Argentina are notified that service of such process is to be made on such Alternate Process Agent in accordance with the provisions of this sentence.  Such service may be made by mailing or delivering a copy of such process to Argentina in care of the appropriate Process Agent or Alternate Process Agent at the address specified above for such Process Agent or Alternate Process Agents and, in the case of process served on an

Ex. 1A, p. 28

14. <u>Delay or Omission Not Waiver</u>.

No delay or omission of the Bondholders to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Paragraph 14 or by law to the Bondholders may be exercised from time to time, and as often as may be deemed expedient, by the Bondholders.

15. <u>Maintenance of Paying Agents</u>.

Argentina may vary or terminate the appointment of any Paying Agent at any time and from time to time upon giving not less than 60 days' notice to the Fiscal Agent; <u>provided</u> that Argentina shall maintain at all times at least one Paying Agent in London. [In addition, Argentina shall maintain at all times a Paying Agent in Luxembourg as long as the Bonds are listed on the Luxembourg Stock Exchange and it is so required for continued listing thereon.][16] Notice of any change in a Paying Agent shall be given to Bondholders in accordance with Paragraph 12 hereof.

16. <u>Execution</u>.

This Bond and all appurtenant Coupons hereto may be executed by manual or facsimile signature of an Authorized Official and such signature shall be binding notwithstanding that the individual signing in such capacity no longer serves in such capacity at the time of an authentication by an Authenticating Agent. This Bond shall not constitute an obligation of Argentina until the certificate of authentication hereon has been countersigned for identification by an Authenticating Agent.

17. <u>Jurisdiction and Waiver of Immunity</u>.

(a) Argentina hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court sitting in New York City, the High Court of Justice in London, any Federal court sitting in the City of Buenos Aires and any appellate court from any thereof, in any suit, action or proceeding arising out of or relating to this Bond, and Argentina hereby irrevocably agrees that all claims in respect of such suit, action or proceeding may be heard and determined in such New York State or Federal court, in the High Court of Justice in London or any Federal court sitting in the City of Buenos Aires. Argentina irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any such suit,

Ex. 1A, p. 27

to vote 25% in aggregate principal amount of the Bonds at the time outstanding shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. At a meeting or an adjourned meeting duly convened and at which a quorum is present as aforesaid, any resolution to modify or amend, or to waive compliance with, any of the covenants or conditions referred to above (other than to make any declaration under Paragraph 9 hereof) shall be effectively passed, subject to the provisos of subparagraph (b) above, if passed by the persons entitled to vote the lesser of (i) a majority in aggregate principal amount of Bonds then outstanding or (ii) 75% in aggregate principal amount of the Bonds and detached Principal Coupons represented and voting at the meeting.

### 12.  Notices.

All notices to Bondholders will be given by publication thereof in The Wall Street Journal (Eastern Edition), [and]* the Financial Times (London) (or if either or both of such newspapers is not being published, in at least one leading daily newspaper printed in the English language and with general circulation in New York City or London, as the case may be) [and, so long as the Bonds are listed on the Luxembourg Stock Exchange and it is so required for continued listing thereon, in the Luxemburger Wort (or if such newspaper is not being published, in a daily newspaper of general circulation in Luxembourg]16 or, if publication in [either]16 London [or Luxembourg]16 is not practical, elsewhere in western Europe). Any such notice shall be deemed to have been given on the date of such publication (or, if published more than once, on the date it is first published).

### 13.  Rights and Remedies Cumulative.

No right or remedy herein conferred upon or reserved to any Bondholder is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

---

*    Delete for Series L Bonds.

16.  Delete for Series U Bonds.

holding not less than 10% of the aggregate outstanding
principal amount of the Bonds of any Series, the Fiscal Agent
shall, convene a meeting of Bondholders of such Series.
Further provisions concerning meetings of Bondholders are set
forth in the Fiscal Agency Agreement.

(b)  Modifications and amendments to the Fiscal
Agency Agreement (subject to the provisions of Section 16 of
the Fiscal Agency Agreement), or the Bonds requiring
Bondholder consent may be made, and future compliance
therewith or past default by Argentina may be waived, with
the consent of Argentina and Bondholders holding at least a
majority in aggregate principal amount of the Bonds at the
time outstanding, or of such lesser percentage (determined as
provided in subparagraph (c) below) as may act at a meeting
of Bondholders held in accordance with the provisions of the
Fiscal Agency Agreement; provided that no such modification,
amendment or waiver of the Fiscal Agency Agreement or any
Bond may, without the consent of each Bondholder affected
thereby, (i) change the stated maturity or any date fixed for
payment of the principal of or interest due on such Bond;
(ii) reduce the principal of, or interest on, any such Bond;
(iii) change the currency of payment of the principal of, or
interest on, any such Bond; or (iv) reduce the above-stated
percentage of aggregate principal amount of Bonds outstanding
or reduce the quorum requirements or the percentage of votes
required for the taking of any action.  Any modifications,
amendments or waivers consented to or approved at a meeting
will be conclusive and binding on all holders of the Bonds
and Coupons whether or not they have given consent or were
present at such meeting, and on all future holders of Bonds
and Coupons whether or not notation of such modifications,
amendments or waivers is made upon the Bonds.  Subject to the
foregoing provisions of this Paragraph 11(b), any instrument
given by or on behalf of any holder of a Bond or Coupon in
connection with any consent to any such modification,
amendment or waiver will be irrevocable once given and will
be conclusive and binding on all subsequent holders of such
Bond or Coupon.

(c)  At a meeting of the Bondholders called for any
of the above purposes, persons entitled to vote a majority in
aggregate principal amount of the Bonds at the time
outstanding shall constitute a quorum, it being understood
that any Bondholder entitled to more than one vote shall not
be required to cast all such votes in the same manner.  In
the absence of a quorum within 30 minutes of the time
approved for such meeting, such meeting may be adjourned for
a period of not less than ten days; at the reconvening of any
meeting adjourned for lack of a quorum, the persons entitled

Bonds are paid (other than amounts due solely because of such declaration) and all other defaults with respect to the Bonds are cured, such declaration may be annulled and rescinded by holders of more than 50% in aggregate outstanding principal amount of the Bonds (or such other percentage required at a meeting of Bondholders in accordance with Paragraph 11 hereof) by written notice thereof to Argentina at the office of the Fiscal Agent.

10. **Replacement of Bonds and Coupons.**

(a) In case of the mutilation, destruction, loss or theft of this Bond or any Coupon appurtenant hereto, the Fiscal Agent, upon surrender to and cancellation by it of the mutilated Bond or Coupon, or upon receipt of proof satisfactory to it and Argentina of the destruction, loss or theft of such Bond or Coupon, and receipt of security or indemnity satisfactory to the Fiscal Agent, to the Authenticating Agent and to Argentina, and in the absence of notice to Argentina or any Agent that this Bond or such Coupon has been acquired by a Person in whose possession such Bond constitutes a valid obligation of Argentina, shall deliver a new Bond or a new Coupon, as the case may be, of such Series in replacement of such Bond or Coupon to the person requesting such replacement upon payment by such person of all reasonable expenses associated with obtaining such security or indemnity and issuing and delivering a new Bond (including, without limitation, reasonable legal fees and reasonable fees relating to the preparation, authentication and delivery of such new Bond).

(b) All Bonds or Coupons issued as a result of any replacement of Bonds or Coupons shall be delivered to the holder at the office of the Fiscal Agent or (at the risk and, if sent other than by regular mail, expense of such holder) sent by mail to such address as is specified by the holder in the request for replacement.

(c) This Bond may be exchanged for Floating Rate Bonds of the same Series in registered form, in accordance with the terms and provisions of the Fiscal Agency Agreement.

11. **Meetings of Bondholders; Modification and Amendments.**

(a) Upon not less than 15 days' prior notice to the Fiscal Agent, Argentina may at any time call a meeting of the Bondholders of any Series pursuant to the notice provisions of the Fiscal Agency Agreement for any purpose, such meeting to be held at such time and place as Argentina shall determine. Upon a request in writing made by Bondholders

to be prepaid (other than by a regularly scheduled required prepayment), prior to the stated maturity thereof and such acceleration, declaration or prepayment shall not have been annulled or rescinded within 30 days thereof or (ii) Argentina or any Designated Argentine Governmental Agency fails to pay the principal of any such Publicly Issued External Indebtedness when due (after expiration of any applicable grace period), or (iii) Argentina fails to pay any interest when due under any Other Bonds (after expiration of any applicable grace period); or

(e) Argentina declares a moratorium with respect to the payment of principal of, or interest on, Publicly Issued External Indebtedness of Argentina; or

(f) any writ, execution, attachment or similar process shall be levied against all or any substantial part of the assets of Argentina in connection with any judgment in respect of External Indebtedness (other than External Indebtedness under the Debt Agreements) for the payment of money exceeding U.S.$100 million (or its equivalent in other currencies) and shall remain unsatisfied, undischarged and in effect for a period of 45 consecutive days without a stay of execution, unless the same is adequately bonded or is being contested by appropriate proceedings properly instituted and diligently conducted and, in either case, such process is not being executed against such assets; or

(g) the validity of the Bonds or the other Bond Agreements relating thereto shall be contested by Argentina;

then, if such event is continuing, holders of 25% or more in aggregate outstanding principal amount of the Bonds may, by written demand to Argentina at the office of the Fiscal Agent, declare the Bonds immediately due and payable, whereupon the entire unpaid principal amount of the Bonds, all interest accrued and unpaid thereon and all other amounts payable in respect of the Bonds shall become and be forthwith due and payable, without presentation, demand, protest or further notice of any kind, all of which are hereby expressly waived by Argentina. Any such declaration shall be made by written demand to Argentina at the office of the Fiscal Agent in New York City. Upon receipt by the Fiscal Agent of such written demand, the Fiscal Agent shall give notice thereof to Argentina, as provided in the Fiscal Agency Agreement, and to the holders of the Bonds, by publication. After any such declaration, if all amounts then due with respect to the

pledge, mortgage, security interest, deed of trust, charge or other encumbrance or other preferential arrangement having the practical effect of constituting a security interest.

(ii)  Directly or indirectly seek any restructuring or rescheduling of the Bonds or any provisions thereof, nor will it directly or indirectly seek or request any loans, advances, extensions of credit or other financial accommodation from any holders of Bonds or any affiliates thereof based on such holdings.

[(iii)  Make, nor grant permission to make, application to list the Bonds on any stock exchange.]15

9.   Events of Default.

If any of the following events (each an "Event of Default") shall occur and be continuing:

(a)  interest on any Bond is not paid when due and such default continues for a period of at least 30 days; or

(b)  Argentina fails to pay (i) the principal amount of the Bonds when due, or (ii) the principal amount of any Bond called for redemption when due for a period of 15 days; or

(c)  Argentina defaults in the performance of any other obligation contained in the Bonds or the other Bond Agreements relating to the Bonds and such default shall continue for a period of 90 days after written notice thereof shall have been given to Argentina at the office of the Fiscal Agent by any Bondholder; or

(d)  (i) the holders of 25% or more in aggregate outstanding principal amount of any issue or series of Publicly Issued External Indebtedness of Argentina or any Designated Argentine Governmental Agency (including any Other Bonds), as a result of any failure to pay the principal of, or interest on, such Publicly Issued External Indebtedness, accelerate such Publicly Issued External Indebtedness or declare such Publicly Issued External Indebtedness to be due and payable, or required

---

15.   Insert for Series U Bonds only.

Principal Bond Agreements, including Liens to secure
obligations under the Principal Bonds and Liens securing
Indebtedness outstanding on the date hereof to the extent
required to be equally and ratably secured with the
Principal Bonds; (iv) any Lien in existence as of June
23, 1992; (v) any Lien securing Publicly Issued External
Indebtedness issued upon surrender or cancellation of (A)
Principal Bonds or (B) the principal amount of any
Indebtedness outstanding as of June 23, 1992, in each
case, to the extent such Lien is created to secure such
Publicly Issued External Indebtedness on a basis
comparable to the Principal Bonds; (vi) any Lien securing
or providing for the payment of Publicly Issued External
Indebtedness incurred in connection with any Project
Financing (as defined below); provided that the
properties to which any such Lien applies are (A)
properties which are the subject of such Project
Financing or (B) revenues or claims which arise from the
operation, failure to meet specifications, failure to
complete, exploitation, sale or loss of, or damage to,
such properties; (vii) any Lien on any Principal Bond
created or granted to secure Publicly Issued External
Indebtedness of Argentina incurred in connection with, or
on or after the date of, the purchase or acquisition of
such Principal Bonds; and (viii) any renewal or extension
of any such Liens described in clauses (i), (ii), (iii),
(iv), (v), (vi) and (vii) above; provided, however, that
no such renewal or extension of any Lien under clauses
(i) or (ii) above shall extend to or cover any property
other than the property being acquired and no such
renewal or extension of any lien described in clauses (i)
through (vii) shall extend to or cover any property not
theretofore subject to the Lien being extended or
renewed, but shall remain limited to the original
property covered thereby.  As used herein, the term
"Project Financing" means any financing (but not a
refinancing) of the acquisition, construction or
development of any properties in connection with a
project if the Person or Persons providing such financing
expressly agree to look to the properties financed and
the revenues to be generated by the operation of, or loss
of or damage to, such properties as the principal source
of repayment for the moneys advanced and have been
provided with a feasibility study prepared by competent
independent experts on the basis of which it was
reasonable to conclude that such project would generate
sufficient income in currencies other than Pesos to repay
substantially all of the principal of and interest on all
Publicly Issued External Indebtedness incurred in
connection with such project; and "Lien" means any lien,

[(vii)  Listing.  Make application for listing the Bonds on the Luxembourg Stock Exchange and use its best efforts to (x) ensure listing thereon and (y) once the Bonds are so listed, to maintain the listing of the Bonds thereon or, if maintenance thereon is not practicable, on another internationally recognized securities exchange.][13]

(b)  Negative Covenants.  For so long as any of the Bonds remain outstanding, Argentina shall not:

(i)  Until the earlier of (x) the date on which 50% of the aggregate principal amount of the Bonds and Other Floating Rate Bonds is repaid or cancelled and (y) the seventh anniversary of  [14]  (provided that on such seventh anniversary no default in the payment of principal of, or interest on, the Bonds and Other Floating Rate Bonds has occurred and is continuing), Argentina shall not create or suffer to exist, or permit BCRA to create or suffer to exist, any Lien upon any of its present or future assets or revenues to secure or otherwise provide for the payment of any Publicly Issued External Indebtedness of Argentina or BCRA unless, on or prior to the date such Lien is created or comes into existence, the obligations of Argentina under the Bonds and the Other Floating Rate Bonds are secured equally and ratably with such Publicly Issued External Indebtedness; excluding, however, from the operation of the foregoing provisions, (i) any Lien upon property to secure the purchase price of such property or any Publicly Issued External Indebtedness incurred solely for the purpose of financing the acquisition of the property to be subject to such Lien; (ii) any Lien existing on such property at the time of its acquisition which secures any Publicly Issued External Indebtedness; (iii) any Lien created in connection with the transactions contemplated by the

13.  Include for Series L Bonds only.

14.  Insert the date which is the earlier of the Exchange Date and March 31, 1993.

governmental and administrative action in Argentina, in order for Argentina to be able to make all payments to be made by Argentina under the Bonds and the other Bond Agreements.

(ii) <u>Pari Passu</u>.  Ensure that at all times its obligations hereunder constitute unconditional general obligations of Argentina ranking at least <u>pari passu</u> in priority of payment with (A) all other Indebtedness of Argentina which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Pesos and (B) all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Pesos.

(iii) <u>Debt Conversion Program</u>.  Maintain the eligibility of the Bonds for tender in Argentina's debt conversion program.

(iv) <u>Maintenance of Membership on International Financial Institutions</u>.  Maintain at all times its membership in the IMF, IBRD and IADB and continue to be eligible to use the general resources of the IMF.

(v) <u>Annual Economic Report</u>.  Furnish to the Fiscal Agent sufficient copies of the Annual Economic Report of BCRA ("<u>Memoria Anual</u>"), or comparable economic information.

(vi) <u>Maintenance of Agents</u>.  Until two years after the later of the date on which the principal of all the Bonds shall have become due and payable (whether at maturity or upon call for redemption or otherwise) and the date on which moneys for the payment thereof and of all interest on the Bonds shall have been made available to the Fiscal Agent, to maintain a Fiscal Agent and an Authenticating Agent in the Borough of Manhattan, City of New York (which in each case shall be a commercial bank or trust company (other than BCRA or an Argentine Bank), or any affiliate thereof, having a combined capital and surplus of at least U.S.$1,000,000,000 (or the equivalent in other currencies), legally qualified to act as such Agent and having an established place of business in the Borough of Manhattan, City of New York).  Subject to the foregoing, Argentina reserves the right at any time to vary or terminate the appointment of the Agents in the manner, and to the extent, provided in Paragraph 15 hereof and in the Fiscal Agency Agreement.

shall survive the payment in full of all payment due hereunder or under the other Bond Agreements and the performance of any other obligations hereunder, thereunder or under the Coupons.

### 6.  Valid Obligations.

Argentina represents and agrees that all action has been taken and all conditions precedent have occurred so that this Bond and all the obligations herein contained shall be valid and legally enforceable obligations of Argentina in accordance with their terms, including without limitation all acts or things necessary or appropriate under the Constitution, laws and regulations of Argentina.

### 7.  Payment of Unclaimed Amounts.

Subject to Section 12(b) of the Fiscal Agency Agreement, any moneys paid by Argentina to the Fiscal Agent (or remitted by the Fiscal Agent to any other Paying Agent) for payment of principal of, or interest on, any of the Bonds shall be held in trust by the Fiscal Agent or such Paying Agent for the Bondholders to be paid to such Bondholders in accordance with Sections 6(a) and 6(b)(i) of the Fiscal Agency Agreement. Any moneys so held remaining unclaimed at the end of two years after such principal or interest shall have become due and payable (whether at maturity or upon call for redemption or otherwise) shall be repaid to Argentina on its written demand, and upon such repayment such trust shall terminate and all liability of the Fiscal Agent and each Paying Agent with respect to such moneys shall cease, and a Bondholder presenting a claim therefor shall thereafter look only to Argentina for payment thereof; provided that such repayment shall not limit in any way any obligation which Argentina may have to pay the principal of, or interest on, the Bonds as the same shall become due.

### 8.  Covenants.

(a)  Affirmative Covenants. Argentina covenants and agrees that, so long as any Bond remains outstanding, Argentina shall:

(i)  Maintenance of Argentine Authorizations. Duly obtain and maintain in full force and effect all Argentine Authorizations necessary under the laws of Argentina for the performance by Argentina of the Bonds or any other Bond Agreement or for the validity or enforceability of the Bonds or of the other Bond Agreements and duly take all necessary and appropriate

B-19

"Principal Bond Currencies" means U.S. Dollars and Deutsche Mark.

"Reference Bank" means, with respect to U.S. Dollars and the Original Currencies listed in paragraph (b) of Section B(1) of Part I, the principal office of each Lender set forth opposite such currencies in the city specified.

"Spot Rate of Exchange" means, for U.S. Dollars, the spot rate at which an amount in a Conversion Currency equivalent to at least U.S.$1 million is or was offered in the foreign exchange markets by a relevant Reference Bank to prime banks which are actively engaged in such market at the time customarily used for setting foreign exchange rates in the city set forth opposite such relevant Reference Bank listed in paragraph (b) of Section B(1) of Part I on the date fixed by a Lender for the re-conversion of its Eligible Debt denominated in U.S. Dollars pursuant to Section C(6) of Part I or II for delivery of U.S. Dollars on such date.

"Supplementary Conversion Date" has the meaning specified in Section A(2) of Part II.

"Supplementary Conversion Rate" has the meaning specified in the Introduction hereof.

"Supplementary Conversion Rate Determination Date" has the meaning specified in Section B(1) of Part II.

"Translation Rate" has the meaning specified in the Introduction hereof.

"Translation Rate Determination Date" has the meaning specified in Section A(1) of Part III.

\*   \*   \*   \*   \*

Questions regarding the currency translation and currency conversion procedures set forth above should be referred to Citibank, N.A., as Closing Agent (Attention: Roberto Lovato, telephone no. (212) 559-8471).