EXHIBIT 1 TO
SCHEDULE B to
Floating Rate Bond
Exchange Agreement
Page 1

## FORM OF CONVERSION AGREEMENT

TO: _____, AS AGENT BANK

ATTENTION: [CONTACT PERSON]*

TELEX: _____

TELEFAX: _____

TO: _____, AS OBLIGOR UNDER THE _____
AGREEMENT DATED _____, 19\_\_[1] GOVERNING THE
ITEMS OF ELIGIBLE DEBT REFERRED TO BELOW

TELEX: _____

TELEFAX: (54-1) _____

TO: REPUBLIC OF ARGENTINA
C/O BANCO CENTRAL DE LA REPUBLICA ARGENTINA
ATTN. HUGO SECONDINI

TELEX: 39023942
39024200
39024634
39024429

TELEFAX: (54-1) 394-9030

CC: CITIBANK, N.A., AS CLOSING AGENT

ATTENTION: ROBERTO LOVATO

TELEX: RCA INTL 236066
WUI 669830

TELEFAX: (212) 421-1658
(212) 308-5164
(212) 688-9844

FROM: _____, AS LENDER

DATE: _____, 1992

RE: CURRENCY CONVERSION(S) IN CONNECTION WITH THE 1992
FINANCING PLAN FOR THE REPUBLIC OF ARGENTINA

---

\* Include the name of the relevant contact person for each Agent Bank as identified in Attachment C to the Commitment Telex included on Annex B to the 1992 Financing Plan.

[1] Identify the relevant Debt Agreement and Obligor. Separate Conversion Agreements should be submitted for

EXHIBIT 1 TO
SCHEDULE B to
Floating Rate Bond
Exchange Agreement
Page 2

WE REFER TO THE 1992 FINANCING PLAN FOR THE REPUBLIC OF ARGENTINA. EXCEPT AS OTHERWISE DEFINED HEREIN, TERMS ARE USED HEREIN AS USED OR DEFINED IN THE 1992 FINANCING PLAN OR IN ANNEX D TO THE 1992 FINANCING PLAN.

THIS COMMUNICATION CONSTITUTES A CONVERSION AGREEMENT UNDER AND AS REFERRED TO IN SECTION A(3) OF PART [I]* [II]* OF ANNEX D TO THE 1992 FINANCING PLAN.

1. THE UNDERSIGNED LENDER CONFIRMS THAT EACH ITEM OF ELIGIBLE DEBT IDENTIFIED ON SCHEDULE 1 HERETO IS PAYABLE TO THE UNDERSIGNED LENDER AND THAT SUCH LENDER AGREES TO CONVERT THE AMOUNT OF EACH SUCH ITEM OF ELIGIBLE DEBT SET FORTH UNDER THE HEADING "AGGREGATE OUTSTANDING PRINCIPAL AMOUNT OF ITEMS OF ELIGIBLE DEBT IN A CONVERSION CURRENCY HELD BY LENDER" ON SCHEDULE 1 HERETO. THE UNDERSIGNED LENDER HEREBY (A) AGREES THAT EACH ITEM OF ELIGIBLE DEBT IDENTIFIED IN SCHEDULE 1 HERETO WILL BE CONVERTED AND ACCRUE INTEREST IN ACCORDANCE WITH THE PROCEDURES FOR CURRENCY CONVERSIONS CONTAINED IN ANNEX D TO THE 1992 FINANCING PLAN AND PURSUANT TO THE TERMS HEREOF, (B) DIRECTS THE APPLICABLE AGENT BANK TO CONVERT ON THE [INITIAL]* [SUPPLEMENTARY]* CONVERSION DATE EACH ITEM OF ELIGIBLE DEBT IDENTIFIED ON SCHEDULE 1 HERETO, AND (C) AGREES TO COMPLY WITH AND BE BOUND BY THE TERMS HEREOF AND THE PROCEDURES FOR CURRENCY CONVERSIONS CONTAINED IN PART [I]* [II]* OF ANNEX D TO THE 1992 FINANCING PLAN WITH RESPECT TO EACH SUCH ITEM OF ELIGIBLE DEBT. SUCH ITEM OF ELIGIBLE DEBT CONVERTED INTO U.S. DOLLARS WILL ACCRUE INTEREST FROM (AND INCLUDING) THE [INITIAL]* [SUPPLEMENTARY]* CONVERSION DATE AND UNTIL THE CLOSING DATE AT THE RATE OF 4.0000%, AS SET FORTH IN SCHEDULE 1 TO THE 1992 FINANCING PLAN.

2. THE UNDERSIGNED LENDER CONFIRMS THAT EACH ITEM OF ELIGIBLE DEBT IDENTIFIED ON SCHEDULE 1 HERETO HAS BEEN COMMITTED TO BE EXCHANGED FOR PRINCIPAL BONDS IN U.S. DOLLARS BY THE UNDERSIGNED LENDER.

3. THIS CONVERSION AGREEMENT DOES NOT AFFECT ANY ITEM OF ELIGIBLE DEBT OUTSTANDING UNDER ANY RELEVANT GOVERNING INSTRUMENT WHICH IS NOT A DEBT AGREEMENT. THE CURRENCY OF, AND INTEREST RATE APPLICABLE TO, EACH SUCH OTHER ITEM OF ELIGIBLE DEBT WILL REMAIN IN FULL FORCE AND EFFECT AND UNCHANGED BY THIS CONVERSION AGREEMENT. SIMILARLY, THE INTEREST RATE APPLICABLE TO EACH ITEM OF ELIGIBLE DEBT

---

* Delete as applicable

EXHIBIT 1 TO
SCHEDULE B to
Floating Rate Bond
Exchange Agreement
Page 3

IDENTIFIED ON SCHEDULE 1 HERETO WILL REMAIN IN FULL FORCE AND EFFECT AND UNCHANGED BY THIS CONVERSION AGREEMENT UNTIL THE [INITIAL]* [SUPPLEMENTARY]* CONVERSION DATE.

4. THE UNDERSIGNED LENDER (A) ACKNOWLEDGES THAT EACH CONVERSION AGREED TO BY IT HEREUNDER (EACH, A "CONVERSION ELECTION") IS IRREVOCABLE AND WILL OCCUR AUTOMATICALLY NOTWITHSTANDING ANY REQUEST BY SUCH LENDER TO THE CONTRARY OR ANY ASSIGNMENT OR OTHER TRANSFER OF THE RELEVANT ITEM OF ELIGIBLE DEBT, (B) ACKNOWLEDGES AND ACCEPTS THE RISK THAT SUCH LENDER MAY NOT BE ABLE TO DEAL ON THE FOREIGN EXCHANGE MARKETS AT THE CONVERSION RATES SET FORTH IN ACCORDANCE WITH SECTION (B)1 OF PART II OF THIS ANNEX D AND THAT SUCH CONVERSION RATES WILL BE USED TO DETERMINE THE PRINCIPAL AMOUNT OF ANY ITEM OF ELIGIBLE DEBT SO CONVERTED AND (C) ACKNOWLEDGES AND AGREES THAT THIS CONVERSION AGREEMENT WILL BECOME EFFECTIVE ON THE [INITIAL]* [SUPPLEMENTARY]* CONVERSION DATE. THE UNDERSIGNED LENDER AGREES THAT IT WILL NOTIFY EACH OF YOU OF, AND CORRECT, ANY CONVERSION ELECTION WHICH DOES NOT COMPLY WITH THE PROVISIONS OF ANNEX D TO THE 1992 FINANCING PLAN (INCLUDING, WITHOUT LIMITATION, THE DEFINITIONS OF "ELIGIBLE DEBT" AND "HOME COUNTRY CURRENCY" CONTAINED IN THE 1992 FINANCING PLAN) AS PROMPTLY AS PRACTICABLE (AND, IN ANY EVENT, NO LATER THAN FIVE (5) BUSINESS DAYS PRIOR TO THE [INITIAL]* [SUPPLEMENTARY]* CONVERSION DATE) AFTER IT BECOMES AWARE THAT SUCH CONVERSION ELECTION DOES NOT SO COMPLY.

5. IF, DUE TO CIRCUMSTANCES NOT NOW ANTICIPATED, THE CLOSING DATE DOES NOT OCCUR, ARGENTINA AGREES THAT A MECHANISM WILL BE PUT IN PLACE, TO PERMIT, AT THE OPTION OF SUCH LENDER, THE RE-CONVERSION OF THE SAME AMOUNT OF SUCH ITEM OF ELIGIBLE DEBT FROM U.S. DOLLARS INTO ITS ORIGINAL CURRENCY (AND WITH ITS ORIGINAL INTEREST BASIS).

6. THE UNDERSIGNED LENDER HAS IDENTIFIED BELOW ITS LENDING OFFICE FOR THE ITEM OF ELIGIBLE DEBT LISTED ON SCHEDULE 1 HERETO. THIS PARAGRAPH DOES NOT CHANGE THE LENDING OFFICE OR THE PAYMENT INSTRUCTIONS IN THE ORIGINAL CURRENCY FOR THE ITEM OF ELIGIBLE DEBT SO IDENTIFIED. THE LENDING OFFICE AND PAYMENT INSTRUCTIONS IN U.S. DOLLARS FOR ALL ITEMS OF ELIGIBLE DEBT IDENTIFIED ON SCHEDULE 1 HERETO ARE SEPARATELY SET FORTH BELOW FOR EACH ITEM OF ELIGIBLE DEBT SO IDENTIFIED BY REFERENCE TO THE CREDIT SCHEDULE AND EXHIBIT NUMBER FOR EACH SUCH ITEM OF ELIGIBLE DEBT:

---

\* Delete as applicable.

EXHIBIT 1 TO
SCHEDULE B to
Floating Rate Bond
Exchange Agreement
Page 4

| CREDIT SCHEDULE AND EXHIBIT NUMBER | LENDING OFFICE (ADDRESS, TELEX, TELEPHONE, CONTACT) | PAYMENT INSTRUCTIONS |
|---|---|---|
| | | |

WE REQUEST THAT THE AGENT BANK ACKNOWLEDGE RECEIPT OF THIS CONVERSION AGREEMENT NO LATER THAN TWO (2) BUSINESS DAYS FOLLOWING RECEIPT HEREOF AND IN NO EVENT LATER THAN FOUR BUSINESS DAYS PRIOR TO THE [INITIAL]* [SUPPLEMENTARY]* CONVERSION DATE AND THEN DISTRIBUTE (BY TELEFAX OR OTHERWISE) ONE ACKNOWLEDGED COPY TO EACH OF THE UNDERSIGNED LENDER, THE OBLIGOR [(C/O MINISTRY OF ECONOMY AND PUBLIC WORKS AND SERVICES (SECRETARIAT OF FINANCING), REPUBLIC OF ARGENTINA)], THE REPUBLIC OF ARGENTINA AND CITIBANK, N.A., AS CLOSING AGENT, AND RETAIN THE ACKNOWLEDGED ORIGINAL FOR THE AGENT BANK'S RECORDS.

_____
AS LENDER

BY_____
TITLE:

WE HEREBY ACKNOWLEDGE RECEIPT
OF THIS CONVERSION AGREEMENT.2

_____
AS AGENT BANK

BY_____
TITLE:
DATE:_____, 1992

---

\*   Delete as applicable.

2.  The Agent Bank should acknowledge each Conversion Agreement by signing the original telex or telefax thereof in the space provided above and then transmitting by telefax or otherwise a facsimile of such signed original to the applicable Lender, the Obligor [(c/o Ministry of Economy and Public Works and Services (Secretariat of Financing), Republic of Argentina)], the Republic of Argentina and Citibank, N.A., as Closing Agent, retaining such signed original Conversion

EXHIBIT 1 TO
SCHEDULE B to
Floating Rate Bond
Exchange Agreement
Page 5

SCHEDULE 1 TO EXHIBIT 1 TO
SCHEDULE B

ITEM(S) OF ELIGIBLE DEBT UNDER A DEBT AGREEMENT*

OBLIGOR: _____

LENDER: _____

| CREDIT SCHEDULE AND EXHIBIT NUMBER | ORIGINAL CURRENCY | AGGREGATE OUTSTANDING PRINCIPAL AMOUNT OF ITEMS OF ELIGIBLE DEBT IN A CONVERSION CURRENCY HELD BY LENDER |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

[*INSTRUCTIONS: A SEPARATE SCHEDULE SHOULD BE COMPLETED FOR EACH LENDING OFFICE OF A LENDER. LENDERS LACKING ANY INFORMATION NECESSARY TO COMPLETE THIS SCHEDULE 1 SHOULD CONTACT THE RELEVANT AGENT BANK FOR THE ITEM OF ELIGIBLE DEBT

SCHEDULE C
to Floating Rate Bond
Exchange Agreement

Form of Certificate of Qualifying Institutional Buyer,
Qualifying Non-U.S. Person or U.S. Fiduciary
required under Section 4.02(k).

CERTIFICATE

Republic of Argentina

Series [L][U]* Floating Rate Bonds Due 200_ (the "<u>Bonds</u>")

To:  [insert name of Seller of Bonds]

With respect to [<u>insert principal amount</u>] of Bonds (Series [L][U]*) being transferred on the date hereof by [<u>insert name of Seller</u>] to the undersigned Buyer, such Buyer hereby:

Represents and agrees that <u>either</u>:

(A)  it is a U.S. Person (as defined in Regulation S under the Securities Act of 1933 (the "<u>Securities Act</u>") which is a Qualified Institutional Buyer (as defined in Rule 144A under the Securities Act ("<u>QIB</u>")) and it further represents and agrees that:

  (i)  the Bonds have not been and will not be registered under the Securities Act;

  (ii) it will not reoffer or resell the Bonds except:

    (x) before issuance of the Bonds:

      (1) to a Qualifying QIB in the United States in Minimum Amounts without using any General Solicitation Methods,

      (2) to a Qualifying Non-U.S. Person outside the United States or to a Qualifying U.S. Fiduciary, or

---

\*   Insert as appropriate.

2

(3) to a Purchaser which is listed on the signature pages of the Bond Exchange Agreement, without using any General Solicitation Methods; and

(y) after issuance of the Bonds, pursuant to the transfer restrictions referred to in Section 7 of the Fiscal Agency Agreement;

(iii) it was not induced to buy the Bonds by means of any General Solicitation Methods; and

(iv) that it will obtain from any QIB to which it resells the Bonds a representation and agreement substantially as set forth in this Paragraph (A),

(B) it is a Non-U.S. Person which represents and agrees that it will not reoffer or resell the Bonds except:

(i) to a Qualifying Non-U.S. Person outside the United States, or

(ii) to a Qualifying U.S. Fiduciary;

(iii) with respect to U.S. When-Issued Bonds only, inside the United States without using General Solicitation Methods

(x) to a Qualifying QIB in Minimum Amounts, or

(y) to a Purchaser listed on the signature pages of the Bond Exchange Agreement, or

(C) it is a U.S. broker/dealer or other fiduciary acting on behalf of a Non-U.S. Person in accordance with Rule 902(o)(2) of Regulation S under the Securities Act where such broker-dealer or other fiduciary represents and agrees that neither it nor any such Non-U.S. Person will reoffer or resell except to a Qualifying Non-U.S. Person outside the United States.

Such Buyer understands that this Certificate is being given in accordance with the provisions of the Floating Rate Bond Exchange Agreement dated as of December __, 1992 among the Republic of Argentina, Citibank, N.A. as Closing

3

Agent, the Debt Agreement Agents, the Promissory Note Agent and the parties thereto (the "**Bond Exchange Agreement**").

For the purposes of this CERTIFICATE:

(i) "**General Solicitation Methods**" shall mean any form of general solicitation or general advertising (including the entry of quotations on any screen based pricing system of general availability).

(ii) "**Fiscal Agency Agreement**" shall mean the Floating Rate Bond Fiscal Agency Agreement, dated _____, between Argentina, as Issuer, and Citibank, N.A., as Fiscal Agent.

(iii) "**Minimum Amounts**" means the aggregate face amount U.S.$1,000,000 or such lesser face amount if it represents a Purchaser's total entitlement to Bonds.

(iv) "**Non-U.S. Person**" means any Person other than a U.S. Person.

(v) "**U.S. When-Issued Bonds**" means any Bond sold by a U.S. Person on a "when-issued" basis to a Qualifying Non-U.S. Person.

(vi) "**Qualifying Non-U.S. Person**" means a Non-U.S. Person who represents and agrees that it will only offer or sell Bonds (i) to a Qualifying Non-U.S. Person outside the United States, (ii) to a Qualifying U.S. Fiduciary or (iii) with respect to U.S. When-Issued Bonds only, in the United States without using any General Solicitation Methods (x) to a Qualifying QIB in Minimum Amounts or (y) after the signing of this Agreement, Purchasers who are listed on the signature pages hereof.

(vii) "**Qualifying QIB**" means a U.S. Person who is a QIB who represents and agrees (i) that the Bonds have not been registered under the Securities Act, (ii) that it will not reoffer or resell the Bonds except (x) before issuance of the Bonds, (I) to another Qualifying QIB in Minimum Amounts without using any General Solicitation Methods, (II) after the signing of the Bond Exchange Agreement, to Purchasers who are listed on the signature pages thereof without using any General Solicitation Methods or (III) to a Qualifying Non-U.S. Person outside the United States or to a Qualifying U.S. Fiduciary and (Y) after the issuance of the Bonds, pursuant to the

4

transfer restrictions referred to in Section 7 of the Fiscal Agency Agreement, (iii) that it was not induced to buy such Bonds by means of any General Solicitation Methods and (iv) that it will obtain from any QIB to whom it resells representations substantially as set forth in clauses (i), (ii) and (iii) of this definition.

(viii) "Qualifying U.S. Fiduciary" means a U.S. broker/dealer or other fiduciary acting on behalf of a Non-U.S. Person in accordance with Rule 902(o)(2) of Regulation S under the Securities Act where such broker/dealer or other fiduciary represents and agrees that neither it nor any such Person will reoffer or resell except to a Qualifying Non-U.S. Person outside the United States.

IN WITNESS WHEREOF, the undersigned has caused this certificate to be executed as of the date set forth above by its official, officer or agent thereunto duly authorized.

[Insert Name of Buyer]

By_____
   Title:

SCHEDULE D
to Floating Rate Bond
Exchange Agreement

## INTERIM INTEREST RATES ON ELIGIBLE DEBT

Interest on Eligible Debt in each currency shall accrue at the interest rates set forth below for such currency during the period from January 1, 1992 to the earlier of the Exchange Date or March 31, 1993:

| Currency | Rate |
|---|---|
| Belgian Francs | 9.3125% |
| Canadian Dollars | 7.0625% |
| Deutsche Marks | 9.3125% |
| Dutch Guilders | 9.2500% |
| European Currency Units | 9.8750% |
| French Francs | 9.5625% |
| Italian Lire | 11.9375% |
| Japanese Yen | 4.3125% |
| Portuguese Escudos | 17.2500% |
| Pounds Sterling | 10.7500% |
| Spanish Pesetas | 12.0625% |
| Swiss Francs | 8.3750% |
| U.S. Dollars | 4.0000% |

The applicable rate for such period for each such currency provides debt service reduction on Eligible Debt by forgoing the contractual margin of 13/16 of 1% (and, in the case of the 1987 TCA and the Co-Financing Agreement, 7/8 of 1%) for Eligible Debt denominated in each such currency. The interest rate applicable to each such currency also reflects further debt service relief in that such rate was calculated by subtracting 43.75 basis points from the six-month LIBOR applicable to such currency (or, where no such rate is available, at a rate equal to the applicable six-month domestic rate) for April 7, 1992. The foregoing rates shall apply as of January 1, 1992 for any interest period commencing prior to January 1, 1992 and ending thereafter.

SCHEDULE E
to Floating Rate Bond
Exchange Agreement

## INTEREST RATES FOR CALCULATING INTEREST ON OVERDUE INTEREST

Interest on interest which became overdue on or prior to December 31, 1991 shall be calculated for the periods set forth below, as follows:

(a) <u>Prior to December 31, 1987</u>. Interest which became overdue prior to or during 1987 shall accrue interest for the period during which such interest remained unpaid in 1987 at the per annum interest rates set forth below for Eligible Interest denominated in each of such currencies:

| Currency | Rate |
|---|---|
| Belgian Francs | 7.4583% |
| Canadian Dollars | 8.0573% |
| Deutsche Mark | 3.9453% |
| Dutch Guilders | 5.2526% |
| European Currency Units | 7.1875% |
| French Francs | 8.4818% |
| Italian Lire | 11.1432% |
| Japanese Yen | 4.1328% |
| Portuguese Escudos | 13.6900% |
| Pounds Sterling | 9.7005% |
| Spanish Pesetas | 16.0700% |
| Swiss Francs | 3.6536% |
| U.S. Dollars | 7.0599% |

The 1987 interest rates set forth above for overdue interest in each currency are equal to the average one-month LIBOR applicable to such currency (or where no rate is available at a rate equal to the average of the applicable one-month domestic rate) for the fifteenth day of each month during 1987.

(b) <u>January 1, 1988 to December 31, 1988</u>. Interest which became overdue prior to or during 1988 shall accrue interest for the period during which such interest remained unpaid in 1988 at the per annum interest rates set forth below for Eligible Interest denominated in each of the following currencies:

| Currency | Rate |
|---|---|
| Belgian Francs | 6.9793% |
| Canadian Dollars | 9.1955% |

E-2

| Currency | Rate |
|---|---|
| Deutsche Mark | 4.1857% |
| Dutch Guilders | 4.6903% |
| European Currency Units | 6.8597% |
| French Francs | 7.8413% |
| Italian Lire | 11.1798% |
| Japanese Yen | 4.2280% |
| Portuguese Escudos | 12.3400% |
| Pounds Sterling | 9.9220% |
| Spanish Pesetas | 11.3000% |
| Swiss Francs | 2.9871% |
| U.S. Dollars | 7.7943% |

The 1988 interest rates set forth above for overdue interest in each currency are equal to the average one-month LIBOR applicable to such currency (or where no rate is available at a rate equal to the average of the applicable one-month domestic rate) for the fifteenth day of each month during 1988.

(c) *January 1, 1989 to December 31, 1989.* Interest which became overdue prior to or during 1989 shall accrue interest for the period during which such interest remained unpaid in 1989 at the per annum interest rates set forth below for Eligible Interest denominated in each of the following currencies:

| Currency | Rate |
|---|---|
| Belgian Francs | 8.7555% |
| Canadian Dollars | 11.8048% |
| Deutsche Marks | 6.8620% |
| Dutch Guilders | 7.2502% |
| European Currency Units | 9.2111% |
| French Francs | 9.1408% |
| Italian Lire | 12.1642% |
| Japanese Yen | 5.2697% |
| Portuguese Escudos | 12.8400% |
| Pounds Sterling | 13.8126% |
| Spanish Pesetas | 14.3900% |
| Swiss Francs | 6.9820% |
| U.S. Dollars | 9.2891% |

E-3

The 1989 interest rates set forth above for overdue interest in each currency are equal to the average one-month LIBOR applicable to such currency (or where no rate is available at a rate equal to the average of the applicable one-month domestic rate) for the fifteenth day of each month during 1989.

(d) January 1, 1990 to December 31, 1990. Interest which became overdue prior to or during 1990 shall accrue interest for the period during which such interest remained unpaid in 1990 at the per annum interest rates set forth below for Eligible Interest denominated in each of the following currencies:

| Currency | Rate |
|---|---|
| Belgian Francs | 9.7711% |
| Canadian Dollars | 12.7918% |
| Deutsche Mark | 8.2188% |
| Dutch Guilders | 8.5417% |
| European Currency Units | 10.1186% |
| French Francs | 10.0834% |
| Italian Lire | 11.8491% |
| Japanese Yen | 7.4962% |
| Portuguese Escudos | 13.7300% |
| Pounds Sterling | 14.8034% |
| Spanish Pesetas | 14.7600% |
| Swiss Francs | 8.8960% |
| U.S. Dollars | 8.2214% |

The 1990 interest rates set forth above for overdue interest in each currency are equal to the average one-month LIBOR applicable to such currency (or where no rate is available at a rate equal to the average of the applicable one-month domestic rate) for the fifteenth day of each month during 1990.

(e) January 1, 1991 to December 31, 1991. Interest which became overdue prior to or during 1991 shall accrue interest for the period during which such interest remained unpaid in 1991 at the per annum interest rates set forth below for Eligible Interest denominated in each of the following currencies:

E-4

| Currency | Rate |
|---|---|
| Belgian Francs | 9.4065% |
| Canadian Dollars | 9.0080% |
| Deutsche Mark | 9.1225% |
| Dutch Guilders | 9.2528% |
| European Currency Units | 9.8491% |
| French Francs | 9.5131% |
| Italian Lire | 11.6824% |
| Japanese Yen | 7.4246% |
| Portuguese Escudos | 15.8100% |
| Pounds Sterling | 11.7176% |
| Spanish Pesetas | 13.2000% |
| Swiss Francs | 8.1773% |
| U.S. Dollars | 5.9115% |

The 1991 interest rates set forth above for overdue interest in each currency are equal to the average one-month LIBOR applicable to such currency (or where no rate is available at a rate equal to the average of the applicable one-month domestic rate) for the fifteenth day of each month during 1991.

(f) **January 1, 1992 to the earlier of the Closing Date and March 31, 1993.** Interest which became overdue on or prior to December 31, 1991 shall accrue interest for the period from January 1, 1992 to the earlier of the Closing Date or March 31, 1993 during which such interest remained unpaid at the per annum interest rates set forth below for Eligible Interest denominated in each of the following currencies:

| Currency | Rate |
|---|---|
| Belgian Francs | 9.3125% |
| Canadian Dollars | 7.0625% |
| Deutsche Marks | 9.3125% |
| Dutch Guilders | 9.2500% |
| European Currency Units | 9.8750% |
| French Francs | 9.5625% |
| Italian Lire | 11.9375% |
| Japanese Yen | 4.3125% |
| Portuguese Escudos | 17.2500% |
| Pounds Sterling | 10.7500% |

E-5

| Currency | Rate |
|---|---|
| Spanish Pesetas | 12.0625% |
| Swiss Francs | 8.3750% |
| U.S. Dollars | 4.0000% |

Interest will not accrue from January 1, 1992 through March 31, 1993 in respect of interest which first became overdue after December 31, 1991.