Ex. 1B, p. 13

"**Registered Bonds**" means Floating Rate Bonds in definitive registered form, substantially in the form hereunder, without coupons.

"**Series**" means each of Series L and Series U of the Floating Rate Bonds.

(b)  **Mandatory Redemption of Bonds.**  If Argentina shall voluntarily prepay, purchase or otherwise acquire for value, in whole or in part, earlier than contemplated by the original payment schedule therefor, any obligation to any Official Source (other than obligations owed directly to another government) incurred prior to the Exchange Date or in respect of which a commitment from any such Official Source was obtained and at least one disbursement thereunder was made prior to the Exchange Date (an "**Official Credit**"), then Argentina shall, in accordance with the procedures set forth in clause (c) below, designate the First Interest Payment Date falling at least 60 days after the date of such prepayment as a mandatory redemption date (a "**Mandatory Redemption Date**") and shall redeem on such Mandatory Redemption Date the Bonds and Other Floating Rate Bonds submitted for redemption, at par, without premium or penalty, in an amount equal to the product of the U.S. Dollar equivalent of the amount of such prepayment of such Official Credits multiplied by a fraction, the numerator of which is the unpaid principal amount of such Bond or Other Floating Rate Bond submitted for redemption, and the denominator of which is the aggregate unpaid principal amount of all Bonds and Other Floating Rate Bonds to be redeemed on the Mandatory Redemption Date; **provided** that (i) a repurchase by Argentina of amounts of its currency in response to a notification by the IMF made in accordance with the Articles of Agreement of the IMF and policies of the Executive Board of the IMF of general applicability to all members of the IMF, as reflected, when purchases are made by Argentina under a stand-by or other arrangement, in the text of such arrangements, shall not be considered a voluntary prepayment for purposes of this provision and (ii) the foregoing mandatory redemption obligation shall not arise by virtue of any voluntary prepayment of any Official Credit to the extent that such Official Credit is refinanced by funds advanced by any Official Source on terms more favorable to Argentina than those of the refinanced Official Credit; and **provided further** that the foregoing mandatory redemption obligation shall not arise by virtue of a voluntary prepayment of an Official Credit if and to the extent that, at the time of such voluntary prepayment, the aggregate amount of voluntary prepayments of Official Credits made by Argentina since the Exchange Date (other than voluntary prepayments under clauses (i) and (ii) of the foregoing **proviso** and voluntary

prepayments which require mandatory redemptions under this provision) is less than or equal to the Proceeds Amount (as defined below) of Collateral (as defined in the Collateral Pledge Agreement) released since the Exchange Date as a result of the cancellation of Principal Bonds. As used herein, "Proceeds Amount" means, for the Collateral (as defined in the Collateral Pledge Agreement) released to Argentina since the Exchange Date as a result of the cancellation of Principal Bonds, an amount equal to the sum of the following:

(A) in the case of any Collateral so released consisting of cash, the amount thereof; and

(B) in the case of any Principal Collateral (as defined in the Collateral Pledge Agreement) or Interest Collateral (as defined in the Collateral Pledge Agreement) so released other than cash, the aggregate net cash proceeds obtained from the sale thereof.

(c) Redemption Procedures.

(i) Notice of any redemption of Bonds shall be given by mail and by publication, not less than 30 nor more than 60 days before the date fixed for redemption. Notice having been given, the unpaid principal amount of each Bond (or portion thereof) called for redemption pursuant to Paragraph 4(a) above or submitted for redemption pursuant to Paragraph 4(c)(ii) below shall become due and payable on the date fixed for redemption as provided herein upon presentation and surrender of such Bond on the date of redemption in accordance with the provisions for payment of the scheduled final installment of principal in Paragraph 2(a) hereof. In the case of any Bond redeemed only in part, a new Bond for the portion thereof not redeemed shall be delivered in exchange therefor, and, if applicable, the final maturity date of which shall be adjusted to give effect to such redemption and corresponding reduction in the unpaid principal of such Bond. Any payments for the partial redemption of Bonds shall be applied to the principal installments of such Bonds in the inverse order of their maturities. Any redemption of all or a portion of a principal installment of a Bond in accordance with this Paragraph 4 will not affect the obligation of Argentina to pay interest accrued to (but excluding) the redemption date on such principal installment (or portion thereof) in accordance with the terms of this Bond.

(ii) Any Bondholder electing to redeem a Bond subject to redemption under Paragraph 4(b) above must deposit such Bond with the Fiscal Agent or any Paying Agent, or, in the case of the holder of a beneficial interest in a Global Bond, must irrevocably instruct Euroclear or Cedel, as the

case may be, as to its election and, in each case, deliver to the Fiscal Agent a redemption notice substantially in the form of Exhibit 3 to the Fiscal Agency Agreement completed by such Bondholder or, in the case of a Global Bond, by the Common Depositary, not less than 15 days prior to the date fixed for redemption. No such election, and no Bond so deposited, may be withdrawn without the prior consent of Argentina and any Bond not so deposited or beneficial interest not so transferred shall not be redeemed under Paragraph 4(b) above.

(iii) From and after the redemption date for any Bond (or portion thereof), if moneys for the redemption of such Bond (or portion thereof) shall have been made available as provided herein, such Bond (or portion thereof) shall cease to bear interest, and the only right of the holder of such Bond shall be to receive payment of the redemption price, and in the case of a Bond redeemed only in part, to receive a new Bond for the portion thereof not redeemed.

(iv) For purposes of this Bond, a default in the payment of principal of, or interest on, the Bonds or any Other Bonds which has occurred shall be deemed to be continuing until Argentina has deposited, or caused to be deposited, in accordance with Section 6(b) of the Fiscal Agency Agreement or Section 5(b) of the USD Fiscal Agency Agreement or the DMK Fiscal Agency Agreement, as the case may be (or in the case of the Principal Bonds, if the Collateral Agent (as defined in the Collateral Pledge Agreement) has deposited amounts with the Fiscal Agent in accordance with Section 4.04 of the Collateral Pledge Agreement with respect to such Principal Bonds), amounts sufficient to pay the principal and/or interest due on such Bonds or Other Bonds to the date of payment of such principal and/or interest.

(d) <u>Repurchase of Bonds</u>. Argentina or any Argentine Governmental Agency may for any consideration (whether in the form of cash, debt securities, investments, equity in privatized companies or otherwise) at any price and time repurchase Bonds, by tender (available to all holders of Bonds and Other Floating Rate Bonds alike) or in the open market or otherwise; <u>provided</u> in each case that:

(A) neither Argentina nor any Argentine Governmental Agency (other than an Argentine Bank (i) for its trading account in the ordinary course of business or (ii) for the account of customers that are not Argentine Governmental Agencies) may, directly or indirectly, purchase Bonds for cash or any form of Indebtedness of Argentina or any Argentine Governmental Agency so long as a default in the payment of principal of, or interest on,

any of the Bonds or the Other Bonds has occurred and is continuing; and

(B) any definitive Bond purchased or otherwise acquired by, or on behalf of, Argentina must be surrendered to the Fiscal Agent, the Registrar or a Transfer Agent for cancellation and, if Argentina shall purchase or otherwise acquire any beneficial interest in a Global Registered Bond, Argentina shall, in the case of the Non-U.S. Permanent Global Registered Bond, request Euroclear or Cedel, as the case may be, to cancel such beneficial interest and shall request the Fiscal Agent to direct the Common Depositary or the Registrar, as the case may be, to reflect such cancellation of such beneficial interest on the Schedule to such Global Registered Bond or the Registrar's records, as the case may be, each such surrender or request for cancellation to be made by Argentina promptly after such purchase or acquisition.

If Argentina shall purchase or otherwise acquire any Bond, such purchase or other acquisition shall not operate as or be deemed for any purpose to be a discharge or satisfaction of the indebtedness represented by such Bond until the provisions of clause 4(d)(B) above have been met.

5. **Taxes; Payment of Additional Amounts**.

(a) **Payments Free and Clear**. Any and all payments by Argentina hereunder shall be made free and clear of and without deduction for any and all present or future taxes, levies, assessments, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (i) imposed by Argentina (or any political subdivision or taxing authority thereof or therein or any organization or federation of which Argentina is at any time a member) (all such taxes, levies, imposts, deductions, charges, withholdings and liabilities being "**Argentine Taxes**") or (ii) imposed by any other jurisdiction (or any political subdivision or taxing authority thereof or therein or any organization or federation of which such jurisdiction is at any time a member) from or through which any payment hereunder is made (all such taxes, levies, imposts, deductions, charges, withholdings and liabilities being "**Paying Agency Taxes**" and, together with the Argentine Taxes, the "**Applicable Taxes**"); provided, however, that Applicable Taxes shall not include, (x) Argentine Taxes that are (A) imposed on an Argentine Person or (B) imposed on a Person who is deemed to have a permanent establishment in Argentina to

Ex. 1B, p. 17

which this Bond, and the income therefrom, is attributable (unless this Bond is being held or booked or payments hereunder are received in Argentina solely to enforce any rights hereunder that otherwise would not, in the opinion of independent counsel of recognized standing, be exercisable) or (Y) Paying Agency Taxes that (A) are imposed by reason of any connection between the Purchaser and the taxing jurisdiction other than entering into the Bond Agreements, holding the Bonds or receiving payment thereon, (B) are required to be deducted or withheld by any Paying Agent from payment of this Bond if such payment can be made without such deduction or withholding by any other Paying Agent or (C) would not have been imposed but for the presentation by the holder of this Bond for payment more than 30 days after the date on which such payment became due and payable or on which payment thereof was duly provided for, whichever occurs later. If Argentina or a Paying Agent shall be required by law to deduct any Applicable Taxes from or in respect of any sum payable by it hereunder:

    (1)  the sum payable shall be increased as may be necessary so that after making all required deductions of such Applicable Taxes (including deductions of such Applicable Taxes applicable to additional sums payable under this Section), the holder of this Bond receives an amount equal to the sum it would have received had no such deductions of such Applicable Taxes been made;

    (2)  Argentina or such Paying Agent shall make such deductions; and

    (3)  Argentina or such Paying Agent shall pay the full amount deducted to the relevant taxing authority or other authority in accordance with applicable law.

    (b)  <u>Payment of Stamp Taxes</u>.  In addition, Argentina agrees to pay any present or future stamp, court or documentary taxes or any other excise or property taxes, charges or similar levies and any related interest or penalties incidental thereto imposed by Argentina or any political subdivision or taxing authority thereof or therein which arise from any payment made by Argentina or a Paying Agent hereunder or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, the Bonds and the other Bond Agreements (hereinafter referred to as "<u>Other Applicable Taxes</u>").

    (c)  <u>Tax Certificates</u>.  Within 30 days after the date of any payment of Applicable Taxes or Other Applicable

Taxes by Argentina or a Paying Agent, Argentina or such Paying Agent will furnish to the Fiscal Agent the original or a certified copy of a receipt evidencing payment thereof. The Fiscal Agent shall furnish each such Bondholder to which Argentina made or is obligated to make a payment that resulted in such Applicable Taxes or Other Applicable Taxes with, if practicable, an original of such receipt or certified copy or, if insufficient originals are available for distribution, shall provide each such Bondholder with access to an original.

(d) <u>Survival</u>. Without prejudice to the survival of any other agreement of Argentina hereunder, the agreements and obligations of Argentina contained in this Paragraph 5 shall survive the payment in full of all payment due hereunder or under the other Floating Rate Bond Agreements and the performance of any other obligations hereunder or thereunder.

6. <u>Valid Obligations</u>.

Argentina represents and agrees that all action has been taken and all conditions precedent have occurred so that this Bond and all the obligations herein contained shall be valid and legally enforceable obligations of Argentina in accordance with their terms, including without limitation all acts or things necessary or appropriate under the Constitution, laws and regulations of Argentina.

7. <u>Payment of Unclaimed Amounts</u>.

Subject to Section 12(b) of the Fiscal Agency Agreement, any moneys paid by Argentina to the Fiscal Agent (or remitted by the Fiscal Agent to any other Paying Agent) for payment of principal of, or interest on, any of the Bonds shall be held in trust by the Fiscal Agent or such Paying Agent for the Bondholders to be paid to such Bondholders in accordance with Sections 6(a) and 6(b)(i) of the Fiscal Agency Agreement. Any moneys so held remaining unclaimed at the end of two years after such principal or interest shall have become due and payable (whether at maturity or upon call for redemption or otherwise) shall be repaid to Argentina on its written demand, and upon such repayment such trust shall terminate and all liability of the Fiscal Agent and each Paying Agent with respect to such moneys shall cease, and a Bondholder presenting a claim therefor shall thereafter look only to Argentina for payment thereof; <u>provided</u> that such repayment shall not limit in any way any obligation which Argentina may have to pay the principal of, or interest on, the Bonds as the same shall become due.

8. Covenants.

(a) *Affirmative Covenants*. Argentina covenants and agrees that, so long as any Bond remains outstanding, Argentina shall:

(i) *Maintenance of Argentine Authorizations*. Duly obtain and maintain in full force and effect all Argentine Authorizations necessary under the laws of Argentina for the performance by Argentina of the Bonds or any other Bond Agreement or for the validity or enforceability of the Bonds or of the other Bond Agreements and duly take all necessary and appropriate governmental and administrative action in Argentina, in order for Argentina to be able to make all payments to be made by Argentina under the Bonds and the other Bond Agreements.

(ii) *Pari Passu*. Ensure that at all times its obligations hereunder constitute unconditional general obligations of Argentina ranking at least *pari passu* in priority of payment with (A) all other Indebtedness of Argentina which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Pesos and (B) all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Pesos.

(iii) *Debt Conversion Program*. Maintain the eligibility of the Bonds for tender in Argentina's debt conversion program.

(iv) *Maintenance of Membership in International Financial Institutions*. Maintain at all times its membership in the IMF, IBRD and IADB and continue to be eligible to use the general resources of the IMF.

(v) *Annual Economic Report*. Furnish to the Fiscal Agent sufficient copies of (A) the Annual Economic Report of BCRA ("*Memoria Anual*"), or comparable economic information.

(vi) *Maintenance of Agents*. Until two years after the later of the date on which the principal of all the Bonds shall have become due and payable (whether at maturity or upon call for redemption or otherwise) and the date on which moneys for the payment thereof and of

all interest on the Bonds shall have been made available to the Fiscal Agent, to maintain a Fiscal Agent, an Authenticating Agent, a Registrar and Transfer Agent in the Borough of Manhattan, City of New York (which in each case shall be a commercial bank or trust company (other than BCRA or an Argentine Bank), or any affiliate thereof, having a combined capital and surplus of at least U.S.$1,000,000,000 (or the equivalent in other currencies), legally qualified to act as such Agent and having an established place of business in the Borough of Manhattan, City of New York). Subject to the foregoing, Argentina reserves the right at any time to vary or terminate the appointment of the Agents in the manner, and to the extent, provided in paragraph 15 hereof and in the Fiscal Agency Agreement.

[(vii) Listing. Make application for listing the [Series L][16A] Bonds [for which this Bond is exchangeable in accordance with the terms of the Fiscal Agency Agreement][16A] on the Luxembourg Stock Exchange and use its best efforts to (x) ensure listing thereon, and (y) once the bonds are so listed, to maintain the listing of the Bonds thereon or, if maintenance on the therein is not practicable, on another internationally recognized securities exchange.][16]

(b) Negative Covenants. For so long as any of the Bonds remain outstanding, Argentina shall not:

(i) Until the earlier of (x) the date on which 50% of the aggregate principal amount of the Bonds and Other Floating Rate Bonds is repaid or cancelled and (y) the seventh anniversary of __[17]__ (provided that on such seventh anniversary no default in the payment of principal of, or interest on, the Bonds and Other Floating Rate Bonds has occurred and is continuing), Argentina shall not create or suffer to exist, or permit BCRA to create or suffer to exist, any Lien upon any of its present or future assets or revenues to secure or otherwise provide for the payment of any Publicly Issued

---

16. Include in Series L Bonds and U.S. Temporary Escrow Global Registered Bond only.

16A. Insert for U.S. Temporary Escrow Global Registered Bond.

17. Insert the date which is the earlier of the Exchange Date and March 31, 1993.

External Indebtedness of Argentina or BCRA unless, on or prior to the date such Lien is created or comes into existence, the obligations of Argentina under the Bonds and the Other Floating Rate Bonds are secured equally and ratably with such Publicly Issued External Indebtedness; excluding, however, from the operation of the foregoing provisions, (i) any Lien upon property to secure the purchase price of such property or any Publicly Issued External Indebtedness incurred solely for the purpose of financing the acquisition of the property to be subject to such Lien; (ii) any Lien existing on such property at the time of its acquisition which secures any Publicly Issued External Indebtedness; (iii) any Lien created in connection with the transactions contemplated by the Principal Bond Agreements, including Liens to secure obligations under the Principal Bonds and Liens securing Indebtedness outstanding on the date hereof to the extent required to be equally and ratably secured with the Principal Bonds; (iv) any Lien in existence as of June 23, 1992; (v) any Lien securing Publicly Issued External Indebtedness issued upon surrender or cancellation of (A) Principal Bonds or (B) the principal amount of any Indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Publicly Issued External Indebtedness on a basis comparable to the Principal Bonds; (vi) any Lien securing or providing for the payment of Publicly Issued External Indebtedness incurred in connection with any Project Financing (as defined below); provided that the properties to which any such Lien applies are (A) properties which are the subject of such Project Financing or (B) revenues or claims which arise from the operation, failure to meet specifications, failure to complete, exploitation, sale or loss of, or damage to, such properties; (vii) any Lien on any Principal Bond created or granted to secure Publicly Issued External Indebtedness of Argentina incurred in connection with, or on or after the date of, the purchase or acquisition of such Principal Bond and (viii) any renewal or extension of any such Liens described in clauses (i), (ii), (iii), (iv), (v), (vi) and (vii) above; provided, however, that no such renewal or extension of any Lien under clauses (i) or (ii) above shall extend to or cover any property other than the property being acquired and no such renewal or extension of any lien described in clauses (i) through (vii) above shall extend to or cover any property not theretofore subject to the Lien being extended or renewed but shall remain limited to the original property covered thereby. As used herein, the term "Project Financing" means any financing (but not a refinancing) of the acquisition, construction or development of any properties in connection with a project if the Person or Persons providing such financing expressly agree to look

Ex. 1B, p. 22

to the properties financed and the revenues to be generated by the operation of, or loss of or damage to, such properties as the principal source of repayment for the moneys advanced and have been provided with a feasibility study prepared by competent independent experts on the basis of which it was reasonable to conclude that such project would generate sufficient income in currencies other than Pesos to repay substantially all of the principal of and interest on all Publicly Issued External Indebtedness incurred in connection with such project; and "**Lien**" means any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or other preferential arrangement having the practical effect of constituting a security interest.

(ii) Directly or indirectly seek any restructuring or rescheduling of the Bonds or any provisions thereof, nor will it directly or indirectly seek or request any loans, advances, extensions of credit or other financial accommodation from any holders of Bonds or any affiliates thereof based on such holdings.

[(iii) Make, nor grant permission to make, application to list the [Series U][18A] Bonds [for which this Bond is exchangeable in accordance with the terms of the Fiscal Agency Agreement][18A] on any stock exchange.][18]

9. Events of Default.

If any of the following events (each an "**Event of Default**") shall occur and be continuing:

(a) interest on any Bond is not paid when due and such default continues for a period of at least 30 days; or

(b) Argentina fails to pay (i) the principal amount of the Bonds when due, or (ii) the principal amount of any Bond called for redemption when due for a period of 15 days; or

(c) Argentina defaults in the performance of any other obligation contained in the Bonds or the other Bond Agreements relating to the Bonds and such default shall

---

18. Insert for Series U Bonds and U.S. Temporary Escrow Globabl Registered Bond only.

18A. Insert for U.S. Temporary Escrow Global Registered Bond.

continue for a period of 90 days after written notice thereof shall have been given to Argentina at the office of the Fiscal Agent by any Bondholder; or

(d) (i) the holders of 25% or more in aggregate outstanding principal amount of any issue or series of Publicly Issued External Indebtedness of Argentina or any Designated Argentine Governmental Agency (including any Other Bonds), as a result of any failure to pay the principal of, or interest on, such Publicly Issued External Indebtedness, accelerate such Publicly Issued External Indebtedness or declare such Publicly Issued External Indebtedness to be due and payable, or required to be prepaid (other than by a regularly scheduled required prepayment), prior to the stated maturity thereof and such acceleration, declaration or prepayment shall not have been annulled or rescinded within 30 days thereof or (ii) Argentina or any Designated Argentine Governmental Agency fails to pay the principal of any such Publicly Issued External Indebtedness when due (after expiration of any applicable grace period), or (iii) Argentina fails to pay any interest when due under any Other Bonds (after expiration of any applicable grace period); or

(e) Argentina declares a moratorium with respect to the payment of principal of, or interest on, Publicly Issued External Indebtedness of Argentina; or

(f) any writ, execution, attachment or similar process shall be levied against all or any substantial part of the assets of Argentina in connection with any judgment in respect of External Indebtedness (other than External Indebtedness under the Debt Agreements) for the payment of money exceeding U.S.$100 million (or its equivalent in other currencies) and shall remain unsatisfied, undischarged and in effect for a period of 45 consecutive days without a stay of execution, unless the same is adequately bonded or is being contested by appropriate proceedings properly instituted and diligently conducted and, in either case, such process is not being executed against such assets; or

(g) the validity of the Bonds or the other Bond Agreements relating thereto shall be contested by Argentina;

then, if such event is continuing, holders of 25% or more in aggregate outstanding principal amount of the Bonds may, by written demand to Argentina at the office of the Fiscal Agent, declare the Bonds immediately due and payable, whereupon the entire unpaid principal amount of the Bonds, all interest accrued and unpaid thereon and all other amounts

payable in respect of the Bonds shall become and be forthwith due and payable, without presentation, demand, protest or further notice of any kind, all of which are hereby expressly waived by Argentina. Any such declaration shall be made by written demand to Argentina at the office of the Fiscal Agent in New York City. Upon receipt by the Fiscal Agent of such written demand, the Fiscal Agent shall give notice thereof to Argentina, as provided in the Fiscal Agency Agreement, and to the holders of the Bonds, by mail and publication. After any such declaration, if all amounts then due with respect to the Bonds are paid (other than amounts due solely because of such declaration) and all other defaults with respect to the Bonds are cured, such declaration may be annulled and rescinded by holders of more than 50% in aggregate outstanding principal amount of the Bonds (or such other percentage required at a meeting of Bondholders in accordance with Paragraph 11 hereof) by written notice thereof to Argentina at the office of the Fiscal Agent.

10. <u>Transfer, Exchange for New Bonds and Replacement</u>.

(a) This Bond is transferable (subject to applicable restrictions in the legend appearing on the face of this Bond and in the Fiscal Agency Agreement) by the registered holder hereof or by his attorney-in-fact duly authorized in writing, at the office of the Registrar or of any Transfer Agent, upon surrender of this Bond for cancellation duly endorsed by, or accompanied by a written instrument of transfer, in the form set forth at the end of these Terms and Conditions or in such other form satisfactory to the Registrar duly executed by, the registered holder or his attorney-in-fact duly authorized in writing, and thereupon one or more new Registered Bonds in Authorized Denominations for the same aggregate principal amount will be issued in the name of the transferee or transferees in exchange therefor.

(b) This Bond is exchangeable (subject to applicable restrictions contained in the Fiscal Agency Agreement) by the registered holder hereof or by his attorney-in-fact duly authorized in writing at the office of the Registrar or of any Transfer Agent, upon surrender of this Bond for exchange, into one or more new Registered Bonds in Authorized Denominations with the same aggregate principal amount, and thereupon such new Bonds will be issued to such registered holder.

(c) Notwithstanding any other provision of this Bond, the Registrar shall not be required to register the transfer of or exchange this Bond (i) during a period beginning at the opening of business 15 days before the date

of transmission of a notice of partial redemption of the Bonds and ending at the close of business on the day of such transmission or (ii) at any time after this Bond has been called for redemption; **provided** that, with respect to any Bond called for partial redemption, the Registrar shall register the transfer of or exchange such principal amount not subject to redemption.

(d) Argentina may require payment of a sum sufficient to cover any stamp tax or other governmental charge (other than a stamp tax or governmental charge imposed by Argentina itself) in connection with any such transfer or exchange, but no other charge shall be made in connection with any such transfer or exchange (except for the expenses of delivery other than by regular mail).

(e) In case of the mutilation, destruction, loss or theft of this Bond, the Registrar, upon surrender to and cancellation by it of the mutilated Bond, or upon receipt of proof satisfactory to it and Argentina of the destruction, loss or theft of such Bond, and receipt of security or indemnity satisfactory to the Registrar, to the Fiscal Agent, to the Authenticating Agent and to Argentina, shall register, and the Registrar or a Transfer Agent shall deliver, a new Bond of such Series in replacement of such Bond to the person requesting such replacement upon payment by such person of all reasonable expenses associated with obtaining such security or indemnity and issuing and delivering a new Bond (including, without limitation, reasonable legal fees and reasonable expenses relating to the preparation, authentication and delivery of such new Bond).

(f) Prior to the presentment for registration of transfer of this Bond, Argentina and each of the Agents may deem and treat the person in whose name this Bond is registered as the absolute owner of this Bond (whether or not this Bond shall be overdue and notwithstanding any notice of ownership or other writing hereon) for the purpose of receiving payment hereof or on account hereof and for all other purposes, and neither Argentina nor any Agent shall be affected by any notice to the contrary; **provided** that, with respect to beneficial interests in the Non-U.S. Permanent Registered Global Bond, each person who is shown in the records of the Euroclear Operator or of Cedel as the holder of a particular principal amount of such Global Bond shall be treated as the holder of such principal amount of Bonds for all purposes other than with respect to receiving notices by mail or payment hereof or on account hereof.

(g) All Bonds issued as a result of any transfer, exchange or replacement of Bonds shall be delivered to the holder at the office of the Registrar or a Transfer Agent or (at the risk and, if sent other than by regular mail, expense of such Bondholder) sent by mail to such address as is specified by the holder in the request for transfer, exchange or replacement.

(h) Argentina has initially appointed each of the principal offices of Citibank, N.A. in New York City and London and of Citibank (Luxembourg) S.A. in Luxembourg as a Transfer Agent where the Bonds may be surrendered for transfer, exchange or substitution. The Fiscal Agent shall, directly or through an affiliate, maintain in the Borough of Manhattan, City of New York, a register in which Bonds executed, authenticated and delivered as provided herein and in the Fiscal Agency Agreement, and the transfer, exchange, substitution and cancellation of such Bonds, shall be registered.

11. *Meetings of Bondholders; Modification and Amendments*.

(a) Upon not less than 15 days' prior notice to the Fiscal Agent, Argentina may at any time call a meeting of the Bondholders of any Series pursuant to the notice provisions of the Fiscal Agency Agreement, such meeting to be held at such time and place as Argentina shall determine. Upon a request in writing to the Fiscal Agent made by Bondholders holding not less than 10% of the aggregate outstanding principal amount of the Bonds of any Series, the Fiscal Agent shall convene a meeting of Bondholders of such Series. Further provisions concerning meetings of Bondholders are set forth in the Fiscal Agency Agreement.

(b) Modifications and amendments to the Fiscal Agency Agreement (subject to the provisions of Section 16 of the Fiscal Agency Agreement), or the Bonds requiring Bondholder consent may be made, and future compliance therewith or past default by Argentina may be waived, with the consent of Argentina and the Bondholders holding at least a majority in aggregate principal amount of the Bonds at the time outstanding, or of such lesser percentage (determined as provided in subparagraph (c) below) as may act at a meeting of Bondholders held in accordance with the provisions of the Fiscal Agency Agreement; *provided* that no such modification, amendment or waiver of the Fiscal Agency Agreement or any Bond may, without the consent of each Bondholder affected

thereby, (i) change the stated maturity or any date fixed for payment of the principal of or interest due on such Bond; (ii) reduce the principal of, or interest on, any such Bond; (iii) change the currency of payment of the principal of, or interest on, any such Bond; or (iv) reduce the above-stated percentage of aggregate principal amount of Bonds outstanding or reduce the quorum requirements or the percentage of votes required for the taking of any action. Any modifications, amendments or waivers consented to or approved at a meeting will be conclusive and binding on all holders of the Bonds whether or not they have given consent or were present at such meeting, and on all future holders of Bonds whether or not notation of such modifications, amendments or waivers is made upon the Bonds. Subject to the foregoing provisions of this Paragraph 11(b), any instrument given by or on behalf of any holder of a Bond in connection with any consent to any such modification, amendment or waiver will be irrevocable once given and will be conclusive and binding on all subsequent holders of such Bond.

(c) At a meeting of the Bondholders called for any of the above purposes, persons entitled to vote a majority in aggregate principal amount of the Bonds at the time outstanding shall constitute a quorum, it being understood that any Bondholder entitled to more than one vote shall not be required to cast all such votes in the same manner. In the absence of a quorum within 30 minutes of the time approved for such meeting, such meeting may be adjourned for a period of not less than ten days; at the reconvening of any meeting adjourned for lack of a quorum, the persons entitled to vote 25% in aggregate principal amount of the Bonds at the time outstanding shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. At a meeting or an adjourned meeting duly convened and at which a quorum is present as aforesaid, any resolution to modify or amend, or to waive compliance with, any of the covenants or conditions referred to above (other than to make any declaration under Paragraph 9 hereof) shall be effectively passed, subject to the provisos of subparagraph (b) above, if passed by the persons entitled to vote the lesser of (i) a majority in aggregate principal amount of Bonds then outstanding or (ii) 75% in aggregate principal amount of the Bonds represented and voting at the meeting.

12. *Notices*.

All notices to Bondholders will be given by publication thereof in *The Wall Street Journal* (Eastern

Edition), [and][19] the Financial Times (London) (or if either or both of such newspapers is not being published, in at least one leading daily newspaper printed in the English language and with general circulation in New York City or London, as the case may be) [and, so long as the [Series L][19A] Bonds are listed on the Luxembourg Stock Exchange and it is so required for continued listing thereon, in the Luxemburger Wort (or if such newspaper is not being published, in a daily newspaper of general circulation in Luxembourg][20] or, if publication in [either][20] London [or Luxembourg][20] is not practical, elsewhere in western Europe). In addition, notices to Bondholders required to be mailed shall be mailed by first class, or, if applicable, prepaid, air mail to each Bondholder to the address set forth on the register kept by the Registrar for the Bonds. Any such notice shall be deemed to have been given on the earlier of the date of such publication (or, if published more than once, on the date it is first published) and the day which is three days after such notice by mail shall have been deposited in the mails.

13. **Rights and Remedies Cumulative.**

No right or remedy herein conferred upon or reserved to any Bondholder is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

14. **Delay or Omission Not Waiver.**

No delay or omission of the Bondholders to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Paragraph 14 or by law to the Bondholders may be exercised from time to time, and as often as may be deemed expedient, by the Bondholders.

---

19. Delete for Series L Bonds.
19A. Delete for Series L Bonds.
20. Delete for Series U Bonds.

Ex. 1B, p. 29

### 15. Maintenance of Paying Agents and Transfer Agents.

Argentina may vary or terminate the appointment of any Paying Agent or Transfer Agent at any time and from time to time upon giving not less than 60 days' notice to the Fiscal Agent; <u>provided</u> that Argentina shall maintain at all times at least one Paying Agent in New York City and London. [In addition, Argentina shall maintain at all times a Paying Agent and a Transfer Agent in Luxembourg as long as the [Series L]20A Bonds are listed on the Luxembourg Stock Exchange and it is so required for continued listing thereon.]21 Notice of any change in a Paying Agent shall be given to Bondholders in accordance with Paragraph 12 hereof.

### 16. Execution.

This Bond may be executed by manual or facsimile signature of an Authorized Official and such signature shall be binding notwithstanding that the individual signing in such capacity no longer serves in such capacity at the time of the authentication by an Authenticating Agent. This Bond shall not constitute an obligation of Argentina until the certificate of authentication hereon has been countersigned for identification by an Authenticating Agent.

### 17. Jurisdiction and Waiver of Immunity.

(a) Argentina hereby irrevocably submits to the non-exclusive jurisdiction of any New York state or federal court sitting in New York City, the High Court of Justice in London, any federal court sitting in the City of Buenos Aires and any appellate court from any thereof, in any suit, action or proceeding arising out of or relating to this Bond, and Argentina hereby irrevocably agrees that all claims in respect of such suit, action or proceeding may be heard and determined in such New York state or federal court, in the High Court of Justice in London or any federal court sitting in the City of Buenos Aires. Argentina irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any such suit, action or proceeding and any objection to any such suit, action or proceeding whether on the grounds of venue, residence or domicile. A final judgment in any such suit,

---

20A. Delete for Series L Bonds.
21. Delete for Series U Bonds.

action or proceeding shall be conclusive and may be enforced in any other jurisdictions by suit on the judgment or in any other manner provided by law.

(b) Argentina hereby irrevocably appoints (i) the New York office of Banco de la Nación Argentina (the "**New York Process Agent**"), with an office on the date hereof at 299 Park Avenue, 2nd floor, New York, New York 10171, United States and, alternatively, hereby irrevocably appoints CT Corporation System, with an office on the date hereof at 1633 Broadway, 23rd floor, New York, New York 10019, United States (the "**Alternate New York Process Agent**"), in each case, as its agent to receive, on behalf of itself and its property, service of copies of the summons and complaint and any other process which may be served in any such suit, action or proceeding brought in such New York state or federal court sitting in New York City and (ii) the London office of Banco de la Nación Argentina (the "**London Process Agent**", and, together with the New York Process Agent, the "**Process Agents**"), with an office on the date hereof at Longbow House, 14-20 Chiswell Street, London EC1Y 4SD, England and, alternatively, hereby irrevocably appoints The Law Debenture Trust Corporation p.l.c., with an office on the date hereof at Prince's House, 95 Gresham St., London EC2V 7LY, England (the "**Alternate London Process Agent**" and, together with the Alternate New York Process Agent, the "**Alternate Process Agents**"), in each case, as its agent to receive on behalf of itself and its property service of copies of a writ, summons, order, judgment or other document which may be served in any such action or proceeding brought in the High Court of Justice in London. Service of any such process may be made upon an Alternate Process Agent in lieu of the applicable Process Agent in any action or proceeding in any New York state or federal court sitting in New York City or the High Court of Justice in London if (i) at any time and for any reason it appears to the party attempting to serve the process that service of such process upon any Process Agent as provided above may be ineffective or may not be feasible and (ii) upon or before the serving of any process on any Alternate Process Agent, the Alternate Process Agent and Argentina are notified that service of such process is to be made on such Alternate Process Agent in accordance with the provisions of this sentence. Such service may be made by mailing or delivering a copy of such process to Argentina in care of the appropriate Process Agent or Alternate Process Agent at the address specified above for such Process Agent or Alternate Process Agents and, in the case of process served on an Alternate Process Agent, by depositing a copy

of such process in the United States mails, addressed to Argentina at the address specified in Section 14 of the Fiscal Agency Agreement (such service to be effective upon the delivery of such process to the Alternate Process Agent and the depositing of such process in the United States mails as aforesaid), and Argentina hereby irrevocably authorizes and directs such Process Agent or Alternate Process Agents to accept such service on its behalf. Failure of any Process Agent or Alternate Process Agent to give notice to Argentina or failure of Argentina to receive notice of such service of process shall not affect in any way the validity of such service on the Process Agent, the Alternate Process Agent or Argentina. As an alternative method of service, Argentina also irrevocably consents to the service of any and all process in any such suit, action or proceeding in such New York state or federal court sitting in New York City or the High Court of Justice in London by the mailing of copies of such process to Argentina at its address specified in Section 14 of the Fiscal Agency Agreement. Argentina covenants and agrees that it shall take any and all reasonable action, including the execution and filing of any and all documents, that may be necessary to continue the designations of Process Agents and Alternate Process Agents above in full force and effect, and to cause each Process Agent and Alternate Process Agent to continue to act as such.

(c) Nothing in this Paragraph 17 shall affect the right of any party to serve legal process in any other manner permitted by law or affect the right of any party to bring any action or proceeding against any other party or its property in the courts of other jurisdictions.

(d) To the extent that Argentina has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, Argentina hereby irrevocably waives such immunity in respect of its obligations under the Bonds, the Other Floating Rate Bonds and the other Bond Agreements, and, without limiting the generality of the foregoing, Argentina (A) agrees that the waivers set forth in this Paragraph 17 shall have the fullest scope permitted under the Foreign Sovereign Immunities Act of 1976 of the United States and are intended to be irrevocable for purposes of such act; and (B) consents generally for the purposes of the State Immunity Act 1978 of the United Kingdom to the giving of any relief or the issue of any process.

Ex. 1B, p. 32

Notwithstanding the foregoing, Argentina shall not waive any such immunity (1) with respect to the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of Argentina or property owned by Argentina and located in its territory which is dedicated to the purpose of an essential public service.

18. **BCRA Undertaking.**

The holder of this Bond is entitled to the benefit of the BCRA Undertaking. Such undertaking shall not constitute a guaranty of Argentina's obligations hereunder.

19. **Descriptive Headings.**

The descriptive headings appearing in these Terms and Conditions of the Bonds are for convenience of reference only and shall not alter, limit or define the provisions hereof.