holders of Registered Bonds of such Series at the last address of such holder appearing in the register of the Bonds of such Series.

(c)  If the holder of any definitive Bearer Bond is unable to deliver any unmatured Interest Coupon or Principal Coupon appertaining thereto (whether the original Interest Coupon or Principal Coupon attached thereto or an unattached Interest Coupon or Principal Coupon which is identical as to date and amount) (i) in connection with a redemption under Paragraph 4(a) of the Terms and Conditions of the Bonds, then such redemption may be effected if the holder of such Bearer Bond furnishes such security or indemnity as Argentina and the Fiscal Agent may require to save each of them and the Paying Agents harmless and (ii) in connection with a redemption under Paragraph 4(b) of the Terms and Conditions of the Bonds, then such Bond shall not be redeemed and any funds deposited with the Fiscal Agent or any Paying Agent for redemption shall be allocated among other participating Bondholders in accordance with the procedures set forth in Paragraph 4(b) of the Terms and Conditions.

(d)  Notwithstanding the foregoing, Argentina may not redeem Bonds of any Series under Paragraph 4(a) of the Terms and Conditions of the Bonds prior to stated maturity if a default in the payment of principal of or interest on any Series of Bonds or Principal Bonds has occurred and is continuing.

SECTION 10.   RESIGNATIONS OR REMOVALS OF AGENTS.

(a)  Any Agent may at any time resign as Agent upon 60 days' written notice to Argentina.  Any Agent may be removed by Argentina at any time upon not less than 60 days' written notice to such Agent and, unless such Agent is the Fiscal Agent, to the Fiscal Agent.  Such resignation or removal shall take effect (i) upon the appointment by Argentina, as hereinafter provided, of a successor Agent (which in each case shall be a commercial bank or trust company (other than an Argentine Bank), or any affiliate thereof) having a combined capital and surplus of at least U.S.$1,000,000,000 (or the equivalent), legally qualified to act as such successor and, except in the case of any Paying Agent outside New York City, with an established place of business in the Borough of Manhattan, City and State of New York, (ii) in the event of the removal of any Agent by Argentina, if the Fiscal Agent shall not have received notice from the Bondholders holding more than 50% of the then aggregate outstanding principal amount of all Bonds within 60 days after notice of removal from Argentina that such

42

ondholders object to the appointment of such successor Agent
nd (iii) upon the acceptance of such appointment by such
uccessor and the agreement of such successor to undertake to
erform the applicable duties specified herein; provided,
wever, that, if the Calculation Agent fails duly to
stablish the Rate of Interest or the Interest Amount
orresponding thereto for any Interest Period, such removal
ill take effect immediately upon such appointment of, and
cceptance thereof by, a successor Calculation Agent,
ialified as aforesaid, in which event notice of such
ppointment shall be given as soon as practicable thereafter
r publication in accordance with the notice provisions
ontained in each Series of Bonds.  If such acceptance and
reement by a successor Agent as provided above has not been
mpleted because the Fiscal Agent shall have received the
tice described in clause (ii) above within the time period
ecified therein, Argentina may within 30 days after receipt
Argentina of a copy of such notice appoint a new successor
ent, which appointment shall be notified to the Bondholders
d shall take effect in accordance with the terms of the
evious sentence.  If such acceptance and agreement by a
ccessor Agent as provided above has not been completed
thin 90 days after the delivery of a notice of resignation
an Agent in the circumstances in which Argentina has not
thin such time period appointed a new successor Agent or if
ch acceptance and agreement by a new successor Agent as
ovided above has not been completed within 90 days after
e Fiscal Agent's receipt of the notice referred to in
ause (ii) above, the resigning Agent may petition any court
competent jurisdiction for the appointment of a successor
ent which meets the requirements specified in clause
) above, and, upon the acceptance of such appointment by
ch successor Agent as provided above, such resignation
all become effective.  Notice of any such acceptance by a
ccessor Agent or Agents shall be given to Bondholders by
blication all in accordance with the notice provisions
ntained in the Bonds.

          (b)   Upon the acceptance of any appointment as
nt hereunder by a successor Agent as provided in
tion 10(a) hereof, such successor Agent shall thereupon
cceed to and become vested with all the rights and duties
the retiring Agent, and the retiring Agent shall, upon
nsfer of any funds held hereunder with respect to the
ds of all Series to the successor Agent, be discharged
m its duties and obligations hereunder.  After any
iring Agent's resignation hereunder, the provisions of
tions 11 and 12 hereof shall continue to inure to its
efit as to any actions taken or omitted to be taken by it
le it was an Agent under this Agreement.

43

(c)  Any bank, trust company or corporation (i) into which any Agent hereunder may be merged or converted or (ii) with which such Agent may be consolidated or (iii) resulting from any merger, conversion or consolidation to which such Agent shall be a party or (iv) which shall succeed (by reason of sale or otherwise) to all or substantially all of the corporate trust business of such Agent (provided that it shall be qualified as provided in Section 10(a) hereof) shall be a successor Agent under this Agreement without the execution or filing of any document or any further act on the part of any of the parties hereto. Notice of such merger, conversion or consolidation shall promptly be given to Argentina.

(d)  In case any Bonds shall have been executed by Argentina and authenticated, but not delivered, by the Authenticating Agent then in office, any successor to such Authenticating Agent (by merger, conversion, consolidation or sale or pursuant to Section 10(a)) may adopt such signature by such authenticating Agent and the successor Authenticating Agent may deliver the Bonds so authenticated with the same effect as if such successor had itself authenticated such Bonds.

SECTION 11.   FURTHER CONDITIONS TO DUTIES OF AGENTS.

Citibank hereby accepts its appointment as Authenticating Agent, Paying Agent, Fiscal Agent, Registrar, Transfer Agent and Calculation Agent, respectively, and CBL accepts its appointment as Authenticating Agent, Paying Agent and Transfer Agent, respectively, under this Agreement and each Bondholder, by its acceptance of its Bonds and Argentina by its execution of this Agreement, agrees to the further terms and conditions hereinafter set forth:

(a)  Argentina hereby agrees to pay each Agent such compensation for its services under this Agreement as may be mutually agreed upon in writing between Argentina and such Agent from time to time, plus reimbursement for such Agent's reasonable and documented out-of-pocket costs and expenses incurred in connection with the performance of its duties hereunder, including the reasonable fees and expenses of such Agent's counsel, in accordance with the terms of such writings.  In addition, Argentina agrees to reimburse each Agent for all reasonable costs and expenses incurred by it in connection with the performance of its duties in respect of the Escrowed Floating Rate Bonds.

44

(b)  Argentina hereby agrees to indemnify and hold
harmless each Agent and any of its agents, directors,
officers or employees (each such indemnified person, an
"Indemnified Party") from and against any and all
liabilities, obligations, losses, damages, penalties,
judgments, costs, expenses or disbursements of any kind
or nature whatsoever that may be imposed on or incurred
by, or asserted against, such Indemnified Party in any
way relating to or arising out of the performance of its
duties hereunder, or any action taken or omitted to be
taken by such Indemnified Party in connection with the
performance of its duties under this Agreement or any
other document or instrument delivered hereunder or
thereunder (including, without limitation, any action
taken or omitted to be taken before the date hereof by
such Indemnified Party in preparation for acting
hereunder or thereunder); provided that Argentina shall
not be liable to any Indemnified Party for any portion of
any such amount resulting from the gross negligence or
willful misconduct of such Indemnified Party.

(c)  With respect to any Bonds held by it in its
individual capacity, each Agent shall have the same
rights as any other Bondholder and may exercise the same
as though it were not an Agent hereunder, and may accept
deposits from, lend money to and generally engage in any
kind of banking, trust or other business with, Argentina
as if it were not an Agent.

(d)  Argentina will pay all stamp or other
documentary taxes or duties, if any, to which the
execution or delivery of this Agreement or the original
issuance of the Bonds, may be subject, including any such
tax or duties which are imposed on the exchange of
(i) any beneficial interest in any Temporary Global
Bearer Bond of any Series for a beneficial interest in
the Permanent Global Bearer Bond, (ii) any beneficial
interest in a Permanent Global Bearer Bond of such Series
for definitive Bearer Bonds of such Series, (iii) any
beneficial interest in the Non-U.S. Temporary Global
Registered Bond of any Series for a definitive Registered
Bond for such Series and (iv) any beneficial interest in
the U.S. Temporary Global Registered Bond of any Series
for definitive Registered Bonds of such Series.

SECTION 12.  DISCLAIMER OF LIABILITY.

Argentina and each Bondholder, by its acceptance of
Bonds, agrees with each Agent as follows:

45

(a)  The duties and obligations of each Agent shall be determined solely by the express provisions of this Agreement and no Agent shall be liable except for the performance of its duties and obligations specifically set forth in this Agreement.  No Agent assumes any obligation or shall be subject to any obligation under this Agreement to any Bondholder or any other person, except that each Agent agrees to perform such obligations and duties as are specifically set forth and undertaken by it herein without gross negligence or willful misconduct.  No implied covenants or obligations shall be read into this Agreement against any Agent.  If in one or more instances any Agent takes any action or assumes any responsibility not specifically delegated to it hereunder, neither the taking of such action nor the assumption of such responsibility shall be deemed to be an express or implied undertaking on the part of such Agent that it will take the same or similar action or assume the same or similar responsibility in any other instance.

(b)  In acting under this Agreement and in connection with the Bonds, each Agent is acting solely as an agent of Argentina and does not have any fiduciary relationship or any obligations or relationship of agency or trust for or with any Bondholder and shall have no liability for the payment of principal of or interest on other amounts on the Bonds, except that all moneys held by the Fiscal Agent or any Paying Agent for payment of principal of or interest (including additional amounts) on the Bonds, as specified therein, shall be held in trust by the Fiscal Agent or such Paying Agent for the benefit of the Bondholders but need not be segregated from other funds except as required by law or as required by the terms of this Agreement or the Bonds; provided, however, that any moneys so held remaining unclaimed at the end of two years after such principal or interest (including additional amounts) shall have become due and payable (whether at maturity or upon call for redemption or otherwise) shall be repaid to Argentina on its written demand, and upon such repayment, such trust shall terminate and all liability of the Fiscal Agent and any Paying Agent with respect to such moneys shall cease, and a Bondholder presenting a claim therefor shall thereafter look only to Argentina for payment thereof.  No repayment to Argentina under this Section 12(b) shall limit in any way any obligation which Argentina may have to pay the principal of or interest on the Bonds as the same shall become due.

46

(c)  No Agent shall be required to take any action involving the expenditure or risk of its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it has reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it; <u>provided, however</u>, that no Agent may refuse or fail to perform any of its duties hereunder solely as a result of nonpayment by Argentina of such Agent's fees; and <u>provided further</u> that nothing in this Section 12 shall be construed to limit the exercise by any Agent of any right or remedy permitted under this Agreement in the event of Argentina's failure to pay such Agent's fees and expenses.  Notwithstanding the foregoing, no Agent shall in any event be required (i) to initiate any suit, action or proceeding (arbitral or otherwise) arising out of or in connection with this Agreement or the Bonds of any Series or (ii) to take any action which in the judgment of such Agent (A) is contrary to this Agreement or applicable law or (B) exposes it or any of its directors, officers, attorneys-in-fact, agents or employees to personal liability.

(d)  No Agent nor any of its directors, officers, attorneys-in-fact, agents or employees shall be liable to Argentina, to any Bondholder or to any other person or entity whatsoever for any action taken or omitted to be taken by it, or by them on its behalf, as an Agent under this Agreement or otherwise in connection with any of the foregoing, except for its or their own gross negligence or willful misconduct.  In particular, and without limiting the generality of the foregoing, no Agent nor any of its directors, officers, attorneys, agents or employees shall be liable to Argentina, to any Bondholder or to any other person or entity whatsoever (i) for any action taken or omitted to be taken prior to the date of this Agreement in preparation for acting hereunder or thereunder, (ii) for any payment due on any Bond, except as specified in paragraph (b) above, (iii) for any error or alleged error of judgment made in good faith, unless it is determined by final judgment of a court of law having appropriate jurisdiction that the error of judgment was based on a grossly negligent failure to ascertain the pertinent facts, (iv) with respect to any nonperformance or delay in performance hereunder by reason of any provision of any present or future law or regulation or any action of any governmental authority, or by reason of any act of God or war or other

circumstance beyond its control which prevents or forbids such Agent from, or subjects such Agent to any actual or potential civil or criminal penalty on account of, doing or performing any act which is to be performed by it hereunder or (v) with respect to any failure to take any action which in the judgment of such Agent (A) is contrary to this Agreement, the Floating Rate Bond Exchange Agreement, or applicable law or (B) exposes such Agent or any of its directors, officers, attorneys-in-fact, agents or employees to personal liability.

(e) No Agent shall be under any liability to any Bondholder for interest on any funds received by it pursuant to any of the provisions of this Agreement or the Bonds.

(f) The statements contained herein and in the Bonds (except the Authenticating Agents' certificates of authentication) shall be taken as statements of Argentina, and no Agent assumes any responsibility for the correctness of the same. No Agent makes any representation as to the validity or sufficiency of this Agreement or the Bonds. No Agent shall be accountable for the use or application by Argentina of any of the Bonds or the Eligible Interest received in exchange therefor, or the compliance by Argentina with any of its covenants or agreements contained herein or in the Bonds or in any other document or agreement relating to the Bonds.

(g) In executing and becoming a party to this Agreement, each Agent is entering into an agreement with Argentina only, and this Agreement shall not be construed as an agreement between or among any Agent and any other Agent or Agents. Each Agent agrees to be bound by the provisions hereof, or in any amendment hereof, relating to the duties of such Agent, but such Agent shall not be deemed to have approved or to have accepted any responsibility for the provisions hereof, or in any amendment hereof, relating to the duties of any other Agent, and shall not be responsible or have any liability to Argentina or to the Bondholders for the proper performance by such other Agent or Agents of its or their duties pursuant to such provisions. Each Agent shall have only such duties as are expressly provided herein and no others. No Agent shall be accountable for the use or application of any Bonds or funds which have been delivered or disposed of by it in accordance with the applicable provisions of this Agreement.

48

(h)  In connection with its duties as an Agent under this Agreement, each Agent shall and shall be entitled to act in reliance upon any such communication believed by it to be genuine and correct and, in respect of legal matters, upon the advice or opinion of legal counsel selected by it, and any action taken or omitted in good faith by such Agent in reliance upon such paper or document or in accordance with the advice or opinion of such counsel shall be full justification and protection to it.

(i)  Each Agent may employ agents and attorneys-in-fact and shall not be liable, except as provided above as to funds or securities received by it or its authorized agents, for the default or misconduct of any such agents or attorneys-in-fact selected by it in good faith.

(j)  The Fiscal Agent shall not be liable for any loss on any investment of funds by it made pursuant to the terms of this Agreement.

SECTION 13.  MEETINGS OF BONDHOLDERS.

(a)  Upon not less than 15 days' prior notice to the [Fi]scal Agent, Argentina may at any time call a meeting of the [Bon]dholders of any Series pursuant to the notice provisions [of] this Section 13, such meeting to be held at such time and [at] such place as Argentina shall determine, for any purpose [ref]erred to in the Bonds.  Upon a request in writing to the [Fis]cal Agent made by Bondholders holding not less than 10% of [the] aggregate outstanding principal amount of the Bonds and [att]ached Principal Coupons of any Series, the Fiscal Agent [wi]ll convene a meeting of Bondholders of such Series.  The [agg]regate principal amount represented by (i) any Bond (A) [wit]hout the unmatured Principal Coupons appertaining thereto [bei]ng attached thereto shall be zero and (B) with the final [Pri]ncipal Coupon so attached thereto shall be the amount of [the] final principal installment to be paid upon presentation [of] such Bond and Coupon and (ii) any detached Principal [Cou]pon (other than the final Principal Coupon) shall be the [ins]tallment of principal to be paid in respect of such Bond [and] Coupon upon presentation thereof.  Any such meeting shall [be] held at such time and at such place as the Fiscal Agent [sha]ll determine.  Notice of any meeting of Bondholders of any [Ser]ies, setting forth the time and place of such meeting and [the] general terms the action proposed to be taken at such [mee]ting, shall be given by the Fiscal Agent on behalf of the [Bon]dholders of such Series, as the case may be, to the [Bon]dholders of such Series at least once by publication in [acc]ordance with the notice provisions contained in the Bonds,

such notice to be given not less than 15 nor more than 45
days before the date fixed for the meeting. In addition,
notice of such meeting shall be mailed to holders of
Registered Bonds of such Series at the last address of such
holder appearing in the register of the Bonds of such Series
not less than 15 nor more then 45 days before the date fixed
for such meeting. To be entitled to vote at any meeting of
Bondholders, or to take any other action as a Bondholder, a
person must be (i) a Bondholder, and, in the case of a
meeting of Bondholders of a Series, a holder of one or more
Bonds or detached Principal Coupons of such Series or (ii) a
person appointed by an instrument in writing as proxy by the
holder of one or more Bonds or detached Principal Coupons.
The only persons who shall be entitled to be present or to
speak at any meeting of Bondholders shall be the persons
entitled to vote at such meeting and their counsel and any
representatives of the Fiscal Agent and its counsel and, in
the case of any meeting called by Argentina (or to which
Argentina is otherwise invited), representatives of Argentina
and its counsel.

(b)  The quorum requirements at any meeting of
Bondholders of any Series are set forth in the Bonds of such
Series.  No business shall be transacted in the absence of a
quorum, unless a quorum is present when the meeting is called
to order.  In the absence of a quorum within 30 minutes of
the time appointed for any such meeting, the meeting shall be
adjourned for a period of not less than 10 days as determined
by the chairman of the meeting appointed pursuant to Section
13(g).  Notice of the reconvening of any meeting adjourned
for lack of a quorum shall be given as provided above except
that such notice need be given only once but must be given
not less than five days before the date on which the meeting
is scheduled to be reconvened.  Notice of the reconvening of
such an adjourned meeting shall state expressly the
percentage of the aggregate principal amount of the
outstanding Bonds of any Series or the outstanding Bonds, as
the case may be, which shall constitute a quorum.

(c)  The vote upon any resolution submitted to any
meeting of Bondholders shall be by written ballot on which
shall be subscribed the signatures of such Bondholders or
proxies and on which shall be inscribed the serial number or
numbers of the Bonds.  The chairman of the meeting shall
appoint two inspectors of votes who shall count all votes
cast at the meeting for or against any resolution and who
shall make and file with the secretary of the meeting their
verified written reports in duplicate of all votes cast at
the meeting.  Bonds which the Fiscal Agent knows to be owned
by, or on behalf of, Argentina shall be disregarded and

50

emed not to be outstanding.  A record in duplicate of the
oceedings of each meeting of Bondholders shall be prepared
the secretary of the meeting and there shall be attached
said record the original reports of the inspectors of
tes on any vote by ballot taken thereat and affidavits by
e or more persons having knowledge of the facts setting
rth a copy of the notice of the meeting and showing that
id notice was published as provided above.  The record
all be signed and verified by the chairman and secretary of
e meeting and one of the duplicates shall be delivered to
gentina and the other to the Fiscal Agent to be preserved
the Fiscal Agent, the latter to have attached thereto the
llots voted at the meeting.  Any record so signed and
rified shall be conclusive evidence of the matters therein
ated.

   (d)  Notwithstanding any provision of this
ction 13 to the contrary, the Fiscal Agent may make such
asonable regulations as it may deem advisable for any
eting of Bondholders in regard to proof of the holding of
ads and of the appointment of proxies and in regard to the
pointment and duties of inspectors of votes, the submission
l examination of proxies, certificates and other evidence
the right to vote, and such other matters concerning the
nduct of the meeting as it shall deem appropriate.

   (e)  Subject to the provisions contained in the
nds of each Series, any resolution passed or decision taken
any meeting of Bondholders of such Series duly held in
cordance with this Section shall be binding on all the
ndholders of such Series whether or not present or
presented at the meeting.

   (f)  The holding of any Bearer Bond or detached
ncipal Coupon of any Series by any Person shall be proved
producing the Bearer Bonds or detached Principal Coupon of
h Series held by such Person, by means of a Voting
tificate or a Block Voting Instruction issued by the
cal Agent or any Paying Agent or as may otherwise be
vided in the Bearer Bonds.  Any certificate or other
ument issued by the Euroclear Operator or Cedel as to the
ncipal amount of Bonds represented by a Temporary Global
rer Bond, a Permanent Global Bearer Bond or a Non-U.S.
manent Global Registered Bond standing to the account of
Person shall be conclusive and binding evidence of the
ding of such Bonds by such Person, in the absence of
ifest error.  The holding of any Registered Bond of any
ies by any Person shall be proved by the registry books
such Series of Bonds maintained in accordance with
tion 7(a) or, in the case of a beneficial interest in the

51

U.S. Temporary Global Registered Bond, by a certificate or certificates of the Registrar, which certificate shall be conclusive and binding evidence of the holding of a beneficial interest in such U.S. Temporary Global Registered Bond by such Person in the absence of manifest error (provided that, if any such certificate or other document conflicts with the registry books of the Registrar, the registry books of the Registrar shall be binding hereunder).

"Voting Certificate" means a dated certificate in the English language issued by the Fiscal Agent or a Paying Agent in which it is stated:

(i) that on that date Bearer Bonds or detached Principal Coupons of any Series (not being Bearer Bonds or detached Principal Coupons of such Series in respect of which a Block Voting Instruction has been issued and is outstanding in respect of the meeting or action specified in such Voting Certificate or any adjournment of such meeting) bearing specified serial numbers were either deposited with the Fiscal Agent or such Paying Agent or (to the satisfaction of the Fiscal Agent or such Paying Agent) are held to its order or under its control or blocked by a depositary holding the same, and that such Bearer Bonds or detached Principal Coupons will not be released (physically or for registration or transfer, as the case may be) until the earlier of:

(A) the conclusion of the meeting or action specified in such Voting Certificate or any adjournment of such meeting; and

(B) the surrender of the Voting Certificate to the Fiscal Agent or the Paying Agent which issued it; and

(ii) that the bearer of the Voting Certificate is entitled to attend and vote at such meeting or any adjournment of it, or in connection with such action, in respect of the Bearer Bonds or detached Principal Coupons of such Series represented by such Voting Certificate.

"Block Voting Instruction" means a dated document in the English language issued by the Fiscal Agent or a Paying Agent in which:

(i) it is certified that Bearer Bonds or detached Principal Coupons of any Series (not being Bearer Bonds or detached Principal Coupons of such Series in respect of which a Voting Certificate has been issued and is

52

outstanding in respect of the meeting or action specified
in such Block Voting Instruction or any adjournment of
such meeting) have been deposited with the Fiscal Agent
or such Paying Agent or (to the satisfaction of the
Fiscal Agent or such Paying Agent) are held to its order
or under its control or blocked by a depositary holding
the same, and that such Bearer Bonds or detached
Principal Coupons will not be released (physically or for
registration of transfer, as the case may be) until the
earlier of:

> (A)   the conclusion of the meeting or action
> specified in such document or any adjournment of
> such meeting; and

> (B)   the surrender (not less than two Business
> Days before the time fixed for such meeting or
> action or adjournment) of the relevant receipts to
> the Fiscal Agent or the Paying Agent that issued the
> same in respect of each such deposited Bearer Bond
> or detached Principal Coupons that is to be released
> or (as the case may require) such deposited Bearer
> Bond or detached Principal Coupons ceasing, with the
> agreement of the Fiscal Agent or such Paying Agent,
> to be held to its order or under its control or
> blocked, and in each such case, the giving of notice
> by the Fiscal Agent or such Paying Agent to
> Argentina (not later than by the close of business
> on the Business Day before the time fixed for such
> meeting or action or adjournment) of the amendment
> required to such Block Voting Instruction to reflect
> such release or cessation;

(ii)   it is certified that each Person, or an agent
on its behalf, that has so deposited Bonds or detached
Principal Coupons of such Series has instructed the
Fiscal Agent or such Paying Agent that the votes
attributable to Bonds of such Series should be cast in a
particular way in relation to the resolution to be put to
such meeting or any adjournment of it, or in connection
with such action, and that all such instructions are,
during the period of two Business Days before the time
fixed for such meeting or adjourned meeting or action,
and during such meeting or action, neither revocable nor
subject to amendment;

(iii)   the total number and the serial numbers and
denominations of the Bonds of such Series subject to such
Block Voting Instructions are listed, distinguishing with
regard to each such resolution or action between those in

respect of which instructions have been so given (A) to vote for, and (B) to vote against, the resolution or action; and

(iv)  any person named in such document is authorized and instructed by the Fiscal Agent or such Paying Agent to vote in respect of the Bonds of such Series so listed in accordance with the instructions referred to in (iii) above as set out in such document.

A Bondholder of any Series may obtain a Voting Certificate from the Fiscal Agent or a Paying Agent or require the Fiscal Agent or a Paying Agent to issue a Block Voting Instruction by requesting the same from the Fiscal Agent or a Paying Agent in accordance with the requirements set forth above not later than less than two days before the time fixed for any meeting or action. Voting Certificates and Block Voting Instructions shall be valid until the relevant Bonds or detached Principal Coupons of such Series are released pursuant to the provisions set forth above, and until then the holder of any such Voting Certificate or, as the case may be, the proxy named in any such Block Voting Instruction shall, for all purposes in connection with any meeting or action of Bondholders of such Series, be deemed to be the Bondholder of such Series to which such Voting Certificate or Block Voting Instructions relates, and the Fiscal Agent or the Paying Agent with which (or to the order of which) any Bonds or detached Principal Coupons of such Series have been deposited shall be deemed for such purposes not to be the Bondholder of such Series.

(g)  In the case of a meeting called by Argentina, Argentina shall appoint a chairman for such meeting and such chairman shall appoint a secretary for such meeting. In the case of a meeting called by the Bondholders, the Fiscal Agent shall appoint a temporary chairman for such meeting. A permanent chairman for the meeting shall be elected by the Bondholders of 25% of the aggregate outstanding principal amount of the Bonds or detached Principal Coupons of a Series represented at the meeting. Such permanent chairman shall appoint a secretary for such meeting. At any meeting of Bondholders, each holder of Bonds or detached Principal Coupons of such Series or proxy shall be entitled to one vote for each U.S.$1,000 principal amount of Bonds or detached Principal Coupons held or represented by it (it being understood that any holder of a Bond or detached Principal Coupon entitled to more than one vote shall not be required to cast all of such votes in the same manner); provided that no vote shall be cast or counted at any meeting in respect of any Bond or detached Principal Coupon challenged as not

tstanding and ruled by the chairman of the meeting to be
t outstanding. The chairman of the meeting shall have no
ght to vote except as a holder of a Bond or detached
incipal Coupon or proxy. Any meeting of holders of Bonds
d detached Principal Coupons duly called at which a quorum
present may be adjourned from time to time to such time
d place as shall be specified, and the meeting may be held
so adjourned without further notice.

SECTION 14. NOTICES.

All notices and other communications provided for
reunder shall, unless otherwise stated herein, be in
iting (including telex or facsimile transmission) and
iled or sent or delivered, if to Argentina, at its address
Ministry of Economy and Public Works and Services,
eretariat of Domestic and External Financing, Hipolito
igoyen 250, Piso 4, Oficina 410, (1310) Buenos Aires,
jentina, Attention: Subsecretaria de Financiamento Externo
icsimile No. (54-1) 331-9838, Telex No. 21952, Answerback:
IEC AR), with a copy to Banco Central de la Republica
jentina, Reconquista 266, (1003) Buenos Aires, Argentina,
:ention:  Deuda Pública Externa (Facsimile No: (54-1)
l-6468, Telex No. 24200, Answerback: AR CTBAN) or at such
ier addresses as Argentina shall from time to time specify
written notice to the Fiscal Agent; if to Agents, at their
icific respective corporate trust officers at the addresses
: forth in Section 2(h), or at such other addresses as such
int shall from time to time specify by written notice to
i Fiscal Agent and Argentina; if to Bondholders, in
:ordance with the notice provisions contained in
agraph 12 of the Bonds. Unless otherwise specifically
wided herein, any order, notice, request or other
trument of Argentina made or given by it under any
vision of this Agreement shall be sufficient if signed by
Authorized Official or such Person as an Authorized
icial shall appoint in writing and notify in writing to
h Agent. Each Agent shall be fully justified and
tected in relying and acting upon any instructions
eived by it and signed in the manner provided in the
ceding sentence, or upon the advice of counsel for
entina. Unless otherwise specifically provided herein,
such notices and communications shall be given by hand,
ex or facsimile transmission; provided that, in the event
ex or facsimile transmission facilities are not
rational, such notices and communications may be given by
l, but the sender shall use reasonable efforts to confirm
ices or communications given by mail as soon as telex or
simile transmission facilities shall become operational.
such notices and communications shall be effective when

delivered by hand, or, in the case of mail, upon the earlier of receipt and confirmation by telex or facsimile transmission as provided below or, in the case of facsimile transmission, when sent as addressed as set forth above, or, in the case of telex, when the telex is sent and the appropriate answerback is received. All notices and communications delivered hereunder shall, unless submitted in the English language, be accompanied by a certified English translation thereof.

## SECTION 15.   MAINTENANCE OF AGENTS.

Argentina may vary or terminate the appointment of any Paying Agent at any time and from time to time upon giving not less than 60 days' notice to such Paying Agent and the Fiscal Agent; <u>provided</u> that Argentina shall maintain at all times until two years after the aggregate principal amount of all the Bonds shall have become due and payable (whether upon maturity or upon call for redemption) at least one Paying Agent in the City of New York (for Registered Bonds only) and one Paying Agent in London.  In addition, Argentina shall maintain at all times until two years after the aggregate principal amount of all the Bonds shall have become due and payable (whether upon maturity or upon call for redemption) a Paying Agent in Luxembourg for each Series of Bonds as long as Bonds of such Series are listed on the Luxembourg Stock Exchange and it is so required for continued listing thereon.

## SECTION 16.   AMENDMENTS.

(a)   This Agreement may be amended by the parties hereto, without the consent of any holder of any Bond or, if applicable, any Coupon appertaining thereto, for the purpose of curing any ambiguity or to correct or supplement any provision contained herein which may be defective or inconsistent with any other provision contained herein or in connection with a partial redemption of the Bonds to address the administrative issues involved in effecting such a redemption or to evidence and provide for the acceptance by a successor Fiscal Agent, Authenticating Agent, Registrar, Paying Agent or Transfer Paying Agent and to add to or change any provisions of this Agreement as shall be necessary to provide for or facilitate the administration of the agencies hereunder or in any manner which the parties may mutually deem necessary or desirable and which shall not adversely affect the interests of the holders of any Bond or Coupon appertaining thereto.

56

(b)  Upon the execution of any supplemental
agreement under this Section, this Agreement shall be
modified in accordance therewith, and such supplemental
agreement shall form a part of this Agreement for all
purposes; and every holder of any Bond or Coupon appertaining
hereto, theretofore or thereafter authenticated and
delivered hereunder shall be bound thereby.

SECTION 17.    APPLICABLE LAW; CONSENT TO
JURISDICTION; WAIVER OF IMMUNITIES.

(a)    Except with respect to its authorization and
execution by Argentina, this Agreement and the Bonds or
Coupons appertaining thereto shall be governed by, and
construed in accordance with, the law of the State of
New York, United States.

(b)  Argentina hereby irrevocably submits to the
non-exclusive jurisdiction of any New York state or Federal
court sitting in New York City, the High Court of Justice in
London, any federal court sitting in the City of Buenos Aires
and any appellate court from any thereof, in any suit, action
or proceeding arising out of or relating to this Agreement,
the Bonds or any Coupon, and Argentina irrevocably agrees
that all claims in respect of such action or proceeding may
be heard and determined in such New York state or Federal
court, in the High Court of Justice in London or any Federal
court sitting in the City of Buenos Aires.  Argentina hereby
irrevocably waives, to the fullest extent it may effectively
do so, the defense of an inconvenient forum to the
maintenance of such suit, action or proceeding and any
objection to such suit, action or proceeding whether on the
grounds of venue, residence or domicile.  A final judgment in
any such suit, action or proceeding shall be conclusive and
may be enforced in other jurisdictions by suit on the
judgment or in any other manner provided by law.

(c)  Argentina hereby irrevocably appoints (i) the
New York office of Banco de la Nación Argentina (the
"New York Process Agent"), with an office on the date hereof
at 299 Park Avenue, 2nd Floor, New York, New York 10171,
United States and, alternatively, hereby irrevocably appoints
CT Corporation System, with an office on the date hereof at
1633 Broadway, 23rd Floor, New York, New York 10019, United
States (the "Alternate New York Process Agent"), in each
case, as its agent to receive on behalf of itself and its
respective property, service of copies of the summons and
complaint and any other process which may be served in any
such suit, action or proceeding brought in such New York
state or federal court sitting in New York City and (ii) the

London office of Banco de la Nación Argentina (the "London Process Agents" and, together within the New York Process Agent, the "Process Agents"), with an office on the date hereof at Longbow House, 14-20 Chiswell Street, London EC1Y 4SD, England, and, alternatively, hereby irrevocably appoints The Law Debenture Trust Corporation p.l.c, with an office on the date hereof at Prince's House, 95 Gresham St., London EC2V 7LY, England (the "Alternate London Process Agent" and, together with the Alternate New York Process Agent, the "Alternate Process Agents"), in each case, as its agent to receive on behalf of itself and its respective property service of a writ, summons order, judgment or other document which may be served in any such suit, action or proceeding brought in the High Court of Justice in London.   Service of any process may be served upon an Alternate Process Agent in lieu of the applicable Process Agent in any action or proceeding in any New York state or federal court sitting in New York City and the High Court of Justice in London if (i) at any time and for any reason it appears to the party attempting to serve the process that service of such process upon any Process Agent as provided above may be ineffective or may not be feasible and (ii) upon or before the serving of any process on any Alternate Process Agent, the Alternate Process Agent and Argentina are notified that service of such process is to be made on such Alternate Process Agent in accordance with the provisions of this sentence.   Such service may be made by mailing or delivering a copy of such process to Argentina in care of the appropriate Process Agent or Alternate Process Agent at the address specified above for such Process Agent or Alternate Process Agent, and, in the case of process served on an Alternate Process Agent, by depositing a copy of such process in the United States mails, addressed to Argentina at the address specified in Section 14 hereof (such service to be effective upon the delivery of such process to the Alternate Process Agent and the depositing of such process in the United States mails as aforesaid) and Argentina hereby irrevocably authorizes and directs such Process Agent or Alternate Process Agent to accept such service on its behalf.   Failure of any Process Agent or Alternate Process Agent to give notice to Argentina or failure of Argentina to receive notice of such service of process shall not affect in any way the validity of such service on the Process Agent, the Alternate Process Agent or Argentina.   As an alternative method of service, Argentina also irrevocably consents to the service of any and all process in any such suit, action or proceeding in such New York state or federal court sitting in New York City or the High Court of Justice in London by the mailing of copies of such process to Argentina at its address specified in Section 14 hereof.   Argentina covenants and agrees that it shall take

58

any and all reasonable action, including the execution and filing of any and all documents, that may be necessary to continue the designations of Process Agents and Alternate Process Agents above in full force and effect, and to cause each Process Agent and Alternate Process Agent to continue to act as such.

(d) Nothing in this Section 17 shall affect the right of any party to serve legal process in any other manner permitted by law or affect the right of any party to bring any action or proceeding against any other party or its property in the courts of other jurisdictions.

(e) To the extent that Argentina has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, Argentina hereby irrevocably waives such immunity in respect of its obligations under this Agreement, the Bonds or the Coupons, and, without limiting the generality of the foregoing, Argentina (A) agrees that the waivers set forth in this Section 17(e) shall have the fullest scope permitted under the Foreign Sovereign Immunities Act of 1976 of the United States and are intended to be irrevocable for purposes of such act; and (B) consents generally for the purposes of the State Immunity Act 1978 of the United Kingdom to the giving of any relief or the issue of any process. Notwithstanding the foregoing, Argentina shall not waive any such immunity (1) with respect to the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of Argentina, or property owned by Argentina and located in its territory which is dedicated to the purpose of an essential public service).

(f) If for the purpose of obtaining judgment in any court it is necessary to convert a sum due hereunder to any holder of a Bond or a Coupon or Agent in one currency into another currency, the parties hereto agree, to the fullest extent that they may effectively do so, that the rate of exchange used shall be that at which in accordance with normal banking procedures which such holder of any Bond or any Coupon or Agent, as the case may be, could purchase the first currency with such other currency in the city which is

59

the principal financial center of the country of issue of the first currency on the day two Business Days preceding the day on which final judgment is given.

(g) The obligation of any party in respect of any sum payable by it to any holder of any Bond or any Coupon or any Agent hereunder shall, notwithstanding any judgment in a currency (the "judgment currency") other than that in which such sum is denominated in accordance with the applicable provisions of this Agreement, the Bonds or the Coupons (in any such case, the "Agreement Currency"), be discharged only to the extent that on the Business Day following receipt by such holder of a Bond or a Coupon or Agent, as the case may be, of any sum adjudged to be so due in the judgment currency such holder or Agent, as the case may be, may in accordance with normal banking procedures purchase the Agreement Currency with the judgment currency; if the amount of the Agreement Currency so purchased is less than the sum originally due to such holder or Agent, as the case may be, in the Agreement Currency, such first party agrees, as a separate obligation and notwithstanding any such judgment, to indemnify such holder or Agent, as the case may be, against such loss, and if the amount of the Agreement Currency that could have been purchased on such Business Day with that sum originally due to any holder or Agent, as the case may be, such holder or Agent, as the case may be, agrees to remit to such first party such excess, provided that such holder or Agent shall have no obligation to remit any such excess as long as such first party shall have failed to pay such holder or Agent any obligations due and payable under the Bond Agreements, in which case such excess may be applied to such obligations of such first party under the applicable Bond Agreements in accordance with the terms thereof.

SECTION 18.   BINDING EFFECT; PARTIAL INVALIDITY; LANGUAGE.

This Agreement shall be binding on and inure to the benefit of each party hereto and its respective successors and assigns.  If one or more provisions of this Agreement shall be invalid, illegal or unenforceable in any respect in any jurisdiction or with respect to any party, such invalidity, illegality or unenforceability in such jurisdiction or with respect to such party shall not, to the fullest extent permitted by applicable law, invalidate or render illegal or unenforceable such provision in any other jurisdiction or with respect to any other party, or any other provisions of this Agreement.  To the fullest extent it may effectively do so under applicable law, each of the parties hereto waives any provision of law that renders any provision hereof invalid or illegal in any respect.

60

### SECTION 19.   SECTION HEADINGS.

The section headings in this Agreement are intended or convenience only and shall be ignored in construing this greement.

### SECTION 20.   EXECUTION IN COUNTERPARTS.

This Agreement may be signed in any number of unterparts, each of which shall be an original, with the me effect as if the signatures thereto and hereto were upon e same instrument.  Such counterparts shall together nstitute but one and the same agreement.

IN WITNESS WHEREOF, the parties hereto have caused is Agreement to be duly executed, sealed and attested as of e day and year first above written.

THE REPUBLIC OF ARGENTINA

By:_____
    Title:

CITIBANK, N.A., as Fiscal Agent,
  Authenticating Agent, Paying Agent,
  Registrar, Transfer Agent and
  Calculation Agent

By:_____
    Title:

CITIBANK (LUXEMBOURG) S.A.,
  as Authenticating Agent,
  Paying Agent and Transfer Agent

By:_____
    Title:

nessed:

_____

_____