## SCHEDULE C-2

## Form of Transferee Certificate for Definitive Registered Bonds

### CERTIFICATE

### Republic of Argentina

### Series *[L] [U] Floating Rate Bonds Due 2005 (the "Bonds")

This is to certify, with respect to Bond(s) no(s). [insert Bond numbers] representing U.S. $ [insert amount] principal amount of Series *[L] [U] Floating Rate Bond(s) Due 2005 being transferred on the date hereof by [insert name of transferor] to the undersigned (the "Transferee"), that:

(1)   the Transferee is an Eligible Institutional Investor;

(2)   the Transferee acknowledges that the Bond(s) (are) (is) not registered under the Securities Act and contain(s) a restrictive legend to that effect;

(3)   the Transferee is purchasing such Bond(s) for its own account and not with a view to any distribution thereof within the meaning of the Securities Act; and

(4)   the Transferee will not sell or transfer such Bond(s) except:

(i)   pursuant to an effective registration statement under the Securities Act; or

(ii)   in a transaction not requiring registration under the Securities Act and in which (x) the transferor and transferee shall provide to the Registrar certificates in the form of Schedules C-1 and C-2, respectively, to the Floating Rate Bond Fiscal Agency Agreement dated as of _____, 199_ (as amended and in effect from time to time, the "Fiscal Agency Agreement") between the Republic of Argentina, Citibank, N.A., as Fiscal Agent, Authenticating Agent, Paying Agent, Registrar, Transfer Agent and Calculation Agent and Citibank (Luxembourg) S.A., as Authenticating Agent, Paying Agent and Transfer Agent, or (y) the transferor shall provide to the Registrar a certificate in the form of Schedule B or in the form of Schedule C to the Fiscal Agency Agreement, as the case may be.

C-2-2

Unless otherwise defined herein, capitalized terms are used in this certificate as defined in the Fiscal Agency Agreement.

For purposes of this certificate, "Eligible Institutional Investor" means:

(i)   any bank as defined in Section 3(a)(2) of the Securities Act of 1933 of the United States, as amended (the "Securities Act"), whether acting in its individual or fiduciary capacity; or

(ii)   any insurance company as defined in Section 2(13) of the Securities Act; or

(iii)   any investment company registered under the Investment Company Act of 1940 of the United States, as amended; or

(iv)   any plan established and maintained by a state of the United States, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees if such plan has total assets in excess of U.S.$5,000,000; or

(v)   any employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974 of the United States, as amended, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, insurance company, or registered investment adviser or if the employee benefit plan has total assets in excess of U.S. $5,000,000; or

(vi)   any corporation, partnership or trust with assets of not less than U.S.$100,000,000; or

C-2-3

    (vii)  any entity all of the equity of which is owned by one or more Eligible Institutional Investors.

    IN WITNESS WHEREOF, the undersigned has caused this certificate to be executed as of the date set forth below by its official, officer or agent thereunto duly authorized.

[Insert name of Transferee]

By_____
   Title:

Dated: _____, _____

SCHEDULE D

Form of Transferor Certificate for Definitive U.S.
Registered Bonds – Rule 904 Transaction

CERTIFICATE

Republic of Argentina

[Series *[L] [U] Floating Rate
Bonds Due 2005 (the "Bonds")]

This is to certify with respect to Bond(s) no(s).
[insert Bond numbers] representing U.S. $[insert amount]
principal amount of Series *[L] [U] Floating Rate Bond(s) Due
2005 being transferred by [insert name of transferor], that

(1)  the sale of such Bonds is being made pursuant
to a transaction that satisfies the conditions of Rule
904 of Regulation S under the United States Securities
Act of 1933, as amended ("Regulation S");

(2)  the offer of such Bonds was not made to a
person in the United States and either

(a) at the time the buy order was
originated, the buyer was outside the United
States, or the undersigned and any person
acting on its behalf reasonably believes that
the buyer was outside the United States; or

(b) the transaction was executed in, on or
through the facilities of the Luxembourg Stock
Exchange (or other exchange identified by the
United States Securities and Exchange
Commission as a "designated offshore securities
market" for purposes of Rule 904 of
Regulation S), and neither the undersigned nor
any person acting on its behalf knows that such
transaction has been pre-arranged with a buyer
in the United States; and

---

*    Insert appropriate Series of Bonds.

D-2

(3)   none of the undersigned, any affiliate thereof
or any person acting on their behalf engaged in any
directed selling efforts in connection with the offer
and sale of such Bonds.

Terms used herein have the meanings given to them by
Regulation S.

Unless otherwise defined herein, capitalized terms
are used in this certificate as defined in the Floating Rate
Bond Fiscal Agency Agreement dated as of _____, 199_
among the Republic of Argentina, Citibank, N.A., as Fiscal
Agent, Authenticating Agent, Paying Agent, Registrar,
Transfer Agent and Calculation Agent and Citibank
(Luxembourg) S.A., as Authenticating Agent, Paying Agent and
Transfer Agent.

IN WITNESS WHEREOF, the undersigned has caused this
certificate to be executed as of the date set forth below by
its official, officer or agent thereunto duly authorized.

[Insert name of Transferor]

By _____

Title: _____

Dated: _____, ___

**SCHEDULE E**

### Form of Transferor Certificate for Definitive U.S. Registered Bonds - Rule 144A Transaction

**CERTIFICATE**

### Republic of Argentina

### Series *[L] [U] Floating Rate Bonds Due 2005 (the "Bonds")]

This is to certify with respect to Bond(s) no(s). [insert Bond numbers] representing U.S. $[insert amount] principal amount of Series* [L] [U] Floating Rate Bond(s) Due 2005 being transferred on the date hereof by the undersigned (the "Transferor") to [insert name of transferee] that such transfer is being made pursuant to a transaction that satisfies the conditions of Rule 144A under the Securities Act of 1933 of the United States, as amended.

Unless otherwise defined herein, capitalized terms are used in this certificate as defined in the Floating Rate Bond Fiscal Agency Agreement dated as of _____, 199_ among the Republic of Argentina, Citibank, N.A., as Fiscal Agent, Authenticating Agent, Paying Agent, Registrar, Transfer Agent and Calculation Agent and Citibank (Luxembourg) S.A., as Authenticating Agent, Paying Agent and Transfer Agent.

IN WITNESS WHEREOF, the undersigned has caused this certificate to be executed as of the date set forth below by its official, officer or agent thereunto duly authorized.

[Insert name of Transferor]

By_____
   Title:

Dated: _____, ___

_____

*   Insert appropriate Series of Bonds.

<u>Annex A</u>

DEFINITIONS

"<u>Affiliate</u>" has the meaning specified in the Floating Rate Bond Exchange Agreement.

"<u>Agents</u>" has the meaning specified in the introductory paragraph.

"<u>Agreement</u>" has the meaning specified in the introductory paragraph hereof.

"<u>Alianza Naviera GRA</u>" means the Guaranteed Refinancing Agreement dated as of November 1, 1987 among Alianza Naviera Argentina, S.A., as borrower, Argentina, BCRA, the banks parties thereto and the Bank of New York as syndicate agent for such banks.

"<u>Alternate London Process Agent</u>" has the meaning specified in Section 17(c) hereof.

"<u>Alternate New York Process Agent</u>" has the meaning specified in Section 17(c) hereof.

"<u>Alternate Process Agents</u>" has the meaning specified in Section 17(c) hereof.

"<u>Applicable Taxes</u>" has the meaning specified in Paragraph 5 of the Bonds.

"<u>Argentina</u>" has the meaning specified in the introductory paragraph hereof.

"<u>Argentine Authorization</u>" means any approval, authorization, permit, consent, exemption (including, without limitation, an exemption for stamp taxes applicable in the City of Buenos Aires in connection with the execution and delivery of this Agreement and the other Floating Rate Bond Agreements) or license of any other action of or by, or notice to or filing or registration with, Argentina or any Argentine Governmental Agency or any other governmental authority or agency or regulatory body of Argentina or any subdivision thereof or therein.

"<u>Argentine Bank</u>" means (i) any bank or financial institution owned or controlled, directly or indirectly, by Argentina, including, without limitation, Banco de la Nación Argentina, Banco Nacional de Desarrollo, Banco de Inversión y Comercio Exterior, Banco Hipotecario Nacional and Caja Nacional de Ahorro y Seguro, and any successors

2

hereto and (ii) Banco de la Provincia de Buenos Aires and
Banco de la Ciudad de Buenos Aires and any successors
hereto. Notwithstanding the foregoing, a bank or financial
institution shall not be deemed to be an Argentine Bank under
Clause (i) above by virtue of the administration of such bank
or financial institution by Argentina (or any governmental
body, ministry, agency, authority or self-administered entity
(entidad autárquica) thereof) in connection with the
receivership, insolvency, bankruptcy or liquidation of such
bank or financial institution.

"Argentine Governmental Agency" means (i) any
governmental body, ministry, agency, authority, or
self-administered entity (entidad autárquica) of Argentina,
(ii) any corporation, bank, financial institution or other
entity owned or controlled, directly or indirectly, by
Argentina or any entity described in clause (i) above, and
(iii) Banco de la Provincia de Buenos Aires and Banco de la
Ciudad de Buenos Aires and any successors thereto; provided
that an entity regulated by BCRA or any other Argentine
Governmental Agency shall not be deemed to be an "Argentine
Governmental Agency" at any time during which, by virtue of
such Argentine Governmental Agency's regulatory authority,
such entity is administered by such Argentine Governmental
Agency in connection with the receivership, insolvency,
bankruptcy or liquidation of such entity.

"Argentine Person" means any individual who is a
citizen or resident of Argentina, a Person organized under
the laws of Argentina or any political subdivision thereof or
therein or having its principal place of business in
Argentina or a Person controlled by any such Person.

"Argentine Taxes" has the meaning specified in
Paragraph 5 of the Bonds.

"AUSA GRA" means the Guaranteed Refinancing
Agreement dated as of August 1, 1987 among Autopistas
Urbanas, S.A., as borrower, Argentina, BCRA, the banks
parties thereto and Midland Bank plc, as syndicate agent for
such banks.

"Authenticating Agent" has the meaning specified in
Section 2(b) hereof.

"Authorized Denominations" means denominations in
the amount of U.S. $250,000 and in any other amount permitted
by Section 1(b) hereof.

3

"Authorized Official" has the meaning specified in Section 5(e) hereof.

"BCRA" means Banco Central de la República Argentina and any successor thereto.

"BCRA Undertaking" means a letter agreement in substantially the form of Exhibit 4 to the Floating Rate Bond Exchange Agreement from BCRA to the Fiscal Agent and the Closing Agent.

"Bearer Bonds" has the meaning specified in Section 1(b) hereof.

"Block Voting Instruction" has the meaning specified in Section 13(f) hereof.

"Bond Agreements" means this Agreement, the Floating Rate Bond Exchange Agreement, the Floating Rate Bonds, the Obligor Consent and any other agreement or instrument or document delivered hereunder or thereunder which may be necessary for the Exchange.

"Bondholder" means (i) in the case of a definitive Bearer Bond or Principal Coupon, the bearer of such Bond or Principal Coupon; (ii) in the case of any definitive Registered Bond or beneficial interest in the U.S. Temporary Global Registered Bond, the Person in whose name such definitive Bond or beneficial interest is registered in the register maintained by the Registrar under Section 7(a) hereof and (iii) in the case of any beneficial interest in the Non-U.S. Permanent Global Registered Bond, the Permanent Global Bearer Bond or the Temporary Global Bearer Bond, each Person who appears on the records of Euroclear or Cedel, as the case may be, as entitled to a particular principal amount of Floating Rate Bonds by reason of such beneficial interest; provided that in the case of any payments or notices in respect of the Global Bonds described in this clause (iii), the Fiscal Agent or any other Agent may conclusively treat the Common Depositary as the Bondholder.

"Bonds" has the meaning specified in Section 1(a) hereof.

"BONEX" means (i) Bonos Externos de la República Argentina issued under Law No. 19,686 enacted by the Argentine Congress on June 15, 1972, (ii) any instrument issued by Argentina in exchange, or as a replacement for, the instrument referred to in clause (i) above and (iii) any instrument issued after the date hereof by Argentina which is

4

imilar to the instrument referred to in clause (i) above as
o purpose, nature and characteristics, including being (a)
ayable in U.S. Dollars, (b) payable in financial centers
round the world (i.e., New York, Zürich, London, etc.),
c) quoted in both Pesos and in U.S. Dollars and (d) issued
n bearer form.

"Business Day" means a day on which (i) dealings are
arried on in the London interbank market and (ii) banks are
ot required or authorized to close in New York City.

"Calculation Agent" has the meaning specified in
ection 2(f) hereof.

"CBL" has the meaning specified in the introductory
iragraph hereof.

"Cedel" means Cedel S.A. and any successor thereto.

"Certifying Officer" means [insert title] of
gentina.

"Citibank" has the meaning specified in the
itroductory paragraph hereof.

"Closing Agent" means Citibank, N.A., as Closing
ent under the Floating Rate Bond Exchange Agreement.

"Code" has the meaning specified in Section 1(d)
reof.

"Co-Financing Agreement" means the 1987 Commercial
nk Parallel Co-Financing Loan Agreement dated as of
gust 1, 1987 among the Republic of Argentina, as borrower,
RA, Citibank, N.A., as agent, and the banks party thereto,
amended as of March 1, 1988.

"Collateral Pledge Agreement" means each Collateral
edge Agreement for Principal Bonds, Argentina dated the
te hereof, made by Argentina in favor of the Federal
serve Bank of New York, as Collateral Agent, and relating
all Series (as defined therein) of all Principal Bonds
nominated in either U.S. Dollars or Deutsche Mark, as the
se may be, as amended and in effect from time to time.

"Common Depositary" means Union Bank of Switzerland,
common depositary for Cedel and the Euroclear Operator,
ting through an office located outside the United States to
designated by it with the consent of Argentina.

5

"Convertibility Law" means Law No. 23,928 enacted by the Argentine Congress on March 27, 1991.

"Debt Agreement Agents" has the meaning specified in the Floating Rate Bond Exchange Agreement.

"Debt Agreements" means the 1987 TCA, the 1985 TCA, the 1983 TCA, the Co-Financing Agreement, the 1987 GRA, the 1987 BNA Refinancing Agreement, the 1987 Provincia Refinancing Agreement, the Alianza Naviera GRA, the AUSA GRA, the Salto Grande GRA, the Promissory Notes and the Public Sector Onlending Agreements.

"Designated Argentine Governmental Agency" means any Argentine Governmental Agency the obligations of which are entitled under Argentine law to the full faith and credit of Argentina.

"Deutsche Mark" means lawful Currency of the Federal Republic of Germany.

"Discount Bond and Par Bond Exchange Agreement" means the Collateralized Discount Bond and Par Bond Exchange Agreement dated as of December __, 1992 among Argentina, the Purchasers named therein, the Debt Agreement Agents named therein, the Promissory Note Agent named therein and the Closing Agent.

"Domestic Foreign Currency Indebtedness" means (a) the following Indebtedness: (i) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (ii) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (iii) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (iv) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (v) Bonos de la Tesorería a 5 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92 and (vi) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92; and (b) any other Indebtedness payable by its terms or which at the option of the holder thereof may be payable in a currency other than Pesos which is (i) offered exclusively within Argentina or (ii) issued in payment, exchange, substitution, discharge or replacement of Indebtedness payable in Pesos; provided that, in no event shall BONEX be deemed to constitute "Domestic Foreign Currency Indebtedness".

"Eligible Debt" or "ED" has the meaning specified in the Discount Bond and Par Bond Exchange Agreement.

6

"**Eligible Interest**" or "**EI**" has the meaning specified in the Floating Rate Bond Exchange Agreement.

"**Escrow Accounts**" has the meaning specified in the Floating Rate Bond Exchange Agreement.

"**Escrow Agent**" has the meaning specified in the Floating Rate Bond Exchange Agreement and any successor Escrow Agent appointed by the Closing Agent.

"**Escrow Agreement**" has the meaning specified in the Floating Rate Bond Exchange Agreement.

"**Escrow Date**" has the meaning specified in the Floating Rate Bond Exchange Agreement.

"**Escrow Release Date**" has the meaning specified in the Floating Rate Bond Exchange Agreement.

"**Escrow Termination Date**" means September 1, 1993.

"**Escrowed Bond Amount**" has the meaning specified in the Floating Rate Bond Exchange Agreement.

"**Escrowed Floating Rate Bonds**" has the meaning specified in the Floating Rate Bond Exchange Agreement.

"**Event of Default**" has the meaning specified in Section 9 of the Terms and Conditions of the Bonds.

"**Euroclear Operator**" means Morgan Guaranty Trust Company of New York, Brussels office, as operator of the Euroclear Clearance System.

"**Exchange**" means the simultaneous exchange of reconciled EI of the Purchasers for Floating Rate Bonds pursuant to the Floating Rate Bond Exchange Agreement.

"**Exchange Date**" means the Exchange Date under and as defined in the Discount Bond and Par Bond Exchange Agreement.

"**External Indebtedness**" means for any Person indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than Pesos; _provided_ that Domestic Foreign Currency Indebtedness shall not constitute External Indebtedness.

"**Final Escrow Release Date**" has the meaning specified in the Floating Rate Bond Exchange Agreement.

7

"**Fiscal Agent**" has the meaning specified in Section 2(a) hereof.

"**Floating Rate Bond**" has the meaning specified in Section 1(a) hereof.

"**Floating Rate Bond Exchange Agreement**" means the Floating Rate Bond Agreement, dated December ___, 1992 among the Republic of Argentina, the Purchasers named therein, the Debt Agreement Agents named therein and Citibank, N.A., as Closing Agent.

"**Global Bearer Bonds**" means the Temporary Global Bearer Bonds and the Permanent Global Bearer Bonds.

"**Global Bonds**" means the Temporary Global Bearer Bonds, the Permanent Global Bearer Bonds, the Non-U.S. Permanent Global Registered Bonds and the U.S. Temporary Global Registered Bonds.

"**Global Registered Bonds**" means the Non-U.S. Permanent Global Registered Bonds and the U.S. Temporary Global Registered Bonds.

"**IADB**" means the Inter-American Development Bank and any successor.

"**IBRD**" means the International Bank for Reconstruction and Development and any successor.

"**IMF**" means the International Monetary Fund and any successor.

"**Indebtedness**" means, for any Person, (a) all indebtedness of such Person for or in connection with borrowed money, or the deferred purchase price of property or services (including, but not limited to, reimbursement obligations of such Person under or in respect of letters of credit or bankers' acceptances and obligations of such Person to repay deposits with or advances to such Person and a forfait indebtedness); (b) all obligations of such Person (other than those specified in clause (a) above) evidenced by bonds, debentures, notes or other similar instruments; and (c) all direct or indirect guarantees of such Person in respect of, and all obligations (contingent or otherwise) of such Person to purchase or otherwise acquire or otherwise to assure a credit against loss in respect of, indebtedness or obligations of any other Person specified in clause (a) or (b) above.