7

summons and complaint and any other process which may be served in any such action or proceeding brought in the High Court of Justice in London and (iii) FIDEUROP Treuhandgesellschaft für den Gemeinsamen Markt mbH, Wirtschaftsprüfungsgesellschaft, with an office on the date hereof at Beethovenstrasse 8-10, 6000, Frankfurt am Main, Federal Republic of Germany (the "Frankfurt Process Agent" and, together with the New York Process Agent and the London Process Agent, the "Process Agents"), as its agent to receive on behalf of itself and its respective property service of copies of the summons and complaint and any other process which may be served in any such action or proceeding arising out of the DMK Bonds brought in the District Court (Landgericht) of Frankfurt am Main. Service of any such process may be served upon an Alternate Process Agent in lieu of the applicable Process Agent in any action or proceeding in any New York State or Federal court sitting in New York City and the High Court of Justice in London if (i) at any time and for any reason it appears to the party attempting to serve the process that service of such process upon any Process Agent as provided above may be ineffective or may not be feasible and (ii) upon or before the serving of any process on any Alternate Process Agent, the Alternate Process Agent and BCRA are notified that service of such process is to be made on such Alternate Process Agent in accordance with the provisions of this sentence. Such service may be made by mailing or delivering a copy of such process to BCRA in care of the appropriate Process Agent or Alternate Process Agent at the address specified above for such Process Agent or Alternate Process Agent and, in the case of process served on an Alternate Process Agent, by depositing a copy of such process in the United States mails, addressed to BCRA at the address specified in Section 9 hereof (such service to be effective upon the delivery of such process to the Alternate Process Agent and the depositing of such process in the United States mails as aforesaid) and BCRA hereby irrevocably authorizes and directs such Process Agent or Alternate Process Agent to accept such service on its behalf. Failure of any Process Agent or Alternate Process Agent to give notice to BCRA or failure of BCRA to receive notice of such service of process shall not affect in any way the validity of such service on the Process Agent, the Alternate Process Agent or BCRA. As an alternative method of service, each party also irrevocably consents to the service of any and all process in any such action or proceeding in such New York State or Federal court sitting in New York City, the High Court of Justice in London or, in any action or proceeding arising out of the DMK Bonds, the District Court (Landgericht) of Frankfurt am Main by the mailing of copies

of such process to such party at its address specified in Section 10 hereof: BCRA covenants and agrees that it shall take any and all reasonable action, including the execution and filing any and all documents, that may be necessary to continue the designations of Process Agents and Alternate Process Agents above in full force and effect, and to cause each Process Agent and Alternate Process Agent to continue to act as such.

(c) Nothing in this Section 4 shall affect the right of any party to serve legal process in any other manner permitted by law or affect the right of any party to bring any action or proceeding against any other party or its property in the courts of other jurisdictions.

(d) To the extent that BCRA has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, BCRA hereby irrevocably waives such immunity in respect of its obligations under the Principal Bonds, this Agreement and the other Principal Bond Agreements, and, without limiting the generality of the foregoing, BCRA (A) agrees that the waivers set forth in this Section 5 shall have the fullest scope permitted under the Foreign Sovereign Immunities Act of 1976 of the United States and are intended to be irrevocable for purposes of such act; and (B) consents generally for the purposes of the State Immunity Act 1978 of the United Kingdom to the giving of any relief or the issue of any process. Notwithstanding the foregoing, BCRA shall not waive any such immunity (1) with respect to the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of Argentina or property owned by BCRA and located in its territory which is dedicated to the purpose of an essential public service.

SECTION 5. Continuing Agreement. This Undertaking shall (a) remain in full force and effect until payment in full of the principal of, and interest on, and all other amounts due on all of the Bonds and all other amounts payable by Argentina under any of the Bond Agreements, (b) be binding upon BCRA, its successors and assigns and (c) inure to the

benefit of, and be enforceable by, the Closing Agent, the Fiscal Agent, and each other Agent, Purchaser and Bondholder and its respective successors, transferees and assigns.

SECTION 6. *Effectiveness*. This Undertaking shall become effective on the Exchange Date for the benefit of the Closing Agent, the Fiscal Agent and each other Agent, Purchaser and Bondholder.

SECTION 7. *Partial Invalidity*. If one or more provisions contained in this Undertaking shall be invalid, illegal or unenforceable in any respect in any jurisdiction with respect to BCRA, such invalidity, illegality or unenforceability in such jurisdiction shall not, to the fullest extent permitted by applicable law, invalidate or render illegal or unenforceable such provisions in any other jurisdiction, or any other provisions of this Undertaking.

SECTION 8. *Amendments*. No amendment of any provision of this Undertaking shall be effective unless the same shall be agreed or consented to in writing by the Fiscal Agent, more than 50% of the holders of each Series (as defined in the Fiscal Agency Agreements) of Bonds, BCRA and, if any obligation remains outstanding under the Bond Exchange Agreements, the Closing Agent. No waiver of any provision of this Undertaking nor consent to any departure by BCRA therefrom shall in any event be effective unless the same shall be agreed or consented to by the Fiscal Agent and more than 50% of the holders of each Series of Bonds, and if any obligation remains outstanding under the Bond Exchange Agreements, the Closing Agent and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 9. *Notices*. All notices and other communications by BCRA in connection with this Undertaking given to any party to the Fiscal Agency Agreements shall be given or made as provided with respect to such party in the Section titled "Notices" of such Fiscal Agency Agreement, to any party to the Bond Exchange Agreements as provided with respect to such party in the Section titled "Notices" of such Bond Exchange Agreement, and to any Bondholder as provided in the Section titled "Notices" of the Terms and Conditions of such Bonds. All notices and other communications to BCRA, in connection with this Undertaking, shall be given or made in writing (including telex or telecopy) and shall be effective as provided in the Section titled "Notices" of such Fiscal Agency Agreement and sent or delivered to BCRA at its address at Reconquista 266, Edificio San Martín, 1003 Buenos Aires,

República Argentina (Attention: Deuda Pública Externa), or at such other address as shall be designated by BCRA, from time to time, in a notice to the Fiscal Agents.

SECTION 10. **No Waiver, Etc.** No failure by the Closing Agent, the Fiscal Agent or any other Agent, Purchaser or Bondholder to exercise, and no delay in exercising, any right hereunder shall operate as a waiver of the same, nor shall the single or partial exercise of any such right preclude any other or further exercise of such right, all subject to the conditions and limitations established in this Undertaking. The rights and remedies provided herein are cumulative and not exclusive of any remedies provided by law, and nothing contained in this Undertaking shall impair any of the rights of the Closing Agent, the Fiscal Agent or any other Agent, Purchaser or Bondholder against BCRA under applicable law, subject in each case to the terms and conditions of this Undertaking.

SECTION 11. **Governing Law.** This Undertaking shall be governed by, and construed in accordance with, the law of the State of New York, United States.

> BANCO CENTRAL DE LA REPUBLICA ARGENTINA
>
> By_____
> Title:

Agreed and Accepted:

CITIBANK, N.A.,
as Fiscal Agent

_____
Title:

CITIBANK, N.A.,
as Closing Agent

_____
Title:

EXHIBIT 5
to Floating Rate Bond
Exchange Agreement

OBLIGOR CONSENT

Dated as of _____*

Citibank, N.A., as Closing Agent
  and each of the parties
  to the Debt Agreements

      Reference is made to (i) the 1992 Financing Plan of the Republic of Argentina, dated June 23, 1992 (the "<u>1992 Financing Plan</u>", capitalized terms shall have the meanings set forth in Annex A to the 1992 Financing Plan and the other Annexes and Schedules thereto) and the (ii) Debt Agreements referred to in the 1992 Financing Plan. As used herein, "<u>Obligor</u>" means, with respect to each Debt Agreement, the obligor or borrower thereunder.

      To induce the participants under the 1992 Financing Plan to exchange their Eligible Interest and Eligible Debt outstanding under the Debt Agreements for Securities as contemplated by Parts I and II of the 1992 Financing Plan and the documentation implementing the 1992 Financing Plan, each Obligor hereby:

      (a) represents that the execution, delivery and performance by such Obligor of this Obligor Consent and the Amendment Agreement, and the execution, delivery and performance, of the Principal Bond Agreements and Floating Rate Bonds Agreements by Argentina on behalf of such Obligor, and of all other documents and instruments to be executed and delivered by or on behalf of such Obligor thereunder or otherwise in connection with the 1992 Financing Plan, have been duly authorized by all necessary legislative, executive, administrative and other governmental action, and do not contravene (i) the Constitution of Argentina, or any treaty, law, decree, regulation, judgment, award, injunction or similar legal restriction or (ii) any contractual restriction binding on or affecting such Obligor or its property;

      (b) confirms and ratifies all requests and proposals made by the Republic of Argentina in (i) the 1992 Financing Plan, (ii) the Waiver and Amendment Request set forth in Part III of the 1992 Financing Plan, (iii) the Interim Measures set forth as Part IV of the

---

\* To be dated the Exchange Date.

1992 Financing Plan, (iv) the Currency Conversion and Translation Procedures set forth as Annex D to the 1992 Financing Plan and (v) any other communications by Argentina containing requests or proposals relating to the currency of, or interest periods and interest rates applicable to, any item of Eligible Debt or Eligible Interest of such Obligor in connection with the implementation of the 1992 Financing Plan;

(c) approves the exchange of Eligible Interest and Eligible Debt for Securities (the "Exchange") as contemplated by the 1992 Financing Plan and also the provisions of the agreements implementing such Exchange (the "Exchange Agreements");

(d) confirms and ratifies the signing on its behalf by the Republic of Argentina of the Exchange Agreements; and

(e) confirms and ratifies all other actions taken by the Republic of Argentina, and authorizes the Republic to take all further actions contemplated by the 1992 Financing Plan and the Exchange Agreements in connection with the Exchange, including, but not limited to, all actions required or otherwise contemplated in connection with the reconciliation of all Eligible Interest and Eligible Debt of such Obligor.

This Obligor Consent may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Obligor Consent by signing any such counterpart. This Obligor Consent shall be effective with respect to each Obligor when signed by such Obligor. This Consent shall be governed by, and construed in accordance with, the law of the State of New York.

CONSENTED to by the undersigned Obligors, as of the date first above written.

AEROLINEAS ARGENTINAS

By_____
   Title:

3

AEROLINEAS ARGENTINAS S.E.

By_____
   Title:

AGUA Y ENERGIA ELECTRICA S.E.

By_____
   Title:

ALIANZA NAVIERA ARGENTINA, S.A.

By_____
   Title:

ASTILLEROS Y FABRICAS NAVALES DEL ESTADO S.A.
(AFNE S.A.)

By_____
   Title:

AUTOPISTAS URBANAS S.A.

By_____
   Title:

BANCO CENTRAL DE LA REPUBLICA ARGENTINA

By_____
   Title:

BANCO DE LA CIUDAD DE BUENOS AIRES

By_____
   Title:

4

BANCO DE LA NACION ARGENTINA

By_____
   Title:

BANCO DE LA PROVINCIA DE BUENOS AIRES

By_____
   Title:

BANCO HIPOTECARIO NACIONAL

By_____
   Title:

BANCO NACIONAL DE DESARROLLO

By_____
   Title:

COMISION NACIONAL DE ENERGIA ATOMICA

By_____
   Title:

COMISION TECNICA MIXTA DE SALTO GRANDE

By_____
   Title:

DIRECCION GENERAL DE FABRICACIONES MILITARES

By_____
   Title:

DIRECCION NACIONAL DE VIALIDAD

By _____
   Title:

EMPRESA LINEAS MARITIMAS ARGENTINAS S.A.
   (ELMA S.A.)

By _____
   Title:

EMPRESA NACIONAL DE CORREOS Y TELEGRAFOS
   (ENCOTEL)

By _____
   Title:

EMPRESA NACIONAL DE TELECOMUNICACIONES
   (ENTEL)

By _____
   Title:

ENTIDAD BINACIONAL YACYRETA

By _____
   Title:

FERROCARRILES ARGENTINOS

By _____
   Title:

FORJA ARGENTINA

By _____
   Title:

GAS DEL ESTADO

By_____
   Title:


HIDRONOR S.A. HIDROELECTRICA
   NORPATAGONICA S.A.

By_____
   Title:


HIERRO PATAGONICO DE SIERRA GRANDE S.A.M.

By_____
   Title:


JUNTA NACIONAL DE GRANOS

By_____
   Title:


OBRAS SANITARIAS DE LA NACION

By_____
   Title:


PETROQUIMICA BAHIA BLANCA S.A.I. y C.

By_____
   Title:


SERVICIOS ELECTRICOS DEL GRAN
   BUENOS AIRES S.A.

By_____
   Title:

7

SOCIEDAD MIXTA SIDERURGIA ARGENTINA (SOMISA)

By_____
   Title:

SUBTERRANEOS DE BUENOS AIRES S.E.

By_____
   Title:

YACIMIENTOS CARBONIFEROS FISCALES

By_____
   Title:

YACIMIENTOS PETROLIFEROS FISCALES S.A.

By_____
   Title:

Certification\*

     Argentina hereby certifies that the entities listed above which have executed this Obligor Consent as of the Exchange Date constitute all of the Obligors with Eligible Debt or Eligible Interest being exchanged on the Exchange Date pursuant to the Exchanges.

REPUBLIC OF ARGENTINA

By_____
   Title:

---

\* To be required only if one or more of the Argentine entities listed above do not sign a counterpart of this Consent.