39

(e) No Agent shall be under any liability to any Bondholder for interest on any funds received by it pursuant to any of the provisions of this Agreement, the Collateral Pledge Agreement or the Bonds.

(f) The statements contained herein and in the Bonds (except the certificates of authentication of the Authenticating Agents) shall be taken as statements of Argentina, and no Agent assumes any responsibility for the correctness of the same. No Agent makes any representation as to the validity or sufficiency of this Agreement, the Collateral Pledge Agreement or the Bonds. No Agent shall be accountable for the use or application by Argentina of any of the Bonds or the Eligible Debt received in exchange therefor, or the compliance by Argentina with any of its covenants or agreements contained herein or in the Bonds or in any other document or agreement relating to the Bonds.

(g) In executing and becoming a party to this Agreement, each Agent is entering into an agreement with Argentina only, and this Agreement shall not be construed as an agreement between or among any Agent and any other Agent or Agents. Each Agent agrees to be bound by the provisions hereof, or in any amendment hereof, relating to the duties of such Agent, but such Agent shall not be deemed to have approved or to have accepted any responsibility for the provisions hereof, or in any amendment hereof, relating to the duties of any other Agent, and shall not be responsible or have any liability to Argentina or to the Bondholders for the proper performance by such other Agent or Agents of its or their duties pursuant to such provisions. Each Agent shall have only such duties as are expressly provided herein and no others. No Agent shall be accountable for the use or application of any Bonds or funds which have been delivered or disposed of by it in accordance with the applicable provisions of this Agreement and the Collateral Pledge Agreement.

(h) In connection with its duties as an Agent under this Agreement or the Collateral Pledge Agreement, each Agent shall and shall be entitled to act in reliance upon any communication believed by it to be genuine and correct and, in respect of legal matters, upon the advice or opinion of legal counsel selected by it, and any action taken or omitted in good faith by such Agent in reliance upon such paper or document or in accordance with the advice or opinion of such counsel shall be full justification and protection to it.

40

(i) Each Agent may employ agents and attorneys-in-fact and shall not be liable, except as provided above as to funds or securities received by it or its authorized agents, for the default or misconduct of any such agents or attorneys-in-fact selected by it in good faith.

(j) The Fiscal Agent shall not be liable for any loss on any investment of funds made pursuant to the terms of this Agreement.

SECTION 12. MEETINGS OF BONDHOLDERS.

(a) Upon not less than 15 days' prior notice to the Fiscal Agent, Argentina may at any time call a meeting of the Bondholders of any Series pursuant to the notice provisions of this Section 12, such meeting to be held at such time and at such place as Argentina shall determine, for any purpose. Upon a request in writing to the Fiscal Agent made by Bondholders holding not less than 10% of the aggregate outstanding principal amount of the Bonds of any Series, the Fiscal Agent shall convene a meeting of Bondholders of such Series. Any such meeting shall be held at such time and at such place as the Fiscal Agent shall determine. Notice of any meeting of Bondholders of any Series, setting forth the time and place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given by the Fiscal Agent on behalf of the Bondholders of such Series, as the case may be, to the Bondholders of such Series at least once by publication in accordance with the notice provisions contained in the Bonds, such notice to be given not less than 15 nor more than 45 days before the date fixed for the meeting. In addition, notice of such meeting shall be mailed to holders of the Bonds of such Series at the last address of such holder appearing in the register of the Bonds of such Series not less than 15 nor more than 45 days before the date fixed for such meeting. To be entitled to vote at any meeting of Bondholders, or to take any other action as a Bondholder, a Person must be (i) a Bondholder, and, in the case of a meeting of Bondholders of a Series, a holder of one or more Bonds of such Series or (ii) a person appointed by an instrument in writing as proxy by the holder of one or more Bonds. The only persons who shall be entitled to be present or to speak at any meeting of Bondholders shall be the persons entitled to vote at such meeting and their counsel and any representatives of the Fiscal Agent and its counsel and, in the case of any meeting called by Argentina (or to which Argentina is otherwise invited), representatives of Argentina and its counsel.

41

(b)  The quorum requirements at any meeting of Bondholders of any Series are set forth in the Bonds of such Series. No business shall be transacted in the absence of a quorum, unless a quorum is present when the meeting is called to order. In the absence of a quorum within 30 minutes of the time appointed for any such meeting, the meeting shall be adjourned for a period of not less than 10 days as determined by the chairman of the meeting appointed pursuant to Section 12(e). Notice of the reconvening of any meeting adjourned for lack of a quorum shall be given as provided above except that such notice need be given only once but must be given not less than five days before the date on which the meeting is scheduled to be reconvened. Notice of the reconvening of such an adjourned meeting shall state expressly the percentage of the aggregate principal amount of the outstanding Bonds of any Series which shall constitute a quorum.

(c)  Any Bondholder who has executed an instrument in writing appointing a person a proxy shall be deemed to be present for the purposes of determining a quorum and be deemed to have voted in accordance with the vote of the person appointed as such proxy; _provided_ that such Bondholder shall be considered as present or voting only with respect to that matter voted on by such person in accordance with such instrument in writing. Subject to the provisions contained in the Bonds of each Series, any resolution passed or decision taken at any meeting of Bondholders of such Series duly held in accordance with this Section shall be binding on all the Bondholders of such Series whether or not present or represented at the meeting.

(d)  The holding of any Bond of any Series by any Person shall be proved by the registry books for such Series of Bonds maintained in accordance with Section 6(a) or, in the case of beneficial interests in the Non-U.S. Global Bond for such Series, by a certificate or other document issued by the Euroclear Operator or Cedel, or, in the case of a beneficial interest in the U.S. Temporary Global Bond, by a certificate or certificates of the Registrar, as to the principal amount of Bonds of such Series represented by a Non-U.S. Global Bond or a U.S. Temporary Global Bond standing to the account of such Person, which certificate shall be conclusive and binding evidence of the holding of a beneficial interest in such Non-U.S. Global Bond or U.S. Temporary Global Bond, as the case may be, by such Person in the absence of manifest error (_provided_ that, if any such certificate or other document conflicts with the registry books of the Registrar, the registry books of the Registrar shall be binding hereunder) or as otherwise provided on the

Bonds. In the case of a meeting called by Argentina, Argentina may, at its option, fix a record date (not less than 15 nor more than 45 days before the date fixed for such meeting) for the determination of Bondholders entitled to vote at any meeting, but shall have no obligation to do so.

    (e) In the case of a meeting called by Argentina, Argentina shall appoint a chairman for such meeting and such chairman shall appoint a secretary for such meeting. In the case of a meeting called by the Bondholders, the Fiscal Agent shall appoint a temporary chairman for such meeting. A permanent chairman of the meeting shall be elected by vote of the Bondholders holding at least 25% of the aggregate outstanding principal amount of the Bonds of a Series represented at the meeting. Such permanent chairman shall appoint a secretary for such meeting. At any meeting of Bondholders, each Bondholder of such Series or proxy shall be entitled to one vote for each $1,000 principal amount of Bonds held or represented by it (it being understood that any Bondholder entitled to more than one vote shall not be required to cast all of such votes in the same manner); <u>provided</u> that no vote shall be cast or counted at any meeting in respect of any Bond challenged as not outstanding and ruled by the chairman of the meeting to be not outstanding. The chairman of the meeting shall have no right to vote except as a Bondholder or proxy. Any meeting of Bondholders duly called at which a quorum is present may be adjourned from time to time to such time and place as shall be specified, and the meeting may be held as so adjourned without further notice.

    (f) The vote upon any resolution submitted to any meeting of Bondholders shall be by written ballot on which shall be subscribed the signatures of such Bondholders or proxies and on which shall be inscribed the serial number or numbers of the Bonds. The chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified written reports in duplicate of all votes cast at the meeting. Bonds which the Fiscal Agent knows to be owned by, or on behalf of, Argentina shall be disregarded and deemed not to be outstanding. A record in duplicate of the proceedings of each meeting of Bondholders shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken thereat and affidavits by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was published as provided above. The record

shall be signed and verified by the chairman and secretary of the meeting and one of the duplicates shall be delivered to Argentina and the other to the Fiscal Agent to be preserved by the Fiscal Agent, the latter to have attached thereto the ballots voted at the meeting. Any record so signed and verified shall be conclusive evidence of the matters therein stated.

(g)  Notwithstanding any provision of this Section 12 to the contrary, the Fiscal Agent may make such reasonable regulations as it may deem advisable for any meeting of Bondholders in regard to proof of the holding of Bonds and of the appointment of proxies and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

(h)  So long as Argentina has any interest in any of the Bonds referred to in any notice delivered to the Fiscal Agent by Argentina pursuant to the last sentence of Paragraph 4(b) of the Terms and Conditions, no vote may be exercised with respect to such Bond at a meeting of Bondholders or in connection with any consent to any modification, amendment or waiver contemplated in Paragraph 12 of the Terms and Conditions.

SECTION 13.  NOTICES.

All notices and other communications provided for hereunder shall, unless otherwise stated herein, be in writing (including telex or facsimile transmission) and mailed or sent or delivered, if to Argentina, at its address at Ministry of Economy and Public Works and Services, Secretariat of Domestic and External Financing, Hipolito Yrigoyen 250, piso 4, Oficina 410, (1310) Buenos Aires, Argentina, Attention: Subsecretaría de Financiamento Externo (Facsimile No. (54-1) 331-9838, Telex No. 21952, Answerback: MINEC AR), with a copy to Banco Central de la República Argentina, Reconquista 266, (1003) Buenos Aires, Argentina, Attention: Deuda Pública Externa (Facsimile No. (54-1) 334-6468, Telex No. 24200, Answerback: AR CTBAN), or at such other addresses as Argentina shall from time to time specify by written notice to the Fiscal Agent; if to the Agents, at their specific respective corporate trust offices at the addresses set forth in Section 2(h), or at such other addresses as such Agent shall from time to time specify by written notice to the Fiscal Agent and Argentina; if to Bondholders, in accordance with the notice provisions contained in Paragraph 13 of the Bonds. Unless otherwise

specifically provided herein, any order, notice, request or other instrument of Argentina made or given by it under any provision of this Agreement shall be sufficient if signed by an Authorized Official or such Person as an Authorized Official shall appoint in writing and notify in writing to each Agent. Each Agent shall be fully justified and protected in relying and acting upon any instructions received by it and signed in the manner provided in the preceding sentence, or upon the advice of counsel for Argentina. Unless otherwise specifically provided herein, all such notices and communications shall be given by hand, telex or facsimile transmission; <u>provided</u> that, in the event telex or facsimile transmission facilities are not operational, such notices and communications may be given by mail, but the sender shall use reasonable efforts to confirm notices or communications given by mail as soon as telex or facsimile transmission facilities shall become operational. All such notices and communications shall be effective when delivered by hand, or, in the case of mail, upon the earlier of receipt and confirmation by telex or facsimile transmission as provided below or, in the case of facsimile transmission, when sent as addressed as set forth above, or, in the case of telex, when the telex is sent and the appropriate answerback is received. All notices and communications delivered hereunder shall, unless submitted in the English language, be accompanied by a certified English translation thereof.

SECTION 14. MAINTENANCE OF AGENTS.

Argentina may vary or terminate the appointment of any Paying Agent at any time and from time to time upon giving not less than 60 days' notice to such Paying Agent and the Fiscal Agent; <u>provided</u> that Argentina shall maintain at all times, until two years after the aggregate principal amount of all the Bonds shall have become due and payable (whether at maturity or upon redemption or otherwise), at least one Paying Agent in the City of New York and one Paying Agent in London. In addition, Argentina shall maintain at all times, until two years after the aggregate principal amount of all the Bonds shall have become due and payable (whether at maturity or upon redemption or otherwise), a Paying Agent in Luxembourg for each Series of Bonds as long as Bonds of such Series are listed on the Luxembourg Stock Exchange and it is so required for continued listing thereon.

SECTION 15. AMENDMENTS.

(a) This Agreement may be amended by the parties hereto, without the consent of any Bondholder, for the

purpose of curing any ambiguity or to correct or supplement any provision contained herein which may be defective or inconsistent with any other provision contained herein or to evidence and provide for the acceptance by a successor Fiscal Agent, Authenticating Agent, Registrar, Paying Agent, Transfer Agent or Calculation Agent and to add to or change any provisions of this Agreement as shall be necessary to provide for or facilitate the administration of the agencies hereunder or in any manner which the parties may mutually deem necessary or desirable and which shall not adversely affect the interests of the Bondholders.

(b)  Upon the execution of any supplemental agreement under this Section, this Agreement shall be modified in accordance therewith, and such supplemental agreement shall form a part of this Agreement for all purposes; and every Bond theretofore or thereafter authenticated and delivered hereunder shall be bound thereby.

SECTION 16.  APPLICABLE LAW; CONSENT TO JURISDICTION; WAIVER OF IMMUNITIES.

(a)  Except with respect to its authorization and execution by Argentina, this Agreement and the Bonds shall be governed by, and construed in accordance with, the law of the State of New York, United States.

(b)  Argentina hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court sitting in New York City, the High Court of Justice in London, any federal court sitting in the City of Buenos Aires and any appellate court from any thereof, in any suit, action or proceeding arising out of or relating to this Agreement, the Bonds or the Collateral Pledge Agreement, and Argentina hereby irrevocably agrees that all claims in respect of such suit, action or proceeding may be heard and determined in such New York State or Federal court, in the High Court of Justice in London or any Federal court sitting in the City of Buenos Aires.  Argentina hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such suit, action or proceeding and any objection to such suit, action or proceeding whether on the grounds of venue, residence or domicile.  A final judgment in any such suit, action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

46

(c) Argentina hereby irrevocably appoints (i) the New York office of Banco de la Nación Argentina (the "<u>New York Process Agent</u>"), with an office on the date hereof at 299 Park Avenue, 2nd Floor, New York, New York 10171, United States and, alternatively, hereby irrevocably appoints CT Corporation System, with an office on the date hereof at 1633 Broadway, 23rd Floor, New York, New York 10019, United States (the "<u>Alternate New York Process Agent</u>"), in each case, as its agent to receive, on behalf of itself and its property, service of copies of the summons and complaint and any other process which may be served in any such suit, action or proceeding brought in such New York state or Federal court sitting in New York City and (ii) the London office of Banco de la Nación Argentina (the "<u>London Process Agent</u>" and, together with the New York Process Agent, the "<u>Process Agents</u>"), with an office on the date hereof at Longbow House, 14-20 Chiswell Street, London EC1Y 4SD, England and, alternatively, hereby irrevocably appoints The Law Debenture Trust Corporation p.l.c., with an office on the date hereof at Prince's House, 95 Gresham St., London EC2V 7LY, England (the "<u>Alternate London Process Agent</u>" and, together with the Alternate New York Process Agent, the "<u>Alternate Process Agents</u>"), in each case, as its agent to receive on behalf of itself and its property service of copies of a writ, summons, order, judgment or other document which may be served in any such suit, action or proceeding brought in the High Court of Justice in London. Service of any process may be made upon an Alternate Process Agent in lieu of the applicable Process Agent in any such suit, action or proceeding in any New York State or Federal court sitting in New York City and the High Court of Justice in London if (i) at any time and for any reason it appears that service of such process upon any Process Agent as provided above may be ineffective or may not be feasible and (ii) upon or before the serving of any process on any Alternate Process Agent, the Alternate Process Agent and Argentina are notified that service of such process is to be made on such Alternate Process Agent in accordance with the provisions of this sentence. Such service may be made by mailing or delivering a copy of such process to Argentina in care of the appropriate Process Agent or Alternate Process Agent at the address specified above for such Process Agent or Alternate Process Agent, and, in the case of process served on an Alternate Process Agent, by depositing a copy of such process in the United States mails, addressed to Argentina at the address specified in Section 13 hereof (such service to be effective upon the delivery of such process to the Alternate Process Agent and the depositing of such process in the United States mails as aforesaid), and Argentina hereby irrevocably authorizes and directs such Process Agent or

Alternate Process Agent to accept such service on its behalf. Failure of any Process Agent or Alternate Process Agent to give notice to Argentina or failure of Argentina to receive notice of such service of process shall not affect in any way the validity of such service on the Process Agent, the Alternate Process Agent or Argentina. As an alternative method of service, Argentina also irrevocably consents to the service of any and all process in any such suit, action or proceeding in such New York state or federal court sitting in New York City or the High Court of Justice in London by the mailing of copies of such process to Argentina at its address specified in Section 13 hereof. Argentina covenants and agrees that it shall take any and all reasonable action, including the execution and filing of any and all documents, that may be necessary to continue the designations of Process Agents and Alternate Process Agents above in full force and effect, and to cause each Process Agent and Alternate Process Agent to continue to act as such.

(d) Nothing in this Section 16 shall affect the right of any party to serve legal process in any other manner permitted by law or affect the right of any party to bring any action or proceeding against any other party or its property in the courts of other jurisdictions.

(e) To the extent that Argentina has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, Argentina hereby irrevocably waives such immunity in respect of its obligations under this Agreement, the Bonds or the Collateral Pledge Agreement, and, without limiting the generality of the foregoing, Argentina (A) agrees that the waivers set forth in this Section 16(e) shall have the fullest scope permitted under the Foreign Sovereign Immunities Act of 1976 of the United States and are intended to be irrevocable for purposes of such act; and (B) consents generally for the purposes of the State Immunity Act 1978 of the United Kingdom to the giving of any relief or the issue of any process. Notwithstanding the foregoing, Argentina shall not waive any such immunity (1) with respect to the assets which constitute freely available reserves, pursuant to Article VI of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of Argentina, or

48

property owned by Argentina and located in its territory which is dedicated to the purpose of an essential public service.

    (f)  If for the purpose of obtaining judgment in any court it is necessary to convert a sum due hereunder to any Bondholder or Agent or party hereunder in one currency into another currency, the parties hereto agree, to the fullest extent that they may effectively do so, that the rate of exchange used shall be that at which in accordance with normal banking procedures which such Bondholder or Agent or party hereunder could purchase the first currency with such other currency in the city which is the principal financial center of the country of issue of the first currency on the day two Business Days preceding the day on which final judgment is given.

    (g)  The obligation of any party in respect of any sum payable by it to a Bondholder, Agent or any other party hereunder shall, notwithstanding any judgment in a currency (the "judgment currency") other than that in which such sum is denominated in accordance with the applicable provisions of this Agreement or the Bonds (in any such case, the "Agreement Currency"), be discharged only to the extent that on the Business Day following receipt by such Bondholder, Agent or such other party of any sum adjudged to be so due in the judgment currency, such Bondholder, Agent or such other party may in accordance with normal banking procedures purchase the Agreement Currency with the judgment currency; if the amount of the Agreement Currency so purchased is less than the sum originally due to such Bondholder, Agent or such other party in the Agreement Currency, such first party agrees, as a separate obligation and notwithstanding any such judgment, to indemnify such Bondholder, Agent or such other party against such loss, and if the amount of the Agreement Currency that could have been purchased on such Business Day exceeds that sum originally due to such Bondholder, Agent or such other party, such Bondholder, Agent or such other party agrees to remit to such first party such excess, provided that such Bondholder, Agent or such other party shall have no obligation to remit any such excess as long as such first party shall have failed to pay such Bondholder, Agent or such other party any obligations due and payable under the Principal Bond Agreements, in which case such excess may be applied to such obligations of such first party under the applicable Principal Bond Agreements in accordance with the terms thereof.

SECTION 17.  BINDING EFFECT; PARTIAL INVALIDITY; LANGUAGE.

This Agreement shall be binding on and inure to the benefit of each party hereto and its respective successors and assigns. If one or more provisions of this Agreement shall be invalid, illegal or unenforceable in any respect in any jurisdiction or with respect to any party, such invalidity, illegality or unenforceability in such jurisdiction or with respect to such party shall not, to the fullest extent permitted by applicable law, invalidate or render illegal or unenforceable such provision in any other jurisdiction or with respect to any other party, or any other provisions of this Agreement. To the fullest extent it may effectively do so under applicable law, each of the parties hereto waives any provision of law that renders any provision hereof invalid or illegal in any respect.

SECTION 18.  SECTION HEADINGS.

The section headings in this Agreement are intended for convenience only and shall be ignored in construing this Agreement.

SECTION 19.  EXECUTION IN COUNTERPARTS.

This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. Such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, sealed and attested as of the day and year first above written.

THE REPUBLIC OF ARGENTINA

Witnessed:

By: /s/ Fatemeh Ziai

By: /s/ Erika K. Klar

By: /s/ Federico Molina
    Title:  Deputy Manager BCRA on
            assignment to the
            Undersecretariat of Finance

CITIBANK, N.A., as Fiscal Agent,
    Authenticating Agent, Paying Agent,
    Registrar, Transfer Agent and
    Calculation Agent

Witnessed:

By: /s/ V. Lopez

By: /s/ Douglas Badaszewski

By: /s/ Ronald L. Pierce
    Title:  Assistant Vice President

50

        CITIBANK (LUXEMBOURG) S.A.,
          as Authenticating Agent,
          Paying Agent and Transfer Agent


By: /s/ Serge Barraco
    Title:  Vice President

Witnessed:

By: /s/ Marylene Agostini

By: /s/ Patrick Bianchini

EXHIBIT A

[FORM OF BOND]

[To be in same form as Exhibit 1 to the Discount Bond and Par Bond Exchange Agreement]

EXHIBIT B

[FORM OF GLOBAL BOND]

[To be in same form as Exhibit 2A to the Discount Bond and Par Bond Exchange Agreement]

EXHIBIT C

[FORM OF U.S. TEMPORARY ESCROW GLOBAL
REGISTERED BOND]

[To be in same form as Exhibit 2C to the Discount
Bond and Par Bond Exchange Agreement]

SCHEDULE A-1

Form of Transferor Certificate
for Definitive U.S. Bonds

CERTIFICATE

Republic of Argentina

[*[Discount][Par] Series *[L][U] Bonds Due 2023
(the "Bonds)]

   This is to certify with respect to Bond(s) no(s). [insert Bond numbers] representing U.S. $ [insert amount] principal amount of *[Discount][Par] Series *[L][U] Bond(s) Due 2023 being transferred on the date hereof by the undersigned (the "Transferor") to [insert name of transferee] that such transfer is a private transaction not involving any general solicitation or advertising.

   Unless otherwise defined herein, capitalized terms are used in this certificate as defined in the USD Discount Bond and Par Bond Fiscal Agency Agreement dated as of April 7, 1993 among the Republic of Argentina, Citibank, N.A., as Fiscal Agent, Authenticating Agent, Paying Agent, Registrar, Transfer Agent and Calculation Agent and Citibank (Luxembourg) S.A., as Authenticating Agent, Paying Agent and Transfer Agent.

   IN WITNESS WHEREOF, the undersigned has caused this certificate to be executed as of the date set below by its official, officer or agent thereunto duly authorized.

          [Insert name of Transferor]

          By: _____
            Title:

Dated:_____, _____

_____

 * Insert appropriate Series of Bonds.

SCHEDULE A-2

Form of Transferee Certificate
for Definitive U.S. Bonds

CERTIFICATE

Republic of Argentina
[*[Discount][Par] Series *[L][U]
Bonds Due 2023 (the "<u>Bonds</u>")]

      This is to certify, with respect to Bond(s) no(s). [<u>insert Bond numbers</u>] representing U.S. $ [<u>insert amount</u>] principal amount of *[Discount][Par] Series *[L][U] Bond(s) Due 2023 being transferred on the date hereof by [<u>insert name of transferor</u>] to the undersigned (the "<u>Transferee</u>"), that:

      (1)  the Transferee is an Eligible Institutional Investor;

      (2)  the Transferee acknowledges that the Bond(s) (are) (is) not registered under the Securities Act and contain(s) a restrictive legend to that effect;

      (3)  the Transferee is purchasing such Bond(s) for its own account and not with a view to any distribution thereof within the meaning of the Securities Act; and

      (4)  the Transferee will not sell or transfer such Bond(s) <u>except</u>:

          (i)  pursuant to an effective registration statement under the Securities Act; <u>or</u>

---

\*   Insert appropriate Series of Bonds.

A-2-2

(ii) in a transaction not requiring registration under the Securities Act and in which (x) the transferor and transferee shall provide to the Registrar certificates in the form of Schedules A-1 and A-2, respectively, to the USD Discount Bond and Par Bond Fiscal Agency Agreement dated as of April 7, 1993 (as amended and in effect from time to time, the "USD Fiscal Agency Agreement") among the Republic of Argentina, Citibank, N.A., as Fiscal Agent, Authenticating Agent, Paying Agent, Registrar, Transfer Agent and Calculation Agent and Citibank (Luxembourg) S.A., as Authenticating Agent, Paying Agent and Transfer Agent, or (y) the transferor shall provide to the Registrar a certificate in the form of Schedule B or in the form of Schedule C to the USD Fiscal Agency Agreement, as the case may be.

Unless otherwise defined herein, capitalized terms are used in this certificate as defined in the USD Fiscal Agency Agreement.

For purposes of this certificate, "Eligible Institutional Investor" means:

(i) any bank as defined in Section 3(a)(2) of the Securities Act of 1933 of the United States, as amended (the "Securities Act"), whether acting in its individual or fiduciary capacity; or

(ii) any insurance company as defined in Section 2(13) of the Securities Act; or

(iii) any investment company registered under the Investment Company Act of 1940 of the United States, as amended; or

(iv) any plan established and maintained by a state of the United States, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees if such plan has total assets in excess of U.S. $5,000,000; or

      (v) any employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974 of the United States, as amended, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, insurance company, or registered investment adviser or if the employee benefit plan has total assets in excess of U.S. $5,000,000; <u>or</u>

      (vi) any corporation, partnership or trust with assets of not less than U.S. $100,000,000; <u>or</u>

      (vii) any entity all of the equity of which is owned by one or more Eligible Institutional Investors.

      IN WITNESS WHEREOF, the undersigned has caused this certificate to be executed as of the date set forth below by its official, officer or agent thereunto duly authorized.

[Insert name of Transferee]

By: _____
    Title:

Dated: _____, ____

SCHEDULE B

Form of Transferor Certificate for
Definitive U.S. Bonds - Rule 904 Transaction

CERTIFICATE

Republic of Argentina


[*[Discount][Par] Series *[L][U]
Bonds Due 2023 (the "Bonds")]


This is to certify, with respect to Bond(s) no(s). [insert Bond number(s)] representing U.S. $_____ principal amount of *[Discount] [Par] Series *[L][U] Bonds Due 2023 being transferred by [insert name of Transferor], that

(1) the sale of such Bonds is being made pursuant to a transaction that satisfies the conditions of Rule 904 of Regulation S under the United States Securities Act of 1933, as amended ("Regulation S");

(2) the offer of such Bonds was not made to a person in the United States and either:

> (a) at the time the buy order was originated, the buyer was outside the United States, or the undersigned and any person acting on its behalf reasonably believes that the buyer was outside the United States; or

> (b) the transaction was executed in, on or through the facilities of the Luxembourg Stock Exchange (or other exchange identified by the United States Securities and Exchange Commission as a "designated offshore securities market" for purposes of Rule 904 of Regulation S), and neither the undersigned nor any person acting on its behalf knows that such transaction has been pre-arranged with a buyer in the United States; and

---

*   Insert appropriate Series of Bonds.