21

"Terms and Conditions" means the provisions set forth under the "Terms and Conditions of Bonds" endorsed on the reverse of the Principal Bonds denominated in U.S. Dollars.

"Translation Rate" has the meaning specified in Schedule B hereto.

"Translation Rate Determination Date" has the meaning specified in Schedule B hereto.

"United States" and "U.S." each means the United States of America; provided that, as used in Article III, in Section 4.02(k) and in the definition of "U.S. Person" below, "United States" means the United States of America, its territories and possessions, any State of the United States and the District of Columbia.

"Unreconciled ED" of a Purchaser means (i) on any day, the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof) of the Eligible Debt claimed by such Purchaser as indicated in the Supplemental Schedule of such Purchaser less the Reconciled ED of such Purchaser for such day, (ii) for the Exchange Date, the USD Equivalent or the DMK Equivalent, as the context requires, of the Unreconciled ED claimed by such Purchaser as indicated in the statement sent by the Closing Agent pursuant to Section 2.05(b) for the Exchange Date (as such statement may be modified by such Purchaser pursuant to Section 2.05(b) hereof) and (iii) for the Escrow Release Date, the USD Equivalent or the DMK Equivalent, as the context requires, of the Unreconciled ED claimed by such Purchaser as indicated in the statement sent by the Closing Agent pursuant to Section 2.05(b) for the Escrow Release Date (as such statement may be modified by such Purchaser pursuant to Section 2.05(b) hereof) other than such Unreconciled ED which pursuant to Section 3.05(b) hereof is not considered to be Unreconciled ED of such Purchaser; provided, however, that, in calculating the Unreconciled ED of any Purchaser, the provisions of Section 2.06(c) shall apply and, provided, further, that Unreconciled ED shall not include any Eligible Debt which has been included in the Reconciled ED of any Purchaser. The amount of each Purchaser's Unreconciled ED shall be as set forth on Schedule A hereto (after giving effect to adjustments to Schedule A pursuant to Section 6.01 hereof).

"U.S. Dollars" or "U.S.$" or "USD" means lawful currency of the United States.

22

"<u>U.S. Global Principal Bonds</u>" means the U.S. Temporary Escrow Global Discount Bond, the U.S. Temporary Escrow Global Par Bond, the U.S. Temporary Global Discount Bonds and the U.S. Temporary Global Par Bonds.

"<u>U.S. Offering</u>" means the offering of the Principal Bonds in the United States pursuant to Section 4(2) of the Securities Act.

"<u>U.S. Person</u>" means (i) any natural person resident in the United States; (ii) any partnership or corporation organized or incorporated under the laws of the United States; (iii) any estate of which any executor or administrator is a U.S. Person; (iv) any trust of which any trustee is a U.S. Person; (v) any agency or branch of a foreign entity located in the United States; (vi) any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. Person; (vii) any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and (viii) any partnership or corporation if (A) organized or incorporated under the laws of any foreign jurisdiction and (B) formed by a U.S. Person principally for the purpose of investing in securities not registered under the Securities Act <u>unless</u> it is organized or incorporated, and owned, by accredited investors (as defined in Rule 501(a) under the Securities Act) who are not natural persons, estates or trusts; <u>provided, however</u>, that the following shall not be deemed to be U.S. Persons:

    (1)  any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a Non-U.S. Person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the United States;

    (2)  any estate of which any professional fiduciary acting as an executor or administrator is a U.S. Person if (i) another executor or administrator who is not a U.S. Person has sole or shared investment discretion with respect to the assets of the estate and (ii) the estate is governed by foreign law;

23

    (3)  any trust of which any professional fiduciary acting as a trustee is a U.S. Person if (i) another trustee who is not a U.S. Person has sole or shared investment discretion with respect to the trust assets and (ii) no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. Person;

    (4)  any branch or agency of a U.S. bank or insurance company located outside the United States if such agency or branch (i) operates for valid business reasons, (ii) is engaged in the banking or insurance business and (iii) is subject to substantive local banking or insurance regulation; and

    (5)  multinational entities such as the United Nations, the International Monetary Fund, the International Bank for Reconstruction and Development, the various development banks and their agencies, affiliates and pension plans.

"U.S. Purchaser" means any Purchaser that is (i) a "United States person" (as defined in Section 7701(a)(30) of the Code) or (ii) a U.S. Person; *provided, however*, that a U.S. Purchaser shall not include a foreign branch of a United States "financial institution" (as defined in U.S. Treasury Regulations Section 1.165-12(c)(1)(v)) that agrees to comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Code.

"U.S. Temporary Escrow Global Discount Bond" means the U.S. Temporary Escrow Global Discount Bond issued by Argentina in respect of the Discount Series L Bonds, substantially in the form of Exhibit 2C.

"U.S. Temporary Escrow Global Par Bond" means the U.S. Temporary Escrow Global Par Bond issued by Argentina in respect of the Par Series L Bonds, substantially in the form of Exhibit 2C.

"U.S. Temporary Escrow Global Principal Bond" means a U.S. Temporary Escrow Global Discount Bond or a U.S. Temporary Escrow Global Par Bond.

"U.S. Temporary Global Discount Bonds" means the U.S. Temporary Global Principal Bonds issued by Argentina

24

in respect of each Series of Discount Bonds (other than the DMK Discount Series Bonds), substantially in the form of Exhibit 2A.

"U.S. Temporary Global Par Bond" means the U.S. Temporary Global Principal Bonds issued by Argentina in respect of each Series of Par Bonds (other than the DMK Par Series Bonds), substantially in the form of Exhibit 2A.

"U.S. When-Issued Principal Bonds or Options" means any Principal Bond or Option to be acquired by a Non-U.S. Person pursuant to either subclause (A)(2) of Section 4.02(j)(vi) hereof or subclause (C) of Section 4.02(j)(vii) hereof.

"USD Equivalent" means (i) of any amount of Eligible Debt denominated in an Original Currency other than U.S. Dollars, a U.S. Dollar amount calculated on the basis of the Translation Rate applicable to such Original Currency and (ii) of any amount of Eligible Debt denominated in U.S. Dollars, such U.S. Dollar amount.

"USD Fiscal Agency Agreement" means the USD Discount Bond and Par Bond Fiscal Agency Agreement between Argentina and the Fiscal Agent thereunder, substantially in the form of Exhibit 4A hereto, as amended and in effect from time to time.

"Waiver and Amendment Request" means the request for waivers and amendments dated June 23, 1992 set forth by Argentina in Part III of the 1992 Financing Plan.

"Waiver" means, with respect to a Purchaser party to any Existing Agreement, the favorable responses given by such Purchaser to the Waiver and Amendment Request.

"Working Committee for Argentina" means the following group of thirteen banks which has acted as a communications link between Argentina and the International Banking Community:  Bank of America National Trust and Savings Association, The Bank of Tokyo, Ltd., The Chase Manhattan Bank (National Association), Chemical Bank, Citibank, N.A., Crédit Lyonnais, Crédit Suisse, Dresdner Bank AG, Lloyds Bank Plc, Midland Bank plc, Morgan Guaranty Trust Company of New York, Royal Bank of Canada and The Sanwa Bank, Ltd.

25

SECTION 1.02.  <u>References to Articles, Etc.</u>  Any reference to Articles, Sections, Exhibits, Annexes or Schedules, unless expressly otherwise provided herein, shall be references to Articles, Sections, Exhibits, Annexes or Schedules to or of this Agreement.

26

## ARTICLE II

## THE EXCHANGE

SECTION 2.01.  Exchange of Eligible Debt.
(a)  Exchange Date.  Subject to the conditions precedent set forth in Section 2.03 hereof and in accordance with the other terms and conditions of this Agreement, Argentina shall on the Exchange Date:

(i)  issue and deliver to the Common Depositary and the Registrar for the account of the Purchasing Offices of each Purchaser, in exchange for such Purchaser's Reconciled ED as required by Section 2.02 hereof, Principal Bonds of each Series in an aggregate principal amount equal to the Exchange Amount of such Purchaser for such Series for the Exchange Date; and

(ii)  issue in the name of and deliver to the Escrow Agent a U.S. Temporary Escrow Global Principal Bond for each of the Discount Series L and the Par Series L or, in the case of the DMK Discount Series and the DMK Par Series, issue and deliver to the German Clearing System a beneficial interest in the DMK Global Bearer Bond for such Series for credit to the account of a bank or financial institution selected by the Escrow Agent, in each case, for the benefit of the Purchasers pursuant to this Agreement in an aggregate principal amount equal to the Escrowed Bond Amount for such Series.

(b)  Escrow Release Date.  Subject to the conditions precedent set forth in Section 2.04 hereof and in accordance with the other terms and conditions set forth in this Agreement, on the Escrow Release Date, in exchange for each Purchaser's Reconciled ED as required by Section 2.02 hereof, and subject to such Purchaser's compliance with Section 2.02(b) hereof, Principal Bonds shall be released to the Purchasing Offices of each Purchaser entitled thereto in accordance with Section 3.05 hereof.

(c)  Argentine Bank Exchange.  At least 45 days prior to the Exchange Date, upon notice to Argentina and the Closing Agent, an Argentine Bank may elect not to participate in the Exchange.  In such event, Argentina agrees to arrange for an exchange pursuant to which, on the Exchange Date, such Argentine Bank may exchange its Eligible Debt for unsecured bonds of Argentina on terms and conditions no more favorable than the Principal Bonds being exchanged hereunder.  The unsecured bonds to be issued to such Argentine Bank may, at a

27

future date, be exchanged, with an allocation between Par
Bonds and Discount Bonds no more favorable than the
allocation available to the Purchasers hereunder, for
Principal Bonds purchased or otherwise acquired by
Argentina. Argentine Banks electing to participate in such
exchange for unsecured bonds shall exchange their Eligible
Debt on the Exchange Date, and such Eligible Debt shall be
deemed paid and discharged as of the earlier of March 31,
1993 and the Exchange Date.

SECTION 2.02. Exchange and Discharge; Forbearance.
(a) Subject to the conditions precedent set forth in Section
2.03 hereof in the case of the Exchange Date or Section 2.04
hereof in the case of the Escrow Release Date, as the case
may be, and in accordance with the other terms and conditions
of this Agreement, each Purchaser will, (i) on the Exchange
Date, exchange its Reconciled ED for Principal Bonds received
by such Purchaser's Purchasing Office on the Exchange Date
and (ii) on the Escrow Release Date, exchange its Reconciled
ED for Principal Bonds received by such Purchaser's
Purchasing Office on the Escrow Release Date. Upon (i) the
issuance and delivery of Principal Bonds pursuant to Section
2.01(a)(i) or (ii) the release of Principal Bonds to each
Purchaser's Purchasing Office entitled thereto pursuant to
Section 2.01(b) hereof or in connection with an interpleader
or otherwise, as and when such Principal Bonds are issued or
released the portion of the Eligible Debt relating to
Reconciled ED with respect to which such Principal Bonds were
so issued or released shall be deemed paid and discharged as
of the earlier of March 31, 1993 and the Exchange Date and no
interest shall be deemed to have accrued on such Eligible
Debt from and after such earlier date. Nothing in this
Section 2.02 or any action taken to cancel or discharge such
Reconciled ED shall be deemed to constitute a discharge of
any interest obligations accrued prior to such earlier date
in respect of such discharged principal amounts or affect the
enforceability of such interest obligations, unless such
interest obligations are discharged pursuant to the terms and
conditions of the Floating Rate Bond Exchange Agreement.

(b) During the period from the Exchange Date to the
Escrow Release Date, each Purchaser waives, and agrees not to
exercise or assert, any right or claim with respect to the
Unreconciled ED of such Purchaser or any other Purchaser in
respect of which Principal Bonds have been issued and
deposited in the appropriate Escrow Account.

28

SECTION 2.03.  Exchange Date.  The Exchange Date shall be the Business Day occurring on or prior to the Termination Date on which all of the conditions set forth below have been satisfied (or waived as provided herein):

(a)  The Closing Agent shall have received counterparts of this Agreement signed by Argentina, each Debt Agreement Agent, the Promissory Note Agent, the Closing Agent and each Purchaser, in sufficient number for distribution as provided in Section 6.16 hereof.

(b)  The Closing Agent shall have received ten executed originals (four of which shall be retained by the Closing Agent on behalf of the Purchasers and one of which shall be delivered to special New York counsel to the Closing Agent) of each of the documents listed below, each such document to be dated in accordance with the relevant Exhibit to the Closing Book and, in the case of each of the certificates delivered pursuant hereto, the statements set forth therein shall be true and correct:

(i)  copies certified by the Minister of Economy and Public Works and Services of Argentina of all Argentine Authorizations (with English translations) necessary for Argentina to execute, deliver and perform this Agreement, any other Principal Bond Agreement and the Amendments or for the validity or enforceability hereof or thereof and a certificate of the Minister of Economy and Public Works and Services of Argentina, in substantially the form of Exhibit A-1 to the Closing Book, to the effect that none of such Argentine Authorizations has been amended and each is in full force and effect;

(ii)  a certificate of the Secretary General of the Ministry of Economy and Public Works and Services of Argentina, in substantially the form of Exhibit A-2 to the Closing Book, as to the authority, incumbency and specimen signatures of the persons who have executed or will execute this Agreement and the other Principal Bond Agreements and the other instruments and documents to be executed and delivered hereunder or thereunder by Argentina;

(iii)  a certificate of the Minister of Economy and Public Works and Services of Argentina, in substantially the form of Exhibit A-3 to the Closing Book, to the effect that:

29

(A)  no default in the payment of principal or interest of which Argentina has been notified in writing on or prior to September 6, 1992 shall be continuing with respect to any medium-term and long-term External Indebtedness of Argentina or any Designated Argentine Governmental Agency as to which a commercial bank is the original creditor other than indebtedness under the Debt Agreements;

(B)  the Principal Collateral Amounts and the Interest Collateral Amounts for each Series of Principal Bonds have been calculated in accordance with Schedule C hereto and are set forth in Annex I to such certificate;

(C)  Argentina has obtained all waivers under the agreements governing the debt of, or guaranteed by, Argentina to the extent necessary to permit the implementation of this Agreement;

(D)  each of the representations and warranties made by Argentina in Section 4.01 hereof and in the other Principal Bond Agreements is true and correct on and as of the Exchange Date with the same force and effect as if made on and as of the Exchange Date;

(E)  Eligible Debt has continued to be eligible for Argentina's privatization program until the Exchange Date;

(F)  Argentina has (i) made an interest payment of at least U.S.$70,000,000 per month in respect of commercial bank indebtedness in each month since the date of the 1992 Financing Plan through and including the earlier of the month in which the Exchange Date occurs and March 1993, except to the extent any such monthly payment has been added to the Cash Payment as contemplated in Section 2.05(i) of the Floating Rate Bond Exchange Agreement and (ii) in the event that the Exchange Date shall not have occurred on or prior to April 7, 1993, deposited on or before the Exchange Date, to secure the payment of interest on the Principal Bonds due and payable on the first interest

30

payment date therefor, U.S.$70,000,000 in respect of each of the months from April 1993 to and including the month in which the Exchange Date occurs; and

(G) the Principal Collateral and Interest Collateral delivered by Argentina on the Exchange Date pursuant to Section 3.01 and 4.01, respectively, of each of the Collateral Pledge Agreements consist solely of the types of collateral for which the forms of opinion referred to in Section 2.03(b)(ix) hereof include a form of perfection and first priority opinion with respect to the security interest of the Collateral Agent in such Principal Collateral and Interest Collateral on the Exchange Date;

(iv) copies (with English translations) certified by the President of BCRA, in substantially the form of Exhibit A-4 to the Closing Book, of all resolutions or other actions of the Board of Directors of BCRA and all Argentine Authorizations, in each case, necessary for BCRA to execute, deliver and perform the BCRA Undertaking and the Obligor Consent and for the validity or enforceability thereof and designating the President of BCRA as the officer authorized to execute and deliver such documents and instruments;

(v) a certificate of the Secretary of the Board of Directors of BCRA in substantially the form of Exhibit A-5 to the Closing Book as to the authority, incumbency and specimen signature of the President of BCRA;

(vi) a certificate of the Minister of Economy and Public Works and Services of Argentina and of Citibank, N.A., as Closing Agent, substantially in the form of Exhibit A-6 to the Closing Book as to:

(A) the satisfaction (or waiver) of the conditions to the Exchange Date under (and as defined in) the Floating Rate Bond Exchange Agreement; and

(B) the substantial completion of the reconciliation to identify the Recognized Holders of the Eligible Debt;

31

(vii)  an opinion of the <u>Procurador del Tesoro de la Nación</u> (Attorney of the National Treasury of Argentina), substantially in the form of Exhibit A-7 to the Closing Book;

(viii)  an opinion of the General Counsel of BCRA, in substantially the form of Exhibit A-8 to the Closing Book;

(ix)  opinions of (A) Cleary, Gottlieb, Steen & Hamilton, special New York, German and French counsel to Argentina and BCRA, substantially in the forms of Exhibits A-9A, A-9B and A-9C, respectively, to the Closing Book, (B) Linklaters & Paines, special English counsel to Argentina, substantially in the form of Exhibit A-9D to the Closing Book, (C) Bär & Karrer, special Swiss counsel to Argentina, substantially in the form of Exhibit A-9E to the Closing Book and (D) Nishimura & Sanada, special Japanese counsel to Argentina, substantially in the form of Exhibit A-9F to the Closing Book;

(x)  a certificate of the Minister of Economy and Public Works and Services of Argentina, as to Eligible Debt and Eligible Interest of Argentine Banks, substantially in the form of Exhibit A-10 to the Closing Book;

(xi)  a letter from the IMF, confirming that the Extended Fund Facility Arrangement remains in effect and that, with the exception of the set aside amounts for debt reduction operations, Argentina has made each purchase under the Extended Fund Facility Arrangement as to which the originally scheduled test date occurred at least 90 days prior to the Exchange Date, substantially in the form of Exhibit A-11 to the Closing Book;

(xii)  a certificate of the Collateral Agent, in substantially the form of Exhibit A-12 to the Closing Book, as to the Interest Collateral and Principal Collateral received and held by the Collateral Agent for each Series of Principal Bonds, which shall have an aggregate amount payable at maturity (including principal, interest and interest added to principal) not less than the Principal Collateral Amount for such Series of Principal Bonds (in the case of Principal Collateral) and have an aggregate Value (as defined in the Collateral Pledge

32

Agreements) not less than the Interest Collateral
Amount for such Series of Principal Bonds (in the
case of Interest Collateral);

(xiii)  an opinion of the General Counsel of the
Federal Reserve Bank of New York, substantially in
the form of Exhibit A-13 to the Closing Book;

(xiv)  opinions of Shearman & Sterling, special
New York and German counsel to the Working Committee
for Argentina and the Closing Agent, substantially
in the forms of Exhibits A-14A and A-14B,
respectively, to the Closing Book;

(xv)  an opinion of Gallo & Bruchou, special
Argentine counsel to the Working Committee for
Argentina and the Closing Agent, substantially in
the form of Exhibit A-15 to the Closing Book;

(xvi)  an opinion of Slaughter & May, special
English counsel to the Closing Agent, substantially
in the form of Exhibit A-16 to the Closing Book;

(xvii)  a letter from the New York Process Agent
for Argentina, substantially in the form of
Exhibit A-17A to the Closing Book;

(xviii)  a letter from the Alternate New York
Process Agent for Argentina, substantially in the
form of Exhibit A-17B to the Closing Book;

(xix)  a letter from the New York Process Agent
for Banco Central de la Republica Argentina,
substantially in the form of Exhibit A-17C to the
Closing Book;

(xx)  a letter from the Alternate New York
Process Agent for Banco Central de la Republica
Argentina, substantially in the form of
Exhibit A-17D to the Closing Book;

(xxi)  a letter from the London Process Agent for
Argentina, substantially in the form of
Exhibit A-18A to the Closing Book;

(xxii)  a letter from the Alternate London Process
Agent for Argentina, substantially in the form of
Exhibit A-18B to the Closing Book;

33

(xxiii)  a letter from the London Process Agent for Banco Central de la Republica Argentina, substantially in the form of Exhibit A-18C to the Closing Book;

(xxiv)  a letter from the Alternate London Process Agent for Banco Central de la Republica Argentina, substantially in the form of Exhibit A-18D to the Closing Book;

(xxv)  a letter from the Frankfurt Process Agent for Argentina, substantially in the form of Exhibit A-19A to the Closing Book; and

(xxvi)  a letter from the Frankfurt Process Agent for Banco Central de la Republica Argentina, substantially in the form of Exhibit A-19B to the Closing Book.

(c)  The Closing Agent shall have received ten counterparts of each of the following (each of which shall be dated as of the Exchange Date), four of which shall be retained by the Closing Agent on behalf of the Purchasers and one of which shall be delivered to special New York counsel to the Closing Agent:

(i)  each Collateral Pledge Agreement, executed by each party thereto;

(ii)  each Fiscal Agency Agreement, executed by each party thereto;

(iii)  the BCRA Undertaking, executed by BCRA;

(iv)  the Obligor Consent, executed by each party thereto;

(v)  the Amendments, executed by Argentina, the Obligors parties thereto and:

(A)  in the case of the amendments to each of the 1987 TCA, the 1985 TCA, the 1983 TCA and the Co-Financing Agreement, by the Majority Banks (as defined in the applicable Debt Agreement) and the agent under such Debt Agreement;

(B)  in the case of the amendments to the 1987 GRA, by the Majority Syndicate Banks (as

34

defined in the 1987 GRA) and syndicate agent
for each Borrower (as defined in the 1987 GRA)
thereunder;

(C) in the case of amendments to the AUSA
GRA, the Salto Grande GRA and the Alianza
Naviera GRA, by the Majority Banks (as defined
in the applicable Debt Agreement) and the Agent
under such Debt Agreement; and

(D) in the case of amendments to Public
Sector Onlending Agreements, by the requisite
banks and the agent, if any, in accordance with
the provisions of the applicable agreement;

(vi) an order from Argentina to the
Authenticating Agent, in substantially the form of
Exhibit A-20 to the Closing Book, directing the
Authenticating Agent to authenticate the Global
Principal Bonds (other than the DMK Global Bearer
Bonds);

(vii) a certificate of the Registrar,
substantially in the form of Exhibit A-21 to the
Closing Book, as to delivery in accordance with the
USD Fiscal Agency Agreement of the U.S. Global
Principal Bonds (other than the U.S. Temporary
Escrow Global Principal Bonds) referred to in
Section 3.02 hereof;

(viii) a certificate of the Common Depositary,
substantially in the form of Exhibit A-22 to the
Closing Book, as to delivery in accordance with the
USD Fiscal Agency Agreement of the Non-U.S. Global
Principal Bonds referred to in Section 3.03 hereof;

(ix) a receipt from the operator of the German
Clearing System for the DMK Bonds, in the form
customarily delivered by the operator of the German
Clearing System, acknowledging delivery of the DMK
Global Bearer Bonds for both Series of DMK Bonds
referred to in Section 3.04 hereof;

(x) a letter to the Closing Agent from the
Luxembourg Stock Exchange, substantially in the form
of Exhibit A-25 to the Closing Book stating that
application has been made by Argentina for the
listing of the Par Series L Bonds and the Discount
Series L Bonds on the Luxembourg Stock Exchange; and

35

(xi)  the Escrow Agreement, executed by the
Escrow Agent and the Closing Agent (and consented to
by Argentina) and a certificate from the Escrow
Agent as to receipt of the U.S. Temporary Escrow
Global Principal Bonds referred to in Section 3.02
hereof.

(d)  Since June 23, 1992 and on or prior to the
thirty-fifth day prior to the Exchange Date, there shall
have been no adverse change in the financial or economic
condition of Argentina which is material in the context
of the Exchange.

(e)  The Closing Agent shall have received evidence
satisfactory to the Closing Agent that Argentina has paid
(A) all fees and expenses required to be paid to the
Closing Agent and to the Agents (as defined in each
Fiscal Agency Agreement) on or prior to the Exchange Date
in accordance with Section 6.05 hereof, the letter
referred to in Section 5.01(b) hereof, Section 10 of the
USD Fiscal Agency Agreement and Section 10 of the DMK
Fiscal Agency Agreement (including in each case, without
limitation, fees and expenses of counsel as provided
therein), (B) all costs and expenses of members of the
Working Committee for Argentina required to be paid or
reimbursed by Argentina on or prior to the Exchange Date
in accordance with Section 6.05 hereof, (C) all costs and
expenses of the Debt Agreement Agents and the Promissory
Note Agent required to be paid or reimbursed by Argentina
on or prior to the Exchange Date in accordance with
Section 6.05 hereof (including, without limitation, fees
and expenses of counsel as provided therein) and (D) all
fees and expenses of Shearman & Sterling, special New
York counsel to the Working Committee for Argentina and
the Closing Agent, and Gallo & Bruchou, special Argentine
counsel to the Working Committee for Argentina and the
Closing Agent required to be paid or reimbursed by
Argentina on or prior to the Exchange Date in accordance
with Section 6.05 hereof, and deposited all amounts
required to be deposited with the Closing Agent on or
prior to the Exchange Date in accordance with each of the
letter agreements, dated the date hereof, between
Argentina and the Closing Agent relating to fees and
expenses of counsel to the Working Committee for
Argentina and the Closing Agent; provided that, except
with respect to amounts required to be deposited, a
statement, invoice or other claim in respect of any
amount referred to above has been submitted to Argentina
on or prior to the date 30 calendar days prior to the

36

Exchange Date. The payment of such fees, costs, expenses or other amounts referred to above in satisfaction of such condition precedent in this subsection (e) shall be without prejudice to the right of Argentina to contest in good faith any such payment.

Documentation that varies from the requirements of subsection (a), (b) or (c) above may be accepted, and the condition set forth in subsection (d) above may be waived, in each case, with the consent of Purchasers having at least 66-2/3% of the aggregate of the Reconciled ED and Unreconciled ED of all Purchasers for the Exchange Date; provided that, except as set forth below, with respect to any documentation relating specifically to any Series of Principal Bonds, documentation for such Series of Principal Bonds that varies from the above requirements may be accepted with the consent of Purchasers having at least 66-2/3% of the aggregate of the Reconciled ED and Unreconciled ED of all Purchasers for the Exchange Date to be exchanged for such Series of Principal Bonds or with respect to which Principal Bonds of such Series are to be escrowed on the Exchange Date. The condition referred to in Section 2.03(d) hereof shall be deemed to have been satisfied if, on or prior to the thirtieth day prior to the Exchange Date, the Closing Agent has not received notices from the Majority Purchasers that, as a result of a material adverse change described in Section 2.03(d) hereof, such condition has not been satisfied. Certificates, letters and opinions of the IMF, the Collateral Agent, the Registrar, the Common Depositary, the German Clearing System or the Luxembourg Stock Exchange or any official of any thereof which are required to be delivered pursuant to this Section 2.03 may be accepted in a form which varies from the relevant Exhibit to the Closing Book by agreement between Argentina and the Closing Agent.

SECTION 2.04. The Escrow Release Date. The Escrow Release Date shall be a Business Day selected jointly by Argentina and the Closing Agent occurring not later than the Escrow Termination Date on which all of the conditions set forth below shall have been satisfied (or waived as provided herein) (and, in the case of the conditions set forth in subsections (a)(i)-(iv), (b) and (c) below, Argentina agrees to take all actions as are necessary to satisfy such conditions or to cause such conditions to be satisfied):

(a) The Closing Agent shall have received ten executed originals (four of which shall be retained by the Closing Agent on behalf of the Purchasers and one of which shall be delivered to special New York counsel to

37

the Closing Agent) of each of the documents listed below, each such document to be dated in accordance with the relevant Exhibit to the Closing Book and, in the case of the certificates delivered pursuant hereto, the statements set forth therein shall be true and correct:

(i)   a certificate of the Common Depositary, substantially in the form of Exhibit B-1 to the Closing Book, to the effect that the Schedule to the Non-U.S. Global Principal Bond for each Series has been endorsed as instructed by Argentina and the Closing Agent pursuant to Section 3.05(c) hereof;

(ii)   a certificate of the Registrar, substantially in the form of Exhibit B-2A to the Closing Book, to the effect that the Schedule to the U.S. Temporary Global Discount Bonds and U.S. Temporary Global Par Bonds for each Series has been endorsed as instructed by Argentina and the Closing Agent pursuant to Section 3.05(c) hereof and a certificate of the Fiscal Agent, substantially in the form of Exhibit B-2B to the Closing Book, to the effect that the Schedule to the U.S. Temporary Escrow Global Discount Bond and the U.S. Temporary Escrow Global Par Bond has been endorsed as instructed by Argentina and the Closing Agent pursuant to Section 3.05(c) hereof;

(iii)   a copy of the report delivered to Argentina and the Fiscal Agent by the Collateral Agent (certified by an Authorized Official) as to the Interest Collateral and Principal Collateral received and held by the Collateral Agent for each Series of Principal Bonds, which Interest Collateral and Principal Collateral so received and held by the Collateral Agent shall have an aggregate amount payable at maturity (including principal, interest and interest added to principal) not less than the Principal Collateral Amount for such Series of Principal Bonds (in the case of Principal Collateral) and have an aggregate Value (as defined in the Collateral Pledge Agreements) not less than the Interest Collateral Amount for such Series of Principal Bonds (in the case of Interest Collateral), in each case, calculated in accordance with Schedule C hereto after giving effect to the

38

endorsement of the Global Principal Bonds in accordance with Section 3.05(c) hereof;

(iv) a certificate from the Minister of Economy and Public Works and Services of Argentina, in substantially the form of Exhibit B-3 to the Closing Book, to the effect that

(A) no Event of Default (as defined in the Terms and Conditions) or any event which with the passage of time or the giving of notice, or both, would constitute an Event of Default has occurred and is continuing on the Escrow Release Date; and

(B) the Principal Collateral and Interest Collateral transferred among Principal Collateral Accounts and Interest Collateral Accounts, respectively, pursuant to Section 5.07 of each of the Collateral Pledge Agreements consist solely of Permitted Investments existing in the form of an entry in the records of the Federal Reserve Bank of New York, in the case of the USD Collateral Pledge Agreement, and Permitted Investments deposited with the Deutcher Kassenverein Aktiengesellschaft in accordance with the procedures for the collective deposit (Sammelverwahrung) of securities under the law of the safekeeping of securities, in the case of the DMK Collateral Pledge Agreement, and the Interest Collateral and Principal Collateral delivered by Argentina pursuant to Sections 5.05 and 5.06, respectively, of each of the Collateral Pledge Agreements consist solely of the types of collateral for which the forms of opinion referred to in Section 2.03(b)(ix) hereof include a perfection and first priority opinion with respect to the security interest of the Collateral Agent in such types of collateral; and

(v) for each jurisdiction in which Principal Collateral or Interest Collateral that is delivered to, or transferred among, Principal Collateral Accounts and Interest Collateral Accounts on the Escrow Release Date pursuant to Article V of each of the Collateral Pledge Agreements is located, an opinion of the relevant counsel referred to in

39

Section 2.03(b)(ix) hereof as to the perfection and first priority of the security interests of the Collateral Agent in such Principal Collateral and Interest Collateral, substantially in the form of the form of such counsel's opinion included in the Closing Book.

(b) If additional DMK Global Bearer Bonds are to be executed and delivered on the Escrow Release Date, the Closing Agent shall have received ten executed originals (four of which shall be retained by the Closing Agent on behalf of the Purchasers and one of which shall be delivered to special New York counsel to the Closing Agent) of each of the documents specified in subsection (vii) of Section 2.03(b) hereof and subsection (ix) of Section 2.03(c) hereof and an opinion of Cleary, Gottlieb, Steen & Hamilton, special German counsel to Argentina with respect to the execution and delivery of such additional DMK Global Bearer Bonds, substantially in the form of Exhibit A-9B to the Closing Book (to the extent applicable thereto).

(c) The Closing Agent shall have received evidence satisfactory to the Closing Agent that Argentina has paid all costs, fees, expenses and other amounts of the type specified in Section 2.03(e) hereof which are required to be paid, or deposited, on or prior to the Escrow Release Date. The payment of such fees, costs, expenses or other amounts referred to above in satisfaction of such condition precedent in this subsection (c) shall be without prejudice to the right of Argentina to contest in good faith any such payment.

Documentation that varies from the requirements of this Section 2.04 may be accepted with the consent of Purchasers having at least 66-2/3% of the aggregate of all Reconciled ED and Unreconciled ED of all Purchasers on the Escrow Release Date; provided that, except as set forth below, documentation relating specifically to any Series of Principal Bonds that varies from the above requirements may be accepted with the consent of Purchasers having at least 66-2/3% of the aggregate of all Reconciled ED and Unreconciled ED for the Escrow Release Date that is to be exchanged for such Series of Principal Bonds on the Escrow Release Date or with respect to which Principal Bonds of such Series were escrowed on the Exchange Date but are not to be released on the Escrow Release Date. Certificates, letters and opinions of the Collateral Agent, the Registrar, the Common Depositary, the German Clearing System or the Luxembourg Stock Exchange or any official of any thereof

40

which are required to be delivered pursuant to this Section
2.04 may be accepted by the Closing Agent in a form which
varies from the relevant Exhibit to the Closing Book.

SECTION 2.05. Procedures for Exchange. (a) Not
less than 45 calendar days before the anticipated Exchange
Date and 35 calendar days before the anticipated Escrow
Release Date (as determined jointly by the Closing Agent and
Argentina), the Closing Agent shall notify the other parties
hereto of such anticipated date. Argentina jointly with the
Closing Agent may, at any time prior to the anticipated
Exchange Date or the anticipated Escrow Release Date, as
applicable, which has been notified to the other parties
hereto under this Section 2.05(a), postpone the anticipated
Exchange Date or the anticipated Escrow Release Date, as
applicable, to a later date and the Closing Agent shall
notify the other parties hereto of such postponement and of
the new anticipated date.

(b) At least 30 calendar days prior to the Exchange
Date or the Escrow Release Date, as the case may be, the
Closing Agent shall send to each Purchaser a statement
specifying (i) such Purchaser's Reconciled ED for such date
(or, if such Reconciled ED is subject to translation under
Section 2.08(a) hereof, the Reconciled ED of such Purchaser
for such date expressed in the Original Currency thereof
rather than its USD Equivalent), such Purchaser's Purchasing
Office(s) for Principal Bonds and such Purchaser's status as
a U.S. Person or Non-U.S. Person, as set forth in Schedule A,
(ii) such Purchaser's Unreconciled ED for such date,
(iii) the percentage of such Purchaser's Reconciled ED
allocated to be exchanged for each Series of Principal Bonds
and (iv) that such Purchaser has represented, pursuant to
this Agreement, that to the best of its knowledge, it owns
all of the Unreconciled ED indicated for such Purchaser on
such statement. Each Purchaser shall have ten calendar days
to inform the Closing Agent of any change, correction or
modification to the information (other than such Purchaser's
percentage allocation of Reconciled ED as between Par Bonds
and Discount Bonds) presented on such statement and, if
requested, confirm its status as a U.S. Person or a Non-U.S.
Person, taking into account, among other things, such
Purchaser's Commitment Telex, the requirements of Regulation
S and the location of its Purchasing Office(s) for Principal
Bonds; provided, however, that if the Purchaser shall inform
the Closing Agent of any change in an item of Reconciled ED,
such item shall be deemed to be Unreconciled ED unless the
Closing Agent shall have given written notice to the
Purchaser not less than 10 calendar days prior to the

41

anticipated Exchange Date or the anticipated Escrow Release
Date that the change has been confirmed by the appropriate
Debt Agreement Agent and Argentina.  In addition, each
Purchaser that has indicated on Schedule A hereto that it is
a U.S. Person (or a Non-U.S. Person electing on such
Schedule A to receive Principal Bonds pursuant to Section
4(2) of the Securities Act) shall upon request provide the
Closing Agent with (A) the payment instructions of such
Purchaser or Purchasing Office to which any payments should
be sent, (B) the address of such Purchaser or Purchasing
Office to which any notices should be sent and (C) a United
States Internal Revenue Service Form W-9 or substitute form
from such Purchaser or Purchasing Office(s).

(c)  Not less than 10 calendar days before the
anticipated Exchange Date or the Escrow Release Date, as the
case may be, the Closing Agent shall notify each Purchaser of
such Purchaser's Exchange Amount for such date and shall
confirm such Purchaser's Purchasing Office.

(d)  Not less than 9 calendar days before the
anticipated Exchange Date or the Escrow Release Date, as the
case may be, the Closing Agent shall deliver (i) to each Debt
Agreement Agent and the Promissory Note Agent (with copies to
Argentina) one or more notices identifying for each Purchaser
under the Debt Agreement for which such Debt Agreement Agent,
or the Promissory Note Agent, as the case may be, is the
agent and in the aggregate for such Debt Agreement, all
Reconciled ED (in each currency) outstanding under such Debt
Agreement as of the date of such notice referred to in
subsection (c) above which is to be exchanged for Principal
Bonds on such date and (ii) to Argentina, in the case of the
Exchange Date, the aggregate amount of Unreconciled ED in
respect of which Principal Bonds are to be issued in escrow
on such date.  Each Debt Agreement Agent and the Promissory
Note Agent shall promptly, and in any event within 3 calendar
days following receipt of such notice, confirm in writing to
the Closing Agent and Argentina the amounts referred to in
(i) above.

(e)  Not less than 5 calendar days before the
anticipated Exchange Date or Escrow Release Date, as the case
may be, Argentina shall confirm in writing to the Closing
Agent the aggregate amounts referred to in Section 2.05(d)(i)
and (ii) above.

(f)  The Closing Agent shall have no obligation to
process any communication from any Purchaser received by the
Closing Agent later than the Reconciliation Cut-Off Date for