62

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES

SECTION 4.01.  Representations and Warranties of Argentina.  Argentina represents and warrants that:

(a)  Power and Authority.  Argentina has full power, authority and legal right to execute and deliver this Agreement and each of the other Principal Bond Agreements to which it is a party, to incur the obligations to be incurred by it as provided herein and therein and to perform and observe the provisions hereof and thereof on its part to be performed or observed.

(b)  Due Authorization, Etc.  The execution, delivery and performance by Argentina and BCRA of this Agreement and each of the other Principal Bond Agreements to which Argentina and BCRA is a party and all other documents and instruments to be executed and delivered hereunder and thereunder by Argentina and BCRA have been duly authorized by all necessary legislative, executive, administrative and other governmental action, and do not contravene (i) the Constitution of Argentina, or any treaty, law, decree, regulation, judgment, award, injunction or similar legal restriction or (ii) any contractual restriction binding on or affecting Argentina, any Obligor or any of their respective property.  The Principal Bond Agreements comply with the provisions of Decree No. 2006/92.

(c)  No Additional Authorization Required.  No authorization or approval or other action by, and no notice to or of filing with, any governmental, legislative or judicial authority or regulatory body is required for the due execution, delivery and performance by Argentina of this Agreement and each of the other Principal Bond Agreements, except for the Argentine Authorizations identified in the certificate furnished pursuant to Section 2.03(b)(i) hereof, all of which are in full force and effect.

(d)  Legal Effect.  This Agreement has been duly executed and delivered by Argentina.  This Agreement is, and on the Exchange Date and the Escrow Release Date each other Principal Bond Agreement (in the case of the Principal Bonds after execution and due authentication and delivery and, in the case of the Global Principal Bonds, the endorsement of the schedules thereto in

63

accordance with the applicable Fiscal Agency Agreement) will be, the legal, valid and binding obligation of Argentina enforceable against Argentina in accordance with its terms. On the Exchange Date, the Principal Bonds to be issued by Argentina on such date will have been duly executed by Argentina. On the Escrow Release Date, the DMK Bonds to be issued by Argentina, if any, on such date will have been duly executed by Argentina.

(e) Direct Obligation, Etc. This Agreement, each other Principal Bond Agreement and each payment obligation of Argentina hereunder or thereunder is a direct, unconditional and general obligation of Argentina.

(f) Pari Passu. The payment obligations of Argentina under this Agreement and each other Principal Bond Agreement when executed and delivered hereunder will rank at least pari passu in priority of payment (i) with all other Indebtedness of Argentina which, by its terms, is payable or, at the option of the holder thereof, may be payable, in a currency other than Pesos and (ii) with all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which, by its terms, is payable or, at the option of the holder thereof, may be payable in a currency other than Pesos.

(g) No Actions or Proceedings. There is no pending or, to the best of the knowledge of Argentina, threatened action or proceeding affecting Argentina, any Obligor or any of its properties or their properties before any court, governmental agency or arbitrator, which, individually or in the aggregate, (i) could reasonably be expected to affect materially and adversely the financial condition of Argentina, or (ii) which purports to affect the legality, validity, enforceability or performance of this Agreement or any other Principal Bond Agreement.

(h) No Immunities, Etc. Argentina is subject to civil and commercial law with respect to its obligations under this Agreement and the other Principal Bond Agreements, and the execution, delivery and performance of this Agreement and the other Principal Bond Agreements by Argentina constitute private and commercial acts (jure gestionis acts) rather than public or governmental acts (jure imperii acts). Under the laws of Argentina, neither Argentina nor any of its property has any immunity (sovereign or otherwise) from set-off, from jurisdiction of any court in Argentina or any legal

64

process in any court in Argentina (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise), except for immunity with respect to (x) properties of the public domain located in the territory of Argentina included within the provisions of Articles 2337 and 2340 of the Civil Code of Argentina, (y) property owned by Argentina and located in its territory which is dedicated to the purpose of an essential public service and (z) the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law. Pursuant to Law 23,982, and Law 3,952 of Argentina, the courts of Argentina in general may only enter judgments against Argentina that can be enforced against Argentina pursuant to the terms of such laws. Any judgment of a court outside Argentina against Argentina, which satisfies the requirements of Articles 517 through 519 of Law 17,454, as amended by Law 22,434 (National Code of Civil and Commercial Procedures) is capable of being enforced in the courts of Argentina in accordance with the laws of Argentina taking into account the terms of Law 23,982, particularly Article 22 thereof, and Law 3,952.

(i) IMF; IBRD; IABD. Argentina is a member and eligible to use the general resources of the IMF. The right of Argentina to use the Extended Fund Facility has not been suspended pursuant to the Articles of Agreement of the IMF or by decision of the Executive Board of the IMF. Argentina is a member of the IBRD and IADB.

(j) Taxes. There is no income, stamp, excise or other tax, levy, assessment, impost, deduction, charge or withholding of any kind imposed by Argentina (or any political subdivision or taxing authority thereof or therein or any organization or federation of which Argentina is at any time a member) either (i) on or by virtue of the execution, delivery or performance of this Agreement or any other Principal Bond Agreement or the BCRA Undertaking (other than a court tax, which on the date hereof is 3% of the amount so claimed in conformity with Article 2 of Law 23,898 (published in the Official Gazette on November 29, 1980) with respect to the institution of any judicial proceeding to enforce this Agreement, any other Bond Agreement or the BCRA Undertaking in the City of Buenos Aires) or (ii) on any

65

payment to be made by Argentina pursuant to this
Agreement or any other Principal Bond Agreement or by the
BCRA pursuant to the BCRA Undertaking other than any such
tax, levy, assessment, impost, deduction, charge or
withholding imposed on, or measured by payments hereunder
or under any other Principal Bond Agreement to (x)
natural persons or legal entities organized in Argentina
or maintaining a permanent establishment in Argentina to
which this Agreement and the other Principal Bond
Agreements and the income therefrom is attributable or
(y) in respect of fees payable to any Debt Agreement
Agent in respect of services performed in Argentina, if
any.

(k)  No Filing.  This Agreement and each of the
other Principal Bond Agreements are in proper legal form
under the laws of Argentina for the enforcement thereof
against Argentina under the laws of Argentina; and to
ensure the legality, validity, enforceability or
admissibility in evidence of this Agreement or any other
Principal Bond Agreement in Argentina, it is not
necessary that this Agreement or any other Principal Bond
Agreement or any other document be filed or recorded with
any court or other authority in Argentina or be notarized
or that any stamp or similar tax be paid on or in respect
of this Agreement or any other Principal Bond Agreement
or any other document to be furnished thereunder (except
for court fees and taxes incurred in connection with
enforcement proceedings).

(l)  Process Agents.  The letters of the Process
Agents and the Alternate Process Agents to be delivered
pursuant to Section 2.03(b) hereof will, on the Exchange
Date, be irrevocably binding on each such Process Agents
and Alternate Process Agents.

(m)  Financial Information.  The information
statement entitled "Republic of Argentina -- Economic
Presentation -- June 1992" distributed to the
international banking community together with the 1992
Financing Plan was prepared by Argentina in good faith on
the basis of the latest information available to
Argentina at the time; to the best knowledge of
Argentina, such information does not contain any material
misstatement of fact; and the projections contained
therein reflect the good faith judgment of Argentina,

(n) <u>No Registration, Etc., Necessary</u>. No registration of the Principal Bonds under the Securities Act and no qualification of an indenture under the Trust Indenture Act of 1939 is required for the offer and sale of the Principal Bonds in the manner contemplated by this Agreement and the other Principal Bond Agreements, and neither Argentina nor any Argentine Governmental Agency, nor any Person acting on its or their behalf has offered or sold or will offer or sell Principal Bonds or any similar securities in a manner that would require registration of the Principal Bonds under the Securities Act or qualification of an indenture in respect thereof under the Trust Indenture Act of 1939.

(o) <u>Collateral</u>. On the Exchange Date, the Collateral Agent will have for the benefit of the Purchasers of Principal Bonds, a first priority security interest in the Collateral securing the Principal Bonds as provided in the Collateral Pledge Agreement.

(p) <u>No Directed Selling Efforts or Use of General Solicitation Methods; Offshore Transaction</u>. Neither Argentina nor any Argentine Governmental Agency, nor any Person acting on its or their behalf, has engaged or will engage in any directed selling efforts, or has used or will use any General Solicitation Methods in the United States with respect to the Principal Bonds and, in effecting the Exchange with Non-U.S. Purchasers, it has complied and will comply with the offshore transaction requirement of Rule 903(a) under the Securities Act. Terms used in this Section 4.01(p), and not otherwise defined in this Agreement, have the meanings given to them by Regulation S.

SECTION 4.02. <u>Representations, Warranties and Agreements of the Purchasers</u>. Each Purchaser represents and warrants and agrees to and with each other Purchaser, each member of the Working Committee for Argentina, the Closing Agent and, to the extent that the Eligible Debt of such Purchaser is evidenced by a Debt Agreement, each Debt Agreement Agent party to any such Debt Agreement (and, with respect to the first sentence of subsection (a) below, the second sentence of subsection (b) below and subsections (e) through (o) below, to and with Argentina) as follows:

(a) <u>Independent Investigation by each Purchaser</u>. Such Purchaser is familiar with such matters (including, without limitation, the economic and financial condition of Argentina) as in its opinion may affect (i) its

67

decision to grant the Waiver, to sign the Amendments,
this Agreement or any other Principal Bond Agreement and
to effect the Exchange and (ii) the performance by
Argentina of its obligations under this Agreement or any
other Principal Bond Agreement and by BCRA of its
obligations under the BCRA Undertaking and in that
connection has made its own independent appraisal of the
economic affairs, financial condition, foreign exchange
and reserve holdings, prospective foreign exchange income
and holdings, creditworthiness, condition, affairs,
status and nature of Argentina and BCRA and all other
factors relevant to its decision to enter into this
Agreement. Such Purchaser will continue to be solely
responsible for making its own independent appraisal of
all such matters in the future and has not relied, and
will not hereafter rely, on any other Purchaser or on any
member of the Working Committee for Argentina or on the
Closing Agent, the Promissory Note Agent or any Debt
Agreement Agent or any of their respective Affiliates (A)
to check or inquire on such Purchaser's behalf into the
adequacy, accuracy or completeness of any information
provided by Argentina in connection with this Agreement
or any other Principal Bond Agreement or by BCRA in
connection with the BCRA Undertaking, whether or not such
information has been or is hereafter distributed by any
other Purchaser, any member of the Working Committee for
Argentina, the Closing Agent, the Promissory Note Agent
or any Debt Agreement Agent or any of their respective
Affiliates, (B) to assess or keep under review on such
Purchaser's behalf such information or any of the matters
referred to in this Section 4.02(a), or (C) to inform
such Purchaser concerning the results of any such
appraisal, check, inquiry, assessment or review made by
such other Purchaser or member of the Working Committee
for Argentina, the Closing Agent, the Promissory Note
Agent or any Debt Agreement Agent or any of their
respective Affiliates.

(b)   Independent Appraisal by Each Purchaser.  In
deciding whether or not to enter into this Agreement and
to effect the transaction contemplated hereby, such
Purchaser has relied upon its own independent appraisal
of the matters referred to in Section 4.02(a) above, and
such Purchaser expressly agrees that it is not relying
upon (i) any representation or warranty, express or
implied, made to it by any other Purchaser, any member of
the Working Committee for Argentina, the Closing Agent,
the Promissory Note Agent or any Debt Agreement Agent or
any of their respective Affiliates with respect to the

68

matters contemplated herein or (ii) any oral or written communication made by any other Purchaser, any member of the Working Committee for Argentina, the Closing Agent, the Promissory Note Agent or any Debt Agreement Agent or any of their respective Affiliates. Without limiting the generality of the foregoing, each Purchaser acknowledges that in making its decision to exchange its Eligible Debt for Principal Bonds and to execute this Agreement (i) prior to the execution of this Agreement, it reviewed the terms and conditions of each of the Debt Agreements to which it is a party and (ii) a copy of this Agreement and the other Principal Bond Agreements, the 1992 Financing Plan, the Exhibits, Annexes and Schedules hereto or thereto and the information statement entitled "Republic of Argentina -- Economic Presentation -- June 1992" have been made available to it and to its individual legal counsel for review.

(c)  _Parties Having Other Relationships_.  Such Purchaser is aware that the Closing Agent, each Debt Agreement Agent, the Promissory Note Agent, each member of the Working Committee for Argentina, each other Purchaser and their respective Affiliates may have, in addition to this Agreement and any other Principal Bond Agreement, existing credit relationships with Argentina, BCRA and other Persons organized under the laws of or located in Argentina and that in many cases these existing relationships are substantial and in some cases involve existing agency or similar responsibilities of the Closing Agent, Debt Agreement Agents, the Promissory Note Agent, members of the Working Committee for Argentina, other Purchasers or their respective Affiliates.  Such Purchaser acknowledges and accepts that such other relationships in fact exist and that the nature and extent of such other relationships have not been specifically disclosed to such Purchaser and that each other Purchaser, each member of the Working Committee for Argentina, the Closing Agent, the Promissory Note Agent, the Debt Agreement Agent, the Promissory Note Agents and their respective Affiliates may also in the future accept deposits from, lend money to, act as trustee under indentures of, act as agent or in a similar function under any credit relationship with, act as lead manager or underwriter for any bond, note or other security issued by, and generally engage in any kind of business with, Argentina, BCRA and any other Person, all as if such other Purchaser, such member of the Working Committee for Argentina, the Closing Agent, the Promissory Note Agent or such Debt Agreement Agent

69

were not a party to this Agreement.  Such Purchaser acknowledges that each other Purchaser, each member of the Working Committee for Argentina, the Closing Agent, the Promissory Note Agent and the Debt Agreement Agents, and their respective Affiliates may exercise all contractual and legal rights and remedies which may exist from time to time with respect to such other existing and future relationships without any duty to account therefor to such Purchaser.

(d)  No Duty to Investigate Events of Default. Neither the Purchasers, any member of the Working Committee for Argentina, the Closing Agent, the Promissory Note Agent nor any Debt Agreement Agent, shall have any duty or obligation to any Purchaser to ascertain or inquire or inform it as to the occurrence of any Event of Default (as defined in the Terms and Conditions) or any event or condition which, with the giving of notice or the lapse of time or both, or upon a determination, would constitute an Event of Default (as defined in the Terms and Conditions) and each Purchaser, each member of the Working Committee for Argentina, the Closing Agent, the Promissory Note Agent and each Debt Agreement Agent and their respective Affiliates may communicate in writing or orally with Argentina, any other party to this Agreement or any other Person about the occurrence of any such Event of Default, event or condition or about any other matter whatsoever arising in the administration, coordination and performance of this Agreement or any other Principal Bond Agreement, all without communicating with any Purchaser about any such matter.  Each Purchaser may in its discretion, but without any obligation to any other Purchaser, any member of the Working Committee for Argentina, the Closing Agent, the Promissory Note Agent or any Debt Agreement Agent, notify the Closing Agent of the occurrence of any such Event of Default, event or condition.  However, in no event shall any Purchaser, any member of the Working Committee for Argentina, the Closing Agent, the Promissory Note Agent or any Debt Agreement Agent or any of their respective Affiliates be under any duty to notify any Purchaser or the Closing Agent about any such Event of Default, any event or condition which could become such an Event of Default or any other default under any other agreement relating to any credit relationship referred to in Section 4.02(c) above or about any matter relating to any such agreement.

(e) <u>Receipt of Information</u>. Such Purchaser acknowledges receipt of copies of (i) the 1992 Financing Plan including communications from the Minister of Economy and Public Works and Services, the Managing Director of the IMF, the President of the IBRD, the President of the IADB and the Working Committee for Argentina, and the supplemental communication from the Minister of Economy and Public Works and Services dated November 10, 1992; and (ii) the information statement entitled "Republic of Argentina -- Economic Presentation -- June 1992".

(f) <u>Waivers and Amendments</u>. Such Purchaser has granted its Waiver and by executing this Agreement hereby reaffirms its Waiver. Such Purchaser has also executed and delivered to Argentina each of the Amendments to which it is a party.

(g) <u>Cancellation, Obligor Consent and BCRA Undertaking</u>.

(i) Such Purchaser irrevocably authorizes and instructs the Closing Agent to notify the Promissory Note Agent and the Debt Agreement Agents under each Debt Agreement evidencing its Reconciled ED of (x) the Exchange Date and the Escrow Release Date (as provided in Section 2.05(a) hereof) and (y) that, effective on the Exchange Date, the Escrow Release Date and each date on which Principal Bonds are released to a Purchaser in connection with an interpleader or otherwise, as the case may be, the Eligible Debt to which its Reconciled ED relates which is exchanged on such date shall be cancelled and shall cease to exist, in accordance with Section 2.02(a); provided, however, that with respect to Eligible Debt evidenced by a Promissory Note, such Eligible Debt shall be cancelled on the records of the Promissory Note Agent only and such cancellation shall not be evidenced on the Promissory Notes, and the Promissory Note shall not be destroyed, until such time as the conditions to the destruction and cancellation of Promissory Notes specified in Section 2.05(h) hereof are satisfied.

(ii) Such Purchaser, the Promissory Note Agent and each Debt Agreement Agent, authorizes and instructs Citibank, N.A., in its capacity as Closing Agent, to accept the Obligor Consent on behalf of such Purchaser, the Promissory Note Agent or Debt Agreement Agent.

71

    (iii)  Such Purchaser authorizes and instructs
Citibank, N.A., in its capacity as Closing Agent, to
accept the BCRA Undertaking on behalf of such
Purchaser.

    (h)  _Ownership of Eligible Debt_.  Such Purchaser
(i) agrees that it will not transfer its Eligible Debt
other than in accordance with Section 6.10(c) hereof,
(ii) represents and warrants that it owns, to the best of
such Purchaser's knowledge, the Unreconciled ED set forth
opposite such Purchaser's name on Schedule A hereto or
otherwise confirmed pursuant to Section 2.05(b) hereof
and will, on the Exchange Date, the Escrow Release Date
or the date on which Principal Bonds in respect of such
Purchaser's Unreconciled ED are released to such
Purchaser in connection with an interpleader or
otherwise, own all Reconciled ED exchanged by such
Purchaser for Principal Bonds hereunder, (iii) represents
and warrants that on the Exchange Date and the Escrow
Release Date, as the case may be, or upon the release to
such Purchaser of Principal Bonds in connection with an
interpleader or otherwise, its Reconciled ED will be
transferred and assigned free and clear of any liens,
security interests, claims, encumbrances or other charges
and (iv) represents and warrants that (A) other than as
disclosed to the Closing Agent, it does not, and on the
Exchange Date and the Escrow Release Date, as the case
may be, or upon the release to such Purchaser of
Principal Bonds in connection with an interpleader or
otherwise, will not, hold any Eligible Debt for or on
behalf of any Argentine Bank or Argentine Governmental
Entity and (B) no item of Reconciled ED listed on
Schedule A hereto for such Purchaser, or any portion of
any such item, is held, or on the Exchange Date and the
Escrow Release Date, as the case may be, or upon the
release to such Purchaser of Principal Bonds in
connection with an interpleader or otherwise, will be
held, for or on behalf of any Argentine Bank or Argentine
Governmental Entity.

    (i)  _Power and Authority_.  Such Purchaser represents
and warrants that it has full power and authority (i) to
execute and deliver this Agreement and each Amendment to
which it is a party, to cancel any Eligible Debt
submitted by such Purchaser for exchange hereunder and,
with respect to the Waiver, has full power and authority
to grant such Waiver, (ii) to incur the obligations to be
incurred by it hereunder and thereunder, and (iii) to

72

perform and observe the provisions hereof and thereof on its part to be performed or observed. The execution, delivery and performance by it of this Agreement and the Amendments and the granting of the Waiver have been duly authorized by all necessary action on its part.

(j) **Private Placement.** To the extent that such Purchaser is indicated on Schedule A hereto to be (x) a U.S. Person or (y) a Non-U.S. Person electing to receive Principal Bonds pursuant to Section 4(2) of the Securities Act, such Purchaser:

(i) represents that it is an institution that is an "accredited investor" within the meaning of Regulation D promulgated under the Securities Act and (A) will acquire the Principal Bonds it acquires thereunder for its own account or for the account of (1) another Purchaser that is listed on the signature pages hereof, (2) a Qualifying QIB, (3) a Qualifying Non-U.S. Person or (4) with respect to the sale of a participation in Eligible Debt prior to the signing of this Agreement, an institution that is an "accredited investor" within the meaning of Regulation D of the Securities Act and (B) is not acquiring the Principal Bonds with a view to any distribution thereof within the meaning of the Securities Act;

(ii) agrees that it will not offer or sell the Principal Bonds it acquires hereunder, directly or indirectly, other than (A) pursuant to an effective registration statement under the Securities Act or (B) in compliance with the transfer restrictions referred to in Section 6 of the Fiscal Agency Agreement;

(iii) acknowledges that the Principal Bonds have not been and will not be registered under the Securities Act;

(iv) acknowledges that the Principal Bonds issued to it will contain the Securities Act Legend until the Fiscal Agency Agreement permits the Securities Act Legend to be removed;

(v) represents that it has not prior to July 3, 1992 offered or sold any Principal Bonds, Option or Eligible Debt except for offers or sales which did not require registration under the Securities Act;

73

(vi)   represents that it has not, during the period from July 3, 1992 until the date on which it executes this Agreement, offered or sold (A) any Principal Bond or Option except for offers or sales, (1) to a Qualifying QIB in the United States in Minimum Amounts without using any General Solicitation Methods or (2) to a Qualifying Non-U.S. Person outside the United States or to a Qualifying U.S. Fiduciary or (B) any Eligible Debt except for offers and sales which did not require registration under the Securities Act; and

(vii)   agrees that, from the date of its execution of this Agreement through the date on which any Principal Bond will be issued or released to such Purchaser, it will not offer or sell such Principal Bond or any Option or Eligible Debt related thereto except for offers and sales (A) without using any General Solicitation Methods, to Purchasers who are listed on the signature pages of this Agreement, (B) to a Qualifying QIB in the United States in Minimum Amounts without using any General Solicitation Methods or (C) to a Qualifying Non-U.S. Person outside the United States or to a Qualifying U.S. Fiduciary.

(k)   Non-U.S. Offering.   To the extent that such Purchaser is indicated on Schedule A hereto to be a Non-U.S. Person who has not elected to receive Principal Bonds pursuant to Section 4(2) of the Securities Act (or has been named the Purchasing Office for Principal Bonds of a Purchaser which is a Non-U.S. Person in liquidation), such Purchaser:

(i)   represents that (A) it is not a U.S. Person and is not acquiring any Principal Bonds hereunder (1) on behalf of a U.S. Person or (2) with a view to the distribution in the United States or (except as may be permitted by Rule 904 of Regulation S) to U.S. Persons and (B) it received the 1992 Financing Plan from Argentina outside the United States and sent its Commitment Telex from a location outside the United States;

(ii)   represents that it is signing this Agreement (A) on its own behalf outside the United States, (B) through an attorney-in-fact pursuant to a power of attorney executed and sent from outside the United States or (C) on behalf of a Non-U.S.

74

Person pursuant to a power of attorney executed and sent from outside the United States;

(iii) represents that it has acquired the Principal Bonds hereunder in an "offshore transaction" within the meaning of Regulation S;

(iv) acknowledges that the Principal Bonds have not been and will not be registered under the Securities Act;

(v) agrees that it will not offer or sell, directly or indirectly, any Principal Bonds in the United States or to any U.S. Person (A) for a period of 40 days following the Exchange Date (other than in a transaction pursuant to Rule 904 of Regulation S) and (B) thereafter only pursuant to an effective registration statement, or in a transaction not requiring registration, under the Securities Act;

(vi) represents that it has not prior to July 3, 1992 offered or sold any Principal Bond, or any Option or Eligible Debt related thereto, except for offers or sales which did not require registration under the Securities Act;

(vii) represents that during the period from July 3, 1992 until the date on which it executes this Agreement, it has not offered or sold (A) any Principal Bond or Option related thereto except for offers or sales (1) to a Qualifying Non-U.S. Person outside the United States or to a Qualified U.S. Fiduciary or (2) with respect to U.S. When-Issued Principal Bonds or Options only, to a Qualified QIB in the United States in Minimum Amounts without using any General Solicitation Methods or (B) any Eligible Debt except for offers or sales which did not require registration under the Securities Act; and

(viii) agrees that, from the date of its execution of this Agreement through the date on which any Principal Bonds will be issued or released to such Purchaser, it will not offer or sell such Principal Bond or any Option or Eligible Debt related thereto except for offers or sales (A) to a Qualifying Non-U.S. Person outside the United States or to a Qualifying U.S. Fiduciary or (B) with

75

respect to U.S. When-Issued Principal Bonds or Options only, (1) without using any General Solicitation Methods, to Purchasers who are listed on the signature pages of this Agreement or (2) to a Qualifying QIB in the United States in Minimum Amounts without using General Solicitation Methods.

(1) Confirmation. In connection with any "when-issued" sale pursuant to clause (B) or (C) of Section 4.02(j)(vii) or clause (A) or (B)(2) of Section 4.02(k)(viii), such Purchaser agrees to obtain a certificate executed by the buyer substantially in the form set forth on Schedule D, provided that such certificate shall not be required if the buyer is a member of the Emerging Markets Traders Association and the Purchaser gives written notice to such buyer that the sale is subject to the resale restrictions set forth in Schedule D. Such Purchaser further agrees that, from time to time during the period specified in Sections 4.02(j)(vii) and 4.02(k)(viii), upon reasonable request from Argentina, it will confirm to Argentina that it has complied with this Section 4.02(1).

(m) Compliance with Applicable Law. Such Purchaser agrees that it will not offer or sell any Principal Bonds, directly or indirectly, in any jurisdiction except in compliance with the applicable law thereof.

(n) Privatizations. Such Purchaser represents, warrants and agrees that (i) it has listed on its Supplemental Schedule entitled "Eligible Debt Submitted for Privatization" all Eligible Debt that has been or will be submitted by such Purchaser to Argentina or any other Argentine Governmental Agency for cancellation in connection with a privatization or other debt conversion program, (ii) it will promptly notify the Closing Agent of any additional Eligible Debt that has been or will be submitted by such Purchaser to Argentina or any Argentine Governmental Agency for cancellation in connection with a privatization or other debt conversion program, and (iii) none of such Purchaser's Reconciled ED or Unreconciled ED included on Schedule A hereto has been submitted or is contemplated to be submitted to Argentina or any other Argentine Governmental Agency in connection with any privatization or other debt conversion program awarded prior to the Exchange Date in which such Purchaser, or the Person on whose behalf such Purchaser is holding Eligible Debt, is or will be an investor.

(o)    Principal Bonds Denominated in Deutsche Mark Offering.    Each Purchaser of Principal Bonds denominated in Deutsche Mark represents and certifies that (i) it is not a "United States person" within the meaning of Section 7701(a)(30) of the Code or (ii) if it is a "United States person" within the meaning of said section 7701(a)(30), it is a "foreign branch of a United States financial institution" within the meaning of United States Treasury Regulation Section 1.163-5(c)(2)(i)(D)(6)(i) that agrees to comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Code. In addition, each such Purchaser that is a United States or foreign "financial institution" (within the meaning of United States Treasury Regulation Section 1.165-12(c)(1)(v)), hereby represents and certifies that if it is receiving DMK Bonds for purposes of resale during the restricted period (as defined in U.S. Treasury Regulations Section 1.163-5(c)(2)(i)(D)(7)), it hereby represents that it has not acquired such DMK Bonds for purposes of resale directly or indirectly to a "United States person" (within the meaning of Section 7701(a)(30) of the Code) or to a person within the United States or its possessions.    Each Purchaser of Principal Bonds denominated in Deutsche Mark hereby undertakes to notify Argentina promptly if the representations in this Section 4.02(o) are untrue with respect to any Principal Bond on any date after the date hereof until the Exchange Date, the Escrow Release Date, or any later date that such Principal Bond is released to such Purchaser in connection with an interpleader or otherwise as the case may be, relating to such Principal Bonds.

SECTION 4.03.    Confirmation of Representations, Warranties and Agreements of Purchasers.    Each Purchaser, by its acceptance of any Principal Bonds issued or released to such Purchaser on the Exchange Date, the Escrow Release Date or thereafter, shall confirm to each other Purchaser, each member of the Working Committee for Argentina, the Closing Agent, each relevant Debt Agreement Agent and Argentina, as applicable, that the representations, warranties and agreements of such Purchaser contained in Section 4.02 hereof are true and correct on the Exchange Date, the Escrow Release Date or such other date, as the case may be.

77

## ARTICLE V

## DUTIES, OBLIGATIONS AND IMMUNITIES OF CERTAIN PARTIES

SECTION 5.01. _Limited Appointment and Responsibilities of the Closing Agent_. (a) The Closing Agent shall perform the mechanical and clerical functions in connection with the administration of this Agreement which are specifically set forth herein for the Closing Agent. In connection therewith, the Closing Agent shall have such powers as are reasonably incidental thereto. The responsibilities of the Closing Agent are strictly limited to those specifically set forth in this Agreement, and no unstated functions, responsibilities, duties, obligations or liabilities shall be read into this Agreement or otherwise exist against the Closing Agent. Neither the Closing Agent nor any member of the Working Committee for Argentina shall be deemed an agent, trustee or fiduciary hereunder for Argentina, any Argentine Governmental Entity, any Purchaser or any other Person, except as otherwise expressly provided in this Agreement.

(b) Argentina agrees to pay to the Closing Agent fees and transaction operating costs as provided in a letter dated June 2, 1992 from the Closing Agent to Argentina and signed by Argentina.

SECTION 5.02. _Discretion and Protection of the Closing Agent_. (a) _No Duty to Exercise Discretion; Consultations_. As to any matters not expressly set forth in this Agreement as a function or responsibility or discretionary power of the Closing Agent, the Closing Agent shall not be required to exercise any discretion or take any action, except that the Closing Agent may, in its sole discretion, act or refrain from acting (and shall be fully protected in so acting or refraining from acting) upon the instructions of the Requisite Purchasers (as defined below), and such instructions shall be binding upon the Closing Agent and all Purchasers. If, with respect to a proposed action to be taken by it, the Closing Agent shall determine in good faith that the provisions of this Agreement relating to the functions or responsibilities or discretionary powers of the Closing Agent (i) are or may be ambiguous or inconsistent or (ii) do not set forth such action as a function or responsibility of the Closing Agent, the Closing Agent may so notify the appropriate parties hereto (identifying the proposed action and the provisions that it considers are or may be ambiguous or inconsistent or not a function or

78

responsibility of the Closing Agent) and may decline either to perform such function or responsibility or to exercise such discretionary power unless it has received the written confirmation of the Requisite Purchasers that the Requisite Purchasers concur in the circumstances that the action proposed to be taken by the Closing Agent is consistent with the terms of this Agreement or is otherwise appropriate. The Closing Agent shall be fully protected in acting or refraining from acting upon the confirmation of the Requisite Purchasers in this respect, and such confirmation shall be binding upon the Closing Agent and the Purchasers. For the purposes of this Section, the term "Requisite Purchasers" shall mean:

(i) in respect of matters affecting all Purchasers, the Majority Purchasers; and

(ii) in respect of matters affecting only a class of Purchasers (as defined by Principal Bond Currency, Series of Principal Bonds or other comparable criteria), Purchasers of such class having more than 50% of the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof) of the Reconciled ED of the Purchasers of such class at the time of determination.

This Section 5.02(a) is for the protection of the Closing Agent, but the Closing Agent shall not be required to obtain any such written confirmation of the Requisite Purchasers in order to perform any function or responsibility or to exercise any discretionary power of the Closing Agent set forth in this Agreement. Nothing in this Section 5.02(a) shall be construed to permit any additional obligation to be imposed upon any Purchaser or Argentina or to alter the requirements of Section 6.01 hereof with respect to amendments or waivers to this Agreement.

(b) No Requirement to Take Certain Actions. The Closing Agent shall not in any event be required to take any action which in the judgment of the Closing Agent (i) is contrary to this Agreement or applicable law or (ii) exposes any of the directors, officers, attorneys, agents or employees of the Closing Agent to personal liability.

(c) Exercise of Discretion Not an Undertaking to Do So Again. If in one or more instances the Closing Agent takes any action or assumes any responsibility not specifically delegated to it pursuant to the provisions of this Agreement, neither the taking of such action nor the assumption of such responsibility shall be deemed to be an

79

express or implied undertaking on the part of the Closing Agent that it will take the same or similar action or assume the same or similar responsibility in any other instance.

(d) Reliance on Documents. The Closing Agent may rely on information received from Argentina, BCRA, any Obligor, any other party to this Agreement or any member of the international banking community pursuant to this Agreement. The Closing Agent shall (i) have no responsibility to review or verify the accuracy or completeness of any information contained in any notice or certificate or other communication (including any such communication by cable, telegram, telecopy, telex or telephone) received by the Closing Agent from any Person pursuant to or as contemplated by the Agreement or otherwise, or (ii) incur no liability under or in respect of this Agreement by acting upon any such communication believed by it to be genuine and correct and to have been signed, sent or given by or on behalf of the proper party or parties, or by acting in reliance upon any representation, warranty or statement of Argentina, BCRA or any other Person made in this Agreement or in any document delivered pursuant hereto. To the extent that the Closing Agent is required by any provision of this Agreement to take any action or prepare any report in reliance upon any information, report, document or other communication to be furnished by any other Person, the failure of any such other Person to furnish such information, report, document or other communication shall excuse the Closing Agent from taking such action or preparing such required report; provided that the Closing Agent may in its discretion (but only to the extent not inconsistent with the other provisions hereof) partially take such required action or partially prepare such required report on the basis of the information, reports or documents furnished to it by other Persons.

(e) Reliance on Counsel. The Closing Agent may consult with legal counsel (including counsel to Argentina), independent public accountants and other professional experts and consultants selected by it and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel, accountants, experts or consultants.

(f) No Duty to Inquire. The Closing Agent shall have no duty to ascertain or to inquire as to the performance or observance of any of the terms, covenants or conditions of (A) this Agreement or any other Principal Bond Agreement on the part of Argentina, the Purchasers, the Collateral Agent

80

or any of the agents, sub-agents or sub-custodians of any such Person or (B) the BCRA Undertaking on the part of BCRA.

(g)  <u>No Responsibility for Validity or Effect of Documents</u>.  The Closing Agent shall not be responsible to any Purchaser for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of this Agreement or any other Principal Bond Agreement or any other instrument or document furnished pursuant hereto or thereto or the BCRA Undertaking.

(h)  <u>No Duty to Initiate Suits</u>.  Except as expressly contemplated by Section 3.05 hereof, the Closing Agent shall not be required to initiate any suit, action or proceeding (arbitral or otherwise) arising out of or in connection with this Agreement or any other Principal Bond Agreement or the BCRA Undertaking.

(i)  <u>Computation of Percentage of Purchasers</u>.  Prior to being required to take any action at the request, with the consent or upon the instruction of Requisite Purchasers, the Closing Agent shall be entitled to have confirmed to it by the Purchasers the aggregate principal amount of the Reconciled ED and Unreconciled ED held by each Purchaser and in any such event may rely conclusively upon such confirmation.

SECTION 5.03.  <u>Limited Liability of the Closing Agent, the Escrow Agent, the Debt Agreement Agents, the Promissory Note Agent and the Working Committee for Argentina</u>.  (a)  <u>Limited Liability</u>.  (i)  <u>The Closing Agent, the Debt Agreement Agents and the Promissory Note Agent</u>.  None of the Closing Agent, the Escrow Agent, the Debt Agreement Agents, the Promissory Note Agent or any of their respective directors, officers, agents or employees shall be liable to any Person for any action taken or omitted to be taken by it or them under this Agreement or otherwise in connection with this Agreement (including without limitation any action taken or omitted to be taken before the date hereof by the Closing Agent, the Escrow Agent, any Debt Agreement Agent or the Promissory Note Agent in preparation for acting hereunder) except for its or their own gross negligence or willful misconduct.  The Closing Agent, the Escrow Agent, any Debt Agreement Agent or the Promissory Note Agent may employ agents and attorneys-in-fact and shall not be liable for the default, negligence or misconduct of any such agents or attorneys-in-fact selected by it with reasonable care.  Each Purchaser agrees that the limitation on liability contained in this Section 5.03(a) is for the benefit and protection of

81

the Closing Agent, the Escrow Agent, the Debt Agreement Agents and the Promissory Note Agent and not for the protection of the Purchasers.

(ii) The Working Committee for Argentina. No member of the Working Committee for Argentina, as such, shall have any duties or obligations whatsoever with respect to this Agreement or any other document or any matter related hereto, except as expressly provided in this Agreement.

(b) No Liability. (i) The Closing Agent, the Escrow Agent, the Debt Agreement Agents and the Promissory Note Agent. None of the Closing Agent, the Escrow Agent, the Debt Agreement Agents, the Promissory Note Agent or any of their respective directors, officers, attorneys, agents or employees shall have any liability or responsibilities to Argentina or any other Person on account of the failure of any other Person to perform its obligations under this Agreement or any other document or instrument referred to herein. Each Purchaser agrees that the limitation on liability contained in this Section 5.03(b) is for the benefit and protection of the Closing Agent, the Escrow Agent, the Debt Agreement Agent, the Promissory Note Agent and their directors, officers, attorneys, agents and employees and not for the protection of the Purchasers.

(ii) The Working Committee for Argentina. No member of the Working Committee for Argentina, as such, shall have any liability or responsibilities to Argentina or any other Person on account of the failure of any other Person to perform its obligations under this Agreement or any other document or instrument referred to herein.

SECTION 5.04. Indemnification by Purchasers. (a) Expenses. The Purchasers agree to indemnify the members of the Working Committee for Argentina and the Closing Agent, the Escrow Agent and their respective directors, officers, attorneys, agents and employees (to the extent not reimbursed by Argentina) for their respective ratable shares of any and all liabilities, obligations, losses, damages, penalties, judgments, costs, expenses or disbursements of any kind or nature whatsoever (including all counsel fees and expenses), which may be imposed on or incurred by a member of the Working Committee for Argentina or the Closing Agent or the Escrow Agent for any action taken or omitted to be taken by a member of the Working Committee for Argentina or the Closing Agent under this Agreement or any other document delivered hereunder (including without limitation any action taken or omitted to be taken before the date hereof by a member of the

Working Committee for Argentina or the Closing Agent or the Escrow Agent or any of their respective directors, officers, attorneys, agents or employees in connection with this Agreement); provided that no Purchaser shall be liable for any portion of any such amount resulting from the gross negligence or willful misconduct of a member of the Working Committee for Argentina or the Closing Agent or the Escrow Agent. Without limiting the generality of the foregoing, each Purchaser agrees that it will, subject to the limitations set forth in the proviso to the preceding sentence, upon demand pay or reimburse the members of the Working Committee for Argentina and the Closing Agent and the Escrow Agent (to the extent that each such member or the Closing Agent is not reimbursed by Argentina) for any amount for which Argentina is liable under clauses (i), (ii) and (iv) of Section 6.05(a) hereof and in its ratable share of any out-of-pocket expenses (including fees of special New York, Argentine and other counsel to the Working Committee for Argentina or the Closing Agent or the Escrow Agent) incurred in connection with the negotiation, preparation, printing, signing and administration of this Agreement or any other Principal Bond Agreement or any amendment hereof or thereof or waiver or consent hereunder or thereunder or in connection with preserving any rights of the Purchasers or of the Closing Agent or of the Escrow Agent hereunder or thereunder or obtaining legal advice in respect of the rights and responsibilities of the Purchasers or the Closing Agent or the Escrow Agent hereunder or thereunder or otherwise in connection with the transactions contemplated hereby or thereby.

(b)  Calculation of Ratable Shares.  For purposes of Section 5.04(a), the ratable shares of the Purchasers shall be determined in proportion to the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof) of their respective Reconciled ED and Unreconciled ED.

SECTION 5.05.  Successor Closing Agent.  Subject to the written acceptance of a successor Closing Agent as provided below in this Section 5.05, the Closing Agent may resign at any time (effective as provided below in this Section 5.05) by giving written notice thereof to the Purchasers and Argentina and may be removed at any time with or without cause by Argentina or by the Majority Purchasers. Upon any such removal or notice of resignation, Argentina shall have the right to appoint (such appointment to become effective as provided below) a successor Closing Agent which meets the requirements set forth below in this Section 5.05, and Argentina shall use its best efforts so to appoint a