93

    (v)  all reasonable and documented out-of-pocket expenses of each Purchaser (including, without limitation, all reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with enforcing this Agreement or otherwise protecting its rights in the event of any failure by Argentina to comply with the provisions hereof;

    (vi)  all reasonable and documented out-of-pocket expenses of each Debt Agreement Agent and the Promissory Note Agent (including, without limitation, all reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with enforcing this Agreement or otherwise protecting its rights in the event of any failure by Argentina to comply with the provisions hereof; and

    (vii)  any and all liabilities, obligations, losses, damages, penalties, judgments, costs, expenses or disbursements of any kind or nature whatsoever which may be imposed on or incurred by the members of the Working Committee for Argentina, the Closing Agent, any Debt Agreement Agent or the Promissory Note Agent in any way relating to or arising out of this Agreement, any other Principal Bond Agreement or any of the transactions contemplated by the 1992 Financing Plan or any action taken or omitted by the members of the Working Committee for Argentina, the Closing Agent, any Debt Agreement Agent or the Promissory Note Agent hereunder or thereunder;

provided that Argentina shall not be (A) liable for any such amount resulting from the gross negligence or willful misconduct of the Closing Agent, any Debt Agreement Agent, the Promissory Note Agent, any Purchaser or any member of the Working Committee for Argentina or (B) obligated to pay under this Section 6.05(a) any such amount which is included in calculating the Closing Agent's fees payable pursuant to Section 5.01(b) hereof or otherwise payable to the Closing Agent thereunder.

    (b)  *Payment of Expenses in Respect of Principal Bonds*. Argentina agrees to pay (i) all reasonable and documented costs and expenses in connection with the preparation, printing, issue, sale, listing, and initial delivery of the Principal Bonds (in global or definitive form); (ii) all reasonable and documented costs and expenses in connection with the preparation and printing of all documents relating to the issuance and sale of the Principal

Bonds under this Agreement; (iii) all reasonable and documented costs and expenses of listing the Principal Bonds; (iv) all reasonable and documented fees and expenses incurred in connection with the transfer and release of Escrowed Principal Bonds and the endorsement of the U.S. Temporary Escrow Global Principal Bonds in connection with such transfer and release; and (v) all fees and expenses incurred in connection with the exchange of beneficial interests in the Global Principal Bonds for Principal Bonds in definitive form in accordance with the provisions of the Fiscal Agency Agreements.

(c) <u>Subrogation</u>. If any Purchaser pays any amount which Argentina is obligated to pay to the Closing Agent, the Promissory Note Agent, any Debt Agreement Agent or any member of the Working Committee for Argentina hereunder, such Purchaser shall be subrogated to the rights of the Closing Agent, any Debt Agreement Agent, the Promissory Note Agent or such member of the Working Committee for Argentina (as the case may be) against Argentina in respect of such amount. Nothing in this Section shall relieve Argentina of any liability under this Agreement to any party hereto.

(d) <u>Fees Relating to Reconciliation</u>. Argentina, the Closing Agent, the Promissory Note Agent and the Debt Agreement Agents hereby agree that no fee shall be imposed on any Purchaser in connection with the reconciliation and cancellation of any item of Eligible Debt or Eligible Interest other than fees payable in connection with the assignment of Eligible Debt.

(e) <u>Fees, Expenses and Indemnification of Escrow Agent</u>. Argentina agrees to pay all fees of the Escrow Agent as shall be specified in the Escrow Agreement and all reasonable and documented costs and expenses of the Escrow Agent (including, without limitation, all reasonable counsel fees and out-of-pocket expenses) incurred in connection with the performance of its duties as Escrow Agent and in preserving the interests of the Purchasers in the Principal Bonds in the Escrow Accounts. Argentina also agrees to indemnify the Escrow Agent for any liabilities imposed on such Escrow Agent in connection with its performance hereunder or under the Escrow Agreement, except for liabilities imposed as a result of the gross negligence or wilful misconduct of the Escrow Agent.

SECTION 6.06. <u>Taxes; Certain Tax Matters</u>. (a) <u>Payments Free and Clear</u>. Any and all payments by Argentina under this Agreement, any other Principal Bond Agreement or

the BCRA Undertaking shall be made free and clear of and without deduction for any and all present or future taxes, levies, assessments, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (i) imposed by Argentina (or any political subdivision or taxing authority thereof or therein or any organization or federation of which Argentina is at any time a member) (all such taxes, levies, assessments, imposts, deductions, charges, withholdings and liabilities being "Argentine Taxes") or (ii) imposed by any other jurisdiction (or any political subdivision or taxing authority thereof or therein or any organization or federation of which such jurisdiction is at any time a member) from or through which any payment under this Agreement, the Principal Bonds, any other Principal Bond Agreement or the BCRA Undertaking is made (all such taxes, levies, imposts, assessments, deductions, charges, withholdings and liabilities being "Paying Agency Taxes" and, together with the Argentine Taxes, the "Applicable Taxes"); provided, however, that Applicable Taxes shall not include (i) Argentine Taxes (x) imposed on an Argentine Person, or (y) imposed on a Person who is deemed to have a permanent establishment in Argentina to which this Agreement, the Principal Bonds, the Other Principal Bond Agreements and the BCRA Undertaking and the income therefrom is attributable (unless this Agreement, any other Principal Bond Agreement and the BCRA Undertaking are being held or booked or payments are received in Argentina solely to enforce any rights under this Agreement, any other Principal Bond Agreement or the BCRA Undertaking or exercise any rights hereunder or thereunder that otherwise would not, in the opinion of independent counsel of recognized standing, be exercisable) or (ii) Paying Agency Taxes that (A) are imposed by reason of any connection between the Purchaser and the taxing jurisdiction other than entering into this Agreement or the other Principal Bond Agreements, holding the Principal Bonds or receiving payment thereon, (B) are required to be deducted or withheld by any Paying Agent from a payment made under this Agreement, any other Principal Bond Agreement or the BCRA Undertaking if such payment can be made without deduction or withholding by any other Paying Agent or (C) would not have been imposed but for the presentation by the Purchaser of any claim for payment under this Agreement, any other Principal Bond Agreement or the BCRA Undertaking more than 30 days after the date on which such payment became due and payable or on which payment thereof was duly provided for, whichever occurs later. If Argentina, the BCRA, the Paying Agent or the Closing Agent shall be required by law to deduct any Applicable Taxes, from or in respect of any sum payable by it under this Agreement, any other Principal Bond Agreement or the BCRA Undertaking:

(x) the sum payable shall be increased as may be necessary so that, after making all required deductions (including deductions of such Applicable Taxes applicable to additional sums payable under this Section), the Purchaser receives an amount equal to the sum it would have received had no such deductions of such Applicable Taxes been made,

(y) Argentina, BCRA, the Paying Agent or the Closing Agent, as the case may be, shall make such deductions, and

(z) Argentina, BCRA, the Paying Agent or the Closing Agent, as the case may be, shall pay the full amount deducted to the relevant taxing authority or other authority in accordance with applicable law.

(b) <u>Payment of Stamp Taxes</u>. In addition, Argentina agrees to pay (i) any present or future stamp, court or documentary taxes or any other excise or property taxes, charges or similar levies and any related interest or penalties incidental thereto imposed by Argentina or any political subdivision or taxing authority thereof or therein or any organization or federation of which Argentina is at any time a member which arise from any payment made by Argentina, the Closing Agent or the Paying Agent hereunder or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, this Agreement, the other Principal Bond Agreements or the BCRA Undertaking and (ii) with respect to the DMK Bonds, any present or future stamp, court or documentary taxes and any other excise, charges or similar levies and any related interest or penalties incidental thereto imposed by the Federal Republic of Germany (or any political subdivisions or taxing authority thereof or therein or any organization or federation of which the Federal Republic of Germany is at any time a member), which arise from any payment made by the Closing Agent or by Argentina, the Principal Paying Agent, the DMK Paying Agent (each as defined in the DMK Fiscal Agency Agreement) or such other bank or financial institution selected by the Escrow Agent at the German Clearing System for credit to the account of the Escrow Agent, the Principal Paying Agent or the DMK Paying Agent thereunder or hereunder or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, this Agreement or the related Principal Bond Agreements (the taxes set forth in clause (i) and (ii) above hereinafter referred to as "<u>Other Applicable Taxes</u>").

(c) <u>Reimbursement of Taxes Paid by Purchasers</u>. Argentina will indemnify each Purchaser for the full amount of (i) Applicable Taxes and (ii) Other Applicable Taxes (including, without limitation, any Applicable Taxes or Other Applicable Taxes imposed on amounts payable under this Section) imposed in respect of Bonds acquired by such Purchaser pursuant to this Agreement and any liability (including penalties, interest and expenses) arising from such Applicable Taxes and Other Applicable Taxes or with respect thereto. This indemnity will be paid in respect of Applicable Taxes and Other Applicable Taxes imposed by Argentina, whether or not such Applicable Taxes or Other Applicable Taxes were correctly or legally asserted. Any indemnification under this subparagraph (c) shall be made within 30 days from the date such Purchaser makes written demand to Argentina therefor. Each such demand shall be accompanied by a reasonably detailed certificate setting forth the specific reasons for which such Purchaser paid any amount in respect of which it seeks indemnification and the method by which such Purchaser calculated, and the calculation of, the amount in respect of which it seeks indemnification, which certificate shall be conclusive and binding for all purposes in the absence of manifest error.

(d) <u>Tax Certificates</u>. Within 30 days after the date of any payment of Applicable Taxes or Other Applicable Taxes by Argentina or a Paying Agent, Argentina or such Paying Agent will furnish to the Fiscal Agent the original or a certified copy of a receipt evidencing payment thereof. The Fiscal Agent shall furnish each Purchaser to which Argentina made (or is obligated to make) a payment that resulted in Applicable Taxes or Other Applicable Taxes with, if practicable, an original of such original or certified copy or, if insufficient originals are available for distribution, shall provide each such Purchaser with access to an original.

(e) <u>Certain Tax Matters</u>. Argentina hereby advises each Non-U.S. Purchaser of DMK Bonds that (a) the DMK Bonds in bearer form are being issued in compliance with United States Treasury Regulation Section 1.163-5(c) and (b) such Non-U.S. Purchaser is subject to sanctions with respect to the disallowance of losses and preferential capital gains treatment under Sections 165(j) and 1287(a) of the Code, unless such Non-U.S. Purchaser either (i) is not a United States taxpayer, or (ii) if it is a United States taxpayer, (A) it is a "financial institution" within the meaning of United States Treasury Regulation Section 1.165-12(c)(1)(v) that complies with the requirements of Section 165(j)(3)(A),

98

(B) or (C) of the Code and the Treasury regulations thereunder or (B) it holds the Bonds through a financial institution that agrees to comply and complies with the requirements of Section 165(j)(3)(A), (B) or (C) of the Code and the Treasury regulations thereunder.

SECTION 6.07. *Consent to Jurisdiction; Waiver of Immunities*. (a) Argentina hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court sitting in New York City, the High Court of Justice in London, any Federal court sitting in the City of Buenos Aires, the District Court (<u>Landgericht</u>) of Frankfurt am Main and any appellate court from any thereof, in any suit, action or proceeding arising out of or relating to the Principal Bonds, this Agreement and the other Principal Bond Agreements (except that the Republic of Argentina shall submit to the jurisdiction of the District Court (<u>Landgericht</u>) of Frankfurt am Main only with respect to suits, actions or proceedings arising out of or relating to the Principal Bonds denominated in Deutsche Mark and the Principal Bond Agreements relating thereto), and Argentina hereby irrevocably agrees that all claims in respect of such suit, action or proceeding may be heard and determined in such New York State or Federal court, in the High Court of Justice in London, any Federal court sitting in the City of Buenos Aires or the District Court (<u>Landgericht</u>) of Frankfurt am Main <u>provided that</u>, for purposes of any interpleader commenced pursuant to Section 3.05 hereof, Argentina irrevocably submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York and any appellate court therefrom. Argentina irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any such suit, action or proceeding and any objection to any such suit, action or proceeding whether on the grounds of venue, residence or domicile. A final judgment in any such suit, action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or any other manner provided by law.

(b) Argentina hereby irrevocably appoints (i) the New York office of Banco de la Nación Argentina (the "<u>New York Process Agent</u>"), with an office on the date hereof at 299 Park Avenue, 2nd floor, New York, New York 10171, United States and, alternatively, hereby irrevocably appoints CT Corporation System, with an office on the date hereof at 1633 Broadway, 23rd floor, New York, New York 10019, United States (the "<u>Alternate New York Process Agent</u>"), in each case, as its agent, to receive, on behalf of Argentina and its

property, service of copies of the summons and complaint and any other process which may be served in any such suit, action or proceeding brought in such New York State or Federal court sitting in New York City, (ii) the London office of Banco de la Nación Argentina (the "London Process Agent"), with an office on the date hereof at Longbow House, 14-20 Chiswell Street, London EC1Y 4SD, England and, alternatively, hereby irrevocably appoints The Law Debenture Trust Corporation p.l.c., with an office on the date hereof at Princes House, 95 Gresham St., London EC2V 7LY, England (the "Alternate London Process Agent" and, together with the New York Alternate Process Agent, the "Alternate Process Agents"), in each case, as its agent to receive on behalf of itself and its respective property service of copies of the summons and complaint and any other process which may be served in any such action or proceeding brought in the High Court of Justice in London and (iii) FIDEUROP Treuhandgesellschaft für den Gemeinsamen Markt mbH, Wirtschaftsprüfungsgesellschaft, with an office on the date hereof at Beethovenstrasse 8-10, 6000, Frankfurt am Main, Federal Republic of Germany (the "Frankfurt Process Agent" and, together with the New York Process Agent and the London Process Agent, the "Process Agents"), as its agent to receive on behalf of itself and its respective property service of a writ, summons, order, judgment or other document which may be served in any such suit, action or proceeding arising out of the DMK Bonds brought in the District Court (Landgericht) of Frankfurt am Main. Service of any process may be served upon an Alternate Process Agent in lieu of the applicable Process Agent in any suit, action or proceeding in any New York State or Federal court sitting in New York City and the High Court of Justice in London if (i) at any time and for any reason it appears to the party attempting to serve the process that service of such process upon any Process Agent as provided above may be ineffective or may not be feasible and (ii) upon or before the serving of any process on any Alternate Process Agent, the Alternate Process Agent and Argentina are notified that service of such process is to be made on such Alternate Process Agent in accordance with the provisions of this sentence. Such service may be made by mailing or delivering a copy of such process to Argentina in care of the appropriate Process Agent or Alternate Process Agent at the address specified above for such Process Agent or Alternate Process Agent and, in the case of process served on an Alternate Process Agent, by depositing a copy of such process in the United States mails, addressed to Argentina at the address specified in Section 6.02 hereof (such service to be effective upon the delivery of such process to the Alternate Process Agent and the depositing of such process in the

100

United States mails as aforesaid), and Argentina hereby irrevocably authorizes and directs such Process Agent or Alternate Process Agent to accept such service on its behalf. Failure of any Process Agent or Alternate Process Agent to give notice to Argentina or failure of Argentina to receive notice of such service of process shall not affect in any way the validity of such service on the Process Agent, the Alternate Process Agent or Argentina. As an alternative method of service, each party also irrevocably consents to the service of any and all process in any such suit, action or proceeding in such New York State or Federal court sitting in New York City, the High Court of Justice in London or, in any suit, action or proceeding arising out of the DMK Bonds, the District Court (<u>Landgericht</u>) of Frankfurt am Main by the mailing of copies of such process to such party at its address specified in Section 6.02 hereof. Argentina covenants and agrees that it shall take any and all reasonable action, including the execution and filing any and all documents, that may be necessary to continue the designations of Process Agents and Alternate Process Agents above in full force and effect, and to cause each Process Agent and Alternate Process Agent to continue to act as such.

    (c) Except as provided in the proviso to Section 6.07(a) hereof and as contemplated by Section 3.05(h) hereof, nothing in this Section 6.07 shall affect the right of any party to serve legal process in any other manner permitted by law or affect the right of any party to bring any action or proceeding against any other party or its property in the courts of other jurisdictions.

    (d) To the extent that Argentina has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, Argentina hereby irrevocably waives such immunity in respect of its obligations under the Principal Bonds, this Agreement and the other Principal Bond Agreements, and, without limiting the generality of the foregoing, Argentina (A) agrees that the waivers set forth in this Section 6.07(d) shall have the fullest scope permitted under the Foreign Sovereign Immunities Act of 1976 of the United States and are intended to be irrevocable for purposes of such act; and (B) consents generally for the purposes of the State Immunity Act 1978 of the United Kingdom to the giving of any relief or the issue of any process. Notwithstanding the foregoing, Argentina

Case 1:07-cv-05807-TPG   Document 9-34   Filed 01/30/2008   Page 9 of 9

101

shall not waive any such immunity (1) with respect to the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of Argentina or property owned by Argentina and located in its territory which is dedicated to the purpose of an essential public service.

SECTION 6.08. Judgment. (a) If for the purpose of obtaining judgment in any court it is necessary to convert a sum due hereunder to any party hereunder in one currency into another currency, the parties hereto agree, to the fullest extent permitted by law, that the rate of exchange used shall be that at which in accordance with normal banking procedures such party could purchase the first currency with such other currency in New York City on the business day in New York two days prior to the day on which final judgment is rendered.

(b) To the fullest extent permitted by law, the obligation of any party in respect of any sum payable hereunder by it to any other party hereunder shall, notwithstanding any judgment in a currency (the "Judgment Currency") other than that in which such sum is denominated in accordance with the applicable provisions of this Agreement (the "Agreement Currency"), be discharged only to the extent that on the business day following receipt by such other party of any sum adjudged to be so due in the Judgment Currency such other party may in accordance with normal banking procedures purchase the Agreement Currency with the Judgment Currency; if the amount of the Agreement Currency which could have been so purchased is less than the sum originally due to such other party in the Agreement Currency, such first party agrees, as a separate obligation and notwithstanding any such judgment, to indemnify such other party against such loss, and if the amount of the Agreement Currency which could have been so purchased exceeds the sum originally due to such other party, such other party agrees to remit to such first party such excess; provided that such Purchaser, Debt Agreement Agent, the Promissory Note Agent or the Closing Agent shall have no obligation to remit any such excess as long as Argentina shall have failed to pay such Purchaser, Debt Agreement Agent, the Promissory Note Agent or the Closing Agent, as the case may be, any obligations due and payable under this Agreement or any other Principal Bond Agreement, in which case such excess may be applied to such obligations of Argentina hereunder or thereunder in accordance with the terms of this Agreement.