102

SECTION 6.09. <u>Binding Effect; Termination; Partial Invalidity; Survival</u>. (a) As each party executes this Agreement, this Agreement shall be binding on and inure to the benefit of such party and its successors and permitted assigns; <u>provided, however</u>, that the notification of the anticipated Exchange Date contemplated in Section 2.05(a) shall not be given by the Closing Agent prior to the date on which Purchasers committing to exchange Eligible Debt in an aggregate principal amount of at least 95% of $20.5 billion (or the USD Equivalent thereof determined in accordance with Section 6.14 using rates in effect on the first Business Day after the date of this Agreement) have executed this Agreement; <u>provided, further</u>, that if such Purchasers have not executed this Agreement by April 15, 1993, this Agreement shall terminate. Notwithstanding the foregoing, all obligations of the Purchasers to exchange their Eligible Debt on the terms specified herein shall terminate on May 31, 1993 (the "<u>Termination Date</u>") if the Exchange Date does not occur on or prior to the Termination Date; <u>provided</u> that, the Termination Date may be extended beyond May 31, 1993 with the consent of Argentina and Purchasers holding at least 66-2/3% of the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof), at the time of determination, of the Reconciled ED and Unreconciled ED of all Purchasers.

(b) If one or more provisions contained in this Agreement shall be invalid, illegal or unenforceable in any respect in any jurisdiction or with respect to any party, such invalidity, illegality or unenforceability in such jurisdiction or with respect to such party shall not, to the fullest extent permitted by applicable law, invalidate or render illegal or unenforceable such provision in any other jurisdiction or with respect to any other party. To the fullest extent permitted by law, each of the parties hereto waives any provision of law which renders any provision hereof invalid or illegal in any respect. Without prejudice to the survival of any other agreement of Argentina hereunder, the agreements of Argentina contained in Sections 6.05 and 6.06 hereof, and the agreement of the Purchasers contained in Section 5.04 hereof, shall survive the termination of this Agreement pursuant to subsection (a) above, the payment in full of all other payments due hereunder or under the Principal Bonds, the other Principal Bond Agreements or the BCRA Undertaking and the performance of any other obligations hereunder or thereunder.

103

SECTION 6.10. <u>Purchasing Office; Assignments of Eligible Debt</u>. (a) Schedule A lists the Purchasing Office or Purchasing Offices selected by each Purchaser and whether taking into account, <u>inter alia</u>, its selection of such Purchasing Office or Purchasing Offices such Purchaser is a U.S. Person or a Non-U.S. Person. Any Purchaser may at any time, on or before the 20th calendar day preceding the Exchange Date, change its Purchasing Office for all or a portion of its Eligible Debt by giving notice on or before such date to Argentina and the Closing Agent designating a different office of such Purchaser (or its Affiliate) as its Purchasing Office for purposes of this Agreement; <u>provided, however</u>, that no such change to any Purchasing Office shall result in a reclassification of its status as a U.S. Person or a Non-U.S. Person. The Closing Agent shall acknowledge any such change of Purchasing Office as soon as practicable after receiving notice thereof and, at the request of any Purchaser, shall confirm the location of such Purchaser's Purchasing Office as indicated in the records of the Closing Agent.

(b) Except as set forth in subsection (c) below, no Purchaser may assign all or any portion of its Eligible Debt or any of its rights and obligations under this Agreement in respect of such Eligible Debt to any Person. Any purported assignment of Eligible Debt (other than as permitted in subsection (c) below) shall be null and void.

(c) Any Purchaser may, at any time after the Final Trading Date, assign its Eligible Debt as a whole or in part to another Purchaser or financial institution which is an investor, or is holding Eligible Debt on behalf of an investor, in a scheduled privatization or other debt conversion program (an "Assignee") if (i) such assignment is recognized and recorded by the relevant Debt Agreement Agent at least 40 calendar days before the Exchange Date, (ii) such assignment is accompanied by a certificate in the form of Schedule E hereto executed by the Assignee thereof to the effect that such Eligible Debt will be submitted by such Assignee for cancellation in connection with such privatization or other debt conversion program and (iii) such Assignee has executed, or ratified the execution of, the Amendments to which such Eligible Debt relates; <u>provided</u> that the assigning Purchaser or the Assignee shall pay to the Debt Agreement Agent or the Promissory Note Agent the assignment fees payable under the relevant Debt Agreement for the recordation of any assignment. Any purported assignment of Eligible Debt which fails to comply with the requirements of this Section 6.10(c) shall be null and void as regards Argentina, any Debt Agreement Agent, the Promissory Note Agent and the Closing Agent.

104

(d) Argentina shall not assign any of its rights or obligations under this Agreement or any other Principal Bond Agreement.

(e) As used in this Section, "assign" means assign or otherwise transfer; and "rights" means any rights or other benefits.

SECTION 6.11. **Obligations of the Purchasers Several**. The obligations of the Purchasers hereunder are several. The failure of any Purchaser to carry out its obligations hereunder shall not relieve any other Purchaser, any Debt Agreement Agent, the Promissory Note Agent, the Closing Agent or Argentina of any of its respective obligations hereunder, nor shall any Purchaser, Debt Agreement Agent, the Promissory Note Agent or the Closing Agent be responsible for the obligations of, or any action taken or omitted by, any other Purchaser hereunder. Each Purchaser shall be entitled to protect and enforce its rights arising out of this Agreement, and it shall not be necessary for any other Purchaser to be joined as an additional party in any proceedings for such purpose.

SECTION 6.12. **Calculation to Nearest Currency Unit**. Whenever any payments are to be made pro rata or any amount is to be divided equally, such proration or division shall be calculated to the nearest integral unit of the Principal Bond Currency in which such calculation is to be made.

SECTION 6.13. **Use of English Language**. Except as otherwise expressly provided herein, all certificates, reports, notices and other documents and communications given or delivered pursuant to this Agreement shall be in the English language or accompanied by an English translation thereof.

SECTION 6.14. **Computation of Percentages of Reconciled and Unreconciled Eligible Debt**. Except as otherwise provided herein, for the purpose of calculating any percentage of the aggregate principal amount of the Reconciled ED or Unreconciled ED or any pro rata or ratable shares to be determined in proportion to the amounts thereof, Reconciled ED or Unreconciled ED in Original Currencies other than U.S. Dollars shall be translated into U.S. Dollars (a) on any Business Day prior to the Translation Rate Determination Date, at the average of the buy and sell spot rates of exchange for such Original Currency and U.S. Dollars

105

at the close of business in London on the Business Day preceding such Business Day, as quoted, in the absence of manifest error, by the <u>Financial Times</u> of London (or, if such rates are not so quoted, a comparable publication or source to be selected by the Closing Agent) and (b) on the Translation Rate Determination Date or any Business Day thereafter, using the Translation Rate for such Original Currency.

SECTION 6.15.  <u>Table of Contents and Section Headings</u>.  The table of contents and the headings herein are intended for convenience only and shall be ignored in construing this Agreement.

SECTION 6.16.  <u>Execution in Counterparts; Copies</u>.  (a) This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.  Five complete sets of counterparts shall be delivered to Argentina and five complete sets of counterparts shall be delivered to and lodged with the Closing Agent.  A composite conformed copy of this Agreement (including the Exhibits hereto) and the Closing Book identifying the parties executing this Agreement shall be delivered to Argentina and each Purchaser, Debt Agreement Agent and the Promissory Note Agent after the Escrow Release Date.

(b)  No Person shall be permitted to execute this Agreement, and thereby become a Purchaser hereunder, after the Reconciliation Cut-Off Date for the Exchange Date without the consent of Argentina and the Closing Agent, but in no event shall any Person be permitted to execute this Agreement after the Exchange Date.

SECTION 6.17.  <u>Agreement Solely for Benefit of Parties</u>.  This Agreement is solely for the benefit of the parties hereto and the Escrow Agent, and no other Person shall be entitled to rely on, or is intended to receive any benefit under, this Agreement.

106

SECTION 6.18. GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written by their respective officials, officers or agents thereunto duly authorized.

THE REPUBLIC OF ARGENTINA

By /s/ Domingo Cavallo
Title: Minister of Economy
and Public Works
and Services

CITIBANK, N.A.,
as Closing Agent

By /s/ William Rhodes
Title: Vice Chairman

EXHIBIT 1
to Discount Bond and Par
Bond Exchange Agreement

[FORM OF DISCOUNT BOND AND PAR BOND]

[Form of Face of Bond]

[THIS BOND HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE OFFERED OR SOLD DIRECTLY OR INDIRECTLY IN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS, OR TO OR FOR THE ACCOUNT OF ANY U.S. PERSON (AS DEFINED IN REGULATION S OF THE UNITED STATES SECURITIES ACT OF 1933), EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT OR IN A TRANSACTION NOT REQUIRING REGISTRATION UNDER SUCH ACT. THIS BOND IS TRANSFERABLE ONLY AS PROVIDED HEREIN AND IN THE FISCAL AGENCY AGREEMENT REFERRED TO BELOW.][1]

[ORIGINAL ISSUE DISCOUNT LEGEND, AS REQUIRED BY THE FISCAL AGENCY AGREEMENT.]

SALE OR TRANSFER IN BEARER FORM OF PARTICIPATIONS, OR BENEFICIAL INTERESTS, HEREIN MAY SUBJECT THE SPONSOR THEREOF TO SANCTIONS PURSUANT TO SECTION 4701 OF THE UNITED STATES INTERNAL REVENUE CODE.

THIS BOND IS SECURED AS TO PAYMENT OF PRINCIPAL AT STATED MATURITY. THE COLLATERAL FOR PRINCIPAL IS NOT AVAILABLE TO PAY THE PRINCIPAL OF THE BONDS, ON ACCELERATION, REDEMPTION OR OTHERWISE, BEFORE STATED MATURITY OR TO PAY INTEREST. THIS BOND IS ALSO PARTIALLY SECURED AS TO PAYMENT OF INTEREST TO THE EXTENT PROVIDED IN THE COLLATERAL PLEDGE AGREEMENT REFERRED TO IN PARAGRAPH 6 OF THE TERMS AND CONDITIONS ON THE REVERSE OF THIS BOND.

[THIS BOND MAY NOT BE LISTED ON ANY STOCK EXCHANGE.]*

---

1. This legend will be included on (i) all Bonds issued in connection with the U.S. Offering and (ii) all Bonds issued on transfer or exchange of, or in substitution for, any such Bonds until the legend may be removed in accordance with Section 6 of the Fiscal Agency Agreement (as defined herein).

* USD Discount Series U and USD Par Series U only.

[THIS BOND MAY NOT BE SOLD OR TRANSFERRED AND SHALL BE CANCELLED IN ACCORDANCE WITH SECTION 5(i) OF THE FISCAL AGENCY AGREEMENT. PAYMENTS IN RESPECT HEREOF SHALL BE MADE IN ACCORDANCE WITH SECTION 5(b)(ii) OF THE FISCAL AGENCY AGREEMENT]**

---

** Insert for definitive Bonds exchanged for beneficial interests in a U.S. Temporary Escrow Global Bond.

Ex. 1, p.3

No. __-_____                                             Principal Amount
                                                            U.S.$ __[2]__

REPUBLIC OF ARGENTINA

Collateralized __[3]__ Rate Bond Due 202[6]
                    (__[4]__)

    THE REPUBLIC OF ARGENTINA ("<u>Argentina</u>"), for value received, hereby unconditionally promises to pay to _____[5]_____, or registered assigns, the principal sum of __[2]__ UNITED STATES DOLLARS (U.S.$____[2]____) on the Bond Maturity Date (as defined herein), on presentation and surrender of this Bond, and to pay, on each Interest Payment Date (as defined herein), interest in arrears on such principal sum at the applicable Rate of Interest (as defined herein) from the most recent Interest Payment Date to which interest has been paid, or if no interest has been paid from __[6]__, until the principal hereof shall have been paid in full or payment thereof duly provided for and to pay interest on overdue amounts of principal and interest hereunder as provided in the Terms and Conditions (as defined herein).

---

2.    Insert face amount.

3.    Insert "Floating" for Discount Series L and Discount Series U and "Fixed" for each Par Series L and Par Series U.

4.    Insert, for each Series, the Series designation (<u>i.e.</u>, USD Discount Series L, USD Discount Series U, USD Par Series L and USD Par Series U).

5.    Insert registered holder of this Bond.

6.    Insert the date which is the earlier of the Exchange Date and March 31, 1993.

The interest payable on any such Interest Payment Date will, subject to certain conditions set forth in the Terms and Conditions hereinafter referred to, be paid to the person in whose name this Bond is registered at the close of business in New York on the 15th day next preceding such Interest Payment Date.

Reference is made to the further provisions set forth under the Terms and Conditions of the Bonds endorsed on the reverse hereof (the "Terms and Conditions"), which shall for all purposes have the same effect as though fully set forth at this place.

This Bond shall not be valid or obligatory until the certificate of authentication hereon shall have been duly signed by an Authenticating Agent under the Fiscal Agency Agreement (as defined herein).

THIS BOND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES.

IN WITNESS WHEREOF, Argentina has caused this Bond to be duly executed with the manual or facsimile signature of an Authorized Official in _____.

Dated: _____, 199_

THE REPUBLIC OF ARGENTINA

By _____
   Title:

Certificate of Authentication:

This is one of the Bonds referred to in the within-mentioned Fiscal Agency Agreement:

CITIBANK, N.A., as            OR      CITIBANK (LUXEMBOURG) S.A.,
Authenticating Agent                  as Authenticating Agent

By _____              By _____
   Authorized Signatory                    Authorized Signatory

Dated: _____                  Dated: _____