otherwise acquired by, or on behalf of, Argentina if (i) such Bond was purchased or otherwise acquired for purposes of securing External Indebtedness of Argentina incurred in connection with, or on or after the date of, such purchase or acquisition or (ii) such Bond is promptly exchanged for unsecured Indebtedness of Argentina issued to Argentine Banks on the Exchange Date in exchange for Eligible Debt of such Argentine Banks, if any.

If Argentina shall purchase or otherwise acquire any Bond, such purchase or other acquisition shall not operate as or be deemed for any purpose to be a discharge or satisfaction of the indebtedness represented by such Bond until the provisions in clause 4(b)(B) above have been met.

If any such Bond is purchased or otherwise acquired by, or on behalf of, Argentina, Argentina shall notify the Fiscal Agent of such purchase or other acquisition, and, if such Bond is in definitive form, request that the Fiscal Agent notify the Registrar of such purchase or other acquisition.

5. <u>Taxes; Payment of Additional Amounts</u>.

(a) <u>Payments Free and Clear</u>. Any and all payments by Argentina hereunder shall be made free and clear of and without deduction for any and all present or future taxes, levies, assessments, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (i) imposed by Argentina (or any political subdivision or taxing authority thereof or therein or any organization or federation of which Argentina is at any time a member) (all such taxes, levies, imposts, deductions, charges, withholdings and liabilities being "<u>Argentine Taxes</u>") or (ii) imposed by any other jurisdiction (or any political subdivision or taxing authority thereof or therein or any organization or federation of which such jurisdiction is at any time a member) from or through which any payment hereunder is made (all such taxes, levies, imposts, deductions, charges, withholdings and liabilities being "<u>Paying Agency Taxes</u>" and, together with the Argentine Taxes, the "<u>Applicable Taxes</u>"); <u>provided</u>, <u>however</u>, that Applicable Taxes shall not include, (x) Argentine Taxes that are (A) imposed on an Argentine Person or (B) imposed on a Person who is deemed to have a permanent establishment in Argentina to which this Bond, and the income therefrom, is attributable (unless this Bond is being held or booked or payments hereunder are received in Argentina solely to enforce any rights hereunder or exercise any rights hereunder that otherwise would not, in the opinion of independent counsel of

recognized standing, be exercisable) or (y) Paying Agency Taxes that (A) are imposed by reason of any connection between the Purchaser and the taxing jurisdiction other than entering into the Principal Bond Agreements, holding the Principal Bonds or receiving payment thereon, (B) are required to be deducted or withheld by any Paying Agent from a payment on this Bond if such payment can be made without such deduction or withholding by any other Paying Agent or (C) would not have been imposed but for the presentation by the holder of this Bond for payment more than 30 days after the date on which such payment became due and payable or on which payment thereof was duly provided for, whichever occurs later. If Argentina or a Paying Agent shall be required by law to deduct any Applicable Taxes from or in respect of any sum payable by it hereunder:

(1) the sum payable shall be increased as may be necessary so that after making all required deductions of such Applicable Taxes (including deductions of such Applicable Taxes applicable to additional sums payable under this Section), the holder of this Bond receives an amount equal to the sum it would have received had no such deductions of such Applicable Taxes been made;

(2) Argentina or such Paying Agent shall make such deductions; and

(3) Argentina or such Paying Agent shall pay the full amount deducted to the relevant taxing authority or other authority in accordance with applicable law.

(b) <u>Payment of Stamp Taxes</u>. In addition, Argentina agrees to pay any present or future stamp, court or documentary taxes or any other excise or property taxes, charges or similar levies and any related interest or penalties incidental thereto imposed by Argentina or any political subdivision or taxing authority thereof or therein which arise from any payment made by Argentina or a Paying Agent hereunder or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, the Bonds and the other Principal Bond Agreements (hereinafter referred to as "<u>Other Applicable Taxes</u>").

(c) <u>Tax Certificates</u>. Within 30 days after the date of any payment of Applicable Taxes or Other Applicable Taxes by Argentina or a Paying Agent, Argentina or such Paying Agent will furnish to the Fiscal Agent the original or a certified copy of a receipt evidencing payment thereof. The Fiscal Agent shall furnish each such Bondholder to which Argentina made or is obligated to make a payment that

resulted in such Applicable Taxes or Other Applicable Taxes with, if practicable, an original of such receipt or certified copy or, if insufficient originals are available for distribution, shall provide each such Bondholder with access to an original.

(d) <u>Survival</u>. Without prejudice to the survival of any other agreement of Argentina hereunder, the agreements and obligations of Argentina contained in this Paragraph 5 shall survive the payment in full of all payment due hereunder or under the other Principal Bond Agreements and the performance of any other obligations hereunder or thereunder.

6. <u>Collateral</u>.

(a) <u>Principal Collateral</u>. Argentina has pledged and assigned to the Federal Reserve Bank of New York as Collateral Agent (such agent and its successors as such Collateral Agent being hereinafter called the "<u>Collateral Agent</u>"), for the benefit of the registered holders, Pledged Securities (as defined in the Collateral Pledge Agreement) (the "<u>Principal Collateral</u>"), having an aggregate amount payable at maturity (including principal, interest and interest added to principal) equal to the principal amount of the Bonds and maturing on or before the stated maturity date of the Bonds, securing payment of the principal amount of the Bonds at stated maturity only. The Collateral Agent will hold the Principal Collateral pursuant to a Collateral Pledge Agreement dated as of _____, 199_ (as amended from time to time, the "<u>Collateral Pledge Agreement</u>"), the terms of which are hereby incorporated herein by reference.

Pursuant to the Collateral Pledge Agreement, if Argentina has not, on the Bond Maturity Date, made available to the Fiscal Agent in immediately available funds the full principal amount required to be paid at maturity of the Bonds, the Collateral Agent shall cause the proceeds of the Principal Collateral to be remitted to the Fiscal Agent to be held in trust for payment of the principal of the Bonds. With respect to the Principal Collateral, failure by Argentina to pay the principal amount of the Bonds at stated maturity is the only event giving rise to any right of recourse on the part of the Fiscal Agent or any Bondholder to the Principal Collateral, and the Principal Collateral is not available to the Fiscal Agent or any Bondholder at any time before the stated maturity of the Bonds. In particular, nonpayment by Argentina of interest and other amounts on the Bonds at any time or of principal of the Bonds, on redemption, acceleration or otherwise, before stated maturity

does not give rise to any right on the part of the Fiscal Agent or any Bondholder to recourse to the Principal Collateral, and the Principal Collateral is not available as a result thereof.

(b) <u>Interest Collateral</u>. Argentina has pledged to and deposited with the Collateral Agent, for the benefit of the Bondholders, Cash or Permitted Investments (both terms as defined in the Collateral Pledge Agreement) (the "<u>Interest Collateral</u>" and, together with the Principal Collateral, the "<u>Collateral</u>") in the amount specified for the Bonds in the Collateral Pledge Agreement securing payment of interest on the Bonds. The Collateral Agent will hold the Interest Collateral pursuant to the Collateral Pledge Agreement. Earnings on the Interest Collateral will be remitted to Argentina from time to time in accordance with the Collateral Pledge Agreement.

Pursuant to the Collateral Pledge Agreement, if Argentina has not, within 30 days after any Interest Payment Date, made available to the Fiscal Agent in immediately available funds the full amount of interest required to be paid in respect of the Bonds on such Interest Payment Date, the Collateral Agent shall, at the request of the Fiscal Agent (acting upon the instructions of the registered holders of at least 25% in aggregate principal amount of the Bonds), cause proceeds of the Interest Collateral to be remitted to the Fiscal Agent for the payment of interest due and payable on the Bonds (without taking into account any interest on overdue amounts).

(c) <u>Collateral Pledge Agreement; Release of Collateral, Etc.</u> Copies of the Collateral Pledge Agreement are on file and available for inspection at the corporate trust office of the Fiscal Agent in the Borough of Manhattan, City of New York and at such other offices as are from time to time designated as Paying Agents for the Bonds, and reference thereto is hereby made for a description of the rights and limitation of rights thereunder of the holders of the Bonds and the duties of the Collateral Agent. The Other U.S. Bonds also enjoy the benefit of the Collateral Pledge Agreement with respect to separate collateral. The Collateral Pledge Agreement contains provisions for the release from time to time of Principal Collateral and Interest Collateral. The holders of the Bonds will be entitled to the benefits of, be bound by, and be deemed to have notice of, all of the provisions of the Collateral Pledge Agreement. The Collateral Agent is not a trustee for the Bondholders and does not have the same responsibilities or duties to act for such holders as a trustee. Neither the

Federal Reserve Bank of New York, as the initial Collateral Agent, nor any successor Collateral Agent shall have any obligation hereunder or under the Collateral Pledge Agreement to make any payment of principal of, or interest on, this Bond to the holder or to the Fiscal Agent other than the remittance of the proceeds (if any) of the Principal Collateral and the Interest Collateral to the Fiscal Agent in accordance with the terms of the Collateral Pledge Agreement. Each Bondholder, by acceptance of its Bond or Bonds, consents to the appointment of the Collateral Agent as its true and lawful attorney-in-fact as provided in the Collateral Pledge Agreement.

The pledge of the Principal Collateral and Interest Collateral pursuant to the Collateral Pledge Agreement constitutes and will constitute, so long as any Bond remains outstanding, a valid and perfected first priority security interest in favor of the Collateral Agent on behalf of the registered holders in the Principal Collateral and Interest Collateral.

7. **Valid Obligations**.

Argentina represents and agrees that all action has been taken and all conditions precedent have occurred so that this Bond and all the obligations herein contained shall be valid and legally enforceable obligations of Argentina in accordance with their terms, including without limitation all acts or things necessary or appropriate under the Constitution, laws and regulations of Argentina.

8. **Payment of Unclaimed Amounts**.

Subject to Section 11(b) of the Fiscal Agency Agreement, any moneys paid by Argentina, or remitted by the Collateral Agent to the Fiscal Agent (or remitted by the Fiscal Agent to any other Paying Agent) for payment of principal of, or interest on, any of the Bonds shall be held in trust by the Fiscal Agent or such Paying Agent for the registered holders to be paid to such registered holders in accordance with Sections 5(a) and 5(b)(i) of the Fiscal Agency Agreement. Any moneys so held remaining unclaimed at the end of two years after such principal or interest (including additional amounts under Paragraph 5 above) shall have become due and payable (whether at maturity or upon call for redemption or otherwise) shall be repaid to Argentina on its written demand, and upon such repayment such trust shall terminate and all liability of the Fiscal Agent and each Paying Agent with respect to such moneys shall cease, and a

registered holder presenting a claim therefor shall thereafter look only to Argentina for payment thereof; _provided_ that such repayment shall not limit in any way any obligation which Argentina may have to pay the principal of, or interest on, the Bonds as the same shall become due.

9. <u>Covenants</u>.

(a) <u>Affirmative Covenants</u>. Argentina covenants and agrees that, so long as any Bond remains outstanding, Argentina shall:

(i) <u>Maintenance of Argentine Authorizations</u>. Duly obtain and maintain in full force and effect all Argentine Authorizations necessary under the laws of Argentina for the performance by Argentina of the Bonds or any other Principal Bond Agreement or for the validity or enforceability of the Bonds or of the other Principal Bond Agreements and duly take all necessary and appropriate governmental and administrative action in Argentina, in order for Argentina to be able to make all payments to be made by Argentina under the Bonds and the other Principal Bond Agreements.

(ii) <u>Pari Passu</u>. Ensure that at all times its obligations hereunder constitute unconditional general obligations of Argentina ranking at least _pari passu_ in priority of payment with (A) all other Indebtedness of Argentina which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Pesos and (B) all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Pesos.

(iii) <u>Debt Conversion Program</u>. Maintain the eligibility of the Bonds for tender in Argentina's debt conversion program.

(iv) <u>Maintenance of Membership on International Financial Institutions</u>. Maintain at all times its membership in the IMF, IBRD and IADB and continue to be eligible to use the general resources of the IMF.

(v) <u>Annual Economic Report</u>. Furnish to the Fiscal Agent sufficient copies of the Annual Economic Report of BCRA ("<u>Memoria Anual</u>"), or comparable economic information, and other periodic financial statements of the debt of Argentina reflecting the aggregate principal

amount of Par Bonds and Discount Bonds which have been purchased or otherwise acquired and not cancelled in accordance with clause (i) of the proviso to Paragraph 4(b)(B) hereof and indicating that such Par Bonds and/or Discount Bonds have been acquired for the purpose of securing External Indebtedness of Argentina incurred in connection with, or on or after the date of, such purchase or acquisition.

(vi) <u>Maintenance of Agents</u>. Until two years after the later of the date on which the principal of all the Bonds shall have become due and payable (whether at maturity or upon call for redemption or otherwise) and the date on which moneys for the payment thereof and of all interest on the Bonds shall have been made available to the Fiscal Agent, to maintain a Fiscal Agent, an Authenticating Agent, [a Calculation Agent,]* a Registrar and Transfer Agent in the Borough of Manhattan, City of New York (which in each case shall be a commercial bank or trust company (other than BCRA or an Argentine Bank), or any affiliate thereof, having a combined capital and surplus of at least U.S.$1,000,000,000 (or the equivalent in other currencies), legally qualified to act as such Agent and having an established place of business in the Borough of Manhattan, City of New York). Subject to the foregoing, Argentina reserves the right at any time to vary or terminate the appointment of the Agents in the manner, and to the extent, provided in Paragraph 16 hereof and in the Fiscal Agency Agreement.

[(vii) <u>Listing</u>. Make application for listing the Bonds on the Luxembourg Stock Exchange and use its best efforts (x) to ensure listing thereon and (y) once the Bonds are so listed, to maintain the listing of the Bonds thereon or, if maintenance thereon is not practicable, on another internationally recognized securities exchange.][27]

(b) <u>Negative Covenants</u>. For so long as any of the Bonds remain outstanding, Argentina shall not:

(i) Directly or indirectly seek any restructuring or rescheduling of the Bonds or any provisions thereof, nor will it directly or indirectly seek or request any loans, advances, extensions of credit or other financial accommodation from any holders of Bonds or any affiliates thereof based on such holdings.

---

\*   Discount Bonds only.

27. Insert for USD Discount Series L and USD Par Series L.

(ii) Sell, assign or otherwise transfer any Par Bond or Discount Bond purchased or otherwise acquired by, or on behalf of, Argentina and not cancelled in accordance with Paragraph 4(b) hereof; _provided_, that Argentina shall be permitted to assign or otherwise transfer any such Par Bond or Discount Bond in connection with the exchange contemplated in Paragraph 4(b)(B) hereof; and _provided, further_, that Argentina shall be permitted to assign or otherwise transfer any such Par Bond or Discount Bond, or any interest therein, in connection with any transaction in which such Par Bond or Discount Bond is used to secure External Indebtedness incurred in connection with, or on or after the date of, the purchase or other acquisition of such Par Bond or Discount Bond by or on behalf of Argentina.

[(iii) Make, nor grant permission to make, application to list the Bonds on any stock exchange.]28

10. _Events of Default_.

If any of the following events (each an "Event of Default") shall occur and be continuing:

(a) interest on any Bond is not paid when due and such default continues for a period of at least 30 days; or

(b) Argentina fails to pay the principal amount of any Bond called for redemption when due for a period of 15 days; or

(c) the pledge of the Principal Collateral or of the Interest Collateral under the Collateral Pledge Agreement ceases to constitute a valid and perfected first priority security interest in any such Collateral; or

(d) Argentina defaults in the performance of any other obligation contained in the Bonds or the other Principal Bond Agreements relating to the Bonds and such default shall continue for a period of 90 days after written notice thereof shall have been given to Argentina

---

28. USD Discount Series U and USD Par Series U only.

at the office of the Fiscal Agent by any registered holder; or

(e) (i) the holders of 25% or more in aggregate outstanding principal amount of any issue or series of Publicly Issued External Indebtedness of Argentina or any Designated Argentine Governmental Agency (including any Other Bonds), as a result of any failure to pay the principal of, or interest on, such Publicly Issued External Indebtedness, accelerate such Publicly Issued External Indebtedness or declare such Publicly Issued External Indebtedness to be due and payable, or required to be prepaid (other than by a regularly scheduled required prepayment), prior to the stated maturity thereof and such acceleration, declaration or prepayment shall not have been annulled or rescinded within 30 days thereof or (ii) Argentina or any Designated Argentine Governmental Agency fails to pay the principal of any such Publicly Issued External Indebtedness when due (after expiration of any applicable grace period), or (iii) Argentina fails to pay any interest when due under any Other Bonds (after expiration of any applicable grace period); or

(f) Argentina declares a moratorium with respect to the payment of principal of, or interest on, Publicly Issued External Indebtedness of Argentina; or

(g) any writ, execution, attachment or similar process shall be levied against all or any substantial part of the assets of Argentina in connection with any judgment in respect of External Indebtedness (other than External Indebtedness under the Debt Agreements) for the payment of money exceeding U.S.$100 million (or its equivalent in other currencies) and shall remain unsatisfied, undischarged and in effect for a period of 45 consecutive days without a stay of execution, unless the same is adequately bonded or is being contested by appropriate proceedings properly instituted and diligently conducted and, in either case, such process is not being executed against such assets; or

(h) the validity of the Bonds or the other Principal Bond Agreements relating thereto shall be contested by Argentina;

then, if such event is continuing, registered holders of 25% or more in aggregate outstanding principal amount of the Bonds may, by written demand to Argentina at the office of the Fiscal Agent, declare the Bonds immediately due and payable, whereupon the entire unpaid principal amount of the Bonds, all interest accrued and unpaid thereon and all other amounts payable in respect of the Bonds shall become and be forthwith due and payable, without presentation, demand, protest or further notice of any kind, all of which are hereby expressly waived by Argentina. Any such declaration shall be made by written demand to Argentina at the office of the Fiscal Agent in New York City. Upon receipt by the Fiscal Agent of such written demand, the Fiscal Agent shall give notice thereof to Argentina, as provided in the Fiscal Agency Agreement, and to the holders of the Bonds, by mail and publication. After any such declaration, if all amounts then due with respect to the Bonds are paid (other than amounts due solely because of such declaration) and all other defaults with respect to the Bonds are cured, such declaration may be annulled and rescinded by registered holders of more than 50% in aggregate outstanding principal amount of the Bonds (or such other percentage required at a meeting of Bondholders in accordance with Paragraph 12 hereof) by written notice thereof to Argentina at the office of the Fiscal Agent.

11.  *Transfer, Exchange for New Bonds and Replacement*.

(a) This Bond is transferable (subject to applicable restrictions in the legend appearing on the face of this Bond and in the Fiscal Agency Agreement) by the registered holder hereof or by his attorney-in-fact duly authorized in writing, at the office of the Registrar or of any Transfer Agent, upon surrender of this Bond for cancellation duly endorsed by, or accompanied by a written instrument of transfer, in the form set forth at the end of these Terms and Conditions or in such other form satisfactory to the Registrar duly executed by, the registered holder or his attorney-in-fact duly authorized in writing, and thereupon one or more new Bonds in Authorized Denominations for the same aggregate principal amount will be issued in the name of the transferee or transferees in exchange therefor.

(b) This Bond (i) may be transferred and sold only as a unit that includes all interest and principal components and may not be separated, directly or indirectly, into component interest and principal portions and (ii) may not be converted directly or indirectly into unregistered form.

(c) This Bond is exchangeable (subject to applicable restrictions contained in the Fiscal Agency Agreement) by the registered holder hereof or by his attorney-in-fact duly authorized in writing at the office of the Registrar or of any Transfer Agent, upon surrender of this Bond for exchange, into one or more new Bonds in Authorized Denominations with the same aggregate principal amount, and thereupon such new Bonds will be issued to such registered holder.

(d) Notwithstanding any other provision of this Bond, the Registrar shall not be required to register the transfer of or exchange this Bond (i) during a period beginning at the opening of business 15 days before the date of transmission of a notice of partial redemption of the Bonds and ending at the close of business on the day of such transmission or (ii) at any time after this Bond has been called for redemption; provided that, with respect to any Bond called for partial redemption, the Registrar shall register the transfer of or exchange such principal amount not subject to redemption.

(e) Argentina may require payment of a sum sufficient to cover any stamp tax or other governmental charge (other than a stamp tax or governmental charge imposed by Argentina itself) in connection with any such transfer or exchange, but no other charge shall be made in connection with any such transfer or exchange (except for the expenses of delivery other than by regular mail).

(f) In case of the mutilation, destruction, loss or theft of this Bond, the Registrar, upon surrender to and cancellation by it of the mutilated Bond, or upon receipt of proof satisfactory to it of the destruction, loss or theft of such Bond, and receipt of security or indemnity satisfactory to the Registrar, to the Fiscal Agent, to the Authenticating Agent and to Argentina, shall register, and the Registrar or a Transfer Agent shall deliver, a new Bond of such Series in replacement of such Bond to the person requesting such replacement upon payment by such person of all reasonable expenses associated with obtaining such security or indemnity and issuing and delivering a new Bond (including, without limitation, reasonable legal fees and expenses relating to the preparation, authentication and delivery of such new Bond).

(g) Prior to the presentment for registration of transfer of this Bond, Argentina and each of the Agents may deem and treat the person in whose name this Bond is

registered as the absolute owner of this Bond (whether or not this Bond shall be overdue and notwithstanding any notice of ownership or other writing hereon) for the purpose of receiving payment hereof or on account hereof and for all other purposes, and neither Argentina nor any Agent shall be affected by any notice to the contrary; <u>provided</u> that, with respect to beneficial interests in the Non-U.S. Global Bond, each person who is shown in the records of the Euroclear Operator or of Cedel as the holder of a particular principal amount of such Global Bond shall be treated as the holder of such principal amount of Bonds for all purposes other than with respect to receiving notices by mail or payment hereof or on account hereof.

(h) All Bonds issued as a result of any transfer, exchange or replacement of Bonds shall be delivered to the holder at the office of the Registrar or a Transfer Agent or (at the risk and, if sent other than by regular mail, expense of such Bondholder) sent by mail to such address as is specified by the holder in the request for transfer, exchange or replacement.

(i) Argentina has initially appointed each of the principal offices of Citibank, N.A. in London and of Citibank (Luxembourg) S.A. in Luxembourg as a Transfer Agent where the Bonds may be surrendered for transfer, exchange or substitution. The Fiscal Agent shall, directly or through an affiliate, maintain in the Borough of Manhattan, City of New York, a Registrar in which Bonds executed, authenticated and delivered as provided herein and in the Fiscal Agency Agreement, and the transfer, exchange, substitution and cancellation of such Bonds, shall be registered.

12. <u>Meetings of Bondholders; Modification and Amendments</u>.

(a) Upon not less than 15 days' prior notice to the Fiscal Agent, Argentina may at any time call a meeting of the Bondholders of any Series pursuant to the notice provisions of the Fiscal Agency Agreement for any purpose, such meeting to be held at such time and such place as Argentina shall determine. Upon a request in writing made by Bondholders holding not less than 10% of the aggregate outstanding principal amount of the Bonds of any Series, the Fiscal Agent shall convene a meeting of Bondholders of such Series. Any such request in writing by Bondholders shall be delivered to the Fiscal Agent. Further provisions concerning meetings of Bondholders are set forth in the Fiscal Agency Agreement.

(b) Modifications and amendments to the Fiscal Agency Agreement (subject to the provisions of Section 15 of the Fiscal Agency Agreement), the Collateral Pledge Agreement, or the Bonds requiring Bondholder consent may be made, and future compliance therewith or past default by Argentina may be waived, with the consent of Argentina and the registered holders of at least a majority in aggregate principal amount of the Bonds at the time outstanding, or of such lesser percentage (determined as provided in subparagraph (c) below) as may act at a meeting of Bondholders held in accordance with the provisions of the Fiscal Agency Agreement; <u>provided</u> that no such modification, amendment or waiver of the Fiscal Agency Agreement, the Collateral Pledge Agreement, or any Bond may, without the consent of the registered holder of each Bond affected thereby, (i) change the stated maturity of the principal of or the due date of interest on such Bond; (ii) reduce the principal of, or interest on, any such Bond; (iii) change the currency of payment of the principal of, or interest on, any such Bond; (iv) effect a release of the Collateral from, or change the priority of, the lien of the Collateral Pledge Agreement except as contemplated thereby or change the ratable nature of the security provided thereby; or (v) reduce the above-stated percentage of aggregate principal amount of Bonds outstanding or reduce the quorum requirements or the percentage of votes required for the taking of any action; and <u>provided further</u> that no modification, amendment or waiver of the Collateral Pledge Agreement may, without the consent of the Collateral Agent in addition to Argentina and the holders required above to take such action, affect the rights or duties of the Collateral Agent or the Fiscal Agent, respectively, under the Collateral Pledge Agreement. Any modifications, amendments or waivers consented to or approved at a meeting will be conclusive and binding on all holders of the Bonds whether or not they have given consent or were present at such meeting, and on all future holders of Bonds whether or not notation of such modifications, amendments or waivers is made upon the Bonds. Subject to the foregoing provisions of this Paragraph 12(b), any instrument given by or on behalf of any holder of a Bond in connection with any consent to any such modification, amendment or waiver will be irrevocable once given and will be conclusive and binding on all subsequent holders of such Bond.

(c) At a meeting of the Bondholders called for any of the above purposes, persons entitled to vote a majority in aggregate principal amount of the Bonds at the time outstanding shall constitute a quorum, it being understood that any Bondholder entitled to more than one vote shall not

be required to cast all such votes in the same manner. In the absence of a quorum within 30 minutes of the time approved for such meeting, such meeting may be adjourned for a period of not less than ten days; at the reconvening of any meeting adjourned for lack of a quorum, the persons entitled to vote 25% in aggregate principal amount of the Bonds at the time outstanding shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. At a meeting or an adjourned meeting duly convened and at which a quorum is present as aforesaid, any resolution to modify or amend, or to waive compliance with, any of the covenants or conditions referred to above (other than to make any declaration under Paragraph 10 hereof) shall be effectively passed, subject to the provisos of subparagraph (b) above, if passed by the persons entitled to vote the lesser of (i) a majority in aggregate principal amount of Bonds then outstanding or (ii) 75% in aggregate principal amount of the Bonds represented and voting at the meeting.

(d) So long as Argentina has any interest in any of the Bonds referred to in any notice delivered to the Fiscal Agent by Argentina pursuant to the last sentence of Paragraph 4(b) hereof, no vote may be exercised with respect to such Bond at a meeting of Bondholders or in connection with any consent to any modification, amendment or waiver contemplated in this Paragraph 12.

13. <u>Notices</u>.

All notices to Bondholders will be given by publication thereof in <u>The Wall Street Journal</u> (Eastern Edition), and the <u>Financial Times</u> (London) (or if either or both of such newspapers is not being published, in at least one leading daily newspaper printed in the English language and with general circulation in New York City or London, as the case may be) [and, so long as the Bonds are listed on the Luxembourg Stock Exchange and it is so required for continued listing thereon, in the <u>Luxemburger Wort</u> (or if such newspaper is not being published, in a daily newspaper of general circulation in Luxembourg][29] or, if publication in [either][29] London [or Luxembourg][29] is not practical, elsewhere in western Europe). In addition, notices to Bondholders required to be mailed shall be mailed by first

---

29. Delete for USD Discount Series U and USD Par Series U.

class, or, if applicable, prepaid, air mail to each registered holder to the address set forth on the register kept by the Registrar for the Bonds. Any such notice shall be deemed to have been given on the date of such publication (or, if published more than once, on the date it is first published) and the day which is three days after such notice by mail shall have been deposited in the mails.

14. **Rights and Remedies Cumulative.**

No right or remedy herein conferred upon or reserved to any Bondholder is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

15. **Delay or Omission Not Waiver.**

No delay or omission of the Bondholders to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Paragraph 15 or by law to the Bondholders may be exercised from time to time, and as often as may be deemed expedient, by the Bondholders.

16. **Maintenance of Paying Agents and Transfer Agents.**

Argentina may vary or terminate the appointment of any Paying Agent or Transfer Agent at any time and from time to time upon giving not less than 60 days' notice to the Fiscal Agent; provided that Argentina shall maintain at all times at least one Paying Agent in New York City and London. [In addition, Argentina shall maintain at all times a Paying Agent and a Transfer Agent in Luxembourg as long as the Bonds are listed on the Luxembourg Stock Exchange and it is so required for continued listing thereon.][30] Notice of any change in a Paying Agent shall be given to Bondholders in accordance with Paragraph 13 hereof.

---

30. Delete for USD Discount Series U and USD Par Series U.

17. <u>Execution</u>.

This Bond may be executed by manual or facsimile signature of an Authorized Official of Argentina and such signature shall be binding notwithstanding that the individual signing in such capacity no longer serves in such capacity at the time of authentication by an Authenticating Agent. This Bond shall not constitute an obligation of Argentina until the certificate of authentication hereon has been countersigned for identification by an Authenticating Agent.

18. <u>Jurisdiction and Waiver of Immunity</u>.

(a) Argentina hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or federal court sitting in New York City, the High Court of Justice in London, any federal court sitting in the City of Buenos Aires and any appellate court from any thereof, in any suit, action or proceeding arising out of or relating to this Bond, and Argentina hereby irrevocably agrees that all claims in respect of such suit, action or proceeding may be heard and determined in such New York State or federal court, in the High Court of Justice in London or any federal court sitting in the City of Buenos Aires. Argentina irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any such suit, action or proceeding and any objection to any such suit, action or proceeding whether on the grounds of venue, residence or domicile. A final judgment in any such suit, action or proceeding shall be conclusive and may be enforced in any other jurisdictions by suit on the judgment or in any other manner provided by law.

(b) Argentina hereby irrevocably appoints (i) the New York office of Banco de la Nación Argentina (the "<u>New York Process Agent</u>"), with an office on the date hereof at 299 Park Avenue, 2nd floor, New York, New York 10171, United States, and, alternatively, hereby irrevocably appoints CT Corporation System, with an office on the date hereof at 1633 Broadway, 23rd floor, New York, New York 10019, United States (the "<u>Alternate New York Process Agent</u>"), in each case, as its agent to receive, on behalf of itself and its property, service of copies of the summons and complaint and any other process which may be served in any such action or proceeding brought in such New York State or federal court sitting in New York City and (ii) the London office of Banco de la

Nación Argentina (the "London Process Agent", and together with the New York Process Agent, the "Process Agents"), with an office on the date hereof at Longbow House, 14-20 Chiswell Street, London EC1Y 45D, England, United Kingdom, and alternatively, hereby irrevocably appoints The Law Debenture Trust Corporation p.l.c., with an office on the date hereof at Prince's House, 95 Gresham St., London EC2V 7LY, England, United Kingdom (the "Alternate London Process Agent" and, together with the New York Alternate Process Agent, the "Alternate Process Agents"), in each case, as its agent to receive on behalf of itself and its property service of copies of a writ, summons, order, judgment or other document which may be served in any such action or proceeding brought in the High Court of Justice in London. Service of any such process may be made upon an Alternate Process Agent in lieu of the applicable Process Agent in any action or proceeding in any New York State or federal court sitting in New York City or the High Court of Justice in London if (i) at any time and for any reason it appears to the party attempting to serve the process that service of such process upon any Process Agent as provided above may be ineffective or may not be feasible and (ii) upon or before the serving of any process on any Alternate Process Agent, the Alternate Process Agent and Argentina are notified that service of such process is to be made on such Alternate Process Agent in accordance with the provisions of this sentence. Such service may be made by mailing or delivering a copy of such process to Argentina in care of the appropriate Process Agent or Alternate Process Agent at the address specified above for such Process Agent or Alternate Process Agents and, in the case of process served on an Alternate Process Agent, by depositing a copy of such process in the United States mails, addressed to Argentina at the address specified in Section 13 of the Fiscal Agency Agreement (such service to be effective upon the delivery of such process to the Alternate Process Agent and the depositing of such process in the United States mails as aforesaid), and Argentina hereby irrevocably authorizes and directs such Process Agent or Alternate Process Agents to accept such service on its behalf. Failure of any Process Agent or Alternate Process Agent to give notice to Argentina or failure of Argentina to receive notice of such service of process shall not affect in any way the validity of such service on the Process Agent, the Alternate Process Agent or Argentina. As an alternative method of service, Argentina also irrevocably consents to the service of any and all process in any such suit, action or proceeding in such New York State or federal court sitting in New York City or the High Court of Justice in London by the mailing of copies of such process to Argentina at its address specified

in Section 13 of the Fiscal Agency Agreement. Argentina covenants and agrees that it shall take any and all reasonable action, including the execution and filing of any and all documents, that may be necessary to continue the designations of Process Agents and Alternate Process Agents above in full force and effect, and to cause each Process Agent and Alternate Process Agent to continue to act as such.

(c) Nothing in this Paragraph 18 shall affect the right of any party to serve legal process in any other manner permitted by law or affect the right of any party to bring any action or proceeding against any other party or its property in the courts of other jurisdictions.

(d) To the extent that Argentina has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, Argentina hereby irrevocably waives such immunity in respect of its obligations under this Bond and the other Principal Bond Agreements and, without limiting the generality of the foregoing, Argentina (A) agrees that the waivers set forth in this Paragraph 18(d) shall have the fullest scope permitted under the Foreign Sovereign Immunities Act of 1976 of the United States and are intended to be irrevocable for purposes of such act; and (B) consents generally for the purposes of the State Immunity Act 1978 of the United Kingdom to the giving of any relief or the issue of any process. Notwithstanding the foregoing, Argentina shall not waive any such immunity (1) with respect to the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of Argentina or property owned by Argentina and located in its territory which is dedicated to the purpose of an essential public service.

19. **BCRA Undertaking**.

The holder of this Bond is entitled to the benefits of the BCRA Undertaking. Such undertaking shall not constitute a guarantee of Argentina's obligations hereunder.

20. Descriptive Headings.

The descriptive headings appearing in these Terms and Conditions of the Bonds are for convenience of reference only and shall not alter, limit or define the provisions hereof.

[FORM OF ASSIGNMENT]

ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

[PLEASE INSERT SOCIAL SECURITY, TAXPAYER IDENTIFICATION OR OTHER IDENTIFYING NUMBER OF ASSIGNEE]

[PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF ASSIGNEE]

_____

_____

_____

the within Bond and all rights thereunder, hereby irrevocably constituting and appointing _____

_____, attorney, to transfer such Bond on the books of the Registrar, with full power of substitution in the premises.

Dated: _____       _____
                                    Signature of Assignor

NOTICE: The signature to this assignment must correspond with the name as written upon the face of the within Bond in every particular, without alteration or enlargement or any change whatsoever.