Westlaw.

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1878420 (S.D.N.Y.))

Page 1

H
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

LIGHTWATER CORPORATION LIMITED,
Plaintiff,
v.
THE REPUBLIC OF ARGENTINA, Defendant.
OLD CASTLE HOLDINGS, LTD., Plaintiff,
v.
THE REPUBLIC OF ARGENTINA, Defendant.
MACROTECNIC INTERNATIONAL
CORPORATION, Plaintiff,
v.
THE REPUBLIC OF ARGENTINA, Defendant.

No. 02 Civ. 3804(TPG), 02 Civ. 3808(TPG), 02 Civ. 5932(TPG).

April 14, 2003.

**Background:** Owners of bonds issued by the Republic of Argentina brought three separate actions against the Republic, seeking to recover amounts due as a result of the Republic's default on bonds. Following removal of the one action commenced in state court, owners moved for summary judgment, and the Republic requested that actions be stayed.

**Holdings:** The District Court, Griesa, J., held that:
(1) owners did not violate New York statute prohibiting buying of bond with intent and purpose of bringing action thereon;
(2) act of state doctrine did not apply to bar recovery by bond owners;
(3) international law did not bar owners from suing on bonds because the Republic was experiencing severe economic crisis; and
(4) one-month stay of execution of judgments in bond owners' behalf was warranted.
Motions granted; execution on judgments stayed.

[1] Champerty and Maintenance 4(.5)
74k4(.5) Most Cited Cases

Owners of bonds issued by Republic of Argentina bought their bonds with the intention of collecting on them, and thus did not violate New York statute that prohibited buying of bond with primary intent and purpose of bringing action thereon, even though, when owners bought bonds, they clearly had in mind that lawsuits could be necessary to achieve collection. McKinney's Judiciary Law § 489

[2] International Law 10.14
221k10.14 Most Cited Cases

Failure of Republic of Argentina to make payments on bonds that it issued which were held outside the Republic was not act of the Republic dealing with property located within its territory, for purposes of act of state doctrine, which thus did not apply to bar recovery by bond owners after the Republic defaulted by halting payments on bonds.

[3] International Law 10.14
221k10.14 Most Cited Cases

Owners of bonds issued by Republic of Argentina were not barred, under international law, from suing on bonds because the Republic was experiencing severe economic crisis.

[4] Action 68
13k68 Most Cited Cases

Republic of Argentina was not entitled to stay of actions in which owners of bonds issued by the Republic sought to recover amounts due on bonds following the Republic's default, so as to permit the Republic to arrive at restructuring of its overall debt, given that debt restructuring situation was uncertain as to possible success and timing.

[5] Federal Civil Procedure 2700
170Ak2700 Most Cited Cases

One-month stay of execution was warranted with

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1878420 (S.D.N.Y.))

Page 2

respect to judgments granted in favor of bondholders on their claims for amounts owed following default on bonds by Republic of Argentina, given that two putative class actions brought on behalf of Argentine bondholders were before district court in which motions for class certification were pending, making it inappropriate to allow three individual bondholders to go forward with execution on their judgments until court was better informed as to what would occur as to other bondholders pursuing class claims.

*OPINION*

GRIESA, J.

*1 Plaintiffs in these three cases are owners of bonds issued by The Republic of Argentina. The Republic has defaulted on the bonds. Plaintiffs are suing to recover amounts due them by virtue of these defaults. They have moved for summary judgment, claiming that the Republic's obligations are unconditional and that there are no defenses.

The Republic opposes the motions, asserting various defenses. In addition, the Republic requests that these actions be stayed because the Republic is engaged in efforts to achieve a debt restructuring.

The motions of the three plaintiffs for summary judgment on their bond obligations are granted. The motion of the Republic for a stay of the proceedings is denied, except that the court stays execution of plaintiffs' judgments for a period of one month, until May 14, 2003.

*Facts*

Copies of the bonds themselves have not been submitted to the court. However, both sides rely on the prospectuses for the bonds as accurately stating their terms and conditions.

*The Lightwater and Old Castle Bonds*

*The Bond Issue*

The Lightwater and Old Castle bonds are part of $1,000,000,000 in 11.375% bonds, issued March 13, 2000 and due for principal payment on March 15, 2010, with interest to be paid on March 15 and September 15 of each year.

The Prospectus provides (p. 9) that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. The Republic's declaration of a moratorium on the payment of principal or interest on its Public External Indebtedness is an event of default as well. Upon an event of default, a holder of the bonds may give notice declaring the principal amount immediately due and payable. The Prospectus further states (p. 11) that Argentina waives sovereign immunity and consents to jurisdiction in any state or federal court in the borough of Manhattan in the City of New York.

The Prospectus Supplement states (p. S-8) that the bonds are "direct, unconditional, unsecured and unsubordinated obligations of the Republic, backed by the full faith and credit of the Republic."

Lightwater bought $4,000,000 face value of the bonds on November 5, 2001 and $3,000,000 face value of the bonds on November 6, 2001. Old Castle bought $700,000 face value of the bonds on November 6, 2001.

Lightwater and Old Castle have not specified purchase prices or provided records of purchases. However, the Republic has provided trading prices--40.81 on November 5, 2001 and 41.88 on November 6, 2001.

*Macrotecnic*

Macrotecnic made purchases of two types of bonds, which will be referred to as the "2020 bonds" and the "2027 bonds."

*2020 Bonds*
$1,250,000,000 @ 12.00% interest.
Issue date: February 1, 2000
Due date: February 1, 2020
Interest payable February 1 and August 1

*2027 Bonds*
$2,250,000,000 @ 9.75% interest.
Issue date: September 12, 1997
Due date: September 19, 2027
*2 Interest payable March 19 and September 19

The Prospectus and Prospectus Supplement for the 2020 Bonds and the 2027 Bonds contain event of default, consent to suit, and jurisdictional waiver language identical to that which is applicable to the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1878420 (S.D.N.Y.))

Page 3

Lightwater and Old Castle bonds. They also contain the same language about the bonds being "direct, unconditional, unsecured and unsubordinated obligations."

*Purchases*
  $252,000 of 2020 bonds on January 24, 2001 at a price of 96.00.
  $23,000 of 2027 bonds on May 19, 1999 at a price of 84.50.
  $120,000 of 2027 bonds on May 27, 1999 at a price of 82.00
  $57,000 of 2027 bonds on October 20, 2000 at a price of 76.00.

*Defaults and Litigation*

The Republic failed to make the March 15, 2001 interest payments on the bonds held by Lightwater and Old Castle. On May 1, 2002 Lightwater and Old Castle gave notice of default and declared acceleration of principal. Both Lightwater and Old Castle filed lawsuits in federal court on May 17, 2002.

The Republic failed to make the February 1, 2002 interest payment on Macrotecnic's 2020 bonds, and failed to make the March 19, 2002 interest payment on the 2027 bonds. On May 3, 2002 Macrotecnic gave notice of default and declared acceleration of principal. Macrotecnic commenced suit against the Republic in Supreme Court, New York County, on June 18, 2002. The action was removed to federal court on July 26, 2002.

*The Argentine Economic Crisis*

The Republic of Argentina is experiencing the worst economic crisis in its history. The country's gross domestic product ("GDP") has contracted severely each year since 1999, and tax collections have dropped sharply.

During 2001 many businesses and individuals were making substantial withdrawals of capital from the banking system, with at least $20 billion being withdrawn. As a result, on December 1, 2001 the Republic imposed restrictions on depositors' access to bank accounts, freezing $60 billion in pesos and dollars and limiting withdrawals to $1,000 per month.

On December 24, 2001, the Republic declared a moratorium on payments of principal and interest on the external debt of the Republic. This moratorium is still in effect.

As of the end of the second quarter of 2003 the Republic's public debt (both internal and external) was $115 billion. The Republic has not repudiated the debt, but is unable to meet its obligations as they come due. National Decree 256/2002, issued February 9, 2002, declared that the debt of the Republic "must be rescheduled in order to guarantee the operation of the National State in accordance with available resources."

The Republic has been engaged in discussions with the International Monetary Fund ("IMF"), which is the Republic's single largest creditor, holding debt of approximately $14.3 billion. On part of the debt owed to it the IMF has agreed to a refinancing and certain extensions. The Republic has commenced to meet with representatives of bond holders from various countries in an effort to restructure its debt. But no restructuring has yet occurred, and as of now it is uncertain what the result of the effort will be.

*Discussion*

*3 As indicated above, Lightwater, Old Castle and Macrotecnic seek summary judgment on their claims under the bonds. The Republic opposes the motions, and moves for a stay of the proceedings. The Republic relies on considerations of international comity and urges that it should be given an opportunity to achieve an overall debt restructuring, which would be interfered with by piecemeal judgments in favor of individual bond holders.

The Second Circuit has dealt with similar circumstances and similar issues in *Pravin Banker Assoc. v. Banco Popular del Peru,* 109 F.3d 850 (2d Cir.1997). There the plaintiff had invested in the debt of a bank owned by the Republic of Peru. The Republic guaranteed the debt. During a national economic crisis, the bank stopped making interest payments. The plaintiff demanded payment of the principal and unpaid interest. Peru's central bank appointed a committee of liquidators for the bank. Negotiations were also undertaken to resolve the overall debt of Peru. The plaintiff refused to take part in the liquidation proceedings or the other debt negotiations, and brought suit in the Southern District of New York against the bank and the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1878420 (S.D.N.Y.))

Page 4

Republic. The plaintiff moved for summary judgment.

The defendants opposed the motion and cross-moved to dismiss or stay the action, arguing that international comity should be extended to Peru so that it could resolve the debt problems of the bank and the Republic. The district court granted a six-month stay to allow the completion of the bank's liquidation proceedings. Apparently there was no resolution, and, after the six-month stay expired, the plaintiff renewed the motion for summary judgment. The district court granted an additional two-month stay to obtain more information about the course of events in Peru. At the conclusion of the second stay, the plaintiff again renewed the motion for summary judgment, which was granted by the district court. The defendants moved to stay the judgment, and this motion was denied. The defendants appealed.

The Court of Appeals, agreeing with the reasoning and the actions of the district court, stated that extending comity to Peru's debt negotiations was only appropriate if it was consistent with United States government policy. The Court recognized two United States policies as being implicated by the lawsuit. The first policy was that the United States encourages participation in foreign debt resolution procedures. Second, the United States has a strong interest in ensuring the enforceability of debts under contract law, and in particular, the continuing enforceability of foreign debts owed to United States lenders. The Court stated that the second interest limits the first, and went on to say that creditor participation in foreign debt negotiations "should be on a strictly voluntary basis." Id. at 855. The Court of Appeals expressed approval of the limited stays granted by the district court, but agreed with the district court that an indefinite stay to allow Peru to renegotiate its foreign debt "would prejudice United States interests." Id. at 855. The Court further reasoned that, if the plaintiff's rights were made conditional upon the debt restructuring process (which had no obvious termination date), this would have converted voluntary negotiations into "a judicially-enforced bankruptcy proceeding, for it would, in effect, have prohibited the exercise of legal rights outside of the negotiations." Id. at 855. The Court of Appeals thus ruled that the district court was correct in granting summary judgment to the plaintiff and denying a further stay.

*4 Having made these strong pronouncements, and having affirmed the actions of the district court, the Court of Appeals went on to say that an argument "might be made" that a stay of the proceedings or a stay of the execution of judgment would have been justified to "allow the completion of Peru's negotiations with its creditors without unduly threatening the ultimate enforceability of the debt." Id. at 855-56. How to reconcile this with the Court's earlier statements is not at all clear. In any event, the Court recognized that a decision on whether or not to grant a stay was to be reviewed for abuse of discretion, and ruled that the district court did not abuse it discretion in denying the stay. Id. at 856.

As will be shown by what is set forth below, the court in the present case has decided that it should move forward with the granting of summary judgment to the three plaintiffs on the bond obligations owing to them. The court believes that this is an appropriate means of giving effect to what Pravin declared to be the strong interest of the United States in having debt obligations enforced. The court declines to grant a stay of the proceedings in order to allow the completion of debt restructuring negotiations, since there is no assurance about the success or the timing of such negotiations. However, the court will grant a stay of execution of the judgments for a period of one month, for reasons which will be described.

*Summary Judgment*

The obligations of the Republic on the bonds involved in these lawsuits is unconditional. Sovereign immunity has been waived. The Republic defaulted on the bonds when it ceased to pay the interest. This would seem to mean that the Republic now owes the three plaintiffs principal and accrued interest. Aside from requesting a stay on the basis of comity, the Republic asserts three defenses to the summary judgment motion, which will now be discussed.

*N.Y. Judiciary Law § 489*

[1] The Republic contends that Lightwater and Old Castle violated Section 489 of the New York Judiciary Law, which prohibits buying a bond "with the intent and for the purpose of bringing an action or proceeding thereon." The Republic argues that there are factual issues in this regard which require discovery and possible trial, and cannot be dealt

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1878420 (S.D.N.Y.))

Page 5

with by summary judgment.

The court disagrees. In *Elliott Assoc. v. Banco de la Nacion*, 194 F.3d 363 (2d Cir.1999), the Second Circuit provided an exhaustive discussion of how § 489 had been interpreted by the New York courts. The Circuit concluded that § 489 applies only where the primary purpose of the bond purchase is to enable the purchaser to commence a suit, to the exclusion of any other purpose. An example often used in New York cases is that of an attorney who purchases a bond with the intent of suing on it and obtaining costs. *Id.* at 373-75. But where a bond is purchased with the intent to collect on that bond, the statute is not violated even though there is also an intention to collect by a lawsuit if necessary. *Id.* at 379.

*5 The circumstances of the bond purchases by Lightwater and Old Castle demonstrate conclusively that these plaintiffs bought their bonds with the intention of collecting on them, even though they clearly had in mind that lawsuits might be necessary. There was no violation of § 489, as interpreted by the New York courts and *Elliott*. The court does not believe that discovery and trial could develop any set of facts which would contradict these conclusions.

*The Act of State Defense*

[2] The Republic asserts that all three plaintiffs are barred from recovery, because the Republic's actions in halting payments on the bonds constituted "acts of state" which this court must defer to. However, the Republic basically concedes that its argument runs contrary to the decision in *Allied Bank Int'l v. Banco Credito Agricola*, 757 F.2d 516 (2d Cir.1985). Recognizing that act of state doctrine applies only to actions of a nation within its territory, *Allied Bank* held that bond obligations have their situs where the bond holders are located. An act of a nation in failing to make payments on bonds held in other countries does not constitute an act of state dealing with property located within the nation. Thus, according to Second Circuit law, the act of state doctrine is not a defense to plaintiffs' claims in this case. The Republic concedes that it is only posing this defense with a view to possible review by the United States Supreme Court.

*Abuse of Rights*

[3] The Republic asserts that there is a principle of international law which would bar plaintiffs from suing on their bonds at a time when the issuer, The Republic of Argentina, is having a severe economic crisis. The court finds no merit in this argument as applied in the present case. No extended discussion is necessary.

*The Application For A Stay*

[4] In addition to presenting the above arguments in opposition to plaintiffs' summary judgment motion, the Republic urges that the lawsuits should be stayed in order to allow the Republic to arrive at a restructuring of its overall debt. At the oral argument, the Republic suggested a stay of six months. The court declines at present to grant a stay to the Republic for this purpose. The debt restructuring situation is uncertain as to possible success and timing.

[5] However, the court grants a stay of a more limited nature. Although the court is granting plaintiffs' motions for summary judgment, the court believes that execution of these judgments should be stayed. The court has before it two class actions brought on behalf of Argentine bond holders. Motions are now pending for class certification. These motions are returnable on April 25. The court believes that it is not appropriate to have the three individual plaintiffs go forward with execution on their judgments until the court is better informed as to what will occur regarding other bond holders who may be pursuing their claims in class actions.

The court directs that execution on plaintiffs' judgments in this action is stayed until May 14, 2003.

*Conclusion*

*6 Plaintiffs' motions for summary judgment are granted. Judgment will be entered for the principal amounts of their bonds plus accrued interest. The motion of the Republic for a stay of proceedings is denied, except that execution on plaintiffs' judgments is stayed until May 14, 2003. The court's ruling on the Republic's motion for a stay is without prejudice to a further application, if events provide a reasonable basis for such application.

SO ORDERED.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
**(Cite as: 2003 WL 1878420 (S.D.N.Y.))**

Page 6

2003 WL 1878420 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works